UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE BARRY WHITE FAMILY
TRUST U/A/D: DECEMBER 19, 1980,   Case No. 24-cv-07509 (DLC)
BY ITS DULY EMPOWERED TRUSTEES

                Plaintiffs,   **AMENDED COMPLAINT**

  -against-

JOE COOLEY,
RODNEY DAVID OLIVER P/K/A
RODNEY-O, d/b/a NOT INTRESTED PUBLISHING

                Defendants.
------------------------------------------------------------------x

The Barry White Family Trust U/A/D December 19, 1980 ("Barry White Trust"), by and through its co-trustees ("Trustees") (collectively, "Plaintiffs"), allege as follows:

## INTRODUCTION

1. This is an action for willful copyright infringement brought by the owner of the rights in and to the hit song "I'm Gonna Love You Just A Little More, Babe", written and performed by the legendary and the incomparable, Barry White. The Defendants herein infringed Plaintiffs' copyright on two separate songs, "Everlasting Bass" and "Like That" by copying and interpolating the most important and prominent rift from the iconic Barry White.

## PARTIES

2. The Barry White Trust is a trust, duly created and existing under the laws of the State of California by its duly empowered Trustees, Glodean B. White and Jack W. Perry, and is the successor-in-interest to all of the rights held by the late Barry White.

3. Upon information and belief, Defendant Joe Cooley ("Cooley") is an individual residing at 248 E. 157th St., Gardena, CA 90248.

1

4. Upon information and belief, Defendant Rodney Oliver p/k/a Rodney-O ("Oliver") is an individual residing at 15370 Weddington Street Apt. 106, Sherman Oaks, CA 91411.

5. Upon information and belief, Defendant Not Intrested Publishing is a business entity and rights manager controlled by Necole Key II who is an individual residing at 451 Discovery Lane, Unit 321, Brea, CA 92821.

## BACKGROUND

6. "I'm Gonna Love You Just A Little More, Babe" was written, produced, and performed by Barry White in 1972 and released in 1973 (a copy of which can be accessed through the link attached hereto as Exhibit A)[1], which was copyrighted on January 8, 1973, and received an original registration for words and music (Registration No. EU0000387551), and was renewed on January 5, 2001 (Registration No. RE0000841799) (the "Barry White Copyright") (a copy of which is attached hereto as Exhibit B).

7. "Everlasting Bass" (or the "First Infringing Work"), written and released by the individual Defendants in or about 1986, copied and interpolated substantial elements of "I'm Gonna Love You Just A Little More, Babe." Defendants neither sought nor received a license or any permission for their use, and Plaintiffs were unaware of the infringement at the time as the song never received national recognition, success or charted on *Billboard*.

8. "Like That" (or the "Second Infringing Work"), released in March of 2024, is based on a putative license from Defendants for the publishing use of "Everlasting Bass", which copied substantial elements of "I'm Gonna Love You Just A Little More, Babe." Defendants neither sought nor received a license or permission from the Plaintiffs for this use or the use in

---

[1] The physical copies of the songs referenced herein were provided to the Court on October 31, 2024.

2

1986.[2] The First Infringing Work and the Second Infringing Work shall be referred to herein, collectively, as the "Infringing Works".[3]

9. The Infringing Works infringe the Barry White Copyright including, but not limited to the immediately recognizable bass line from the Barry White Copyright. Copies of the Infringing Works can be accessed through the links attached hereto as Exhibits C and D, respectively.

## JURISDICTION AND VENUE

10. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

11. This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and 1338(a) and (b), and the principles of pendent jurisdiction.

12. As set forth more fully hereinbelow, this Court has personal jurisdiction over the enumerated Defendants pursuant to New York's long-arm statute, N.Y. C.P.L.R. §§ 301 and 302, because they have purposefully directed their activities in licensing the Infringing Works to New York entities, making the Infringing Works available to New York residents.

13. Venue lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to the subject matter of this lawsuit occurred in this judicial district, including but not limited to Defendants' knowing conduct of entering into a license agreement for the publishing rights for "Everlasting Bass" for its use in "Like That". A written agreement

---

[2] Since the Defendants' song, Everlasting Bass, was released prior to the internet and was not widely distributed, the Barry White Trust was unaware of the song when it was first released. Plaintiffs seek all damages for infringements and other unauthorized licenses granted by any of the Defendants within the applicable statutes of limitation.

[3] Kendrick Lamar, Leland Tyler Wayne p/k/a Metro Boomin, Nayvadius Demun Cash p/k/a Future, Wilburn Holding Co., Republic Records, and Universal Music Group, are indemnified by Defendants, as set forth in the License Agreement.

was entered into by Defendants with Eric Weisman Licensing, Inc., located at 250 W. 55th Street, New York, NY 10019 (the "License Agreement"), which subjects the Defendants to personal jurisdiction in this District.

14. Defendants, as the licensors of Everlasting Bass (which infringes the Barry White Copyright), directly and through their agents and licensees, target business activities toward consumers in this District by, *inter alia*, entering into a License Agreement authorizing the interpolation of the Barry White Copyright in "Like That".[4]

15. New York residents are able to purchase (and have purchased) physical copies of the Infringing Works through, *inter alia,* third-party websites, such as Amazon.com. The Infringing Works can be downloaded and streamed in New York which is one of the top selling markets for "Like That".

16. The Infringing Works have been sold and shipped to New York as a direct and proximate result of the Defendants' license as set forth more fully herein.

A. **Defendants' Contacts With New York Under N.Y. C.P.L.R. §§ 301 and 302**

17. The Defendants purposefully availed themselves of New York's jurisdiction when they individually (or through their rights manager and agent Necole Key) negotiated and entered into the License Agreement through a series of emails and phone calls in and to New York. On information and belief, the money paid to Defendants for the initial advance fee due under the License Agreement was paid from New York, as are the performance royalties paid and/or payable to Defendants from BMI.

18. Defendants have engaged in systematic and continuous business activities relating to the Infringing Works including distributing the Infringing Works through Epic Records which

---

[4] On information and belief, the Defendants (individually or through Necole Key) have licensed other uses to additional third parties.

4

is located in this District in New York. Moreover, Defendants' conduct in licensing, marketing, selling and distributing the Infringing Works throughout the United States contemplated the sale of the Infringing Works into New York - a state with some of the highest numbers in music streaming and other sales of the Infringing Works.

19. Defendants Cooley and Oliver also transact and engage in a continuous and systematic course of doing business in New York by virtue of their exploitation of the "Everlasting Bass" song through their memberships with BMI, a New York entity located at 7 World Trade Center, 250 Greenwich Street, New York, NY 10007-0030. Defendants have and continue to generate revenue from New York by virtue of their membership in BMI and particularly by virtue of the Infringing Works. A copy of the BMI registration for the "Everlasting Bass" song is attached hereto as Exhibit E.

20. Defendants Cooley and Oliver also transact and engage in a continuous and systematic course of doing business in New York by virtue of their exploitation of the "Like That" song through their memberships with BMI, a New York entity located at 7 World Trade Center, 250 Greenwich Street, New York, NY 10007-0030. Defendants have and continue to generate revenue from New York by virtue of their membership in BMI and particularly by virtue of the Infringing Works. A copy of the BMI registration for "Like That" is attached hereto as Exhibit F.

21. Defendants' agent and rights manager, Not Intrested Publishing and Necole Key are likewise listed on the BMI registration for "Everlasting Bass" and "Like That".

22. The Defendants have generated substantial revenues from the unauthorized and unlawful exploitation of the Infringing Works, including receiving substantial revenue from such exploitation in New York. Defendants, through their licensees, have advertised the Infringing

Works to New York residents. The Second Infringing Work has sold over ten thousand digital downloads and has had over 90 million streams worldwide since its debut.

23. The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the Infringing Works in New York.

24. Defendants transacted business and committed a tortious action in New York by arranging for the distribution and performance of the Infringing Works within the state of New York, and Plaintiff's action for copyright infringement, arises from that transaction of business.

25. Defendants entered into a License Agreement to exploit and license the Barry White Copyright in the United States, which conduct constitutes a tort committed outside New York causing injury within New York, as the Plaintiffs conduct significant business in New York. Since Defendants include the United States in their License Agreement, it was objectively reasonable to expect that the Infringing Works would be exploited in New York.

26. Defendants engagement in substantial and purposeful contact with New York through their phone and email solicitations, negotiations, and execution of the License Agreement that infringed the Barry White Copyright, satisfies the requirements of New York's long arm statute.

### PRELIMINARY STATEMENT – THE BARRY WHITE LEGACY

**A.     Plaintiffs' Commitment to Preserving Barry White's Musical and Artistic Legacy**

27. During his lifetime, Barry White established himself as a legend in the entertainment business. Barry White's popularity has only grown since his untimely death on July 4, 2003, at age 58.

28. Since his death, his estate, and subsequently his Trustees, have judiciously guarded the manner in which Barry White's name, image, likeness, trademarks, copyrights, and music have been licensed ("Barry White Intellectual Property Rights").

29. Barry White was a legendary, two-time Grammy-award winner. His music transcended a generation of fans and has endured for almost half a century. For some, Mr. White was the "man of soul" on the smash hit television series, "Ally McBeal". For others, Mr. White was the Godfather of Love for his sultry renditions of classics such as "I'm Gonna Love You Just A Little More, Babe", from White's 1973 debut album, "I Got So Much To Give," which was certified as a "gold" record. Mr. White achieved 106 gold albums worldwide, including "Stone Gon'", "Just Another Way To Say I Love You", "Barry White Sings for Someone You Love", "The Man", and "Can't Get Enough". Barry White had 20 gold and 10 platinum singles, with worldwide record sales in excess of 100 million records, and is one of the best-selling music artists of all time.

30. In addition to his distinctive voice, the "Maestro" was also known for recording and performing with his 40-piece orchestral group.

31. Mr. White's iconic, signature sound and performance style was a combination of an instantly recognizable bass/baritone voice, backed up by his lavish production and copyrighted orchestrations with a full symphony orchestra comprised of accomplished musicians.

32. Mr. White's enduring achievements, including his multiple gold and platinum albums, is testimony to both his ability as an incredible writer and unparalleled performer. It is the legacy that supports the value of his publicity rights, and the reason why Plaintiffs must control and protect it.

33. The Plaintiffs have judiciously guarded the Barry White Intellectual Property Rights to protect Mr. White's legacy.

## BACKGROUND FACTS

## THE BARRY WHITE COPYRIGHT AND THE INFRINGEMENTS

### A. The Barry White Copyright

34. Mr. White was a gifted musician, songwriter, record producer, and composer. He wrote many masterpieces: "Can't Get Enough of Your Love Babe," "Love's Theme," "Never, Never Gonna Give You Up," and "You're the First, The Last, My Everything."

35. The Barry White Copyright "I'm Gonna Love You Just A Little More, Babe," (a copy of which can be accessed through the link attached hereto as Exhibit A) released in 1973, was the first single from Barry White's debut album, "I've Got So Much to Give." It was enormously popular and rose to number one (1) on the U.S. R&B chart for two weeks; it reached number three (3) on the Billboard Pop Singles chart; and it reached number twenty-three (23) on the U.K. Singles Chart. On June 6, 1973, it was certified gold by the Recording Industry Association of America for sales of one million copies.

36. The Barry White Copyright has been actively exploited by the Plaintiffs since it was released in 1973. Most recently in 2020, Summer Walker recorded a cover of the song for the film *Birds of Prey,* and additionally appears in the film's soundtrack album, *Birds of Prey: The Album*. The Barry White Copyright also appears in an episode of *Friends* and has appeared in many films and comedy sketches.

37. Plaintiffs are the successor-in-interest to the Barry White Intellectual Property Rights and hold a registered copyright for the Barry White Copyright.

B. **The Infringing Works**

a) **Everlasting Bass**

38.  "Everlasting Bass" did not chart when it was released in 1986 (a copy of which can be accessed through the link attached hereto as Exhibit C).

39.  As each reproduction or unauthorized use of an infringing work constitutes a separate copyright infringement, by this lawsuit, Plaintiffs seek damages for all unauthorized reproductions, samples, uses and licenses of "Everlasting Bass" within the applicable statute of limitations.

b) **Like That**

40.  "Like That" (a copy of which can be accessed through the link attached hereto as Exhibit D) is a song by American rapper Future and American record producer Metro Boomin with fellow American rapper Kendrick Lamar. Released worldwide through Epic Records and Republic, it is the third and final single from Future and Metro's collaborative studio album, *We Don't Trust You*, released on March 26, 2024. Oliver and Cooley are also credited as songwriters, as the bass line in the song contains samples of their 1986 song, the First Infringing Work, "Everlasting Bass". "Like That" debuted at number one on the U.S. *Billboard* Hot 100 for the chart issue dated April 6, 2024, with 59.6 million streams, 9,000 digital downloads sold, and an airplay audience of 5.6 million.

## FIRST CLAIM FOR RELIEF

**(Copyright Infringement – First Infringing Work
17 U.S.C. §§ 106 *et seq.* Against All Defendants)**

41.  Plaintiffs repeat and reallege all prior allegations of this Amended Complaint as if fully set forth herein.

9

42. At all relevant times, Plaintiffs are and have been the rightful owners of the Barry White Copyright.

43. As such, the Plaintiffs have the exclusive rights to reproduce, prepare derivative works, distribute copies to the public, publicly perform, and publicly display the Barry White Copyright.

44. The Defendants were on notice that the Plaintiffs were the holders of the Barry White Copyright in that they had registered their ownership rights with the U.S. Copyright Office, and because the Barry White Copyright is and has been accessible through its prolific play on the radio and in all media all over the World.

45. The Defendants have neither sought nor obtained a license or any other form of permission to copy, duplicate, synchronize, sell, perform, or distribute any portion of the Barry White Copyright.

46. The conduct of the Defendants in connection with their unauthorized creation, marketing, performing, sale, distribution and creation of derivative works based on the Barry White Copyright is knowing and willful, especially since the Internet is replete with websites which recognize that the "Everlasting Bass" song interpolates the hook or "riff" of the Barry White Copyright.[5]

47. As a direct and/or proximate result of the Defendants' infringement on Plaintiffs' exclusive copyright in "I'm Gonna Love You Just A Little More, Babe," Plaintiffs have suffered damages. Said injuries are continuing and will not abate in the future.

---

[5] *See, e.g.*, Rodney O and Joe Cooley's 'Everlasting Bass' sample of Barry White's 'I'm Gonna Love You Just a Little More Baby' | WhoSampled; Everlasting Bass Sampled Berry White | TikTok; Rodney O & Joe Cooley - Everlasting Bass - Instrumental (Original / Bass-Boosted).

48. Each reproduction or unauthorized use of the Barry White Copyright constitutes a separate copyright infringement.

49. By their actions, stated in detail above, including, but not limited to, copying all or substantially all of the musical compositions, incorporating such compositions into the First Infringing Work, creating derivative versions of the compositions, and by the exploitation, publishing, performing and distribution of the copies and the unauthorized derivative versions, the Defendants have infringed and will continue to infringe Plaintiffs' rights in the Barry White Copyright in violation of the Copyright Act, 17 U.S.C. §§ 501 and 106.

50. For the reasons stated above, the Defendants' infringing conduct has been and continues to be willful, intentional and purposeful, in disregard of and with indifference to Plaintiffs' rights pursuant to 17 U.S.C. § 504.

51. These acts have substantially harmed Plaintiffs and impaired their rights as the owners and/or administrators of the Barry White Copyright.

52. Plaintiffs are entitled to a permanent injunction enjoining Defendants from continuing the aforesaid acts of infringement.

53. As a direct and proximate result of Defendants' infringements of Plaintiffs' copyright and exclusive rights under the Copyright Act, Plaintiffs are entitled to damages in an amount to be proven at trial and to Defendants' profits pursuant to 17 U.S.C. § 504(b).

54. Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

55. Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

### (Copyright Infringement – Second Infringing Work
### 17 U.S.C. §§ 106 *et seq.* Against All Defendants)

56. Plaintiffs repeat and reallege all prior allegations of this Amended Complaint as if fully set forth herein.

57. At all relevant times, Plaintiffs are and have been the rightful owners of the Barry White Copyright.

58. As such, the Plaintiffs have the exclusive rights to reproduce, prepare derivative works, distribute copies to the public, publicly perform, and publicly display the Barry White Copyright.

59. The Defendants have neither sought nor obtained a license or any other form of permission to copy, duplicate, synchronize, sell, perform, or distribute any portion of the Barry White Copyright.

60. The conduct of the Defendants is knowing and willful since the Internet is replete with websites which recognize that the "Everlasting Bass" song interpolates the hook or "riff" of the Barry White Copyright.

61. One or more of the Defendants infringed on Plaintiffs' exclusive copyright in "I'm Gonna Love You Just A Little More, Babe" when it licensed, distributed and/or sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying "Like That". Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiffs. By virtue of this unauthorized commercial exploitation, Defendants have realized illegal revenues.

62. The Defendants infringed Plaintiffs' exclusive copyright in "I'm Gonna Love You Just A Little More, Babe" when they issued and/or authorized others to issue licenses to third parties for the use, publication, and exploitation of "Like That". Said licenses were issued without any consent or authority from the Plaintiffs. By virtue of this unauthorized commercial exploitation, Defendants have realized illegal revenues.

63. As a direct and/or proximate result of the Defendants' infringement on Plaintiffs' exclusive copyright in "I'm Gonna Love You Just A Little More, Babe", Plaintiffs have suffered damages. Said injuries are continuing and will not abate in the future.

64. By their actions, stated in detail above, including, but not limited to, copying all or substantially all of the musical compositions, incorporating such compositions into the Second Infringing Work, creating derivative versions of the compositions, and by the exploitation, publishing, performing and distribution of the copies and the unauthorized derivative versions, the Defendants have infringed and will continue to infringe Plaintiffs' rights in the Barry White Copyright in violation of the Copyright Act, 17 U.S.C. §§ 501 and 106.

65. For the reasons stated above, the Defendants' infringing conduct has been and continues to be willful, intentional and purposeful, in disregard of and with indifference to Plaintiffs' rights pursuant to 17 U.S.C. § 504.

66. These acts have substantially harmed Plaintiffs and impaired their rights as the owners and/or administrators of the Barry White Copyright.

67. Plaintiffs are entitled to a permanent injunction enjoining Defendants from continuing the aforesaid acts of infringement.

68. As a direct and proximate result of Defendants' infringements of Plaintiffs' copyright and exclusive rights under the Copyright Act, Plaintiffs are entitled to damages in an amount to be proven at trial and to Defendants' profits pursuant to 17 U.S.C. § 504(b).

69. Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

70. Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. For judgment that Defendants have violated the Copyright Act and that all such violations have been willful; and

B. For judgment assessing Defendants for the damages in excess of one million dollars ($1,000,000.00) suffered by Plaintiffs, including an award of actual damages and Defendants' profits attributable to the infringement, or statutory damages (at Plaintiffs' election) under the Copyright Act, as well as costs and attorney's fees to the full extent provided for by Sections 501, 504 and 505 of the Copyright Act, 17 U.S.C. §§ 501, 504 and 505; damages and profits shall include all profits and damages resulting from exploitation of the Barry White Copyright domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

1. Record sales;
2. Downloads;
3. Ringtones;
4. Ringback tones;
5. Public performance revenues;
6. Digital revenue;
7. Streaming revenue;
8. Synchronization licensing;

9. Merchandising;
10. Public appearances;
11. Endorsements;
12. Sponsorships;
13. Spokesperson work;
14. Touring revenue;
15. Advertising revenue;
16. Appearance fees;
19. Increased value of Defendants' publishing and/or record company and/or companies;
20. Increased value of music publishing and/or record royalties and rights;
21. Increased value of social media rights, accounts and value;
22. Any and all music publisher income;
23. Any and all record master income;
24. Any and all record income;
25. Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;
26. Any and all producer royalty income;
27. Any and all arrangement income;
28. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;
29. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;
30. Any and all income from any society to which any Defendant belongs or joins in the future;
31. Any and all income and/or residuals from SAG-AFTRA;
32. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

C.   For judgment granting such other, further, and different relief as to the Court may seem just and proper, including Plaintiffs' costs and reasonable attorneys' fees.

Dated:   New York, New York
         January 10, 2025

                                        HERBSMAN HAFER WEBER &
                                        FRISCH, LLP

                              By:       */s/Dorothy M. Weber*
                                        Dorothy M. Weber (DW-4734)
                                        494 Eighth Avenue, Suite 600
                                        New York, NY 10001
                                        (212) 245-4580
                                        dorothy@musiclaw.com
                                        *Attorneys for Plaintiffs*