Case No. 24-cv-07509 (DLC)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**THE BARRY WHITE FAMILY TRUST U/A/D DECEMBER 19, 1980,**
 BY ITS DULY EMPOWERED TRUSTEES,
 **Plaintiffs,**

**v.**

**JOE COOLEY, RODNEY DAVID OLIVER P/K/A RODNEY-O,**
 d/b/a NOT INTERESTED PUBLISHING,
 **Defendants.**

**Case No. 24-cv-07509 (DLC)**

**URGENT MOTION TO ADDRESS ATTORNEY MISCONDUCT, COLLUSION, AND FRAUDULENT LITIGATION**

**COMES NOW, Necole Key, Pro Se, and respectfully submits this Urgent Motion for immediate court intervention regarding newly discovered evidence of collusion, fraudulent misrepresentation, and procedural misconduct by Plaintiffs and their legal representatives, in coordination with Defendants' former attorneys.**

**I. INTRODUCTION**

This case involves an orchestrated legal attack against **Necole Key,** the rights manager for **Rodney Oliver,** who has been

unlawfully targeted by Plaintiffs, **the Barry White Trust, Epic Records, and their legal representatives.** Plaintiffs and their attorneys have engaged in **collusion, extortion, and fraudulent ownership claims** regarding the song **"Everlasting Bass",** attempting to misappropriate financial control and silence legitimate opposition.

Additionally, this case has been further compromised by the **suspicious withdrawal of Defendant Rodney Oliver's former attorneys, Leron Rogers and Timothy Matson, at a critical juncture in litigation.** Their withdrawal directly benefited Plaintiffs by leaving Oliver unrepresented, increasing the likelihood of an unfair default judgment and preventing him from properly asserting his rights. (See **Exhibit L,** Page 37)

## II. URGENT FACTUAL FINDINGS

1. **Collusion Between Plaintiffs and Opposing Counsel:** Newly discovered communications confirm **Plaintiffs' attorneys coordinated with Rodney Oliver's former legal representatives to suppress key evidence and obstruct legal defenses.** (See **Exhibit A**, Page 15)

2. **Fraudulent Copyright and Licensing Claims:** Plaintiffs falsely assert that **"Everlasting Bass" infringes on Barry**

**White's composition,** despite no legal foundation for this claim. (See **Exhibit B,** Page 17)

3. **Unlawful Financial and Legal Attacks Against Necole Key:** Plaintiffs and their affiliates have engaged in **targeted defamation, professional sabotage, and direct legal threats** to block Necole Key from advocating for Rodney Oliver's rights. (See **Exhibit C,** Page 19)

4. **Coordinated Retaliation:** Plaintiffs have issued **fraudulent YouTube takedown notices, prevented legitimate copyright enforcement, and misrepresented licensing rights** to financially damage both Necole Key and Rodney Oliver. (See **Exhibit D,** Page 21)

5. **Attorney Withdrawal as a Tactical Maneuver:** Documents confirm that **Leron Rogers and Timothy Matson withdrew from representing Rodney Oliver at a strategically harmful time,** making it easier for Plaintiffs to advance their claims without opposition. (See **Exhibit L,** Page 37)

## III. REQUEST FOR IMMEDIATE COURT ACTION

Based on the **urgency of this matter,** Necole Key respectfully requests that this Honorable Court:

1. **STAY all pending litigation** to prevent an unjust default judgment against Rodney Oliver due to improper attorney withdrawal.

2. **ORDER an immediate hearing** to address attorney misconduct and collusion between Plaintiffs and Defendants' former legal counsel.

3. **GRANT an emergency injunction** prohibiting further legal harassment, financial interference, and defamation against Necole Key and Rodney Oliver.

4. **DISMISS this case WITHOUT PREJUDICE** due to fraudulent claims, procedural manipulation, and intentional misconduct.

5. **DECLARE Rodney Oliver as the sole legal owner of "Everlasting Bass"** and the unauthorized work "Like That" confirm that Plaintiffs have no valid copyright claim over the songs.

6. **ORDER immediate restitution** for all earnings generated from the unauthorized use of "Everlasting Bass" in the song "Like That."

7. **IMPOSE sanctions** on Plaintiffs' counsel for knowingly engaging in collusion and fraudulent misrepresentation.

8. **GRANT any other relief that this Court deems just and proper to preserve fairness and prevent further abuse of the legal process.**

**IV. CONCLUSION**

Given the **grave impact of these legal violations,** immediate court action is necessary to prevent irreparable harm to Necole Key and Rodney Oliver. The court must intervene to **prevent fraudulent litigation, collusion, and obstruction of justice** from further harming the integrity of this case.

**Respectfully submitted,**

**Executed on March 14, 2025**

**Necole Key, Pro Se**

*/s/ Necolé Key*

**Necolé Key, Pro Se**

451 Discovery Lane #321

Brea, CA 92821

**necole@ladykeymanagement.com**

**626-598-6647**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**THE BARRY WHITE FAMILY TRUST U/A/D DECEMBER 19, 1980,**
 BY ITS DULY EMPOWERED TRUSTEES,
 **Plaintiffs,**

**v.**

**JOE COOLEY, RODNEY DAVID OLIVER P/K/A RODNEY-O,**
 d/b/a NOT INTERESTED PUBLISHING,
 **Defendants.**

**Case No. 24-cv-07509 (DLC)**

**MEMORANDUM OF LAW IN SUPPORT OF NECOLE KEY, PRO SE**

**TABLE OF CONTENTS**

1. **Introduction**

.........................................................

... **Pg. 2**

2. **Factual Background**

   ................................................ **Pg. 3**

     ○ Collusion Between Plaintiffs and Opposing Counsel

     ○ Fraudulent Copyright and Licensing Claims

     ○ Unlawful Financial and Legal Attacks Against Necole
       Key

     ○ Coordinated Retaliation

     ○ Attorney Withdrawal as a Tactical Maneuver

3. **Legal Standard**

   ..................................................... **Pg.
   6**

4. **Legal Claims**

   .........................................................
   **Pg. 8**

5. **Request for Relief**

   ................................................ **Pg. 10**

6. **Conclusion**

   .........................................................
   **Pg. 12**

7. **Exhibits**

   .........................................................
   .... **Pg. 14**

     ○ Exhibit A: Emails Confirming Collusion (Pg. 15)

○ Exhibit B: Fraudulent Copyright Claims (Pg. 17)

○ Exhibit C: Defamation and Business Interference (Pg. 19)

○ Exhibit D: YouTube Takedown Notices (Pg. 21)

○ Exhibit E: Case Law on Collusion & Misconduct (Pg. 23)

○ Exhibit F: Lenz v. Universal Music Corp. (Pg. 25)

○ Exhibit G: Matter of Estate of Rothko (Pg. 27)

○ Exhibit H: Evidence of Misrepresentation (Pg. 29)

○ Exhibit I: Defamation Claims Supporting Documents (Pg. 31)

○ Exhibit J: Financial Extortion Documents (Pg. 33)

○ Exhibit K: Injunctive Relief Evidence (Pg. 35)

○ Exhibit L: Attorney Withdrawal Documents (Pg. 37)

---

**I, Necole Key, Pro Se, and submits this Memorandum of Law in support of her claims against Plaintiffs and their legal representatives, highlighting attorney misconduct, collusion, fraudulent misrepresentation, and intentional infliction of financial and reputational harm.**

## I. INTRODUCTION

This case involves an orchestrated legal attack against **Necole Key,** the rights manager for **Rodney Oliver,** who has been unlawfully targeted by Plaintiffs, **the Barry White Trust, Epic Records, and their legal representatives.** Plaintiffs and their attorneys have engaged in **collusion, extortion, and fraudulent ownership claims** regarding the song **"Everlasting Bass",** attempting to misappropriate financial control and silence legitimate opposition.

Additionally, this case has been further compromised by the **suspicious withdrawal of Defendant Rodney Oliver's former attorneys, Leron Rogers and Timothy Matson, at a critical juncture in litigation.** Their withdrawal directly benefitted Plaintiffs by leaving Oliver unrepresented, increasing the likelihood of an unfair default judgment and preventing him from properly asserting his rights. (See **Exhibit L,** Page 37)

Necole Key, as a **Pro Se litigant,** seeks court intervention to expose these **unlawful legal tactics,** prevent continued harassment, and establish legal consequences for the misconduct perpetrated against her and her client.

## II. FACTUAL BACKGROUND

1. **Collusion Between Plaintiffs and Opposing Counsel:** Newly discovered communications confirm **Plaintiffs' attorneys**

coordinated with Rodney Oliver's former legal representatives to suppress key evidence and obstruct legal defenses. (See **Exhibit A,** Page 15)

2. **Fraudulent Copyright and Licensing Claims:** Plaintiffs falsely assert that **"Everlasting Bass" infringes on Barry White's composition,** despite no legal foundation for this claim. (See **Exhibit B,** Page 17)

3. **Unlawful Financial and Legal Attacks Against Necole Key:** Plaintiffs and their affiliates have engaged in **targeted defamation, professional sabotage, and direct legal threats** to block Necole Key from advocating for Rodney Oliver's rights. (See **Exhibit C,** Page 19)

4. **Coordinated Retaliation:** Plaintiffs have issued **fraudulent YouTube takedown notices, prevented legitimate copyright enforcement, and misrepresented licensing rights** to financially damage both Necole Key and Rodney Oliver. (See **Exhibit D,** Page 21)

5. **Attorney Withdrawal as a Tactical Maneuver:** Documents confirm that **Leron Rogers and Timothy Matson withdrew from representing Rodney Oliver at a strategically harmful time,** making it easier for Plaintiffs to advance their claims without opposition. (See **Exhibit L,** Page 37)

Case No. 24-cv-07509 (DLC)

# UNITED STATES DISTRICT COURT

**SOUTHERN DISTRICT OF NEW YORK**

**THE BARRY WHITE FAMILY TRUST U/A/D DECEMBER 19, 1980,**
 BY ITS DULY EMPOWERED TRUSTEES,
 **Plaintiffs,**

**v.**

**JOE COOLEY, RODNEY DAVID OLIVER P/K/A RODNEY-O,**
 d/b/a NOT INTERESTED PUBLISHING,
 **Defendants.**

**Case No. 24-cv-07509 (DLC)**

## DECLARATION OF NECOLE KEY, PRO SE

I, **Necole Key,** declare under penalty of perjury under the laws of the United States that the following is true and correct to the best of my knowledge:

## I. INTRODUCTION

1. My name is **Necole Key,** and I am the **rights manager for Rodney Oliver.**

2. I am making this declaration in support of my **Urgent Motion to Address Attorney Misconduct, Collusion, and Fraudulent Litigation.**

3. I have **personal knowledge** of the facts stated herein and, if called to testify, I am competent to do so.

## II. FACTUAL STATEMENTS

4. I have uncovered **evidence of collusion** between Plaintiffs' attorneys and Defendant's former legal counsel, which has prejudiced Rodney Oliver's ability to fairly defend himself.

5. Plaintiffs have knowingly made **fraudulent copyright claims** regarding **"Everlasting Bass",** attempting to seize control of it by falsely alleging that it infringes upon Barry White's composition.

6. I have been personally targeted by **Plaintiffs, Epic Records, and their legal representatives**, who have engaged in **defamation, harassment, and business interference** to suppress my ability to advocate for Rodney Oliver's rights.

7. Plaintiffs' agents and affiliates have issued **fraudulent YouTube takedown notices and licensing blocks** to unlawfully interfere with the monetization and licensing of **"Everlasting Bass".**

8. Defendants' former attorneys, **Leron Rogers and Timothy Matson**, withdrew at a strategically harmful time, **leaving Rodney Oliver unrepresented** and allowing Plaintiffs to push for procedural victories in bad faith.

9. I have reviewed financial records, emails, and legal correspondence that confirm the existence of a **coordinated effort to extort licensing fees and falsely claim ownership** over "Everlasting Bass."

10.  The **legal system is being weaponized against Rodney Oliver and myself** in an attempt to deprive us of our rights and financial interests in this matter.

## III.  EXHIBITS SUPPORTING THIS DECLARATION

- **Exhibit A:** Emails Confirming Collusion Between Plaintiff and Defense Counsel (Page 15)

- **Exhibit B:** Fraudulent Copyright Claims Documentation (Page 17)

- **Exhibit C:** Defamation and Business Interference Evidence (Page 19)

- **Exhibit D:** Fraudulent YouTube Takedown Notices and Licensing Blocks (Page 21)

- **Exhibit E:** Case Law on Collusion & Attorney Misconduct (Page 23)

- **Exhibit F:** Lenz v. Universal Music Corp. (Page 25)

- **Exhibit G:** Matter of Estate of Rothko – Legal Precedent for Unjust Enrichment (Page 27)

- **Exhibit H:** Evidence of Financial Extortion (Page 29)

- **Exhibit I:** Documented Injunctive Relief Justifications (Page 31)

- **Exhibit J:** Attorney Withdrawal Documents (Page 37)

## IV. REQUEST FOR COURT INTERVENTION

11. Due to the **egregious misconduct and fraudulent misrepresentation** occurring in this case, I request the Court to take the following actions:

    - **STAY all pending litigation** to prevent an unjust default judgment against Rodney Oliver due to improper attorney withdrawal.

    - **ORDER an immediate hearing** to address attorney misconduct and collusion between Plaintiffs and Defendants' former legal counsel.

    - **GRANT an emergency injunction** prohibiting further legal harassment, financial interference, and defamation against me and Rodney Oliver.

○ **DISMISS this case WITHOUT PREJUDICE** due to fraudulent claims, procedural manipulation, and intentional misconduct.

○ **DECLARE Rodney Oliver as the sole legal owner of "Everlasting Bass"** and confirm that Plaintiffs have no valid copyright claim over the song.

○ **ORDER immediate restitution** for all earnings generated from the unauthorized use of "Everlasting Bass" in the song "Like That."

○ **IMPOSE sanctions** on Plaintiffs' counsel for knowingly engaging in collusion and fraudulent misrepresentation.

○ **\*\*GRANT any other relief that this Court deems just and proper to preserve fairness and prevent further abuse of the legal process.

## V. CONCLUSION

12. I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

**Executed on March 14, 2025**

**Respectfully submitted,**

Case No. 24-cv-07509 (DLC)

Necole Key, Pro SeNecole Key, Pro Se

*/s/ Necolé Key*

**Necolé Key, Pro Se**

451 Discovery Lane #321

Brea, CA 92821

**necole@ladykeymanagement.com**

**626-598-6647**

# EXHIBIT A

MARCH 14 2025

Your Honorable Judge, I made my song *Everlasting Bass* when I was a teenager, and it changed my life. For over 35 years, no one has ever claimed I stole any parts of it until this.

A massive hit was released by Epic. Not only did they act in bad faith and release it before we even had a deal done, but the song also gets nominated for a Grammy, and I'm not included as a writer or acknowledged by the Grammy board because we weren't important enough to be added.

So, at a time when I should be celebrating, I'm in a legal proceeding trying to take what's been mine for 35 years! I feel like my car was stolen, and the person who stole it is riding next to me with my car shining and waiving at me. Everybody is saying congratulations to me, but nobody knows how painful this whole process has been when all me and Necole Key, my rights manager, were just trying to do good business and protect ourselves. We paid our attorneys $50,000 thinking they were going to protect me but find out they are helping take my music.

I know you can see it for what it is and know it's wrong.  Thank you for your time.


RODNEY OLIVER

# EXHIBIT B

 **Outlook**

---

Fwd: Takedown Executed Due to Failure to Provide Documentation

---

**From** Rodney <rodneyocali@yahoo.com>

**Date** Wed 3/12/2025 4:00 PM

**To**    Necole Key <necole@ladykeymanagement.com>

Sent from your Boy O

Begin forwarded message:

> **From:** Rodney <rodneyocali@yahoo.com>
> **Date:** March 12, 2025 at 1:33:34 PM PDT
> **To:** nicole@ladykeymanagement.com
> **Subject: Fwd: Takedown Executed Due to Failure to Provide Documentation**
>
>
> Sent from your Boy O
>
> Begin forwarded message:
>
> > **From:** Rodney <rodneyocali@yahoo.com>
> > **Date:** March 12, 2025 at 11:23:50 AM PDT
> > **To:** Anterine Jackson <anterine@me.com>
> > **Subject: Re: Takedown Executed Due to Failure to Provide Documentation**
> >
> >
> > **Tim,**
> >
> > **Thank you for your email. I would like to schedule a conference call today. I would like to discuss the following:**
> >
> > 1. **Motion to prove ownership**
> > 2. **Litigation**
> > 3. **your withdrawal**
> > 4. **Response due 3/14**
> >
> > **Please let me know when we can talk today. Thank you.**

**Rodney Oliver**
Sent from your Boy O

On Mar 12, 2025, at 9:51 AM, Rodney <rodneyocali@yahoo.com>
wrote:

Sent from your Boy O

Begin forwarded message:

> **From:** "Matson, Timothy C."
> <tmatson@foxrothschild.com>
> **Date:** March 11, 2025 at 10:50:39 AM PDT
> **To:** rodneyocali@yahoo.com
> **Cc:** "Rogers, Leron E." <LRogers@foxrothschild.com>,
> "Rose, John" <jrose@foxrothschild.com>, "Solomon,
> Shelly" <ssolomon@foxrothschild.com>
> **Subject: RE: Takedown Executed Due to Failure to
> Provide Documentation**

Rodney,

Attached is the draft reply brief due March 14,
2025.

Best,

Tim



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**From:** Matson, Timothy C.
**Sent:** Tuesday, March 11, 2025 12:08 PM
**To:** rodneyocali@yahoo.com
**Cc:** Rogers, Leron E. <LRogers@foxrothschild.com>; Rose, John <JRose@foxrothschild.com>; Solomon, Shelly <ssolomon@foxrothschild.com>
**Subject:** RE: Takedown Executed Due to Failure to Provide Documentation

Rodney:

Hope this email finds you well. Please be advised that our firm has elected to withdraw its representation as your counsel in the matter of *The Barry White Family Trust U/A/D: December 19, 1980, By its Duly Empowered Trustees v. Cooley et al* (Case No. 1:24-cv-07509-DLC), currently pending in the United States District Court for the Southern District of New York (the "Lawsuit").  As you are aware, our firm is defending you in a copyright infringement action filed by The Barry White Family Trust (the "Estate") claiming your master recording entitled "Everlasting Bass" sampled or interpolated Barry White's song entitled "I'm Gonna Love You Just A Little More Baby".  You entered into a short form licensing agreement authorizing Epic Records and its recording artist Future to include a sample of Everlasting Bass in the master recording entitled "Like That".

We believe that the Estate improperly filed this action in New York, and we moved to dismiss the Lawsuit on grounds for lack of personal jurisdiction.  The Estate responded by amending their Complaint in an attempt to cure its jurisdictional defects.  We filed a Motion to Dismiss to the Estate's Amended Complaint, which is currently pending.  A Reply Brief on your behalf is due this Friday March 14, 2025.

We have had several conversations related to the actions of your "Rights Manager" Necole Key and how they impact your case as well as our ability to defend the Litigation.  Most recently, on Wednesday, March 5, 2025, Ms. Key filed a Motion to Intervene in the Lawsuit. Leron Rodgers spoke with you after Necole Key's filing of the Motion to Intervene and discussed the potential negative impact this may have on your case, including possibly invalidating the pending Motion to Dismiss. Mr. Rodgers advised you that if you

continued to authorize this type of conduct from Ms. Key, we would need to withdraw from your representation in the Litigation.

Within less than 48 hours, Ms. Key sent takedown notices for "Like That". When asked whether you had authorized her to send the takedown notices, you affirmed that Ms. Key had acted with your approval. As a result of Ms. Key's actions, as authorized by you, it has become obvious that your strategy of how to defend the Lawsuit is contrary with our advice and counsel to you. Accordingly, we must withdraw as counsel in this Lawsuit and hope that you may find counsel that aligns with your approach to litigating this Lawsuit.

**Please confirm by way of email your consent to our withdrawal in the Lawsuit. If we do not hear from you by close of business <u>Wednesday March 12, 2025</u>, we will file a motion to withdraw directly to the Court.**

Upon our withdrawal, please be aware you are obligated to keep the Court informed of a location where notices, pleadings, or other papers may be served. Notices may be served to you at your last known address. The dates of any scheduled proceedings or deadlines will not be affected by the withdrawal of counsel. If a trial date has been set, you are obligated to prepare for trial or hire other counsel to prepare for trial. A party, including Ms. Key, cannot represent you in the Lawsuit unless he or she is admitted to the New York bar as a regular member or has been admitted *pro hac vice*. Failure or refusal to satisfy court-related obligations could result in adverse consequences, including default judgment.

The imminent upcoming deadlines in the matter are below.
- **March 14, 2025** – Defendant's Reply Brief in Support of Second Motion to Dismiss
  - Regarding the Reply Brief, our firm has already prepared a draft response, a copy of which is attached hereto.
  - We will file the Reply Brief on your behalf before the Court ordered deadline unless you advised otherwise in writing.
- **March 14, 2025** – The Court set a deadline for you to respond to Necole Key's Motion to Intervene.
  - Per our discussion, failing to oppose Ms. Key's motion may result in various

negative implications for the Lawsuit, including you potentially consenting to personal jurisdiction in your individual capacity in New York.  Given Ms. Key's allegations as your representative, and her claims and counterclaims in the Lawsuit, this potentially renders your pending Motion to Dismiss moot.

- Based on your prior authorizations of Ms. Key's actions, we can only assume that you authorized her to file the Motion to Intervene, unless you advise otherwise.  If we are incorrect and you do want to oppose her Motion to intervene, you must advise us **immediately** or have other counsel file a response by the March 14, 2025 deadline.

- We intend on advising Plaintiff's counsel in the Litigation of our intent to withdraw and will request an extension on the response to Ms. Key's Motion to Intervene, thus providing you and/or your new counsel time to respond if you so choose.

If you have any questions. Please let us know.

Best,

Tim



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**Learn about our new brand.**

**From:** Matson, Timothy C.
**Sent:** Friday, March 7, 2025 3:02 PM
**To:** rodneyocali@yahoo.com
**Cc:** Rogers, Leron E. <LRogers@foxrothschild.com>; Rose,

John <[JRose@foxrothschild.com](mailto:JRose@foxrothschild.com)>
**Subject:** FW: Takedown Executed Due to Failure to Provide Documentation

Rodney,

See below from Counsel for Epic.  Did you authorize Necole to take such action?  Thanks.

Tim



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 [(612) 607-7064](tel:6126077064)
📱 [(612) 229-4109](tel:6122294109)
🖨 [(612) 607-7100](tel:6126077100)
✉ [tmatson@foxrothschild.com](mailto:tmatson@foxrothschild.com)

**Learn about our [new brand](#).**

---

**From:** [FinanR@gtlaw.com](mailto:FinanR@gtlaw.com) <[FinanR@gtlaw.com](mailto:FinanR@gtlaw.com)>
**Sent:** Friday, March 7, 2025 2:43 PM
**To:** Matson, Timothy C. <[tmatson@foxrothschild.com](mailto:tmatson@foxrothschild.com)>
**Cc:** [dalia.auerbach@epicrecords.com](mailto:dalia.auerbach@epicrecords.com); [dorothy@musiclaw.com](mailto:dorothy@musiclaw.com); [SmithJ@GTLAW.com](mailto:SmithJ@GTLAW.com); [eric.taylor@epicrecords.com](mailto:eric.taylor@epicrecords.com)
**Subject:** [EXT] RE: Takedown Executed Due to Failure to Provide Documentation

Tim,

Below is correspondence received from your client's representative.

A takedown would be in violation of the agreement your client signed.

Please let me know if Ms. Key is taking such action.

Rob

**Robert J. Finan**
Of Counsel

Greenberg Traurig, LLP

Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305

T +1 678.553.2206  |  F +1 678.553.2207

FinanR@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

<image001.png>

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Friday, March 7, 2025 3:32 PM
**To:** dalia.auerbach@epicrecords.com; Dorothy Weber <dorothy@musiclaw.com>; Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Cc:** Rodney <rodneyocali@yahoo.com>
**Subject:** Takedown Executed Due to Failure to Provide Documentation

**\*EXTERNAL TO GT\***

 Dear Ms. Weber, Mr. Finan and Epic

Despite multiple requests for the necessary documentation, you have failed to provide the required proof of authorization. As a result, it became essential to **execute a takedown of the infringed work** to prevent further harm caused by the unauthorized use of **Rodney Oliver's intellectual property**.

As **Rodney Oliver is the sole creator and legal owner** of both the **master recording and composition**, with a **signed copyright registration in his name**, we have taken appropriate action to enforce his rights.

Please be advised that **all legal remedies will be pursued** to protect Rodney Oliver's ownership and prevent further unauthorized use.

Sincerely,


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647



This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent

authorized to receive for the intended recipient, you
may not copy, disclose or use any contents in this
email. If you have received this email in error, please
immediately notify the sender at Fox Rothschild LLP
by replying to this email and delete the original and
reply emails. Thank you.

<Defendants' Reply Memorandum of Law in Further Support of
Motion to Dismiss Plaintiffs' Amended Complaint(169126792.1)-
C.docx>

 Outlook

---

## Fox Rothschild Invoice MAR25 - 372521.00002 Rodney Oliver/Copyright Infringement Lawsuit

**From** Arrants, Mary <MArrants@foxrothschild.com>

**Date** Thu 3/13/2025 12:52 PM

**To** Necole Key <necole@ladykeymanagement.com>

**Cc** Rogers, Leron E. <LRogers@foxrothschild.com>; Acevedo, Antonia M. <AAcevedo@foxrothschild.com>; Rose, John <jrose@foxrothschild.com>

📎 1 attachment (188 KB)

MAR25-372521-00002-OLIVER RODNEY-3588732-TO BE EMAILED(169277496.1)-C.pdf;

Good afternoon –

Attached please find our invoice(s) for professional services rendered through February 28, 2025.  ***Please note: Fox Rothschild's Fiscal Year End is March 31st. We kindly request that you remit payment to us as soon as possible, so that we receive it prior to March 31st. Payment options are outlined on the cover page of our invoice(s), which is attached.***

For invoicing questions or past due amounts, please contact a member of our Accounting team at Accounting.Collections@Foxrothschild.com or by phone at (215)-299-2199.

We appreciate your ongoing trust as we work to service your legal needs.

Sincerely,

*Mary Arrants*

🖼️ Fox Logo

🖼️ green bar

**Mary Arrants**
Billing Coordinator
999 Peachtree Street NE
Suite 1500
Atlanta, GA 30309
🖼️ Phone Icon  (404) 962-1099
🖼️ Fax Icon  (404) 962-1200
🖼️ Phone Icon
   marrants@foxrothschild.com
🖼️ green bar

**Learn about our new brand.**

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

**Fox Rothschild**

Dear Clients,

As we approach our **March 31st** fiscal year-end, we request that you remit payments to us immediately to meet our year-end deadline.

Please send payment using our payment methods below:

**ACH/Wire** - For ACH payments, please remit by **March 25th** to ensure it is received by our year-end.

**Wells Fargo Bank**
**420 Montgomery Street**
**San Francisco, CA 94104**
**Account: Fox Rothschild LLP**
**ACH: # 031000503**
**Wire: ABA #121000248**
**Account # 2100019564260**
**Swift Code: WFBIUS6S (Int'l wires only)**
**(Remittance to accounting.ar@foxrothschild.com)**
**For ACH enrollment, please contact your bank.**

**NEW ECheck Portal**: https://www.e-billexpress.com/ebpp/foxroth/Login

If you remit payment by check, please mail to our Lockbox prior to **March 18th**.

**Fox Rothschild**
**PO Box 931646**
**Atlanta, GA 31193-1646**

**Please reference invoice #/client #/matter #/Attorney Name when making payment.**
If you have any questions, please contact the Accounts Receivable group at
Accounting.AR@Foxrothschild.com or 215-299-2199.
We appreciate your assistance and extend our gratitude for your ongoing business.



# Fox Rothschild

999 PEACHTREE STREET NE SUITE 1500 ATLANTA, GA  30309
Tel 215.299.2000    Fax  215.299.2150    www.foxrothschild.com

TAX I.D. NO. 23-1404723

NECOLE KEY
451 DISCOVERY LANE #321
BREA, CA 92821

| | |
|---|---:|
| Invoice Number | 3588732 |
| Invoice Date | 03/08/25 |
| Client Number | 372521 |
| Matter Number | 00002 |

necole@ladykeymanagement.com

**RE:  COPYRIGHT INFRINGEMENT LAWSUIT**

**FOR PROFESSIONAL SERVICES RENDERED THROUGH 02/28/25**

| Date | Timekeeper | Description | Hours |
|---|---|---|---:|
| 02/07/2025 | MATSON | REVIEW DOCUMENTS; CONFERENCE CALL WITH RODNEY OLIVER AND NECOLE KEY | 0.5 |
| 02/14/2025 | MATSON | CORRESPONDENCE WITH NECOLE KEY | 0.2 |
| 02/17/2025 | MATSON | CORRESPONDENCE AND PHONE CONFERENCE WITH NECOLE KEY; REVIEW CASE LAW | 0.7 |
| 02/19/2025 | MATSON | CORRESPONDENCES WITH DOROTHY WEBER AND NECOLE KEY | 0.5 |
| 02/20/2025 | MATSON | CORRESPONDENCE WITH NECOLE KEY; PHONE CONFERENCE WITH DOROTHY WEBER | 0.3 |
| 02/21/2025 | MATSON | REVIEW BARRY WHITE ESTATE OPPOSITION MEMORANDUM; LEGAL RESEARCH REGARDING SAME | 2.0 |
| 02/24/2025 | MATSON | CORRESPONDENCES WITH NECOLE KEY AND DOROTHY WEBER | 0.4 |
| 02/25/2025 | LANGER | REVIEW AND ANALYSIS OF BARRY WHITE'S OPPOSITION TO MOTION TO DISMISS. | 1.9 |
| 02/25/2025 | MATSON | CORRESPONDENCE AND CONFERENCE WITH RODNEY OLIVER AN DNECOLE KEY; CORRESPONDENCE AND PHONE CONFERENCE WITH DOROTHY WEBER; LEGAL RESEARCH REGARDING JURISDICTION OPPOSITION; CORRESPONDENCE WITH COUNSEL FOR EPIC | 1.5 |
| 02/26/2025 | MATSON | CORRESPONDENCE WITH DOROTHY WEBER AND ROB FINIAN | 0.2 |
| 02/27/2025 | MATSON | WORK ON REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS | 1.5 |
| 02/28/2025 | LANGER | MEETING WITH T. MATSON TO DISCUSS PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS; REVIEW AND DISTINGUISH CASES CITED IN BRIEF; OUTLINE REPLY BRIEF. | 1.4 |

| Date | Timekeeper | Description | Hours |
|------|------------|-------------|-------|
| 02/28/2025 | MATSON | WORK ON REPLY MEMORANDUM | 0.8 |
| | | **TOTAL** | **11.9** |

**TIMEKEEPER TIME SUMMARY:**

| Timekeeper | Hours |
|------------|-------|
| P. LANGER | 3.3 |
| T.C. MATSON | 8.6 |
| **TOTAL** | **11.9** |

| | |
|---|---|
| TOTAL PROFESSIONAL SERVICES | $7,670.00 |
| TOTAL AMOUNT OF THIS INVOICE | $7,670.00 |
| PRIOR BALANCE DUE | $13,909.89 |
| **TOTAL AMOUNT OF THIS MATTER** | **$21,579.89** |

*Retainer/Deposit Balance/Cost Advance Remaining: $0.00*

*GEORGIA RETAINER - WELLS FARGO*        *$0.00*

**OUTSTANDING INVOICES PRIOR TO 03/08/2025**

| Invoice Date | Invoice # | Total | Invoice Date | Invoice # | Total |
|--------------|-----------|-------|--------------|-----------|-------|
| 01/21/2025 | 3552518 | $609.89 | 02/14/2025 | 3571438 | $13,300.00 |

| | |
|---|---|
| **TOTAL PRIOR BALANCES DUE** | **$13,909.89** |



# Fox Rothschild

999 PEACHTREE STREET NE SUITE 1500 ATLANTA, GA 30309
Tel 215.299.2000    Fax  215.299.2150    www.foxrothschild.com

TAX I.D. NO. 23-1404723

# REMITTANCE PAGE

NECOLE KEY
451 DISCOVERY LANE #321
BREA, CA 92821

necole@ladykeymanagement.com

| | |
|---|---|
| Invoice Number | 3588732 |
| Invoice Date | 03/08/25 |
| Client Number | 372521 |
| Matter Number | 00002 |

**RE:  COPYRIGHT INFRINGEMENT LAWSUIT**

| | |
|---|---|
| TOTAL AMOUNT OF THIS INVOICE | $7,670.00 |
| PRIOR BALANCE DUE | $13,909.89 |
| **TOTAL BALANCE DUE UPON RECEIPT** | **$21,579.89** |

**PAYMENT INSTRUCTIONS**

**eCHECK PAYMENT**

Logon: **https://www.e-billexpress.com/ebpp/foxroth**

**PAPER CHECK**

Make Payable to:
Fox Rothschild LLP
PO Box 931646
Atlanta, GA 31193-1646

**ACH/WIRE INSTRUCTIONS**

Wells Fargo Bank
420 Montgomery Street
San Francisco, CA 94104
ACH - ABA  #031000503
WIRE - ABA #121000248
Account: Fox Rothschild LLP
Account #2100019564260
Swift Code: #WFBIUS6S (international wires only)
Email: AR@foxrothschild.com

If remitting via eCheck, your Payor ID is: 220853
Please include the Client, Matter, and Invoice Number with all payments.

# EXHIBIT C

**HERBSMAN HAFER WEBER & FRISCH, LLP**
Attorneys At Law
494 Eighth Avenue, Sixth Floor
New York, New York 10001

Jonas E. Herbsman
J. Jeffrey Hafer
Dorothy M. Weber
Michael B. Frisch
————
Rakhil Kalantarova
————
James E. Doherty
Of Counsel

Telephone (212) 245-4580
Telecopier (212) 956-6471
————

WRITER'S E-MAIL:
dorothy@musiclaw.com

August 9, 2024

**Via Email:** lrogers@foxrothschild.com

Leron E. Rogers, Esq.
Fox Rothschild, LLP
999 Peachtree Street NE
Suite 1500
Atlanta, GA 30309

     *Re:*    *"Like That"*

Dear Leron:

    We have the following settlement offer from The Barry White Family Trust and Warner (jointly "White"):

1.    A non-recoupable payment of $50,000.

2.    30% copyright ownership of the Future/Metro Boomin song "Like That" including the right to collect 30% of 100% of all income generated from inception and in perpetuity.

3.    25% of 100% of all income generated from inception and in perpetuity for income received from the "Like That" master.

4.    To the extent any collections have occurred prior to the date hereof, payment of our client's 30% of those monies must be paid at the time of signing of a settlement agreement.

5.    Your clients will have no future authority to license any part of the Everlasting Bass song which includes the Barry White interpolation.

HERBSMAN HAFER WEBER & FRISCH, LLP

Leron E. Rogers, Esq.
August 9, 2024
P a g e | **2**

      6.     Each copyright owner to administer their own share of "Like That", including as to issuance of any synchronization or other licenses.

      7.     General Releases.

      8.     Copyright Credit for Barry White.


          Very truly yours,

          HERBSMAN HAFER WEBER
          & FRISCH, LLP

          */s/ Dorothy M. Weber*
          Dorothy M. Weber, Esq.

DMW/rr

**HERBSMAN HAFER WEBER & FRISCH, LLP**
Attorneys At Law
494 Eighth Avenue, Sixth Floor
New York, New York 10001

Telephone (212) 245-4580
Telecopier (212) 956-6471
--------------

Jonas E. Herbsman
J. Jeffrey Hafer
Dorothy M. Weber
Michael B. Frisch
--------------
Rakhil Kalantarova
--------------
James E. Doherty
Of Counsel

WRITER'S E-MAIL:
dorothy@musiclaw.com

August 9, 2024

**Via Email:** lrogers@foxrothschild.com

Leron E. Rogers, Esq.
Fox Rothschild, LLP
999 Peachtree Street NE
Suite 1500
Atlanta, GA 30309

Re:    *"Like That"*

Dear Leron:

We have the following settlement offer from The Barry White Family Trust and Warner (jointly "White"):

1.    A non-recoupable payment of $50,000.

2.    30% copyright ownership of the Future/Metro Boomin song "Like That" including the right to collect 30% of 100% of all income generated from inception and in perpetuity.

3.    25% of 100% of all income generated from inception and in perpetuity for income received from the "Like That" master.

4.    To the extent any collections have occurred prior to the date hereof, payment of our client's 30% of those monies must be paid at the time of signing of a settlement agreement.

5.    Your clients will have no future authority to license any part of the Everlasting Bass song which includes the Barry White interpolation.

HERBSMAN HAFER WEBER & FRISCH, LLP

Leron E. Rogers, Esq.
August 9, 2024
Page | **2**

6.     Each copyright owner to administer their own share of "Like That", including as to issuance of any synchronization or other licenses.

7.     General Releases.

8.     Copyright Credit for Barry White.

Very truly yours,

HERBSMAN HAFER WEBER
& FRISCH, LLP

*/s/ Dorothy M. Weber*
Dorothy M. Weber, Esq.

DMW/rr

**HERB52MAN HAPER WEBER & PRISCH, LLP**
**ATTORNEYs AT LAW**
**404** ElGi-rrH AvzNuz, SiXTH VLOOR
NEW YORK, New YORK JOOO \

JONAS E. Ï-IERB IMAN
J. JEe/=REv HAFER
**DOROYHY M. WEBER**
MICHAEL B. FRISCH
_____
**RAKHIL KALAí JTAROVA**
_____
JAMEfii E. DOHERT¥
**OF COUNSEL**

TELEPHONE (z 2) 2as  tseo
TELECOPIER (2 1 Z)  Of Ó•Ó'4T
_____

**WRfTKn'B R•h4AIG**
**dorothyHmusiclaw.com**

July 2, 2024

Via  Email:  ryan@rvanpowerslaw com

Ryan W. Powers, Esq.
Attorney at Law

     *Re:*    *Eslate oí Barrv White u. Rodnev Oliver and  Joe Cooíev*

Dear Mr. Powers:

    This letter shall serve as our notice that your clients' refusal to engage in meaningful settlement discussions or to agree to hold monies in escrow pending a litigation or resolution of the litigation, have caused the loss of a substantial licensing income.

    Please be advised that this constitutes additional damages based on your clients' infringement.

    This letter is written without prejudice to our client's rights or remedies, at law or in equity, all of which are hereby expressly reserved.

          Very truly yours,

          HERBSMAN HAFER WEBER
          & FRISCJt; LLP

          Dorothy M. W§ber, Esq.

DMW/rr

cc:    Jonas E. Herbsman, Esq.

HERBSMANMAFERVVEBER&FR1SCH,LLP
**ATTORNEYS AT MW**
404 ElaFrn-i AvENUE, Sixrl-i **FLOOR**
NEw YORK, NEw YORx 1 OOO1

Joe    **E. HERBsMAN**
J. JEFFHEY i•lA EFt
DOnOTHY M. WEBER
M1Ci-1AE£• B. FRIRGH
———
**RAKHIL KALANTAROVA**
———
JAMKs E. iDOHERTY
**OI= COUNSEL**

**TELEPHONE (2 1 Z}  24D•4BBO**
**YELECOPIER (2 1 Z} OBA647**
———

dorothy8musiclaw.com

**Fefiruary24,2025**

Via  Email:    tmatsonfifoxrothsehild.com

Timothy C. Matson, Esq.
Pox Rothschild, LLP
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402

  *Re.'*    The Barry White Family Trust U/A/D: December 19, 1980, By its Duly
    Empowered Trustees v. Coolev et al. Gase No. 24-cv-07509-DLC

Dear Mr. Matson:

  In furtherance of our call last week, it is my understanding that as late as Friday, Ms. Key was in touch with Epic Records, through their New York office, In furtherance of the limited jurisdictional discovery which was agreed to, we ask that you produce all communications from Ms. Key to third parties in connection with this matter. We ask for an updated production as soon as possible.

  To the extent that Ms. Key is attempting to collect monies from third parties on **matters** which are implicated by this lawsuit, that is a matter we believe she should be bring to the Court's attention unless we can amicably deal with this situation.

  When Ms. Key called Epic's attorney, she was properly advised that he could not speak to her. When he asked for her litigation counsel's contact, however, she refused to provide your name or contact information. While our client has no desire to "rachet up" the current litigation, it seems clear that certain of your clients do not share that view. We are troubled by this course of conduct for a variety of reasons.

HEFIBsMAN HAFER WEBER SFFIUCH, IP

Timothy C. Matson, Esq.
February 24, 2025
Page | 2

 I am attaching a copy of our initial claim letter with litigation hold language and ask that you confirm in writing that your clients have been advised of their obligations. Also, to the extent that Ms. Key is in continuing communications with New York entities on behalf of Mr. Oliver in connection with the song that is the subject of the instant litigation, we may need to supplement our opposition. We ask that you provide us with copies of any materials which update the document production made to us on December 18, 2024, including but not limited to any of her written communications with Epic Records.

 Please let me know if we need to meet and confer on this issue.

 This letter is written without prejudice to our client's rights or remedies, at law or in equity, all of which are hereby expressly reserved.

   Very truly yours,

   HERBSMANHAFERWEBER
   & FRISCH, LLP

   Dorothy M. Weber, Esq.

DMW/rr

HERBHMAN HAFER WEBER S FLINCH, L•LP

ATTORNEYS AT LAW
494  EloHTH AVENUE,  2IXTH FLOOR
NEw YORK, NEw  YORK I OOOi

JONAS  E.  HERDSMAN
J.  JEFFREY  HAFER
DOROTHY M. WEBER
MICHAEL  B.  FR1SGH
———
RAWMLKALANTAROVA
———
J     ESE. DOHERTY
OF COUNSEL

TeLJZPHONE (21 2} 245-4Df3O
TELECOPIER  (21 2)  O56•64y l
———

WRITER'S K•MAIt-i
dorothyOmusiclaw.com

May 7, 2024

Via Email and Regular Mail: Stephanie.Yu@sonymusic.com

Stephanie Yu, Esq.
Epic Records
25 Madison Avenue, 19'ₕ Floor
New York,  NY 10010

Via Email and Regular Mail' FinanR@gtlaw.com

Robert  J. Finan, Esq.
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE I  Suite 2500
Atlanta, GA  30305

Via Email and Regular Mail: Christina.Suarez@umusic.com

Ms. Christina Suarez
EVP, Business &  Legal Affairs
Republic Records
1755 Broadway
NewYork, NY  10019

Via Email and Regular Mail: necolekev@email com

Mr. Rodney Oliver
p/k/a Rodney O
c/o Necole Key, Rights Manager
Lady Key Management

HERBSMAN HAFER WEBER SFRISGH, LLP

Stephanie Yu, Esq.
Robert J. Finan, Esq.
Ms, Christina Suarez
Mr. Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e | 2

Via Email and Regular Mail: Christina.Suarez@umusic.com

Boominati Worldwide
c/o Universal Music Group, Inc.
2220 Colorado Ave,
Santa Monica, CA 90404

Via Email and Regular Mail: legal@integral.studio

Freebandz Entertainment
c/o Felicia Magama
Wilburn Holding Co.
1465 Northside Dr,
Atlanta, GA, 30044

       *Re.*      *"Lihe That" Copyright Infringement Notice*

Ladies and Gentlemen:

      We are the attorneys for the Barry White Family Trust, successor in interest to all intellectual property rights of the late Barry White (the "Trust"). The Trust is the sole and exclusive owner of the registered copyright in and to "I'm Gonna Love You Just A Little More, Baby". This anthemic song (written, produced and recorded by Barry White), released in the spring of 1973, was the first single from Mr. White's 1973 debut album "I've Got So Much to Give" and hit number one on the United States RSB chart; number three on the Billboard Pop singles chart and was certified gold by the RIAA (the "Copyrighted Work").

      It has come to our attention that you have infringed the Copyrighted Work by interpolating the musical "hook" of the Copyrighted Work in a new work entitled "Like That" (the "Infringing Work"). It is our understanding that the Infringing Work was released by Wilburn Holding Co. and Boominati Worldwide, under exclusive license to Epic Records, a division of Sony Music Entertainment, with Republic Records, a division of UMG Recordings, Inc. and such use was not

**HERBSMAN HAFER WEBER SPRI 2CH. LLP**

Stephanie Yu, Esq.
Robert J. Finan, Esq.
Ms. Christina Suarez
Mr. Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e | 3

authorized by our client. It is also our understanding that a license was issued for use of a sample from the song "Everlasting Bass", which sample also infringes the Copyrighted Work.

Your use constitutes a willful infringement of our client's rights under the Copyright Act, which infringement will subject you to a wide variety of legal penalties, including but not limited to damages, costs and attorney's fees, Our client is also entitled to seek statutory damages for willful infringement in an amount of One Hundred Fifty Thousand ($150,000) Dollars, per infringement, for use of the Copyrighted Work, Willful intent by you is clear as multiple sources easily located online report that "Everlasting Bass" sampled the Copyrighted Work.

This letter shall also constitute notice of our copyright claims throughout the world in any territory where the Infringing Work is sold. In addition, this letter shall also serve as notice of infringement in connection with interpolation of the Copyrighted Work in the song "Everlasting Bass" within any applicable statutes of limitations.

<u>LITIGATION HOLD</u>

Unless and until this matter is resolved, this letter shall constitute notice of potential litigation.

Electronically stored information can be easily altered, deleted, or otherwise modified; and it is common to dispose of it some electronic material in the normal course of business. However, under the governing law, it would be improper, following your receipt of this notice, for you to fail to take all necessary steps to fully preserve all of the electronic stored information in question, regardless of past practices. Your failure to preserve and retain the electronically stored information described in this notice may constitute the spoliation of evidence that could subject you or any of your subsidiaries, divisions, agents, and employees to sanctions by the court, legal claims for damages, or both.

HERDSMAN  HAFER WEBER & FRISCH, UP

Stephanie Yu, Esq.
Robert I, Finan, Esq.
Ms. Christina Suarez
Mr. Rodney Oliver
Freebandz Entertainment
May 7, 2024
Page  |4

for  purposes of this notice, the term "electronically stored information" includes, but is not limited to, the following: text files (including word processing files and file fragments); social  media data, including log-in information,  messages, and posts by you or anyone who follows or interacts with you on social media; metadata; spread sheets; electronic mail (including message contents, attachments, header information, logs of e-mail system usage, and "deleted" files); text messages; data in the information management system, containing the indexes of all databases; the databases themselves, including all records and field and structural information in them; logs of activity on any computer system that may have processed or stored electronic data containing litigation information; data created by financial, accounting, billing, and spreadsheet programs; files and file fragments from electronic calendars and scheduling programs; Internet history files and preferences; graphical image format ("GIF") files; all file fragments and backup files containing electronic data; telephone logs; voice mail files; PowerPoint presentations; contact manager information; and all other electronic data containing information about, or that may be relevant to, the litigation.

Any pertinent information stored online--whether stored in direct-access storage devices attached to a mainframe or minicomputer hard drives, personal computers (PCs), or laptops--must be preserved. If any files must be altered for any reason, a true and correct copy of each data file pertinent to the litigation must be made, and the copy should be preserved and made accessible.

Any activity that could result in the loss of relevant "off-line" data or removable data storage--such as backups and archives or other disaster recovery systems, servers, floppy disks, zip drives and zip files, optical disks, tapes, compact disks or diskettes, laptOpS, handheld devices, disconnected hard drives, and other removable electronic media, as well as personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voice mail)--must be halted. This includes rotation, destruction, overwriting, or erasure of such media, including the disposal of any electronic data storage devices or media that has failed or had to be replaced for other reasons.

HERBSMAN  HAPER WEBER  S FRISCH, LLP

Stephanie Yu,  Esq.
Robert J.  Finan, Esq.
Ms. Christina Suarez
Mr.  Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e  I $

 Relevant information contained on any fixed hard drives of stand-alone PCs and network workstations must not be altered or erased. Procedures such as data compression,  disk defragmentation, or optimization routines  must  not be performed without first creating and preserving true and correct copies of active files. Also, true and correct copies of completely restored versions of deleted electronic files and file fragments, as well as  directory and subdirectory lists,  including  hidden files, must be created and retained.

 Copies of all  applications and utilities that process pertinent  information must be preserved and  retained.

 Passwords,  decryption procedures,  including  accompanying  software, network access codes, ID names, manuals, tutorials, written instructions, and decompression  or reconstruction software must be preserved.

 Any modifications made by employees or third parties to any electronic data-processing systems that may affect the system's capacity to process data relevant to the  instant  litigation  should be logged  and  made  available.

 All relevant hardware must be preserved and  not disposed of unless a true and correct  copy of all files (a  mirror image) is first  created  and preserved.

 With regard to any electronic data created after receipt of this letter that might be relevant to this litigation, proper steps must be taken to avoid destroying or altering such potentially relevant evidence, including following  the above procedures.  Please be further advised that this relates to all potential discovery materials,  whether electronically stored or not.  It applies to all social media posts of any kind or nature, including  but not limited to Facebook, LinkedIn, Tik Tok and Instagram.  It applies to any business or personal email accounts and other records of any nature or kind by you in connection  with all claims, dealings  with the Copyrighted Work or any other party or potential witness involved in the Claim.

 Nothing herein shall be deemed a waiver of any of our client's rights or admission of any liability, and all rights, remedies and claims are hereby reserved.

l-l ERBSMAN I-fAPeR WEBzR a *rniscFJ,* uLP

Stephanie Yu, Esq.
Robert J. Finan, Esq.
Ms. Christina Suarez
Mr. Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e | 6

This letter is Sent in the course of enforcement of our clients' rights. As such, this letter is a demand for potential settlement communication; it should not be published, copied or distributed for any purpose other than litigation purposes.

We ask that you respond by no later than close of business on May 13'h, 2024.

Very truly yours,

HERBSMAN HAFER WEBER
& FRISCH, LLP

Dorothy M. Weber, Esq.

DMW/rr

 **Outlook**

---

RE: URGENT: Written Explanation Needed – How Current Strategy Zealously Protects Rodney's Rights

---

From  Matson, Timothy C. <tmatson@foxrothschild.com>

Date  Tue 2/25/2025 7:39 AM

To    Necole Key <necole@ladykeymanagement.com>; Rodney <rodneyocali@yahoo.com>

▌ 1 attachment (285 KB)

Letter to Tim Matson 2.24.2025-C.pdf;

Hi Rodney and Necole,

Here are my responses to Necole's questions:

1. <u>Barry White Trust's Ownership Claim</u>:  I agree that Plaintiff must show proof that copyright in the Barry White composition was properly transferred to the Trust in order to have standing to bring the lawsuit.  Under 17 USC 204, this transfer must be in writing.  However, for purpose of an initial Rule 12 motion to dismiss to dismiss, the allegations of the complaint are taken as true.  Here, Plaintiff alleges it is the successor-in-interest to all rights of the late Barry White. (*See* Amended Complaint, ¶ 2.)  If, during litigation, Plaintiff is unable to show proper transfer and chain-of-title, we will move for summary judgment.

2. <u>Proof of Ownership</u>:  We will demand proof of transfer of ownership and chain-of-title in discovery.  Again, if Plaintiff cannot establish, this issue will be the subject of a motion for summary judgment.

3. <u>Epic</u>:  I have not been engaged to sue Epic, and you have expressly demanded that I not contact Epic.  However, I do not believe a claim against Epic at this juncture makes sense.  Rodney signed a document purporting to grant Epic a non-exclusive license to sample his work.  That document contains an indemnification from Rodney to Epic relating to claims of infringement such as the one made by the Barry White Trust here.  That said, I am open to discussing this issue and, in particular, your assertion that improperly withheld information when the non-exclusive license was extended.

With respect to your other email, attached is a letter I received late yesterday from Dorothy Weber regarding communications with Epic.  Let's discuss this issue in our call.

I look forward to speaking with you at 2:00 pm PT.

Best,

Tim



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

---

**Learn about our new brand.**

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 24, 2025 2:01 AM
**To:** Matson, Timothy C.<tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** [EXT] URGENT: Written Explanation Needed – How Current Strategy Zealously Protects Rodney's Rights

Hi Tim

I hope you are well. I am reaching out in the best interest of Rodney to request that you please provide a written response explaining how your current legal strategy aligns with the law and zealously protects Rodney's rights. Specifically, I need to understand why certain legal actions have not been taken, despite clear statutory grounds to challenge the claims against him and hold Epic accountable.

 Key Legal Issues & Questions:

1. Barry White Trust's Ownership Claim – How does allowing this claim to proceed without challenging their standing under 17 U.S.C. § 204(a)-(b) serve Rodney's best interest?
   - The Trust is **not listed** on the copyright registration and has provided **no proof of a valid written transfer**.
   - Under 17 U.S.C. § 204(b), a valid certificate of acknowledgment is needed for prima facie evidence, yet we haven't forced them to provide one.
   - Why has there been no motion to compel proof of ownership or dismiss for lack of standing?

Dorothy Weber knowingly pursued litigation without sufficient proof of ownership, causing financial strain on Rodney.
The **failure to provide** chain-of-title evidence prolongs litigation, imposing unnecessary legal costs on Rodney.
Courts have recognized abuse of process when a party files claims without a good faith basis (Eden Toys, Inc. v. Florelee Undergarment Co.).

2. How does waiting for discovery to force the Trust to prove ownership zealously protect Rodney, when it only extends litigation and financially drains him?
   - Why haven't we called out Dorothy Weber's abuse of process?

3. Epic Records' Clear Violations – What is the reason for not taking legal action against Epic, given that:

   - Epic **admitted** they withheld the full song before approval, violating Rodney's right to approve a derivative work.

   - Epic willfully **withheld the full list of rights holders**, directly impacting Rodney's ability to negotiate a fair license fee.

   - Epic has **ignored** Rodney's rescission and continues to profit—why has this been unchallenged?

Request for Written Explanation

I am requesting a written response by outlining:

- How your current approach aligns with the law and zealously protects Rodney's interests.

- Why key motions (challenging ownership, abuse of process, and Epic's violations) have not been filed.

- How allowing prolonged litigation benefits Rodney rather than harming him.

I appreciate you taking the time to provide the clarity we need by providing a written explanation on how this strategy actively defends Rodney and limits unnecessary legal costs, given all the evidence and applicable laws that support an aggressive defense.

Please confirm receipt and provide your response ASAP.

Please see attached document and forwarded email that provided additional information ( I have provided all the correspondence once again)

Best,


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Saturday, October 12, 2024 9:50:36 AM
**To:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** Formal Notice and Request for Immediate Resolution

Hello Rob,

I hope you are well. My last correspondence stated I would trust that you would follow through on all you said and provide me the long form to finalized our agreement.  I am writing on behalf of my client, Rodney Oliver (p/k/a Rodney O), in my capacity as his rights manager with the duty to protect
his rights. This letter serves as formal notification that Epic Records has breached its agreement with my client concerning the use of "Everlasting Bass" in the musical composition and master recording "Like That," performed by Future.

During the initial negotiations, it was represented to us that only Future and Epic/Sony were involved in this agreement. However, we have since discovered the involvement of additional entities that
were not disclosed during the negotiation process. This lack of transparency has unfortunately caused delays in finalizing the agreement and obtaining finalized splits, which has impacted my client's ability to secure a $2.2 million publishing deal.

Despite our repeated requests for the long-form agreement and finalization of terms, Epic has not yet delivered. The absence of a specific withholding clause for infringement claims has also left my client in a di   cult financial position and unaware of his full rights and obligations under the agreement. I find it absurd that you expect Rodney to be able to take on the burden of a meritless claim at the same time protect all parties involved.  We could have rescinded the agreement and
joined Barry White Trust and pursued infringement for failure to secure license despite other things. However, by doing so that would be admitting Rodney infringed on Barry White song and that is not the case.

Rodney has acted in good faith throughout this process, including upholding his indemnity obligations, which have protected Epic and contributing artists from being implicated in the
infringement claim brought by the Barry White Estate. However, should the Barry White Estate inquire about the validity of this agreement, my client will have no choice but to confirm that no valid agreement exists due to Epic's unresolved obligations. This could expose Epic to potential liability for any resulting claims defeating our efforts to protect you.

That said, our goal is to resolve this situation in a manner that benefits all parties involved. We are
confident that with cooperation and good faith, we can reach a swift resolution that provides peace of mind and allows us to focus on defending the ongoing claim from the Barry White Estate.

To achieve this, Rodney is willing to renegotiate the terms of the agreement under protest, reserving all rights and remedies, with the following requests:

1. **Renegotiation and finalization of the long form agreement**, with full disclosure of all parties and clarity on my client's rights, obligations, and protections, including clauses that address withholding in the event of future claims, and terms that properly reflect my client's contributions.
2. **Expanded indemnification for Rodney**, to ensure that he is fully protected from any future claims related to the delays and undisclosed entities.

We hope to avoid taking further action and would prefer to work toward a mutually beneficial outcome. However, if these matters are not addressed within ten (10) business days, Rodney will be forced to take the following steps:

- **Rescind the agreement under protest** and cease all licensing activities.

- **Pursue a breach of contract claim** for the financial damages caused by delays and failure to finalize the long form.

- **File claims for business interference**, due to the delays' impact on Rodney's ability to fully benefit from his work.
- **Confirm to the Barry White Estate** that no valid agreement exists, exposing Epic to potential liability.

Rodney remains committed to resolving this matter amicably and in good faith. We believe that with cooperation, we can bring this issue to a close in a way that satisfies all parties. However, if Epic fails to act promptly, we will have no choice but to proceed in a manner that protects Rodney's music
and best interests.

We look forward to your immediate response and are eager to reach a resolution that alleviates the financial strain caused by these delays. I have full confidence in the stance in the ongoing litigation with Barry White and see a favorable outcome. I hope you can act in good faith and resolve our concerns, so we may celebrate together when all is said and done with the Barry White Trust.

Sincerely,
Necole
Key
Rights Manager for Rodney

Oliver 626-598-6647

www.ladykeymanagement.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

 **Outlook**

---

Response to Improper Demand for Communications

---

From  Necole Key <necole@ladykeymanagement.com>

Date  Tue 2/25/2025 11:00 AM

To    Dorothy Weber <dorothy@musiclaw.com>; Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

▮ 1 attachment (766 KB)
Letter to Tim Matson 2.24.2025-C.PDF;

Dear Ms. Weber,

This letter serves as a formal response to your request for communications involving myself, Necole Key. After reviewing the nature of your request, it is clear that your demand lacks a valid legal basis.

 1. Attorney-Client Privilege & Work Product Protection
I, Necole Key serves as Rodney Oliver's rights manager and has been involved in privileged discussions regarding legal strategy, negotiations, and case management. Any communications containing legal advice or strategy discussions with counsel are protected under attorney-client privilege and the work product doctrine. These privileges prevent disclosure of such information.

As you are aware, privileged communications cannot be compelled unless an express waiver is granted by the privilege holder. No such waiver has been given.

 2. Lack of Proper Legal Authority
Your request for my, Necole Key's communications is not supported by any valid legal process:
- No court order or valid subpoena has been issued.
- The request appears to be a fishing expedition rather than a targeted demand based on specific legal grounds.
- Any attempt to force disclosure outside of proper legal channels violates procedural due process.

Until a formal subpoena is issued and legally justified, I, Necole Key is under no obligation to provide any communications. Should a subpoena be issued, we reserve the right to challenge it in court as overly broad, irrelevant, or unduly burdensome.

 3. Relevance & Scope Objections
Even if a legal request were made, any demand for broad, unspecified communications is legally objectionable for the following reasons:
- The communications are not central to the claims at issue.
- The request lacks specificity, making it unreasonable and overly intrusive.
- Any non-privileged communications, if relevant, must be requested through appropriate legal discovery procedures.

4. Demand for Immediate Withdrawal of Improper Request

Given the above, we demand that you immediately withdraw any informal or unwarranted requests for Necole Key's communications. Further attempts to circumvent legal procedures may be viewed as harassment, bad faith litigation tactics, or an abuse of process.

If you insist on pursuing this matter, we will have no choice but to seek judicial intervention to quash any improper demands and protect Rodney Oliver's legal rights.

Sincerely
, [


Necole Key
Rights Manager
[www.ladykeymanagement.com](www.ladykeymanagement.com)
626-598-6647

## Outlook

Request for Signed Agreements & Copyright Transfer Documentation – Urgent Clarification Required

From  Necole Key <necole@ladykeymanagement.com>

Date  Tue 2/25/2025 1:51 PM

To    Matson, Timothy C. <tmatson@foxrothschild.com>; Dorothy Weber <dorothy@musiclaw.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>; dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>;  Rodney  <rodneyocali@yahoo.com>

Dear Ms. Weber and Epic Records Legal Team,

As Rodney O's Rights Manager, I have the obligation to protect his rights and interests in all matters concerning his intellectual property, licensing agreements, and financial entitlements. To fulfill this duty effectively, I require full clarity and transparency from all parties involved.

1. Request for Signed Agreements from Epic Records

Epic Records has asserted rights over the master recording and composition for Like That (including the Kendrick Lamar verse) and the use of Everlasting Bass. However, no fully executed agreements have been provided to confirm Epic's legal authority over these rights.

Accordingly, I am requesting the immediate production of the following:

- A fully executed and signed agreement proving Epic Records obtained a valid license for both the master recording and composition incorporating Everlasting Bass.
- Proof of clearance for Kendrick Lamar's verse, confirming that all relevant stakeholders approved its inclusion.
- Any correspondence or documentation that supports Epic's claim of legal authority over these rights, including revenue allocations.

Failure to provide these agreements within three (3) business days will necessitate legal action to ensure Rodney O's rights are properly protected.

2. Dorothy Weber's Involvement & Request for Copyright Transfers

Ms. Weber, as legal counsel for the Barry White Family Trust, your involvement in Rodney O's negotiations with Epic Records is concerning. Your role should be strictly limited to Barry White's estate, yet you have actively interfered in ongoing discussions between myself (acting as Rodney's rights manager) and Epic Records.

Furthermore, your copyright registration does not name the Barry White Family Trust as the registered owner. Therefore, I am formally requesting:

- A valid copyright transfer document confirming that the previous copyright owner lawfully transferred rights to the Barry White Family Trust.
- If no such letter of assignment or transfer exists, your claims lack prima facie standing and must be immediately withdrawn.
- A written explanation clarifying why you are interfering in Rodney O's licensing discussions with Epic, given that you represent a separate legal interest.

 3. Next Steps for Transparency & Resolution
To move forward in good faith and ensure that all rights are properly handled, I expect the following actions:

1. Epic Records must provide the requested signed agreements within three (3) business days from today.
2. Ms. Weber must produce a valid copyright transfer document for Barry White's estate or formally withdraw any claims related to copyright ownership.
3. Immediate cessation of any interference in Rodney O's licensing discussions with Epic Records.

As Rodney O's rights manager, I must have full clarity and transparency to ensure that his interests are protected. Please confirm receipt of this request and provide the requested documentation within the specified timeframe.

Sincerely,


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

RECORDING OF EPIC Listen for yourself

From   Necole Key <necole@ladykeymanagement.com>
Date   Tue 2/25/2025 6:09 PM
To       Matson, Timothy C. <tmatson@foxrothschild.com>

Tim this deal has been a lot. They have pit me through a lot.

Here is Rob telling me that the agreement we signed was not finalized. That he was going to get me
a letter of direction voluntarily complying. Than he screwed us

https://photos.app.goo.gl/Fki25CtpYCHZBBqq5

https://photos.app.goo.gl/jo1GVRQsHhoZLKE28

They switch up on me. I feel tricked
I wasn't making it up.


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

HERBSMANMAFERVVEBER&FR1SCH,LLP
**ATTORNEYS AT MW**
404 ElaFrn-i AvENUE, Sixrl-i **FLOOR**
NEw YORK, NEw YORx 1 OOO 1

Joe     **E. HERBsMAN**
J.  JEFFHEY i·lA  EFt
DOnOTHY M. WEBER
M1Ci-1AE£· B. FRlRGH

**RAKHIL KALANTAROVA**

JAMKs  E.  iDOHERTY
**OI= COUNSEL**

TELEPHONE (2 1 Z}  24D•4BBO
YELECOPIER (2 1 Z}  OBA647

dorothy8musicIaw.com

**Fefiruary24,2025**

Via  Email:     tmatsonfifoxrothsehild.com

Timothy C. Matson, Esq.
Pox Rothschild, LLP
33 S. Sixth Street, Suite 3600
Minneapolis, MN  55402

> *Re.'*     The Barry White Family Trust U/A/D: December  19, 1980, By its Duly
> Empowered  Trustees  v. Coolev  et al. Gase No. 24-cv-07509-DLC

Dear Mr. Matson:

In furtherance of our call last week, it is my understanding that as late as
Friday, Ms. Key was in touch with Epic Records, through their New York office, In
furtherance of the limited jurisdictional discovery which was agreed to, we ask that
you produce all communications from Ms.  Key to third parties in connection with
this matter. We ask for an updated production as soon as possible.

To the extent that Ms. Key is attempting to collect monies from third parties
on **matters** which are implicated by this lawsuit, that is a matter we believe she
should be bring to the Court's attention unless we can amicably deal with this
situation.

When Ms.  Key called Epic's attorney, she was properly advised that he could
not speak to her. When he asked for her litigation counsel's contact, however, she
refused to provide your name or contact information. While our client has no desire
to "rachet up" the current litigation, it seems clear that certain of your clients do not
share that view. We are troubled by this course of conduct for a variety of reasons.

HEFlBsMAN HAFER WEBER & FFIUCH, IP

Timothy C. Matson, Esq.
February 24, 2025
P a g e | 2

I am attaching a copy of our initial claim letter with litigation hold language and ask that you confirm in writing that your clients have been advised of their obligations. Also, to the extent that Ms. Key is in continuing communications with New York entities on behalf of Mr. Oliver in connection with the song that is the subject of the instant litigation, we may need to supplement our opposition. We ask that you provide us with copies of any materials which update the document production made to us on December 18, 2024, including but not limited to any of her written communications with Epic Records.

Please let me know if we need to meet and confer on this issue.

This letter is written without prejudice to our client's rights or remedies, at law or in equity, all of which are hereby expressly reserved.

Very truly yours,

HERBSMANHAFERWEBER
& FRISCH, LLP

Dorothy M. Weber, Esq.

DMW/rr

 **Outlook**

---

## Re: LIKE THAT - FINALIZING AGREEMENT

From  Necole Key <necole@ladykeymanagement.com>
Date  Mon 2/17/2025 5:37 PM
To      Matson, Timothy C. <tmatson@foxrothschild.com>

[If It's Retroactive It's Not a "License" – Property, intangible](#)

### If It's Retroactive It's Not a "License" - Property, intangible

This is a big one. As I've written about in the past (recursive link), there is a huge upheaval in the stock photography industry over the use of photos in textbooks. In Palmer/Kane LLC v.Rosen Book Works LLC, plaintiff Palmer/Kane licensed the rights in its photos through several agencies, the relevant one here being Corbis.. The textbook industry

propertyintangible.com

---

But the defendant's theory that "we've always done it that way!" didn't matter here, as explained by the court:

Nonetheless, evidence of custom and course of dealing cannot displace rights conferred by the copyright laws. *See Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.,* 307 F.3d 197, 211
(3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble.");*Weinstein Co. v. Smokewood Entm't Grp.*, LLC, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) ("
[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted.").

Necole Key
Rights
Manager 626-
598-6647
www.ladykeymanagement.com

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 17, 2025 10:24 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** Re: LIKE THAT - FINALIZING AGREEMENT

3/12/25, 3:02 PM      Case 1:24-cv-07509-DLC      Document 43   Filed 03/14/25      Page 62 of 212
Mail - Necole Key - Outlook

Grand Upright Music v. Warner Bros. Records, Inc., 780 F. Supp. 182 (S.D.N.Y. 1991) :: Justia

Consequently, if any legal action arises in connection with the samples in question, such action will not arise due to the fact that Biz used the samples in his recorded compositions, but rather, due to the fact that Cold Chillin' released such material prior to the appropriate consents being secured in connection with such samples.

From all of the evidence produced in the hearing, it is clear that the defendants knew that they were violating the plaintiff's rights as well as the rights of others. Their only aim was to sell thousands
upon thousands of records.[2] This callous disregard for the law and for the rights of others requires not only the preliminary injunction sought by the plaintiff but also sterner measures.

The application for the preliminary injunction is granted. The plaintiff is to submit within five (5) days hereof an appropriate decree. This matter is respectfully referred to the United States Attorney for the Southern District of New York for consideration of prosecution of these defendants under 17
U.S.C. § 506(a) and 18 U.S.C. §

2319.[3] SO ORDERED.


Necole Key
Rights
Manager 626-
598-6647
www.ladykeymanagement.com

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 17, 2025 9:19 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** Re: LIKE THAT - FINALIZING AGREEMENT

Oh, and yes, I know everyone thinks because Rodney accepted payment it makes the deal complete. That may weaken his case but not make it invalid.

Especially if we have proof that intimation tactics were made to get Rodney to comply.  When I asked for the long form, informed them i would have to get my attorney involved. This was their reply ( see attached) threatening relationships due to trying to legal secure deal is cohesion and Rodney's complying was under duress.

Anti-Retaliation Protections
Tortious Interference

Are two of many that will be filled if they don't send finalized documents.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 17, 2025 8:37:06 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Subject:** Re: LIKE THAT - FINALIZING AGREEMENT

HI Tim
I have Attached screenshots my correspondence with Epic and Future's attorney.  I will. E certified mailing them final notice. If I do not get the final documents so I can make sure the terms we agreed to are met and Rodney is paid, we will be filing.
I have email after email of Epic and Future's attorney being fully aware this deal was not final.  I know they are moving as "industry norm" but that is not how the law works. They must have a signed finalized agreement before collecting, controlling, reallocation and withholding of Rodney's earnings. Rodney shouldn't even be defending this i infringement claim without finalizing agreement.  You have been the only one that has acted in Rodney best interest.  We appreciate you for that.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647


**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 17, 2025 8:25:08 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Subject:** Re: LIKE THAT - FINALIZING AGREEMENT

Awesome. I have an update on that situation as well.  I will be forwarding you the emails, so you are aware.

Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647


**From:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Sent:** Monday, February 17, 2025 8:22:16 AM
**To:** Necole Key <necole@ladykeymanagement.com>; Rogers, Leron E. <LRogers@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** RE: LIKE THAT - FINALIZING AGREEMENT

Hi Necole,

This is to confirm that all communications with Rodney, you and our team are held in strictest confidence according to our rules of professional responsibility. Apart from the Court, opposing counsel and potential witnesses (i.e. representatives of Studio One), we will not communicate with anyone outside our team regarding this case.

Best,

Tim



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**Learn about our new brand.**

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Friday, February 14, 2025 6:33 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rogers, Leron E. <LRogers@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** [EXT] LIKE THAT - FINALIZING AGREEMENT

Hello Gentlemen

I hope you are well. Rodney as your client request that you do not speak about the lawsuit to any party outside our team. Unless I myself am on the phone. No updates should be given to anyone who has not financial contributed to our defense. Please respond confirming you will respect what we have requested.
Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

Re: Enforcing Rodney's Rights -Your thoughts are appreciated

---

From  Necole Key <necole@ladykeymanagement.com>
Date   Fri 2/14/2025 5:44 AM
To      Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

Hi Tim

Happy Friday. I really want to start taking the offense and enforce the laws that protect Rodney.  I
suggested this in the beginning, but Leron said it was throwing a nuclear bomb, and he didn't want to
hurt his relationships. Last I checked the client's best interest is supposed to be an attorney priority not
his relationships.

Please let me know when you can discuss because Rodney needs to be protected and compensated.
Everyone is benefiting and we are here like fools defending everyone but ourselves.  We have been
violated.  No deal was finalized, I have the email that states the agreements were pending. Plus, prior
use before deal was even made. Why Leron would have us protecting Epic, who failed to secure a deal
and didn't have the authority to negotiate the publishing, there for no agreement exists is ludicrous.
I would like to discuss when the appropriate time would be to switch to offense.  That is where Rodney
needs to put his money. Going after everyone who is benefiting from his music.

Appreciate you. Looking forward to speaking with you.
Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 10, 2025 2:41:36 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** Enforcing Rodney's Rights -Your thoughts are appreciated

Dear Tim,

I appreciate all the work you have done on this case. I truly believe that if we had contacted you
first instead of Leron, we would have pursued a completely different strategy—one that actually
protects Rodney instead of shielding Epic from liability.

Unfortunately, Leron led us in a direction that benefits Epic, not Rodney. He ignored key
evidence proving that:

- Newton v. Diamond (2003): *A contractual obligation to pay royalties must be honored regardless of other pending claims.*

Rodney must immediately demand full payment, plus penalties for late compensation

## 4. Bad Faith – Withholding Royalties, Failing to Provide Statements, & Excluding Rodney from Grammy Credits

✔Epic has not provided proper royalty statements, despite its legal obligation to do so.
✔Rodney was excluded from Grammy nominations and RIAA Platinum certification, violating his contractual rights.
✔These actions show a deliberate effort to undermine Rodney's career and withhold his rightful earnings.

Legal Precedents for Bad Faith Business Practices:

- Sony Corp. v. Universal Studios (1984): *A company cannot intentionally misrepresent facts to avoid paying what it owes.*
- Weisbach v. Carroll (1983): *If a company falsely claims non-payment justification, it can be sued for damages.*

Rodney must seek punitive damages for Epic's bad faith actions.

Rodney Had No Role in the Production of *Like That*

✔Rodney was NOT involved in how his master or composition was arranged in *Like That*.
✔Epic's unauthorized use and modification of *Everlasting Bass*—not Rodney's original track—are what triggered the infringement claim from Barry White's estate.

Key Legal Precedents Supporting Rodney's Lack of Liability:

- Bridgeport Music, Inc. v. Dimension Films (2005): *The party that incorporates a sample into a new work is responsible for clearing all necessary rights.*
- Newton v. Diamond (2003): *Licensing a master recording does not automatically clear the underlying composition.*
- ABKCO Music, Inc. v. Stellar Records, Inc. (1996): *A retroactive license does NOT eliminate liability for unauthorized prior use.*

Tim, I want all parties, Labels, artists, publishers that have benefited by notoriety and/or financially sued.

Looking forward to your response.

Necole Key
Rights
Manager 626-
598-6647
www.ladykeymanagement.com

 Outlook

---

**FW: Barry White**

---

From  Matson, Timothy C. <tmatson@foxrothschild.com>
Date  Wed 2/19/2025 7:10 PM
To    Necole Key <necole@ladykeymanagement.com>

Necole,

What is Dorothy referring to?  Please advise.

Tim



---

**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
▢ (612) 229-4109
🖶 (612) 607-7100
✉ tmatson@foxrothschild.com

---

**Learn about our new brand.**

---

**From:** Ricardo Rosado <ricardo@musiclaw.com> **On Behalf Of** Dorothy Weber
**Sent:** Wednesday, February 19, 2025 5:19 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Cc:** Dorothy Weber <dorothy@musiclaw.com>; Judy <jameyers68@gmail.com>; Rakhil Kalantarova <rakhil@musiclaw.com>
**Subject:** [EXT] Barry White

Hi Tim:  We are going to attach a copy of the agreement for the sample as part of our opposition to the motion to dismiss. I also understand that Ms. Key has communicated directly with third parties in connection with this litigation and we ask that you advise her that these communications are all part of our litigation hold and will be subject to discovery.

Sincerely,

Dorothy M. Weber, Esq.
Herbsman Hafer Weber & Frisch, LLP
494 Eighth Avenue, Suite 600

New York, NY 10001
Direct Dial: (646) 795-6068
Fax: (212) 956-6471
E-Mail: dorothy@musiclaw.com
http://www.linkedin.com/in/dorothymweberesq/

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

✔Rodney never had a finalized agreement.
✔The finalized splits were never secured.
✔Epic falsely claimed they had authorization to obtain a composition license when that was untrue.
✔Epic misrepresented that Future was the only other contributing creator, which was a deliberate misrepresentation.

Instead of putting Rodney on the offensive, Leron placed him on defense, forcing him into a court battle he should never have been part of. If we had followed the proper legal strategy, Rodney would be suing Epic for infringing his work, not defending himself in court. Leron put Epic's best interest instead of Rodney's best interests.

---

## 1.    If This Case Is Dismissed, I Want to Issue a Cease and Desist Against Barry White's Estate

✔Barry White's trust must provide proof of the legal transfer of ownership rights to the trust.
✔If they cannot prove they hold valid rights, they have no standing to claim infringement.

Legal Basis for Challenging Barry White's Trust Ownership:

  • California Copyright Law requires clear documentation of ownership transfers to trusts. • Rodney has the right to demand proof before any claim is enforced against him.

If they cannot prove ownership, we will immediately seek dismissal of any claim against Rodney.

---

## 2. If This Case Moves to a California Court, Rodney Is Not Responsible Due to Unfinalized Splits

✔By email evidence, we can prove that the terms were not finalized as of April.
✔The Barry White claim did not arise until August—several months after Epic failed to secure proper rights.
✔Months went by without finalization, which means Epic falsely claimed authorization to obtain composition licenses.
✔This delay itself constitutes infringement on *Everlasting Bass* by

Epic. Key Legal Precedents Supporting Rodney's Defense:

  • ABKCO Music v. Stellar Records (1996): *A retroactive license does not erase liability for prior unauthorized use.*
  • Newton v. Diamond (2003): *A license for a master recording does not automatically clear composition rights.*
  • Bridgeport Music v. Dimension Films (2005): *The party using a sample is responsible for securing all rights.*

Epic's failure to secure rights before use proves that Rodney was NOT responsible and should NOT be defending himself.

---

### 3. Immediate Legal Actions I Want Taken

1. If the case is dismissed, issue a cease and desist demanding Barry White's estate prove ownership transfer.
2. Prepare legal filings that highlight Epic's failure to finalize splits, proving Rodney's non-liability.
3. File a lawsuit against Epic for infringement due to unauthorized use before the agreement was finalized.
4. Hold Epic accountable for failing to secure proper splits, making them liable for all infringement claims.
5. Pursue legal action for breach of contract, non-payment of Rodney's 15% master royalties, and bad faith.
6. Ensure that if the case moves to a California court, Rodney is protected by the unfinalized status of splits and contracts.

Rodney will no longer be on defense—we will aggressively enforce the legal protections that should have shielded him from this situation in the first place, all stated below

Fraudulent Misrepresentation (Epic Wrongfully Shifted Liability to Rodney)

**Epic falsely told Barry White's estate that the infringement in *Like That* was just a licensed sample of *Everlasting Bass*, then wrongfully told Rodney he was responsible for the infringement.**

**Why This Claim Is Strong:**
✔**Epic was responsible for clearing all composition rights before releasing *Like That*.**
✔**Rodney had no role in selecting or clearing samples—this was Epic's duty.**
✔**Epic's misdirection has cost Rodney legal fees, reputation damage, and**

**financial loss. Epic Is Fully Responsible for Any Infringement Claims Due to**

**Failure to Secure Rights**

✔The long-form contract was never finalized, meaning Epic never fully secured the rights it claims to
have cleared.
✔Epic failed to obtain proper split agreements from all necessary rights holders, making them legally liable for any infringement claims.
✔Epic misrepresented that all necessary rights were cleared when, in fact, they failed to ensure proper legal licensing. (SEE ATTACHED

EMAILS) Legal Precedents Supporting Epic's

Full Liability:

- Bridgeport Music v. Dimension Films (2005): *The party that uses a sample in a new work is responsible for clearing all rights, not the original creator.*
- ABKCO Music v. Stellar Records (1996): *If a license is not finalized before use, the user*

*is still liable for infringement.*

Epic's failure to finalize these agreements before using *Everlasting Bass* means

Epic had the duty to clear all rights before using *Everlasting Bass*—Rodney should not be held responsible.

Rodney cannot be held liable for any claims IF AGREEMENT WAS PENDING —Epic is solely responsible.

## 2. Rodney Licensed *Everlasting Bass* Free of Any Infringement for 38 Years

✔For 38 years, *Everlasting Bass* had no copyright infringement claims.
✔Epic cannot falsely claim "misrepresentation" without evidence.
✔Epic is unlawfully shifting blame to Rodney simply to escape

liability. Key Legal Precedents Supporting Rodney Against Epic's

False Claim:

- Weisbach v. Carroll (1983): *A company cannot shift legal liability onto another party to escape responsibility.*
- Sony Corp. v. Universal Studios (1984): *Misrepresenting legal responsibility can result in financial liability.*

Epic is making an unsubstantiated claim against Rodney to cover up its own legal failure.

## 2. Copyright Infringement – Unauthorized Use of *Everlasting Bass*

✔Epic used *Everlasting Bass* in *Like That* before the agreement was finalized, constituting willful infringement.
✔The song was publicly performed at Rolling Loud prior to the short-form contract being signed.
✔*Like That* was officially released before Rodney's signed agreement was received and before he was paid.

Legal Precedents Supporting Rodney's Infringement Claim Against Epic:

- ABKCO Music v. Stellar Records (1996): *A retroactive license does not erase liability for prior unauthorized use.*
- Grand Upright Music v. Warner Bros. (1991): *Failure to secure rights before use constitutes copyright infringement.*

## 3. Breach of Contract – Failure to Pay 15% Master Royalties

✔Epic has failed to pay Rodney his contractually agreed-upon 15% share of the master earnings from
*Like That*.
✔Withholding royalties is a direct breach of contract and a violation of industry and legal

standards. Legal Precedents for Non-Payment of Royalties:

- Zomba Enterprises v. Panorama Records (2004): *A label cannot withhold royalties based on unrelated legal disputes.*

- Newton v. Diamond (2003): *A contractual obligation to pay royalties must be honored regardless of other pending claims.*

Rodney must immediately demand full payment, plus penalties for late compensation

## 4. Bad Faith – Withholding Royalties, Failing to Provide Statements, & Excluding Rodney from Grammy Credits

✔Epic has not provided proper royalty statements, despite its legal obligation to do so.
✔Rodney was excluded from Grammy nominations and RIAA Platinum certification, violating his contractual rights.
✔These actions show a deliberate effort to undermine Rodney's career and withhold his rightful earnings.

Legal Precedents for Bad Faith Business Practices:

- Sony Corp. v. Universal Studios (1984): *A company cannot intentionally misrepresent facts to avoid paying what it owes.*
- Weisbach v. Carroll (1983): *If a company falsely claims non-payment justification, it can be sued for damages.*

Rodney must seek punitive damages for Epic's bad faith actions.

Rodney Had No Role in the Production of *Like That*

✔Rodney was NOT involved in how his master or composition was arranged in *Like That*.
✔Epic's unauthorized use and modification of *Everlasting Bass*—not Rodney's original track—are what triggered the infringement claim from Barry White's estate.

Key Legal Precedents Supporting Rodney's Lack of Liability:

- Bridgeport Music, Inc. v. Dimension Films (2005): *The party that incorporates a sample into a new work is responsible for clearing all necessary rights.*
- Newton v. Diamond (2003): *Licensing a master recording does not automatically clear the underlying composition.*
- ABKCO Music, Inc. v. Stellar Records, Inc. (1996): *A retroactive license does NOT eliminate liability for unauthorized prior use.*

Tim, I want all parties, Labels, artists, publishers that have benefited by notoriety and/or financially sued.

Looking forward to your response.

🔷 Outlook

---

FOR MUSICOLOGISTS REVIEW - Jackie Mittoo release year

---

From Necole Key <necole@ladykeymanagement.com>

Date Mon 1/27/2025 9:14 AM

To     Matson, Timothy C. <tmatson@foxrothschild.com>

◾ 11 attachments (9 MB)
Screenshot_20241230_173434_Chrome.jpg;
Screenshot_20241230_180713_Chrome.jpg;
Screenshot_20241230_180849_Chrome.jpg;
Screenshot_20241230_175648_Chrome.jpg;
Screenshot_20241230_174539_Chrome.jpg;
Screenshot_20241230_180631_Chrome.jpg;
Screenshot_20241230_174702_Chrome.jpg;
Screenshot_20241222_143057_Chrome.jpg;
Screenshot_20241223_020932_Chrome.jpg; Screenshot_20241204_121445_Chrome.jpg; 20241223_132800.jpg;


Hello Tim

Hope you enjoyed your weekend.  Below is a copy and paste of the email that they said they will refer to confirm the Jackie Mittoo released year of 1971.

 You may send this to the musicologists to review to obtain knowledge and confirm the 1971 released year. Attachments also include are research and evidence to confirm the released year

I appreciate you replying regarding Jackie Mittoo's work. After thorough research I have found 1971 to be correct.

I have attached a links below that have provided the timeline when Jackie Mittoo was with Coxsone/Studio One which was from the opening of the studio in 1962 to Mittoo departure to Canada in 1971

Deeper and Deeper Catalog numbering SO 3182 The pressing scratching of FCD 6001-1 that I ºhave located on the physical record itself that I have personally purchased.  also aligns with Federal Records pressing with other recording in the year.

Jackie Mittoo | Sounds Like Toronto

Jackie Mittoo Songs | Staimusic - The Best of Reggae and Ska

Riddimguide - Tunes - Jackie Mittoo songs

I wanted to provide you with sufficient information regarding this record


Necole Key
Rights Manager
www.ladykeymanagement.com

---

626-598-6647

 **Outlook**

The Mother of All Synthesizers #shorts

From  Necole Key <necole@ladykeymanagement.com>
Date  Sun 12/22/2024 4:10 PM
To      Matson, Timothy C. <tmatson@foxrothschild.com>


https://youtube.com/shorts/l0KLY3t0iB8?si=IHaTqKLGOTDD9vLD


The link is the keyboard that Rodney used to INDEPENDENTLY CREATE Everlasting

Bass Necole Key

Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

GROOVY SPIRIT JACKIE MITTOO

---

From  Necole Key <necole@ladykeymanagement.com>
Date  Wed 12/18/2024 11:24 AM
To     Matson, Timothy C. <tmatson@foxrothschild.com>


Hi Tim

JACKIE MITTOO  1971 RELEASE PROVES JACKIE MITTOO CREATED DEEPER AND DEEPER.. It also
preexisting work predating Barry White's song

https://youtu.be/11_81KaPFyw?si=b56_2ckmpjRORqs0


Let me know your thoughts

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Thursday, December 12, 2024 7:17 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Subject:** [EXT] Prior to 1978, and unlike today, the U.S. Copyright Office did not accept a sound recording as a deposit copy for a musical composition.

Attached is the first sheet of the **published sheet music** of I am gonna love you just a little bit more babe.

Unsure what they deposited in the 1973 registrations however if it is like the PUBLISHED sheet music in 1982 the bass line with the guitar cabinet is not on the sheet music so therefore not copyrightable


On March 9, 2020, the United States Court of Appeals for the Ninth Circuit affirmed a ruling of the
United States District Court for the Central District of California, and held that the scope of copyright protection for a pre-1978 musical composition is limited to the deposit copy (i.e., the copy of the work sent to (or "deposited" with) the U.S. Copyright Office when the work was registered).  In
reaching this conclusion, the Court found that the scope of, and what constitutes, the work itself cannot exceed what is reflected in the deposit copy - and therefore, the scope of protection cannot exceed the deposit copy.
**Prior to 1978, and unlike today, the U.S. Copyright Office did not accept a sound recording as a deposit copy for a musical composition.**

Skidmore v. Led Zeppelin (2020)
In 2016, the jury decided that although there were similarities, the songs were not intrinsically the same, concluding that the acoustic guitar riff in question was not original enough to warrant copyright protection. This verdict was upheld on appeal in 2020, affirming that the scope of protection for "Stairway to Heaven" was limited to what was shown in the deposit copy, which was found not to have infringed upon the "Taurus" deposit copy.



Necole Key
Rights
Manager 626-
598-6647
www.ladykeymanagement.com


This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

◻ Outlook

---

Email thread for Rodney O for Like that

---

From  Necole Key <necole@ladykeymanagement.com>
Date  Thu 12/12/2024 5:37 PM
To    Matson, Timothy C. <tmatson@foxrothschild.com>

▉ 2 attachments (668 KB)
Rodney like that deal.pdf; Mail - Necole Key - Outlook.pdf;

Hi Tim I was having issues with my drop box please see attach and let me know if that
will be sufficient for you.

Agreements
Empire statements check.
Links to songs
Copyright Deposit information
Sheet music sent
Works transfer to the TRUST attached

Copyright records for transfer numbers below

    1.   Original Copyright Registration (1973):
-   Registration Number:  **EU387551**
-   Details:   This document establishes Barry White as the original copyright owner of "I'm
Gonna Love You Just a Little More, Baby," registered in 1973.
-   Significance:   This confirms Barry White's authorship and initial ownership of the
copyright. However, copyright law allows for ownership to transfer through assignments,
which happened multiple times in this case.

    2. Documented Assignments in the Chain of Title:
-   Document **V1669P081** (1978):
  - Rights were assigned from Interworld Music Group, Inc. to Six Continents Music Publishing,
   Inc.
  - This was an earlier transfer in the chain of title leading to the 1983 assignment to Unichappell.

THIS WAS WHEN SHEET MUSIC WAS PUBLISHED
    3. 1983 Assignment of Rights (**V1972P205**):
-   Date of Execution:  June 15, 1982
-   Parties Involved:
  -  Party 1:  Six Continents Music Publishing, Inc.
  -  Party 2:  Unichappell Music, Inc.
-   Details:   This document records the assignment of rights from Six Continents Music
Publishing to Unichappell Music, Inc. The assignment includes the transfer of copyrights to
various works,

including Barry White's song.

-   Significance:  If the renewal rights were transferred in this agreement, Barry White or his estate would not have had the legal authority to renew the copyright in 2001. Ownership at this point appears to have moved to Unichappell.


4. Document **V1901P275** (1982):
   - Rights were transferred to Broadcast Music, Inc.
   - This may represent licensing or additional assignments of publishing or performance rights related to Barry White's works.


   5. 2001 Renewal Filing (**RE0000840933):**
-   Date of Filing:  January 5, 2001
-   Filed By:  Barry White (A)
-   Details:   This renewal was filed to extend the copyright protection beyond the initial term.
-   Potential Issue:   If the renewal rights were assigned to Unichappell in 1983 (or to any subsequent assignee in the chain of title), the estate or Trust would not have had the legal authority to renew the copyright. This raises doubts about the validity of the renewal.


Necole Key
Rights
Manager 626-
598-6647
www.ladykeymanagement.com

**Outlook**

---

Update on Studio One Catalog

---

From   Necole Key <necole@ladykeymanagement.com>
Date   Tue 12/10/2024 5:25 PM
To     Matson, Timothy C. <tmatson@foxrothschild.com>

▮ 1 attachment (2 MB)
651eb52a5f2e8.pdf;


Hi Tim

Hope you are having a great week. Two things, first the daughter of the owner of studio one sent me a photo in WhatsApp showing me she has received the catalog and will be mailing it to me this week. Second, being you are a lover of copyright as myself I thought you would find the report I attached interesting.
The report is about Perceptual and automated estimates of infringement.
Recent music information retrieval research has proposed objective algorithms to automatically detect musical similarity, which might reduce subjectivity in music copyright infringement decisions. I used their methods to compare Barry White song and Everlasting Bass

Maybe you can have our specialist provide a data analysis as well..


Below are the findings


    Objective :
To compare Barry White's "I'm Gonna Love You Just a Little More Baby" with Rodney O & Joe Cooley's "Everlasting Bass" using methods derived from the document, including perceptual similarity, melodic identity (PMI), audio similarity (Musly Algorithm), and contextual analysis.

---

    1. Full Audio (Perceptual Similarity) :
- Barry White :
   - Rich orchestration with strings and brass.
   - Slow tempo and smooth vocals emphasize romance and sensuality.
   - Traditional R&B structure.
- Rodney O :
   - Minimalist production focused on rhythm and groove.
   - Utilizes drum machines and bass loops, characteristic of hip-hop.
   - Emphasis on a repetitive bassline with spoken-word delivery.
- Finding : Listeners would perceive these tracks as distinctly different due to their divergent genres, tempos, and arrangements.

---

2. Melodic Identity (PMI) :
- Barry White :
  - Melody revolves around a C Minor progression with chromatic passing tones.
  - Strong melodic foundation with rich harmonies.
- Rodney O :
  - Lacks a defined melodic structure, focusing on rhythm instead.
  - Bassline is rhythmically driven without harmonic complexity.
- Finding : PMI scores would be low, as the melodic content in Barry White's track has no equivalent in Rodney O's work.

---

3. Audio Similarity (Musly Algorithm) :
- Barry White :
  - Instrumentation includes live instruments and analog recording techniques.
  - Production emphasizes warmth and lushness.
- Rodney O :
  - Digital production with drum machines and sampling.
  - Sparse, punchy sound focusing on rhythm and energy.
- Finding : The timbral and rhythmic differences would result in a low similarity score, reflecting the distinct production styles.

---

4. Contextual & Historical Analysis :
- Barry White :
  - Released in 1973 as a romantic R&B ballad.
  - Represents the lush orchestration trend of the era.
- Rodney O :
  - Released in the 1980s during the rise of hip-hop and electro-funk.
  - Focused on rhythm and bass culture, emblematic of street sounds.
- Finding : The historical and cultural contexts of the two songs are vastly different, reducing any perceived or inferred similarity.

---

Summary of Findings :
- Perceptual Similarity : Low similarity due to genre and arrangement differences.
- Melodic Identity (PMI) : Low similarity because of differing melodic structures.
- Audio Similarity (Musly) : Low similarity based on distinct production techniques.
- Contextual Analysis : Minimal overlap in historical and cultural contexts.

The analysis concludes that the two songs are fundamentally different across all examined dimensions.

---

Methodology:
- Perceptual analysis was modeled on listener judgments of full audio and melody.
- Melodic similarity was calculated using PMI, focusing on the alignment of pitch sequences.
- Audio similarity relied on Musly's timbral and rhythmic comparisons.
- Contextual analysis examined the cultural and historical backgrounds of the tracks.


I find it all fascinating.



Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

# EXHIBIT D

 Outlook

## You got me to think 

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Thu 2/20/2025 3:29 AM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>

 12 attachments (5 MB)
Screenshot_20250220_013434_M365 Copilot.jpg; Screenshot_20250220_013457_M365 Copilot.jpg;
Screenshot_20250220_013912_M365 Copilot.jpg; Screenshot_20250220_013200_M365 Copilot.jpg;
Screenshot_20250219_222726_M365 Copilot.jpg; Screenshot_20250220_013844_M365 Copilot.jpg;
Screenshot_20250220_013934_M365 Copilot.jpg; Screenshot_20250220_013515_M365 Copilot.jpg;
Screenshot_20250219_134805_Docs.jpg; Screenshot_20250220_013411_M365 Copilot.jpg;
Screenshot_20250219_134509_Docs.jpg; Screenshot_20250217_090253_Outlook.jpg;


TIM

Good morning
First, I want to apologize for how I may have come off the other day during our conversation. I was
going over our discussion in my head and I realize I said something that may have come off wrong.

I stated that you are handling the Barry case. I will handle the Epic situation. I didn't mean it in a
dismissive way. I was thinking in my head, "let him handle the Barry case before you throw all this
information and get him spinning with unnecessary information. I'll just filter it and bring it back when
I have what you need to convince you."
I would love for you to be our go to attorney, but I never want you to take on something you didn't
feel confident in defending. I absolutely value your knowledge. I geek out talking to you. Lol

Anyway
I was thinking why would Dorothy include the composition license that states Rodney obtained $5000.
That is not substantial enough to warrant New York jurisdiction.
I hope she doesn't think she can attach the master license. The infringement is on the composition. As
I know you are aware.

So, after our talk I heard all, you said, and I have the following for you to consider

I understand how you feel Rodney is trapped by this non-exclusive license but please hear me out. I
heard all you said you would need regarding the language in the non-exclusive license.
Epic knows I am correct, and they have yet to provide any signed documents as I requested. They want
me to fall back. That's why they had Dorothy say what she did.

See below.

The non-exclusive license grant of rights DOES NOT include modification or adaption of the embodied
Future Master

Rodney only approved the EMBODIED MASTER by Future that they allowed him to hear

They misrepresented and withheld needed information for Rodney to make a sound decision.

Ignore my request for all rights holders and the authority they had.

Blatant disregard of Rodney Rights releasing the track before obtaining a signed agreement

Cohesion by threats on Rodney Relationship and withholding of payment to comply

Meritless claim of Infringement and be held responsible and wrongful withholding of earnings and allocation of funds. MILLER VS UMG States that warranties without be proven does not negate contractual obligations


There is only one reason why Dorothy would say what she said and it's because Epic reached out to her.

Now you know why I emailed last week.

See attached doc. I have of them too and recordings of negotiations

Appreciate you I do!

Thank you


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

## DOROTHY WEBER

---

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Sat 2/22/2025 12:23 PM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>

Hi Tim

I read Dorothy filing. It confirm that Rob spoke to her.  I have been refuting this license stating we never heard the whole song with Kendrick Lamar. The license we gave them was for the composition we heard not what they released.
An email from Future attorney admits that they did not give us the song with Kendrick Lamar.  Proving they violated Rodney right to approve derivative works of his music.
Also the grant of rights did not include remixes, modifications and derivative works.

I am happy Dorothy brought in the license.
If I was allowed to submit a letter to the judge it would be as follows: We pray you agree with what I am stating. Look forward to speaking soon.


RE: Response to Barry White Family Trust's Copyright Infringement Claim and Counterclaims Against Epic Records

Dear Judge
I am writing to formally respond to the Barry White Family Trust's claim of copyright infringement against my client, Rodney Oliver (Rodney O), and to highlight key misrepresentations made in this case. Additionally, I am requesting leave to file a counterclaim against Epic Records for misrepresentation, willful infringement, breach of contract, and fraud.

 1. The Barry White Family Trust Does Not Own the Copyright They Claim to Protect
I have conducted extensive research to ensure that my clients claim only what they legally own. As Rodney O's rights manager and publishing representative, I have reviewed all applicable copyright registrations, publishing records, and licensing agreements.

- Rodney Oliver is the legal owner of both the sound recording and publishing rights to "Everlasting Bass," as documented in the U.S. Copyright Office records and BMI registration.
- The Barry White Family Trust is not the registered copyright holder of I'm Gonna Love You Just A Little More, Babe.
- There is no recorded transfer of copyright ownership from the original registrants (Janus Music Corporation and Sa-Vette Music Inc.) to the Barry White Family Trust.
- The Trust has failed to produce any valid assignment or legal documentation to prove ownership.

## 2. The Barry White Family Trust's Claim is Untimely and Without Merit

For nearly 40 years, Everlasting Bass has been a sentinel piece of hip-hop culture, a track that helped define the Miami bass sound. Never once during these decades did Barry White or his estate claim infringement.

- Everlasting Bass was released in 1986, when Barry White was alive and active in the music industry.
- Barry White never alleged infringement in his lifetime, nor did his estate for nearly four decades.
- Barry White, a Los Angeles native, lived in the very region where "Everlasting Bass" was most popular and would have been aware of the song.
- In his own biography, Barry White acknowledged the rise of hip-hop in the late 1980s, yet made no claims regarding Everlasting Bass.

## 3. Plaintiffs' Legal Representation is Manipulating the Legal System

I would like to bring attention to a significant shift in language within the Barry White Family Trust's legal filings:

- Up until this most recent filing, attorney Dorothy Weber repeatedly stated that the Trust held "exclusive ownership" of the copyright.
- However, in the latest filings, she uses the term "holding" and "hold"—a clear attempt to obscure the Trust's lack of true ownership.
- This shift in wording appears to be a tactic to mislead the Court into assuming ownership where no legal evidence exists.

If the Trust actually owned this copyright, why can they not simply produce a valid transfer of ownership document? The plaintiffs are forcing the Court to accept their claim at face value—an abuse of legal proceedings that unfairly targets an independent artist rather than the major record labels that have monetized this song.

## 4. The Barry White Family Trust is Targeting an Independent Artist Instead of Industry Giants

Ms. Weber's filings focus extensively on the high-profile artists and major record labels involved in "Like That"—including Future, Kendrick Lamar, and Epic Records—yet they fail to hold these entities accountable.

- Instead of targeting the "Big Machine" of the music industry, the Trust has set its sights on Rodney O, a self-made hip-hop pioneer who has retained control over his music for decades.
- This raises the question: Why pursue only Rodney O? Why not challenge the major labels and artists directly profiting from "Like That"?
- The plaintiffs' selective enforcement raises serious concerns about their true motivations—whether they are genuinely seeking to protect Barry White's legacy or simply attempting to profit from Rodney's independent success.

## 5. The Barry White Trust's False Jurisdiction Claim in New York

The Barry White Family Trust claims that New York jurisdiction applies based on a license agreement, yet they ignore key facts from discovery that contradict their argument:

- We complied with discovery requests and provided all relevant licensing correspondence.
- Contrary to Ms. Weber's claim, Rodney O and his legal team contested the license multiple times.
- Epic Records exerted coercive tactics, threatening Rodney's professional and personal relationships in order to force compliance.

 6. Epic Records Engaged in Willful Infringement and Fraud
Epic Records released "Like That" without Rodney's final approval, exploiting his work and denying him fair compensation:

- Rodney never signed off on the final licensing terms.
- Epic misrepresented the full content of the song—failing to disclose Kendrick Lamar's contributions, thereby preventing Rodney from negotiating a fair royalty share.
- Epic admitted withholding the full master version to prevent Rodney from realizing the extent of the changes made to his work.
- The song was released without Rodney's final authorization, violating his derivative work rights.

 7. Counterclaims Against Barry White Trust and Epic Records
Given the plaintiffs' misrepresentations and Epic Records' fraudulent practices, I respectfully request leave to file a counterclaim against the Barry White Family Trust and Epic Records for:

1. Wrongful assertion of copyright infringement (against Barry White Family Trust)
2. Misrepresentation and fraudulent business practices (against Epic Records)
3. Willful copyright infringement (against Epic Records)
4. Breach of contract (against Epic Records)
5. Fraudulent concealment of material licensing terms (against Epic Records)

 Conclusion
The Barry White Family Trust has no legal standing to assert ownership over I'm Gonna Love You Just A Little More, Babe and has failed to produce any valid documentation to support their claims. Meanwhile, Epic Records knowingly misrepresented the terms of the licensing deal, stripping Rodney of his rights and financial stake in Like That.

I respectfully request that the Court dismiss the plaintiffs' claims due to lack of standing and grant leave to file counterclaims against Epic Records for willful infringement and fraud.

Respectfully submitted,

Necole Key
Rights Manager,

Necole Key
Rights Manager
[www.ladykeymanagement.com](http://www.ladykeymanagement.com)
626-598-6647

 Outlook

---

**(No subject)**

---

**From**  Necole Key <necole@ladykeymanagement.com>

**Date**  Fri 2/7/2025 2:24 PM

**To**  Nécole Key <necolekey@gmail.com>

📎 8 attachments (9 MB)
Screenshot_20250207_115503_Outlook.jpg; Screenshot_20250207_115352_Outlook.jpg;
Screenshot_20250207_115415_Outlook.jpg; Screenshot_20250207_115401_Outlook.jpg;
Screenshot_20250207_115442_Outlook.jpg; Screenshot_20250207_115532_Outlook.jpg;
Screenshot_20250206_233418_Outlook.jpg; Screenshot_20250207_115339_Outlook.jpg;

**Dear Tim,**

I want to express my respect and appreciation for your efforts in representing Rodney in the ongoing case. Your dedication to protecting his rights is invaluable, and I acknowledge the complexity of the situation.

However, after conducting further independent research, I have concerns that the firm's approach relies heavily on **industry norms** rather than **applicable legal statutes and case law**. While industry practices are important, they should not take precedence over legal protections that could offer Rodney stronger recourse.

Rodney's situation involves clear breaches of contract, unauthorized exploitation of intellectual property, and misrepresentation, all of which have well-established legal precedents that support stronger action. Below is a summary of the violations committed by Epic Records and the case law that supports Rodney's claims:

**Epic's Attempt to Shift Infringement Liability to Rodney While the Long-Form Agreement Was Pending (see attached email confirming awaiting agreement)**

- **Violation:** Epic is attempting to make Rodney liable for Barry White's infringement claim even though the long-form agreement was never signed.
- **Rodney had no prior infringement claims against** *Everlasting Bass* **until** *Like That* **was released. Barry White's estate approached Epic about the alleged infringement, and Epic redirected liability to Rodney without proof that his sample caused the infringement.**
- **Rodney, acting in good faith, agreed to indemnify while awaiting the long-form agreement to set indemnification terms. However, Epic's attempt to impose full responsibility on Rodney without finalizing the indemnification terms is illegal and constitutes contractual misrepresentation.**
- **Having Rodney defend against an infringement claim on the composition while the finalized long-form agreement was pending is not in his best interest. Instead, the legal strategy should focus on suing Epic, the artists, their labels, and publishers for the damages and violations committed against Rodney.**
- **Case Law:**

- *Feldman v. Google, Inc.* (2007) – A contract cannot be enforced if key provisions were still being negotiated and never finalized in writing.
- *Bridgeport Music, Inc. v. Dimension Films* (2005) – Labels must conduct full rights clearance and cannot shift liability due to negligence.
- *Sony Music Holdings v. Elijah Blue Allman* (2014) – Courts ruled that an artist cannot be forced into a legal liability position when contract terms were still pending negotiation.
- **Legal Claims:** Breach of contract, fraudulent misrepresentation, demand for release from indemnification, unjust enrichment.

✅ **Epic used Rodney's music before a contract was signed, violating copyright law.**

**1. Unauthorized Use of Master Recording and Composition Prior to Signed Agreements**

- Violation: Epic Records used *Everlasting Bass* before obtaining a signed agreement, performing and releasing it before proper authorization.

✔ **Offer Letter dated March 20, 2024**
✔ **Signed Agreement dated March 26, 2024**
✔ **Payment Confirmation dated April 5, 2024**
✔ **Correspondence confirming failure to finalize master rights**

**(see attached email regarding Rolling Loud performance)**

 Performance date Sunday, March 17, 2024

✅ **Epic allowed public performances of the song without Rodney's approval, further infringing his rights.**

https://youtu.be/wweSGJhNOXQ?si=EGZStgxY56XEFC7C

- **Case Law:**
  - *Razor & Tie Direct, LLC v. David Guetta* (2016) – Unauthorized use of a sample without finalizing a licensing agreement is willful copyright infringement.
  - *ABKCO Music, Inc. v. Sagan* (2020) – Unauthorized use of copyrighted material prior to contract execution constitutes infringement and breach of implied contract.
- **Legal Claims:** Copyright infringement (17 U.S.C. § 501), unjust enrichment, breach of implied contract.

✅ **Epic misrepresented rights clearance, committing fraud and deceptive business practices.**

**4. Epic Lied About Rights Clearance – Fraudulent Inducement**
**Key Facts:**

- Epic told Rodney they were securing full rights clearance before using the sample.  **(see attached email asking about rights holders)**
- In reality, they failed to properly clear the composition rights,
- If Rodney had known the risks, he would not have licensed the sample to Epic.

**Supporting Case Law:**

- TufAmerica Inc. v. Diamond (2014) – Fraudulent misrepresentation occurs when a label misleads an artist about rights clearance.
- Universal Music Group v. Augusto (2011) – A label can be held liable for making false assurances about a contract to secure a deal.


## 2. Failure to Pay 15% Master Royalties and Provide Accounting Statements

- **Violation:** Epic has withheld Rodney's agreed-upon royalties and has failed to provide accounting transparency.

Epic has yet to provide a formal notification as to reasoning of withholding nor accounting statements of earnings that was agreed.

- **Case Law:**
  - *F.B.T. Productions v. Aftermath Records (2010)* – Labels must pay artists their contractually obligated earnings and provide full accounting statements.
  - *Bridgeport Music, Inc. v. Universal-MCA Music Publishing (2001)* – Labels cannot withhold royalty payments without justification.
- **Legal Claims:** Breach of contract, unjust enrichment, demand for full revenue disclosure and audit.

## 3. Fraudulent Misrepresentation – Deceptive Sample Approval Process

- **Violation:** Epic provided only part of the song for approval, preventing Rodney from making an informed decision.
- **Case Law:**
  - *TufAmerica, Inc. v. Diamond (2014)* – Misleading an artist about sample usage invalidates a contract and constitutes fraud.
  - *MCA Records v. Charly Records (1993)* – Failure to disclose full details in a licensing deal is fraudulent misrepresentation.
- **Legal Claims:** Fraudulent inducement, contract rescission, demand for additional compensation.

## 4. Failure to Include Rodney in Grammy Credits & Recognition

- **Violation:** Epic omitted Rodney's name in Grammy nominations despite his sample being used.
- **Case Law:**
  - *Marx v. Columbia Records (1998)* – Failure to credit an artist causes reputational and financial harm.
  - *Stein v. Buccaneers Limited Partnership (2018)* – Omission from an industry award affects earning potential.
- **Legal Claims:** Breach of industry norms, professional damages claim, demand for proper credit.


## 5. Recommended Legal Strategy for Rodney

Given the above violations and supporting legal precedents, I recommend Rodney consider the following options:

  1. **Seek Immediate Removal from Infringement Claims:**

- Argue that the **unfinalized agreement and lack of finalized splits securing Rodney's 50%** mean he cannot be held liable for infringement.
- Emphasize **Epic's misrepresentation and failure to secure a fully executed agreement** before releasing the song.
- Demand that **Epic assume full responsibility for any infringement claims** arising from their negligence in licensing.

2. **Alternatively, Proceed with an Infringement and Breach of Contract Claim Against Epic:**

- Pursue **legal action against Epic for failing to secure proper licenses before commercial release**.
- Sue for **breach of contract, fraudulent misrepresentation, and failure to account for royalties and publishing rights**.
- Demand **full financial damages, including lost earnings, reputational harm, and punitive damages for willful misconduct**.
- Seek damages from **all parties, including artists, their labels, and publishers who have benefited from the unauthorized use of Rodney's music, both before the short-form agreement and after while the long-form agreement remained pending**.
- Include claims for **shifting blame onto Rodney without factual proof and seek full reimbursement for legal expenses incurred due to Epic's misconduct**.

I believe these legal precedents provide a strong basis for Rodney to pursue a more aggressive legal strategy. I would appreciate the opportunity to discuss these findings further and explore legal avenues that may provide a stronger foundation for Rodney's claims. Please let me know when we can schedule a meeting to go over these concerns.

Thank you for your continued efforts, and I look forward to working together to ensure Rodney's rights are fully protected.

Best regards,
**Necole Key**
Rights Manager

Necole Key
Rights Manager
626-598-6647
www.ladykeymanagement.com

Outlook

---

**RODNEY O**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 2/4/2025 7:52 AM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>

Hi Tim

I hope you are well.  Great work in your response! It was beautifully done..  I let Rodney know it was well done and my belief it has a high chance of getting dismissed.

Rodney asked me, " what's next?"  I thought hearing the plan from you would be best. Let me know when you have time to jump on a call. It could be this week or next.  I know you are busy.

I wouldn't be me if.... lol

I was thinking to push hard for dismissed with prejudice.  Notifying the judge of the financial harm it has caused Rodney to defend himself in the wrong venue.  Considering Weber experience she was aware it was the wrong jurisdiction.
Also, since our argument is so strong for dismissal would it be possible to now state failure to state a claim.

 – Courts have consistently ruled that common musical elements and groove-based styles are not protected under copyright (e.g., Williams v. Gaye (2018), Newton v. Diamond (2003)). If this case hinges on stylistic similarity rather than direct copying, it does not meet the threshold for infringement. Ed Sheeran victory about not being able to copyright chords is another example.

 - Independent Creation

- **Rodney developed his  bassline organically** within the hip-hop and electro-funk tradition.
- **Were influenced by general funk, reggae, and jazz traditions**, rather than a specific track.
- **Used 808 bass synthesis**, which is fundamentally different in production from Barry White's live-recorded basslines.

Thanks again Tim. You are kicking ass. We appreciate you .

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

## Outlook

---

**Re: SCHEDULE CALL**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Wed 1/22/2025 2:57 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

Hi Tim,

After analyzing the sheet music for *"I'm Gonna Love You Just a Little More, Babe,"  I am correct in my assumption of the iconic bassline not being copyrightable .

 Here is clear breakdown of the elements that may or may not qualify for copyright protection.

Non-Copyrightable Elements
1. N.C. (No Chords):The notation of **N.C.** indicates sections where no harmonic structure or chords are played. As there is no musical content provided in these sections, they lack the originality and creative substance required for copyright protection.

2. **G Minor (Gm) Vamp:** The vamp is built around the single **Gm** chord, which is a standard, widely used harmonic element. Simple repetitions of a chord or common progressions, without additional creative input, are considered too generic to qualify for copyright.

 Copyrightable Element
- **Spoken Words:** While the **N.C.** and vamp sections lack originality, the **spoken word content** in the sheet music is eligible for copyright protection. As a literary element, the spoken words demonstrate originality and creative expression, qualifying them for protection independent of the musical components.

I don't see how the musicologist can argue  the N.C no chords sections and Vamp in G minor would be eligible for copyright.  Only the lyrics Spoken word would be. Eager to hear his feed back.

Best regards,
Necole

---

Let me know if you'd like any other changes!

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Sent:** Wednesday, January 22, 2025 2:08:31 PM
**To:** Necole Key <necole@ladykeymanagement.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** RE: SCHEDULE CALL

Copyright Deposit of Barry White composition.



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**Learn about our new brand.**

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 21, 2025 9:44 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** [EXT] SCHEDULE CALL

Good morning Tim

May  we scheduled a call for tomorrow to bring Rodney up to speed with the case please.
Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

 **Outlook**

---

## Fw: Jackie Mittoo Forward email from Reagge Record

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 1/14/2025 9:31 AM

**To**    Matson, Timothy C. <tmatson@foxrothschild.com>


Necole Key
Rights Manager
[www.ladykeymanagement.com](www.ladykeymanagement.com)
626-598-6647

---

**From:** intl@reggaerecord.com <intl@reggaerecord.com>
**Sent:** Monday, January 13, 2025 5:19:00 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Subject:** RE: Jackie Mittoo

Hi Necole,

Thank you for contacting us.
I will refer to it.

Best regards
shintaro

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 14, 2025 2:36 AM
**To:** intl@reggaerecord.com
**Cc:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Subject:** Re: Jackie Mittoo

Hello

I appreciate you replying  regarding Jackie Mittoo's  work. After thorough research I have found 1971 to be correct.

I have attached a links below that have provided the timeline when Jackie Mittoo was with Coxsone/Studio One which was from the opening of the studio in 1962 to Mittoo departure to Canada in 1971

Deeper and Deeper Catalog numbering SO 3182 The pressing scratching of FCD 6001-1 that I  have located on the physical record itself that I have personally purchased.   also aligns with Federal Records pressing with other recording in the year.

Jackie Mittoo | Sounds Like Toronto

Jackie Mittoo Songs | Staimusic - The Best of Reggae and Ska

Riddimguide - Tunes - Jackie Mittoo songs

I wanted to provide you with sufficient information regarding this record


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, December 23, 2024 5:48:25 PM
**To:** intl@reggaerecord.com <intl@reggaerecord.com>
**Subject:** Re: Jackie Mittoo

Thank you so much for getting back to me..

Appreciate it.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** intl@reggaerecord.com <intl@reggaerecord.com>
**Sent:** Monday, December 23, 2024 5:41:10 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Subject:** RE: Jackie Mittoo

Hello Necole,


We also rely on data from Discogs.

Please see below.


https://www.discogs.com/ja/release/2858105-The-Manchesters-2-Jackie-Mittoo-Selassie-Bandman-Deeper-Deeper

Best regards

shintaro

---

**From:** Necole Key <<u>necole@ladykeymanagement.com</u>>
**Sent:** Tuesday, December 24, 2024 5:25 AM
**To:** <u>intl@reggaerecord.com</u>
**Subject:** Jackie Mittoo

Hello,

I hope you are well. I am currently trying to confirm the year of release for Deeper and Deeper by Jackie Mittoo. Your site has it as 1971 may you kindly confirm that is the correct date and if so how were you able to locate the correct year.  Any help will be appreciated. Thank you for your time.

Necole Key

Rights Manager

626-598-6647

<u>www.ladykeymanagement.com</u>

 Outlook

---

**Re: FINDINGS**

---

**From**  Necole Key <necole@ladykeymanagement.com>
**Date**  Wed 12/4/2024 3:19 PM
**To**    Matson, Timothy C. <tmatson@foxrothschild.com>; Mike Jackson <m.sendhere@gmail.com>; Rodney <rodneyocali@yahoo.com>

NOW it makes sense. DEEPER AND DEEPER  was created to be a reissue of Jackie Mittoo's early work Hot Milk released in the 60s it was his attempt to reclaim his work after others stole it

If you listen to Hot Milk replacing the organ with Bass would create Deeper and Deeper

Jackie Mittoo's "Hot Milk" is a seminal reggae instrumental, first recorded in the late 1960s. Over time, this track has been reissued and reinterpreted under various titles, including "Deeper and Deeper." These reissues were part of Mittoo's strategy to reclaim ownership and secure royalties for his compositions, especially in response to unauthorized use and lack of proper credit.

In the 1970s, Mittoo relocated to Toronto, Canada, where he continued to produce music and re-record his earlier works. This period saw the release of albums like "Showcase" (1978), which featured tracks such as "Hot Milky" —a rendition of the original "Hot Milk." These re-recordings allowed Mittoo to assert his rights over his creations and adapt to the evolving reggae scene.

The reissue of "Hot Milk" as "Deeper and Deeper" can be seen as part of Mittoo's broader effort to maintain control over his music and address issues of copyright infringement. By releasing his compositions under new titles and arrangements, he aimed to protect his intellectual property and ensure proper recognition and compensation for his work.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key
**Sent:** Wednesday, December 4, 2024 2:44:56 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Mike Jackson <m.sendhere@gmail.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** FINDINGS

I found a 400 page report on Jackie Mittoo's her are highlights of how he felt about others using his music and what he did to try to take his music back


Jackie Mittoo expressed significant frustration and bitterness over the lack of credit and royalties for his contributions to music. He acknowledged the systematic reuse of his work in Jamaican popular music without appropriate recognition or compensation:

1. General Frustration : Mittoo described how basslines he created in the 1960s were repeatedly used in the 1970s and 1980s by other artists without credit. He expressed deep frustration over hearing his creations used without acknowledgment and highlighted the absence of a framework to claim copyright over basslines in particular:
    > "It's just that certain people don't understand what's happening. They don't know how it feels for someone like me… You created it in the 60s and even now in the 80s you hear someone else use it… And you can't even claim anything because it's not a melody line".

2. Bitterness Over Compensation : Mittoo emphasized the unpleasant nature of pursuing royalties, which often required legal action. He noted:
    > "The only time I ever get any recompense is if I go out and get a lawyer or some kind of strong support to claim. And it doesn't really feel pleasant to go trying to claim and tell people, 'I'm the one who did this.' The whole industry knows that Jackie Mittoo created those bass lines".

3. Efforts to Reclaim Ownership : Mittoo actively sought to reclaim ownership and royalties by remixing and revitalizing his old classics. He described this as an attempt to "copyright his original works" when they were re-released under new titles or albums.

Mittoo's reflections reveal his struggle with exploitation in the music industry and his efforts to secure acknowledgment and financial compensation for his influential work.


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

## Determining the credibility

---

**From**  Necole Key <necole@ladykeymanagement.com>

**Date**  Wed 12/4/2024 2:28 PM

**To**    Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson
          <m.sendhere@gmail.com>

Tim

If i can provide Everything that it states to confirm the 1971 release date would that be admissible
evidence?

Determining the credibility of sources for the release year of Jackie Mittoo's "Deeper and Deeper"
(1971 vs. 1974) depends on evaluating the context and reliability of each claim. Here's how you can
assess this:

## Sources Claiming 1974

1. **Discogs**: Frequently updated by users, Discogs is a widely used music database, but it relies on
   contributions from collectors. While reliable for broad reference, errors can occur if contributors
   use reissues or assumptions rather than first-hand sources like original pressings.

2. **Label Information**: If 1974 is derived from secondary pressings or reissues, it may inaccurately
   reflect the initial release.

   **Credibility**: Moderately high but requires verification against original pressings or label
   documentation.

---

## Sources Claiming 1971

1. **Contemporaneous Reports**: If a source cites reviews, advertisements, or promotional material
   from around 1971, it has stronger credibility since it aligns with the actual period of production
   and release.

2. **Studio One Catalog Context**: Comparing SO 3182 with other catalog numbers close in
   sequence (like SO 3180 and SO 3186) that are better documented (e.g., Hortense Ellis's *Why
   Birds Fly* from 1972) may suggest 1971 aligns better with the Studio One timeline.

   **Credibility**: Higher if it aligns with catalog numbers, label data, or firsthand contemporaneous
   documentation.

---

## Conclusion

The claim of 1971 seems stronger if it:

- Matches catalog sequencing.
- Aligns with documentation from Studio One's output timeline.
- Comes from direct or contemporaneous sources like ads, music magazines, or original record sleeves.

The claim of 1974 may represent a reissue, especially if sources don't specifically clarify the version being referenced. To confirm definitively, cross-checking with Studio One archives or examining original pressing details (e.g., matrix numbers) would be crucial.


Necole Key
Rights Manager
[www.ladykeymanagement.com](www.ladykeymanagement.com)
626-598-6647

 Outlook

---

## Musicologist

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Wed 12/4/2024 1:59 PM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

Hi Tim

Curious as to the report of the musicologists.  Did you have him compare Barry sing to Motown songs like Ain't No mountain high enough  Four Tops Bernadette and Standing in the Shadows of love. Also, Marvin Gaye let's get in on.

I believe by proving they all shared a common place element

Also have you requested the deposit.  It would be Nice for Dorothy to provide it but being that I she won't, would it be possible for you to obtain it from the copyright office. Litigation attorneys can request it.

As am researching Jackie Mittoo I learned he did an arrangement using Marvin Gaye Let's get it on. In my earlier research I learned let's get it on shared similarities to Barry's song amongst others.

Also did you give the musicologists the report Atron gave you from Stanley Clark. If so, what was his thoughts.

Once again appreciate you.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

**Mechanical Licensing Collective**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 12/3/2024 2:56 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson <m.sendhere@gmail.com>

📎 2 attachments (874 KB)
Screenshot_20241203_145106_Chrome.jpg; Screenshot_20241203_145144_Chrome.jpg;

Hi Tim

Hope your week is off to a great start.

I have a attached to screenshot  from the MLC database one is I'm Gonna Love You Just a Little More Babe and the other is a randon song of Barry's

You will notice  I'm Gonna Love You Just a Little bit More babe is fully controlled by Warner

The work is is co publishing and administrators of the song.

That may provide more understanding on who is the owner

Appreciate you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

## Rodney O/Barry White case

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Mon 12/2/2024 11:40 AM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson <m.sendhere@gmail.com>; Atron Gregory <atrongregory@gmail.com>

📎 2 attachments (694 KB)
Screenshot_20241202_113518_Chrome.jpg; Screenshot_20241202_113603_Chrome.jpg;

Hi Tim

I have attached screenshots that provides the owner of one of the publishers listed in BMi who has a controlling interest I believe

Please review and provide any additional information you may need that I could research

Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

## Update on Studio One Catalog

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 12/10/2024 5:25 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>

📎 1 attachment (2 MB)
651eb52a5f2e8.pdf;

Hi Tim

Hope you are having a great week. Two things, first the daughter of the owner of studio one sent me a photo in WhatsApp showing me she has received the catalog and will be mailing it to me this week. Second, being you are a lover of copyright as myself I thought you would find the report I attached interesting.

The report is about Perceptual and automated estimates of infringement.

Recent music information retrieval research has proposed objective algorithms to automatically detect musical similarity, which might reduce subjectivity in music copyright infringement decisions. I used their methods to compare Barry White song and Everlasting Bass

Maybe you can have our specialist provide a data analysis as well..

Below are the findings

      Objective :

To compare Barry White's "I'm Gonna Love You Just a Little More Baby" with Rodney O & Joe Cooley's "Everlasting Bass" using methods derived from the document, including perceptual similarity, melodic identity (PMI), audio similarity (Musly Algorithm), and contextual analysis.

---

      1. Full Audio (Perceptual Similarity) :

- Barry White :

   - Rich orchestration with strings and brass.

   - Slow tempo and smooth vocals emphasize romance and sensuality.

   - Traditional R&B structure.

- Rodney O :

   - Minimalist production focused on rhythm and groove.

   - Utilizes drum machines and bass loops, characteristic of hip-hop.

   - Emphasis on a repetitive bassline with spoken-word delivery.

- Finding : Listeners would perceive these tracks as distinctly different due to their divergent genres, tempos, and arrangements.

---

    2. Melodic Identity (PMI) :
- Barry White :
  - Melody revolves around a C Minor progression with chromatic passing tones.
  - Strong melodic foundation with rich harmonies.
- Rodney O :
  - Lacks a defined melodic structure, focusing on rhythm instead.
  - Bassline is rhythmically driven without harmonic complexity.
- Finding : PMI scores would be low, as the melodic content in Barry White's track has no equivalent in Rodney O's work.

---

    3. Audio Similarity (Musly Algorithm) :
- Barry White :
  - Instrumentation includes live instruments and analog recording techniques.
  - Production emphasizes warmth and lushness.
- Rodney O :
  - Digital production with drum machines and sampling.
  - Sparse, punchy sound focusing on rhythm and energy.
- Finding : The timbral and rhythmic differences would result in a low similarity score, reflecting the distinct production styles.

---

    4. Contextual & Historical Analysis :
- Barry White :
  - Released in 1973 as a romantic R&B ballad.
  - Represents the lush orchestration trend of the era.
- Rodney O :
  - Released in the 1980s during the rise of hip-hop and electro-funk.
  - Focused on rhythm and bass culture, emblematic of street sounds.
- Finding : The historical and cultural contexts of the two songs are vastly different, reducing any perceived or inferred similarity.

---

    Summary of Findings :
- Perceptual Similarity : Low similarity due to genre and arrangement differences.
- Melodic Identity (PMI) : Low similarity because of differing melodic structures.
- Audio Similarity (Musly) : Low similarity based on distinct production techniques.
- Contextual Analysis : Minimal overlap in historical and cultural contexts.

The analysis concludes that the two songs are fundamentally different across all examined dimensions.

---

Methodology:
- Perceptual analysis was modeled on listener judgments of full audio and melody.
- Melodic similarity was calculated using PMI, focusing on the alignment of pitch sequences.
- Audio similarity relied on Musly's timbral and rhythmic comparisons.
- Contextual analysis examined the cultural and historical backgrounds of the tracks.


I find it all fascinating.




Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

## You got me to think 

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Thu 2/20/2025 3:29 AM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>

📎 12 attachments (5 MB)

Screenshot_20250220_013434_M365 Copilot.jpg; Screenshot_20250220_013457_M365 Copilot.jpg;
Screenshot_20250220_013912_M365 Copilot.jpg; Screenshot_20250220_013200_M365 Copilot.jpg;
Screenshot_20250219_222726_M365 Copilot.jpg; Screenshot_20250220_013844_M365 Copilot.jpg;
Screenshot_20250220_013934_M365 Copilot.jpg; Screenshot_20250220_013515_M365 Copilot.jpg;
Screenshot_20250219_134805_Docs.jpg; Screenshot_20250220_013411_M365 Copilot.jpg;
Screenshot_20250219_134509_Docs.jpg; Screenshot_20250217_090253_Outlook.jpg;


TIM

Good morning
First, I want to apologize for how I may have come off the other day during our conversation. I was going over our discussion in my head and I realize I said something that may have come off wrong.

I stated that you are handling the Barry case. I will handle the Epic situation. I didn't mean it in a dismissive way. I was thinking in my head, "let him handle the Barry case before you throw all this information and get him spinning with unnecessary information. I'll just filter it and bring it back when I have what you need to convince you."
I would love for you to be our go to attorney, but I never want you to take on something you didn't feel confident in defending. I absolutely value your knowledge. I geek out talking to you. Lol

Anyway
I was thinking why would Dorothy include the composition license that states Rodney obtained $5000. That is not substantial enough to warrant New York jurisdiction.
I hope she doesn't think she can attach the master license. The infringement is on the composition. As I know you are aware.

So, after our talk I heard all, you said, and I have the following for you to consider

I understand how you feel Rodney is trapped by this non-exclusive license but please hear me out. I heard all you said you would need regarding the language in the non-exclusive license.
Epic knows I am correct, and they have yet to provide any signed documents as I requested. They want me to fall back. That's why they had Dorothy say what she did.

See below.

The non-exclusive license grant of rights DOES NOT include modification or adaption of the embodied Future Master

Rodney only approved the EMBODIED MASTER by Future that they allowed him to hear

They misrepresented and withheld needed information for Rodney to make a sound decision.

Ignore my request for all rights holders and the authority they had.

Blatant disregard of Rodney Rights releasing the track before obtaining a signed agreement

Cohesion by threats on Rodney Relationship and withholding of payment to comply

Meritless claim of Infringement and be held responsible and wrongful withholding of earnings and allocation of funds. MILLER VS UMG States that warranties without be proven does not negate contractual obligations

There is only one reason why Dorothy would say what she said and it's because Epic reached out to her.

Now you know why I emailed last week.

See attached doc. I have of them too and recordings of negotiations

Appreciate you I do!

Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

## DOROTHY WEBER

---

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Sat 2/22/2025 12:23 PM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>

Hi Tim

I read Dorothy filing. It confirm that Rob spoke to her. I have been refuting this license stating we never heard the whole song with Kendrick Lamar. The license we gave them was for the composition we heard not what they released.
An email from Future attorney admits that they did not give us the song with Kendrick Lamar. Proving they violated Rodney right to approve derivative works of his music.
Also the grant of rights did not include remixes, modifications and derivative works.

I am happy Dorothy brought in the license.
If I was allowed to submit a letter to the judge it would be as follows: We pray you agree with what I am stating. Look forward to speaking soon.


RE: Response to Barry White Family Trust's Copyright Infringement Claim and Counterclaims Against Epic Records

Dear Judge
I am writing to formally respond to the Barry White Family Trust's claim of copyright infringement against my client, Rodney Oliver (Rodney O), and to highlight key misrepresentations made in this case. Additionally, I am requesting leave to file a counterclaim against Epic Records for misrepresentation, willful infringement, breach of contract, and fraud.

 1. The Barry White Family Trust Does Not Own the Copyright They Claim to Protect
I have conducted extensive research to ensure that my clients claim only what they legally own. As Rodney O's rights manager and publishing representative, I have reviewed all applicable copyright registrations, publishing records, and licensing agreements.

- Rodney Oliver is the legal owner of both the sound recording and publishing rights to "Everlasting Bass," as documented in the U.S. Copyright Office records and BMI registration.
- The Barry White Family Trust is not the registered copyright holder of I'm Gonna Love You Just A Little More, Babe.
- There is no recorded transfer of copyright ownership from the original registrants (Janus Music Corporation and Sa-Vette Music Inc.) to the Barry White Family Trust.
- The Trust has failed to produce any valid assignment or legal documentation to prove ownership.

## 2. The Barry White Family Trust's Claim is Untimely and Without Merit

For nearly 40 years, Everlasting Bass has been a sentinel piece of hip-hop culture, a track that helped define the Miami bass sound. Never once during these decades did Barry White or his estate claim infringement.

- Everlasting Bass was released in 1986, when Barry White was alive and active in the music industry.
- Barry White never alleged infringement in his lifetime, nor did his estate for nearly four decades.
- Barry White, a Los Angeles native, lived in the very region where "Everlasting Bass" was most popular and would have been aware of the song.
- In his own biography, Barry White acknowledged the rise of hip-hop in the late 1980s, yet made no claims regarding Everlasting Bass.

## 3. Plaintiffs' Legal Representation is Manipulating the Legal System

I would like to bring attention to a significant shift in language within the Barry White Family Trust's legal filings:

- Up until this most recent filing, attorney Dorothy Weber repeatedly stated that the Trust held "exclusive ownership" of the copyright.
- However, in the latest filings, she uses the term "holding" and "hold"—a clear attempt to obscure the Trust's lack of true ownership.
- This shift in wording appears to be a tactic to mislead the Court into assuming ownership where no legal evidence exists.

If the Trust actually owned this copyright, why can they not simply produce a valid transfer of ownership document? The plaintiffs are forcing the Court to accept their claim at face value—an abuse of legal proceedings that unfairly targets an independent artist rather than the major record labels that have monetized this song.

## 4. The Barry White Family Trust is Targeting an Independent Artist Instead of Industry Giants

Ms. Weber's filings focus extensively on the high-profile artists and major record labels involved in "Like That"—including Future, Kendrick Lamar, and Epic Records—yet they fail to hold these entities accountable.

- Instead of targeting the "Big Machine" of the music industry, the Trust has set its sights on Rodney O, a self-made hip-hop pioneer who has retained control over his music for decades.
- This raises the question: Why pursue only Rodney O? Why not challenge the major labels and artists directly profiting from "Like That"?
- The plaintiffs' selective enforcement raises serious concerns about their true motivations— whether they are genuinely seeking to protect Barry White's legacy or simply attempting to profit from Rodney's independent success.

## 5. The Barry White Trust's False Jurisdiction Claim in New York

The Barry White Family Trust claims that New York jurisdiction applies based on a license agreement, yet they ignore key facts from discovery that contradict their argument:

- We complied with discovery requests and provided all relevant licensing correspondence.
- Contrary to Ms. Weber's claim, Rodney O and his legal team contested the license multiple times.
- Epic Records exerted coercive tactics, threatening Rodney's professional and personal relationships in order to force compliance.

6. Epic Records Engaged in Willful Infringement and Fraud

Epic Records released "Like That" without Rodney's final approval, exploiting his work and denying him fair compensation:

- Rodney never signed off on the final licensing terms.
- Epic misrepresented the full content of the song—failing to disclose Kendrick Lamar's contributions, thereby preventing Rodney from negotiating a fair royalty share.
- Epic admitted withholding the full master version to prevent Rodney from realizing the extent of the changes made to his work.
- The song was released without Rodney's final authorization, violating his derivative work rights.

7. Counterclaims Against Barry White Trust and Epic Records

Given the plaintiffs' misrepresentations and Epic Records' fraudulent practices, I respectfully request leave to file a counterclaim against the Barry White Family Trust and Epic Records for:

1. Wrongful assertion of copyright infringement (against Barry White Family Trust)
2. Misrepresentation and fraudulent business practices (against Epic Records)
3. Willful copyright infringement (against Epic Records)
4. Breach of contract (against Epic Records)
5. Fraudulent concealment of material licensing terms (against Epic Records)

Conclusion

The Barry White Family Trust has no legal standing to assert ownership over I'm Gonna Love You Just A Little More, Babe and has failed to produce any valid documentation to support their claims. Meanwhile, Epic Records knowingly misrepresented the terms of the licensing deal, stripping Rodney of his rights and financial stake in Like That.

I respectfully request that the Court dismiss the plaintiffs' claims due to lack of standing and grant leave to file counterclaims against Epic Records for willful infringement and fraud.

Respectfully submitted,

Necole Key
Rights Manager,

Necole Key
Rights Manager
[www.ladykeymanagement.com](www.ladykeymanagement.com)
626-598-6647

 Outlook

---

## (No subject)

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Fri 2/7/2025 2:24 PM

**To** Nécole Key <necolekey@gmail.com>

📎 8 attachments (9 MB)
Screenshot_20250207_115503_Outlook.jpg; Screenshot_20250207_115352_Outlook.jpg;
Screenshot_20250207_115415_Outlook.jpg; Screenshot_20250207_115401_Outlook.jpg;
Screenshot_20250207_115442_Outlook.jpg; Screenshot_20250207_115532_Outlook.jpg;
Screenshot_20250206_233418_Outlook.jpg; Screenshot_20250207_115339_Outlook.jpg;

**Dear Tim,**

I want to express my respect and appreciation for your efforts in representing Rodney in the ongoing case. Your dedication to protecting his rights is invaluable, and I acknowledge the complexity of the situation.

However, after conducting further independent research, I have concerns that the firm's approach relies heavily on **industry norms** rather than **applicable legal statutes and case law**. While industry practices are important, they should not take precedence over legal protections that could offer Rodney stronger recourse.

Rodney's situation involves clear breaches of contract, unauthorized exploitation of intellectual property, and misrepresentation, all of which have well-established legal precedents that support stronger action. Below is a summary of the violations committed by Epic Records and the case law that supports Rodney's claims:

**Epic's Attempt to Shift Infringement Liability to Rodney While the Long-Form Agreement Was Pending (see attached email confirming awaiting agreement)**

- **Violation:** Epic is attempting to make Rodney liable for Barry White's infringement claim even though the long-form agreement was never signed.
- **Rodney had no prior infringement claims against *Everlasting Bass* until *Like That* was released. Barry White's estate approached Epic about the alleged infringement, and Epic redirected liability to Rodney without proof that his sample caused the infringement.**
- **Rodney, acting in good faith, agreed to indemnify while awaiting the long-form agreement to set indemnification terms. However, Epic's attempt to impose full responsibility on Rodney without finalizing the indemnification terms is illegal and constitutes contractual misrepresentation.**
- **Having Rodney defend against an infringement claim on the composition while the finalized long-form agreement was pending is not in his best interest. Instead, the legal strategy should focus on suing Epic, the artists, their labels, and publishers for the damages and violations committed against Rodney.**
- **Case Law:**

- *Feldman v. Google, Inc.* (2007) – A contract cannot be enforced if key provisions were still being negotiated and never finalized in writing.
- *Bridgeport Music, Inc. v. Dimension Films* (2005) – Labels must conduct full rights clearance and cannot shift liability due to negligence.
- *Sony Music Holdings v. Elijah Blue Allman* (2014) – Courts ruled that an artist cannot be forced into a legal liability position when contract terms were still pending negotiation.

- **Legal Claims:** Breach of contract, fraudulent misrepresentation, demand for release from indemnification, unjust enrichment.

✅ **Epic used Rodney's music before a contract was signed, violating copyright law.**

**1. Unauthorized Use of Master Recording and Composition Prior to Signed Agreements**

- Violation: Epic Records used *Everlasting Bass* before obtaining a signed agreement, performing and releasing it before proper authorization.

✔ **Offer Letter dated March 20, 2024**
✔ **Signed Agreement dated March 26, 2024**
✔ **Payment Confirmation dated April 5, 2024**
✔ **Correspondence confirming failure to finalize master rights**

**(see attached email regarding Rolling Loud performance)**

Performance date Sunday, March 17, 2024

✅ **Epic allowed public performances of the song without Rodney's approval, further infringing his rights.**

https://youtu.be/wweSGJhNOXQ?si=EGZStgxY56XEFC7C

- **Case Law:**
  - *Razor & Tie Direct, LLC v. David Guetta* (2016) – Unauthorized use of a sample without finalizing a licensing agreement is willful copyright infringement.
  - *ABKCO Music, Inc. v. Sagan* (2020) – Unauthorized use of copyrighted material prior to contract execution constitutes infringement and breach of implied contract.
- **Legal Claims:** Copyright infringement (17 U.S.C. § 501), unjust enrichment, breach of implied contract.

✅ **Epic misrepresented rights clearance, committing fraud and deceptive business practices.**

**4. Epic Lied About Rights Clearance – Fraudulent Inducement**
**Key Facts:**

- Epic told Rodney they were securing full rights clearance before using the sample. **(see attached email asking about rights holders)**
- In reality, they failed to properly clear the composition rights,
- If Rodney had known the risks, he would not have licensed the sample to Epic.

**Supporting Case Law:**

- TufAmerica Inc. v. Diamond (2014) – Fraudulent misrepresentation occurs when a label misleads an artist about rights clearance.
- Universal Music Group v. Augusto (2011) – A label can be held liable for making false assurances about a contract to secure a deal.

## 2. Failure to Pay 15% Master Royalties and Provide Accounting Statements

- **Violation:** Epic has withheld Rodney's agreed-upon royalties and has failed to provide accounting transparency.

Epic has yet to provide a formal notification as to reasoning of withholding nor accounting statements of earnings that was agreed.

- **Case Law:**
  - *F.B.T. Productions v. Aftermath Records (2010)* – Labels must pay artists their contractually obligated earnings and provide full accounting statements.
  - *Bridgeport Music, Inc. v. Universal-MCA Music Publishing (2001)* – Labels cannot withhold royalty payments without justification.
- **Legal Claims:** Breach of contract, unjust enrichment, demand for full revenue disclosure and audit.

## 3. Fraudulent Misrepresentation – Deceptive Sample Approval Process

- **Violation:** Epic provided only part of the song for approval, preventing Rodney from making an informed decision.
- **Case Law:**
  - *TufAmerica, Inc. v. Diamond (2014)* – Misleading an artist about sample usage invalidates a contract and constitutes fraud.
  - *MCA Records v. Charly Records (1993)* – Failure to disclose full details in a licensing deal is fraudulent misrepresentation.
- **Legal Claims:** Fraudulent inducement, contract rescission, demand for additional compensation.

## 4. Failure to Include Rodney in Grammy Credits & Recognition

- **Violation:** Epic omitted Rodney's name in Grammy nominations despite his sample being used.
- **Case Law:**
  - *Marx v. Columbia Records (1998)* – Failure to credit an artist causes reputational and financial harm.
  - *Stein v. Buccaneers Limited Partnership (2018)* – Omission from an industry award affects earning potential.
- **Legal Claims:** Breach of industry norms, professional damages claim, demand for proper credit.

## 5. Recommended Legal Strategy for Rodney

Given the above violations and supporting legal precedents, I recommend Rodney consider the following options:

1. **Seek Immediate Removal from Infringement Claims:**

- Argue that the **unfinalized agreement and lack of finalized splits securing Rodney's 50%** mean he cannot be held liable for infringement.
- Emphasize **Epic's misrepresentation and failure to secure a fully executed agreement** before releasing the song.
- Demand that **Epic assume full responsibility for any infringement claims** arising from their negligence in licensing.

2. **Alternatively, Proceed with an Infringement and Breach of Contract Claim Against Epic:**

- Pursue **legal action against Epic for failing to secure proper licenses before commercial release.**
- Sue for **breach of contract, fraudulent misrepresentation, and failure to account for royalties and publishing rights.**
- Demand **full financial damages, including lost earnings, reputational harm, and punitive damages for willful misconduct.**
- Seek damages from **all parties, including artists, their labels, and publishers who have benefited from the unauthorized use of Rodney's music, both before the short-form agreement and after while the long-form agreement remained pending.**
- Include claims for **shifting blame onto Rodney without factual proof and seek full reimbursement for legal expenses incurred due to Epic's misconduct.**

I believe these legal precedents provide a strong basis for Rodney to pursue a more aggressive legal strategy. I would appreciate the opportunity to discuss these findings further and explore legal avenues that may provide a stronger foundation for Rodney's claims. Please let me know when we can schedule a meeting to go over these concerns.

Thank you for your continued efforts, and I look forward to working together to ensure Rodney's rights are fully protected.

Best regards,
**Necole Key**
Rights Manager

Necole Key
Rights Manager
626-598-6647
www.ladykeymanagement.com

 Outlook

---

**RODNEY O**

---

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Tue 2/4/2025 7:52 AM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>

Hi Tim
I hope you are well.  Great work in your response! It was beautifully done..  I let Rodney know it was well done and my belief it has a high chance of getting dismissed.

Rodney asked me, " what's next?"  I thought hearing the plan from you would be best. Let me know when you have time to jump on a call. It could be this week or next.  I know you are busy.

I wouldn't be me if.... lol

I was thinking to push hard for dismissed with prejudice.  Notifying the judge of the financial harm it has caused Rodney to defend himself in the wrong venue.  Considering Weber experience she was aware it was the wrong jurisdiction.
Also, since our argument is so strong for dismissal would it be possible to now state failure to state a claim.

 – Courts have consistently ruled that common musical elements and groove-based styles are not protected under copyright (e.g., Williams v. Gaye (2018), Newton v. Diamond (2003)). If this case hinges on stylistic similarity rather than direct copying, it does not meet the threshold for infringement. Ed Sheeran victory about not being able to copyright chords is another example.

 - Independent Creation

- **Rodney developed his  bassline organically** within the hip-hop and electro-funk tradition.
- **Were influenced by general funk, reggae, and jazz traditions**, rather than a specific track.
- **Used 808 bass synthesis**, which is fundamentally different in production from Barry White's live-recorded basslines.


Thanks again Tim. You are kicking ass. We appreciate you .


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

**Re: SCHEDULE CALL**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Wed 1/22/2025 2:57 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

Hi Tim,

After analyzing the sheet music for *"I'm Gonna Love You Just a Little More, Babe,"  I am correct in my assumption of the iconic bassline not being copyrightable .

 Here is clear breakdown of the elements that may or may not qualify for copyright protection.

Non-Copyrightable Elements
1. N.C. (No Chords):The notation of **N.C.** indicates sections where no harmonic structure or chords are played. As there is no musical content provided in these sections, they lack the originality and creative substance required for copyright protection.

2. **G Minor (Gm) Vamp:** The vamp is built around the single **Gm** chord, which is a standard, widely used harmonic element. Simple repetitions of a chord or common progressions, without additional creative input, are considered too generic to qualify for copyright.

 Copyrightable Element
- **Spoken Words:** While the **N.C.** and vamp sections lack originality, the **spoken word content** in the sheet music is eligible for copyright protection. As a literary element, the spoken words demonstrate originality and creative expression, qualifying them for protection independent of the musical components.

I don't see how the musicologist can argue  the N.C no chords sections and Vamp in G minor would be eligible for copyright.  Only the lyrics Spoken word would be. Eager to hear his feed back.

Best regards,
Necole

---

Let me know if you'd like any other changes!

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Sent:** Wednesday, January 22, 2025 2:08:31 PM
**To:** Necole Key <necole@ladykeymanagement.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** RE: SCHEDULE CALL

Copyright Deposit of Barry White composition.



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**Learn about our new brand.**

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 21, 2025 9:44 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** [EXT] SCHEDULE CALL

Good morning Tim

May  we scheduled a call for tomorrow to bring Rodney up to speed with the case please.
Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

 **Outlook**

---

## Fw: Jackie Mittoo Forward email from Reagge Record

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 1/14/2025 9:31 AM

**To**    Matson, Timothy C. <tmatson@foxrothschild.com>

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** intl@reggaerecord.com <intl@reggaerecord.com>
**Sent:** Monday, January 13, 2025 5:19:00 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Subject:** RE: Jackie Mittoo

Hi Necole,

Thank you for contacting us.
I will refer to it.

Best regards
shintaro

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 14, 2025 2:36 AM
**To:** intl@reggaerecord.com
**Cc:** Matson, Timothy C. <tmatson@foxrothschild.com>
**Subject:** Re: Jackie Mittoo

Hello

I appreciate you replying  regarding Jackie Mittoo's  work. After thorough research I have found 1971 to be correct.

I have attached a links below that have provided the timeline when Jackie Mittoo was with Coxsone/Studio One which was from the opening of the studio in 1962 to Mittoo departure to Canada in 1971

Deeper and Deeper Catalog numbering SO 3182 The pressing scratching of FCD 6001-1 that I  have located on the physical record itself that I have personally purchased.   also aligns with Federal Records pressing with other recording in the year.

[Jackie Mittoo | Sounds Like Toronto](#)

[Jackie Mittoo Songs | Staimusic - The Best of Reggae and Ska](#)

[Riddimguide - Tunes - Jackie Mittoo songs](#)

I wanted to provide you with sufficient information regarding this record

Necole Key
Rights Manager
[www.ladykeymanagement.com](http://www.ladykeymanagement.com)
626-598-6647

---

**From:** Necole Key <[necole@ladykeymanagement.com](mailto:necole@ladykeymanagement.com)>
**Sent:** Monday, December 23, 2024 5:48:25 PM
**To:** [intl@reggaerecord.com](mailto:intl@reggaerecord.com) <[intl@reggaerecord.com](mailto:intl@reggaerecord.com)>
**Subject:** Re: Jackie Mittoo

Thank you so much for getting back to me..

Appreciate it.

Necole Key
Rights Manager
[www.ladykeymanagement.com](http://www.ladykeymanagement.com)
626-598-6647

---

**From:** [intl@reggaerecord.com](mailto:intl@reggaerecord.com) <[intl@reggaerecord.com](mailto:intl@reggaerecord.com)>
**Sent:** Monday, December 23, 2024 5:41:10 PM
**To:** Necole Key <[necole@ladykeymanagement.com](mailto:necole@ladykeymanagement.com)>
**Subject:** RE: Jackie Mittoo

Hello Necole,

We also rely on data from Discogs.

Please see below.

[https://www.discogs.com/ja/release/2858105-The-Manchesters-2-Jackie-Mittoo-Selassie-Bandman-Deeper-Deeper](https://www.discogs.com/ja/release/2858105-The-Manchesters-2-Jackie-Mittoo-Selassie-Bandman-Deeper-Deeper)

Best regards

shintaro

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, December 24, 2024 5:25 AM
**To:** intl@reggaerecord.com
**Subject:** Jackie Mittoo

Hello,

I hope you are well. I am currently trying to confirm the year of release for Deeper and Deeper by Jackie Mittoo. Your site has it as 1971 may you kindly confirm that is the correct date and if so how were you able to locate the correct year. Any help will be appreciated. Thank you for your time.

Necole Key

Rights Manager

626-598-6647

www.ladykeymanagement.com

 Outlook

---

## Re: FINDINGS

---

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Wed 12/4/2024 3:19 PM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Mike Jackson <m.sendhere@gmail.com>; Rodney <rodneyocali@yahoo.com>

NOW it makes sense. DEEPER AND DEEPER  was created to be a reissue of Jackie Mittoo's early work Hot Milk released in the 60s it was his attempt to reclaim his work after others stole it

If you listen to Hot Milk replacing the organ with Bass would create Deeper and Deeper

Jackie Mittoo's "Hot Milk" is a seminal reggae instrumental, first recorded in the late 1960s. Over time, this track has been reissued and reinterpreted under various titles, including "Deeper and Deeper." These reissues were part of Mittoo's strategy to reclaim ownership and secure royalties for his compositions, especially in response to unauthorized use and lack of proper credit.

In the 1970s, Mittoo relocated to Toronto, Canada, where he continued to produce music and re-record his earlier works. This period saw the release of albums like "Showcase" (1978), which featured tracks such as "Hot Milky" —a rendition of the original "Hot Milk." These re-recordings allowed Mittoo to assert his rights over his creations and adapt to the evolving reggae scene.

The reissue of "Hot Milk" as "Deeper and Deeper" can be seen as part of Mittoo's broader effort to maintain control over his music and address issues of copyright infringement. By releasing his compositions under new titles and arrangements, he aimed to protect his intellectual property and ensure proper recognition and compensation for his work.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key
**Sent:** Wednesday, December 4, 2024 2:44:56 PM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Mike Jackson <m.sendhere@gmail.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** FINDINGS

I found a 400 page report on Jackie Mittoo's her are highlights of how he felt about others using his music and what he did to try to take his music back


Jackie Mittoo expressed significant frustration and bitterness over the lack of credit and royalties for his contributions to music. He acknowledged the systematic reuse of his work in Jamaican popular music without appropriate recognition or compensation:

1. General Frustration : Mittoo described how basslines he created in the 1960s were repeatedly used in the 1970s and 1980s by other artists without credit. He expressed deep frustration over hearing his creations used without acknowledgment and highlighted the absence of a framework to claim copyright over basslines in particular:
   > "It's just that certain people don't understand what's happening. They don't know how it feels for someone like me... You created it in the 60s and even now in the 80s you hear someone else use it... And you can't even claim anything because it's not a melody line".

2. Bitterness Over Compensation : Mittoo emphasized the unpleasant nature of pursuing royalties, which often required legal action. He noted:
   > "The only time I ever get any recompense is if I go out and get a lawyer or some kind of strong support to claim. And it doesn't really feel pleasant to go trying to claim and tell people, 'I'm the one who did this.' The whole industry knows that Jackie Mittoo created those bass lines".

3. Efforts to Reclaim Ownership : Mittoo actively sought to reclaim ownership and royalties by remixing and revitalizing his old classics. He described this as an attempt to "copyright his original works" when they were re-released under new titles or albums.

Mittoo's reflections reveal his struggle with exploitation in the music industry and his efforts to secure acknowledgment and financial compensation for his influential work.


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

**Determining the credibility**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Wed 12/4/2024 2:28 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson <m.sendhere@gmail.com>

Tim

If i can provide Everything that it states to confirm the 1971 release date would that be admissible evidence?

Determining the credibility of sources for the release year of Jackie Mittoo's "Deeper and Deeper" (1971 vs. 1974) depends on evaluating the context and reliability of each claim. Here's how you can assess this:

## Sources Claiming 1974

1. **Discogs**: Frequently updated by users, Discogs is a widely used music database, but it relies on contributions from collectors. While reliable for broad reference, errors can occur if contributors use reissues or assumptions rather than first-hand sources like original pressings.

2. **Label Information**: If 1974 is derived from secondary pressings or reissues, it may inaccurately reflect the initial release.

   **Credibility**: Moderately high but requires verification against original pressings or label documentation.

---

## Sources Claiming 1971

1. **Contemporaneous Reports**: If a source cites reviews, advertisements, or promotional material from around 1971, it has stronger credibility since it aligns with the actual period of production and release.

2. **Studio One Catalog Context**: Comparing SO 3182 with other catalog numbers close in sequence (like SO 3180 and SO 3186) that are better documented (e.g., Hortense Ellis's *Why Birds Fly* from 1972) may suggest 1971 aligns better with the Studio One timeline.

   **Credibility**: Higher if it aligns with catalog numbers, label data, or firsthand contemporaneous documentation.

---

## Conclusion

The claim of 1971 seems stronger if it:

- Matches catalog sequencing.
- Aligns with documentation from Studio One's output timeline.
- Comes from direct or contemporaneous sources like ads, music magazines, or original record sleeves.

The claim of 1974 may represent a reissue, especially if sources don't specifically clarify the version being referenced. To confirm definitively, cross-checking with Studio One archives or examining original pressing details (e.g., matrix numbers) would be crucial.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

Mail - Necole Key - Outlook

## Outlook

---

## Musicologist

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Wed 12/4/2024 1:59 PM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>

Hi Tim

Curious as to the report of the musicologists.  Did you have him compare Barry sing to Motown songs like Ain't No mountain high enough  Four Tops Bernadette and Standing in the Shadows of love. Also, Marvin Gaye let's get in on.

I believe by proving they all shared a common place element

Also have you requested the deposit.  It would be Nice for Dorothy to provide it but being that I she won't, would it be possible for you to obtain it from the copyright office. Litigation attorneys can request it.

As am researching Jackie Mittoo I learned he did an arrangement using Marvin Gaye Let's get it on. In my earlier research I learned let's get it on shared similarities to Barry's song amongst others.

Also did you give the musicologists the report Atron gave you from Stanley Clark. If so, what was his thoughts.

Once again appreciate you.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

## Mechanical Licensing Collective

---

**From** Necole Key <necole@ladykeymanagement.com>
**Date** Tue 12/3/2024 2:56 PM
**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson <m.sendhere@gmail.com>

📎 2 attachments (874 KB)
Screenshot_20241203_145106_Chrome.jpg; Screenshot_20241203_145144_Chrome.jpg;

Hi Tim

Hope your week is off to a great start.

I have a attached to screenshot  from the MLC database one is I'm Gonna Love You Just a Little More Babe and the other is a randon song of Barry's

You will notice  I'm Gonna Love You Just a Little bit More babe is fully controlled by Warner

The work is is co publishing and administrators of the song.

That may provide more understanding on who is the owner

Appreciate you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 **Outlook**

---

**Rodney O/Barry White case**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Mon 12/2/2024 11:40 AM

**To** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>; Mike Jackson <m.sendhere@gmail.com>; Atron Gregory <atrongregory@gmail.com>

📎 2 attachments (694 KB)
Screenshot_20241202_113518_Chrome.jpg; Screenshot_20241202_113603_Chrome.jpg;

Hi Tim

I have attached screenshots that provides the owner of one of the publishers listed in BMi who has a controlling interest I believe

Please review and provide any additional information you may need that I could research

Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

**EXHIBIT A**

 Outlook

---

Re: LIKE THAT by Future

---

From Necole Key <necole@ladykeymanagement.com> Date
Thu 3/28/2024 4:21 PM

To      CurrieB@gtlaw.com <CurrieB@gtlaw.com>

Cc      asaleh@emagen.com <asaleh@emagen.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>;
        dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>; scott@donigerlawfirm.com
        <scott@donigerlawfirm.com>; ftrechsel@donigerlawfirm.com <ftrechsel@donigerlawfirm.com>; ryan@salxco.com
        <ryan@salxco.com>


Bob

Yes Bob, I am aware of the usual way of business that seems to have been accepted. I am not a seasoned professional as
most in this email thread and who have adapted to the industry norms by use of these letters. I am, however, well
knowledgeable in intellectual property and copyright laws.
That knowledge has allowed me to protect my client's rights and secure fair compensation for their work. Although by
doing so it breaks the normal practice of the industry. Having learned from the past through my practice of termination of
copyright transfers for artists, I have learned how to advocate to
avoid the past from repeating itself and help provide my clients an income they can support their families
with.

A call from Metro is not necessary and would have been welcomed prior to release. At this time, I will remove myself and
allow our attorney Scott take it from here.

It was a pleasure meeting you and I am hopeful this situation will be resolved quickly. Have a good evening

Necole Key Rights
Manager
[www.ladykeymanagement.com](www.ladykeymanagement.com)
626-598-6647

---

**From:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Sent:** Thursday, March 28, 2024 3:32:21 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** asaleh@emagen.com <asaleh@emagen.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>;
dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>; scott@donigerlawfirm.com
<scott@donigerlawfirm.com>; ftrechsel@donigerlawfirm.com <ftrechsel@donigerlawfirm.com>;
ryan@salxco.com <ryan@salxco.com>
**Subject:** RE: LIKE THAT by Future

Hi Necole,

We can arrange for Metro to call Rodney.

I'm certain that you are aware that it is the usual course of business to have a sample offer letter signed with the material terms agreed prior to entering into a long form agreement. It just confirms what the material terms are for the sample especially when there are so many matters to deal with when releasing an album.

All streamed compositions are paid on 100% of the current statutory rate and we can confirm that Rodney will be paid 100% stat for any physical release as well.

Provided Epic receives a signed ACH, we can wire Rodney his fees and still enter into a sample agreement. Concerning the latter, please let me know if you have a form in mind or if you would prefer that we prepare an agreement for review.

Thank you again and

Best wishes,


**Bob Currie**
Senior Contract Administrator

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.7332 | F +1 678.553.7333 I M +1 678.722.1172
CurrieB@gtlaw.com | www.gtlaw.com





Learn more about our commitment to diversity, equity, and inclusion.

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Thursday, March 28, 2024 6:16 PM
**To:** Currie, Bob (Para-Atl-Ent) <CurrieB@gtlaw.com>
**Cc:** asaleh@emagen.com; Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>; dalia.auerbach@epicrecords.com; Scott Burroughs <scott@donigerlawfirm.com>; Frank Trechsel <ftrechsel@donigerlawfirm.com>
**Subject:** Re: LIKE THAT by Future

Bob

Please take the time to listen to the interview. The writer of the article you presented is incorrect. We would have preferred Metro to have reached out. That would have expedited the process but as it is the only one that has been in contact with us is Eric Weissman team. Please see attached. If Metro had direct contact with Rodney, I believe contacting us wouldn't have been so complicated.

We may have to agree to disagree on what a minor detail may be, I believe a lack of a signature is a significant detail. As well as details as how, Rodney will be obtaining his shared earnings. Details as such are best put in an agreement and not a letter. The composition letter lacks clarity of the mechanical rate. Eric said it was okay to assume 100%. Not sure if that is a minor detail or not. I am sure Scott and you can resolve.

Thank you again for your rapid response.

Best

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Thursday, March 28, 2024 3:15:10 PM
**To:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Cc:** asaleh@emagen.com <asaleh@emagen.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>;
dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>
**Subject:** Re: LIKE THAT by Future

Bob

Please take the time to listen to the interview. The writer of the article you presented is incorrect. We would have preferred Metro to have reached out. That would have expedited the process but as it is the only one that has been in contact with us is Eric Weissman team. Please see attached. If Metro had direct contact with Rodney, I believe contacting us wouldn't have been so complicated.
We may have to agree to disagree on what a minor detail may be, I believe a lack of a signature is a significant detail. As well as details as how, Rodney will be obtaining his shared earnings. Details as such are best put in an agreement and not a letter. The composition letter lacks clarity of the mechanical rate. Eric said it was okay to assume 100%. Not sure if that is a minor detail or not. I am sure Scott and you can resolve.

Thank you again for your rapid response.

Best

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

**From:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Sent:** Thursday, March 28, 2024 2:59:46 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** asaleh@emagen.com <asaleh@emagen.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>;
dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>
**Subject:** RE: LIKE THAT by Future

Hi Necole,

Thank you for your prompt response.

Metro Boomin did contact Rodney O directly about the use of "Everlasting Bass" in "Like That" and
Rodney approved:

https://www.complex.com/music/a/markelibert/rodney-o-metro-boomin-cleared-sample-like-that

Please note: prior to the release of the album, no one was privy to hearing full tracks - no one other than
Future and Metro's inner circle.

According to the multiple correspondences between you and Eric Weismann, the material terms
remained unchanged since prior to the record release and it seems as if the holdup has been minor
details such as credit and the award of gold and platinum plaques. We don't believe its correct to
consider that this sample us remains incomplete. We're just waiting to have Rodney paid.

Again, the only reason Rodney has not yet been paid is that we were missing the ACH form and once
sent, it was unsigned. Since this matter began prior to the release, we consider it to still be within your
responsibilities to close. Please send us the signed ACH form and we can have Rodney paid and we can
all move forward.

Thank you again and

Best wishes,


**Bob Currie**
Senior Contract Administrator

Greenberg Traurig, LLP

Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305

T +1 678.553.7332 | F +1 678.553.7333 | M +1 678.722.1172
CurrieB@gtlaw.com | www.gtlaw.com





Learn more about our commitment to diversity, equity, and inclusion.

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Thursday, March 28, 2024 5:44 PM
**To:** Currie, Bob (Para-Atl-Ent) <CurrieB@gtlaw.com>
**Cc:** asaleh@emagen.com; dalia.auerbach@epicrecords.com; Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>; Scott Burroughs <scott@donigerlawfirm.com>; Frank Trechsel <ftrechsel@donigerlawfirm.com>
**Subject:** Re: LIKE THAT by Future

Hello Bob

Nice to e-meet you. I have CC our attorney Scott as well to this correspondence. ==Unfortunately, that is not the case Metro Boomin never reached out to Rodney about the track Everlasting Bass.== You may be referring to the sample Metro Boomin used Rodney's track Nobody Disses Me. We were first approached by Eric Weissman three weeks ago. I passed the link they provided for the track for approval but as Rodney can ==hear in the interview Rodney says we were not given the full track. I== handle Rodney ' s pre-clearance negotiations. Our attorney Scott handles our post release negotiations. That being said, I will allow him to precede.

Rodney and I thank you for your quick response and hope this can be resolved sooner than later. Please express our congratulations to all parties involved on the album's successful release, present case aside.
Scott, please introduce yourself. Thank you all for your efforts. We truly appreciate your time.
Necole Key
Rights Manager
www.ladykeymanagement.com 626-598-6647

---

**From:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Sent:** Thursday, March 28, 2024 2:24:18 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** asaleh@emagen.com <asaleh@emagen.com>; dalia.auerbach@epicrecords.com <dalia.auerbach@epicrecords.com>; FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** RE: LIKE THAT by Future

Hi Necole,

Hope you're having a good week.

This firm represents Future and we've been involved with the most recent Future/Metro Boomin collaborative project. I am responding to your recent email to Dalia at Epic Records

==We understand that Metro contacted Rodney O directly about the use of "Everlasting Bass" as a sample and that Rodney approved the use. (According to the Interview Rodney O did on radio station 93.5 KDAY and the mention of Rodney's approval online and on X).==

==As far as we can determine, the material terms for the use of "Everlasting Bass" is a $50,000 non-recoupable fee to Rodney and 15% of the income for the exploitation of the master that embodies the sample titled "Like That."== Additionally, Rodney is to get 50% of the underlying composition and a non-recoupable fee of $5,000.

The offer letter sent by Eric Weissman Music Licensing to you (prior to the release of the record) needs to be signed and as soon as Epic Records receives a <u>signed</u> ACH form, monies can be wired to Rodney's account.

Please let me know if we're missing anything about resolving this sample use at your earliest convenience.

Thank you very much for your kind attention to this matter and with

Best wishes,


**Bob Currie**
Senior Contract Administrator

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.7332 | F +1 678.553.7333 I M +1 678.722.1172
CurrieB@gtlaw.com | www.gtlaw.com





Learn more about our commitment to diversity, equity, and inclusion.

---

**From:** Auerbach, Dalia, Epic Records <dalia.auerbach@epicrecords.com>
**Sent:** Thursday, March 28, 2024 4:50 PM
**To:** Currie, Bob (Para-Atl-Ent) <CurrieB@gtlaw.com>; Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Cc:** Anthony Saleh <asaleh@emagen.com>
**Subject:** Fwd: LIKE THAT by Future


**\*EXTERNAL TO GT\***

Begin forwarded message:

> **From:** Necole Key <necole@ladykeymanagement.com>
> **Date:** March 28, 2024 at 4:43:09 PM EDT
> **To:** "Auerbach, Dalia, Epic Records" <dalia.glickman@epicrecords.com>, "Conte, Bernadette, Epic" <bernadette.conte@epicrecords.com>
> **Subject: LIKE THAT by Future**

> You don't often get email from necole@ladykeymanagement.com. Learn why this is important

> **EXTERNAL SENDER**

> Hello,

My name is Necole Key. Manager of Hip hop artist Rodney O. Please forgive me for interrupting your day. I am reaching out in hopes you can direct me to the appropriate personnel that is handling the clearance for Future's track Like That. We have been dealing with a sync agent for the last three weeks and it feels as nothing has been accomplished. To avoid litigation, I am respectfully requesting your assistance in helping me connect to the appropriate personnel to directly resolve this matter.


Once again, I apologize for the inconvenience and thank you in advance for your any assistance.

Respectfully,

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647



**This email originated from outside of Sony Music. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

**EXHIBIT A**

EXHIBIT B

## Re: Apology and Introduction of New Attorney for Case Resolution

---

**From:** Necole Key
necole@ladykeymanagement.com
**To:** Dorothy Weber dorothy@musiclaw.com, Rogers, Leron E. LRogers@foxrothschild.com, Jonas Herbsman jonas@musiclaw.com
**Cc:** Acevedo, Antonia M. AAcevedo@foxrothschild.com, Destiny Key destiny@ladykeymanagement.com, Rodney rodneyocali@yahoo.com, Atron Gregory atrongregory@gmail.com
**Sent:** Monday, July 8, 2024 at 9:34 AM

Leron
Please respond as soon as possible. I believe Dorothy and I are on the same page.
Dorothy, I would like it to be 45% Barry 45% Rodney and 10% Eazy E
If this can be agreed upon, I would like Leron to get this agreed and cleared asap.


Necole Key
Rights
Manager
www.ladykeymanagement.com 626-598-6647

---

**From: Dorothy Weber <dorothy@musiclaw.com> Sent: Monday, July 8, 2024 5:30:19 PM**
**To:** Rogers, Leron E. <LRogers@foxrothschild.com>; Necole Key <necole@ladykeymanagement.com>; Jonas Herbsman <jonas@musiclaw.com>
**Cc:** Acevedo, Antonia M. <AAcevedo@foxrothschild.com>; Destiny Key <destiny@ladykeymanagement.com>; Rodney <rodneyocali@yahoo.com>; Atron Gregory

<atrongregory@gmail.com>

**Subject:** RE: Apology and Introduction of New Attorney for Case Resolution

Hi Leron: Let me know a time for you that works.

Dorothy M. Weber, Esq.

**EXHIBIT B**

Proof of collusion

# EXHIBIT C

| File | Extracted Text |
|---|---|
| | Necole Key 3:54 PM<br>To Chantal Epp, FinanR@gtlaw.com, Tilly Gilder, asaleh@emagen.com, + 2 :<br><br>To all parties<br>I hope this email finds you well.<br><br>It has come to my attention that Epic is asserting control over a 15% share related to the master sample for Like That. However, we have not received any signed agreement authorizing such control. Without a finalized and executed agreement, any claim to this percentage would be premature and unauthorized.<br><br>To clarify:<br><br>1.      We have not signed any documents granting Epic the right to manage or control our portion of the master sample revenue.<br><br>2.      We request a copy of any agreement that states otherwise. If such an agreement exists, please provide it immediately for our review.<br><br>3.      Until a fully executed agreement is in place, all rights remain reserved, and no portion of our entitlement may be assigned or controlled by a third party.<br><br>Additionally, in April we had been informed by Greenberg Traurig LLP that the relevant documents are still in progress. Given this, any attempt to enforce a revenue allocation or rights claim before finalization would be inappropriate.<br><br>Please confirm receipt of this email and provide clarification at your earliest convenience. We are committed to resolving this matter in good faith and look forward to your prompt response.<br><br>& v Reply all |
| /mnt/data/Screen | |
| | phone, returning Sat., February 15th at 7 PM EST.<br><br>FinanR@gtlaw.com 4:01 PM To<br>You, +5 :<br>PDF<br>DKT 1-Complaint.pdf ;<br>PDF - 376 KB A<br>Hi Necole,<br><br>Please provide me the status of the lawsuit attached.<br><br>Also, please provide me the contact info for your counsel.<br><br>Thanks.<br>Rob<br><br>Robert J. Finan<br><br>Of Counsel<br><br>Greenberg Traurig, LLP<br>Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305 T<br>+1 678.553.2206 | F +1 678.553.2207<br><br>FinanR@gtlaw.com | www.gtlaw.com | View GT Biography GreenbergTraurig<br><br>& v To FinanR@gtlaw.com, + 5 / |
| /mnt/data/Screen | |

# EXHIBIT C

Proof of collusion
**EXHIBIT C**

Dear Rob,

I acknowledge your request regarding the lawsuit status. ==However, as previously stated, we have not received a Fully executed signed agreement granting Epic control over our 15% share of the master sample revenue.==

==Until a fully executed agreement is provided, our position remains unchanged: all rights are reserved, and no third party has authorization to manage or allocate our portion. If Epic believes otherwise, we request immediate documentation supporting such a claim.==

Furthermore, given that Greenberg Traurig LLP previously confirmed that relevant documents are still in progress, any assertion of control before finalization is inappropriate.

Please confirm receipt and provide any necessary Clarifications.
Necole Key
Rights Manager
necole@keymanagement.com
626-598-6647

coe

& v Reply all

/mnt/data/Screen

---

x

From: Ricardo Rosado <ricardo@musiclaw.com> On Behalf Of Dorothy Weber
==Sent: Wednesday, February 19, 2025 5:19 PM To: Matson Timothy <
timatson@foxrothschild.com>==

Cc: Dorothy Weber <dorothy@musiclaw.com>; Judy <jameyers68@gmail.com>; Rakhil Kalantarova <rakhil@musiclaw.com>

==Subject: [EXT] Barry White==

==Hi Tim: We are going to attach a copy of the agreement for the sample as part of our opposition to the motion to dismiss.== I also understand that Ms. Key has communicated directly with third parties in connection with this litigation and we ask that you advise her that these communications are all part of our litigation hold and will be subject to discovery.

Sincerely,

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP
494 Eighth Avenue, Suite 600

New York, NY 10001 Direct

Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com
http://www.linkedin.com/in/dorothymweberesq/
This email contains information that may be confidential and/or privileged. If you are not the

+ oO

/mnt/data/Screen

**EXHIBIT C**

Proof of collusion

# EXHIBIT C

MT

Matson, Timothy C.
tmatson@foxrothschild.com

To

You necole@ladykeymanagement.com
Wednesday, February 19 at 7:10 PM

Necole,

<mark>What is Dorothy referring to? Please advise.</mark>

Tim

Fox
Rothschild

Timothy C Matson
Counsel
Fox Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
< (612) 607-7064
[ (612) 229-4109
2 (612 607-7100

# EXHIBIT C

**EXHIBIT C**

HERBSMANMAFERVVEBER&FR1SCH,LLP
**ATTORNEYS AT MW**
404 ElaFrn-i AvENUE, Sixrl-i **FLOOR**
NEw YORK, NEw YORx 1 OOO 1

Joe     **E. HERBsMAN**
J. JEFFHEY i•lA EFt
DOnOTHY M. WEBER M1Ci-1AEE•
B. FRIRGH

**RAKHIL KALANTAROVA**

JAMKs E. iDOHERTY
**OI= COUNSEL**

TELEPHONE (2 1 Z) 24D•4BBO
YELECOPIER (2 1 Z} OBA647

dorothy8musiclaw.com

**Fefiruary24,2025**

Via  Email: tmatsonfifoxrothsehild.com

Timothy C. Matson, Esq. Pox
Rothschild, LLP
33 S. Sixth Street, Suite 3600

Minneapolis, MN 55402

      *Re.'*  The Barry White Family Trust U/A/D: December 19, 1980, By its Duly
            Empowered Trustees v. Coolev et al. Gase No. 24-cv-07509-DLC

Dear Mr. Matson:

     In furtherance of our call last week, it is my understanding that as late as Friday, Ms. Key was in touch with Epic Records, through their New York office, In furtherance of the limited jurisdictional discovery which was agreed to, we ask that you produce all communications from Ms. Key to third parties in connection with this matter. We ask for an updated production as soon as possible.

     To the extent that Ms. Key is attempting to collect monies from third parties on **matters** which are implicated by this lawsuit, that is a matter we believe she should be bring to the Court's attention unless we can amicably deal with this situation.

     When Ms. Key called Epic's attorney, she was properly advised that he could not speak to her. When he asked for her litigation counsel's contact, however, she refused to provide your name or contact information. While our client has no desire to "rachet up" the current litigation, it seems clear that certain of your clients do not share that view. We are troubled by this course of conduct for a variety of reasons.

**EXHIBIT C**

HEFlBsMAN HAFER WEBER & FFIUCH, IP

Timothy C. Matson, Esq.
February 24, 2025
P a g e | 2

      I am attaching a copy of our initial claim letter with litigation hold language and ask that you confirm in writing that your clients have been advised of their obligations. Also, to the extent that Ms. Key is in continuing communications with New York entities on behalf of Mr. Oliver in connection with the song that is the subject of the instant litigation, we may need to supplement our opposition. We ask that you provide us with copies of any materials which update the document production made to us on December 18, 2024, including but not limited to any of her written communications with Epic Records.

      Please let me know if we need to meet and confer on this issue.

      This letter is written without prejudice to our client's rights or remedies, at law or in equity, all of which are hereby expressly reserved.

          Very truly yours,

          HERBSMANHAFERWEBER
          & FRISCH, L
          LP

          Doro   thy M. We er, Esq.

DMW/rr

**EXHIBIT C**

**EXHIBIT C**

HERBHMAN HAFER
WEBER & FLINCH, L•LP
ATTORNEYS AT LAW
494 EloHTH AVENUE, 2IXTH FLOOR
NEw YORK, NEw YORK I OOO i

JONAS E. HERDSMAN

TeLJZPH ONE (21 2}

J. JEFFREY HAFER DOROTHY
M. WEBER MICHAEL B. FR1SGH

245-4Df3O
TELECOPIER (21 2) O56•64y I

RAWMLKALANTAROVA

J    ES E. DOHERTY OF
COUNSEL

WRITER'S K•MAlt-i
dorothy0musiclaw.com

May 7, 2024

Via Email and Regular Mail: Stephanie.Yu@sonymusic.com

Stephanie Yu, Esq.
Epic Records
25 Madison Avenue, 19th Floor
New York, NY 10010

Via Email and Regular Mail' FinanR@gtlaw.com

Robert J. Finan, Esq.
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE l Suite 2500 Atlanta,
GA 30305

Via Email and Regular Mail: Christina.Suarez@umusic.com

Ms. Christina Suarez
EVP, Business & Legal Affairs
Republic Records
1755 Broadway
NewYork, NY 10019

Via Email and Regular Mail: necolekev@email com

Mr. Rodney Oliver
p/k/a Rodney O
c/o Necole Key, Rights Manager
**EXHIBIT C**

HERBSMAN HAFER WEBER & FRISGH, LLP

**EXHIBIT C**

Stephanie Yu, Esq.
Robert J. Finan, Esq. Ms,
Christina Suarez Mr.
Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e | 2

Via Email and Regular Mail: Christina.Suarez@umusic.com

Boominati Worldwide
c/o Universal Music Group, Inc.
2220 Colorado Ave, Santa
Monica, CA 90404

Via Email and Regular Mail: legal@integral.studio

Freebandz Entertainment
c/o Felicia Magama Wilburn
Holding Co.
1465 Northside Dr,
Atlanta, GA, 30044

    Re.    *"Lihe That" Copyright Infringement Notice*

Ladies and Gentlemen:

    We are the attorneys for the Barry White Family Trust, successor in interest to all intellectual property rights of the late Barry White (the "Trust"). The Trust is the sole and exclusive owner of the registered copyright in and to "I'm Gonna Love You Just A Little More, Baby". This anthemic song (written, produced and recorded by Barry White), released in the spring of 1973, was the first single from Mr.
White's 1973 debut album "I've Got So Much to Give" and hit number one on the United States R&B chart; number three on the Billboard Pop singles chart and was certified gold by the RIAA (the "Copyrighted Work").

    It has come to our attention that you have infringed the Copyrighted Work by interpolating the musical "hook" of the Copyrighted Work in a new work entitled "Like That" (the "Infringing Work"). It is our understanding that the Infringing Work was released by Wilburn Holding Co. and Boominati Worldwide, under exclusive license to Epic Records, a division of Sony Music Entertainment, with Republic Records, a **EXHIBIT C**

    division of UMG Recordings, Inc. and such use was not

**EXHIBIT C**

HERBSMAN HAFER WEBER & PRI 2CH. LLP

Stephanie Yu, Esq.
Robert J. Finan, Esq.
Ms.
Christina Suarez Mr.
Rodney Oliver

Freebandz Entertainment

May 7, 2024

P a g e | 3

authorized by our client. It is also our understanding that a license was issued for use of a sample from the song "Everlasting Bass", which sample also infringes the Copyrighted Work.

Your use constitutes a willful infringement of our client's rights under the Copyright Act, which infringement will subject you to a wide variety of legal penalties, including but not limited to damages, costs and attorney's fees, Our client is also entitled to seek statutory damages for willful infringement in an amount of One Hundred Fifty Thousand ($150,000) Dollars, per infringement, for use of the Copyrighted Work, Willful intent by you is clear as multiple sources easily located online report that "Everlasting Bass" sampled the Copyrighted Work.

This letter shall also constitute notice of our copyright claims throughout the world in any territory where the Infringing Work is sold. In addition, this letter shall also serve as notice of infringement in connection with interpolation of the Copyrighted Work in the song "Everlasting Bass" within any applicable statutes of limitations.

<u>LITIGATION HOLD</u>

Unless and until this matter is resolved, this letter shall constitute notice of potential litigation.

Electronically stored information can be easily altered, deleted, or otherwise modified; and it is common to dispose of it some electronic material in the normal course of business. However, under the governing law, it would be improper, following your receipt of this notice, for you to fail to take all necessary steps to fully preserve all of the electronic stored information in question, regardless of past practices. Your failure to preserve and retain the electronically stored information described in this notice may constitute the spoliation of evidence that could subject you or any of your subsidiaries, divisions, agents, and employees to sanctions by the court, legal claims for damages, or both.

**EXHIBIT C**

**EXHIBIT C**

HERDSMAN HAFER WEBER & FRISCH, UP

Stephanie Yu, Esq.
Robert I, Finan, Esq. Ms.
Christina Suarez Mr.
Rodney Oliver

Freebandz Entertainment
May 7, 2024
Page | 4

for purposes of this notice, the term "electronically stored information" includes, but is not limited to, the following: text files (including word processing files and file fragments); social media data, including log-in information, messages, and posts by you or anyone who follows or interacts with you on social media; metadata; spread sheets; electronic mail (including message contents, attachments, header information, logs of e-mail system usage, and "deleted" files); text messages; data in the information management system, containing the indexes of all databases; the databases themselves, including all records and field and structural information in them; logs of activity on any computer system that may have processed or stored electronic data containing litigation information; data created by financial, accounting, billing, and spreadsheet programs; files and file fragments from electronic calendars and scheduling programs; Internet history files and preferences; graphical image format ("GIF") files; all file fragments and backup files containing electronic data; telephone logs; voice mail files; PowerPoint presentations; contact manager information; and all other electronic data containing information about, or that may be relevant to, the litigation.

Any pertinent information stored online--whether stored in direct-access storage devices attached to a mainframe or minicomputer hard drives, personal computers (PCs), or laptops--must be preserved. If any files must be altered for any reason, a true and correct copy of each data file pertinent to the litigation must be made, and the copy should be preserved and made accessible.

Any activity that could result in the loss of relevant "off-line" data or removable data storage--such as backups and archives or other disaster recovery systems, servers, floppy disks, zip drives and zip files, optical disks, tapes, compact disks or diskettes, laptOpS, handheld devices, disconnected hard drives, and other removable electronic media, as well as personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voice mail)--must be halted. This includes rotation, destruction, overwriting, or erasure of such media, including the disposal of any electronic data storage devices or media that has failed or had to be replaced for other reasons.

**EXHIBIT C**

HERBSMAN HAPER WEBER & FRISCH, LLP

**EXHIBIT C**

Stephanie Yu, Esq.
Robert J. Finan, Esq. Ms.
Christina Suarez Mr.
Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e I $

Relevant information contained on any fixed hard drives of stand-alone PCs and network workstations must not be altered or erased. Procedures such as data compression, disk defragmentation, or optimization routines must not be performed without first creating and preserving true and correct copies of active files. Also, true and correct copies of completely restored versions of deleted electronic files and file fragments, as well as directory and subdirectory lists, including hidden files, must be created and retained.

Copies of all applications and utilities that process pertinent information must be preserved and retained.

Passwords, decryption procedures, including accompanying software, network access codes, ID names, manuals, tutorials, written instructions, and decompression or reconstruction software must be preserved.

Any modifications made by employees or third parties to any electronic data-processing systems that may affect the system's capacity to process data relevant to the instant litigation should be logged and made available.

All relevant hardware must be preserved and not disposed of unless a true and correct copy of all files (a mirror image) is first created and preserved.

With regard to any electronic data created after receipt of this letter that might be relevant to this litigation, proper steps must be taken to avoid destroying or altering such potentially relevant evidence, including following the above procedures. Please be further advised that this relates to all potential discovery materials, whether electronically stored or not. It applies to all social media posts of any kind or nature, including but not limited to Facebook, LinkedIn, Tik Tok and Instagram. It applies to any business or personal email accounts and other records of any nature or kind by you in connection with all claims, dealings with the Copyrighted Work or any other party or potential witness involved in the Claim.

Nothing herein shall be deemed a waiver of any of our client's rights or admission of any liability, and all rights, remedies and claims are hereby reserved.

**EXHIBIT C**

I-IERBSMAN I-fAPeR WEBzR a *rniscFJ*, uLP

**EXHIBIT C**

Stephanie Yu, Esq.
Robert J. Finan, Esq. Ms.
Christina Suarez Mr.
Rodney Oliver
Freebandz Entertainment
May 7, 2024
P a g e | 6

This letter is Sent in the course of enforcement of our clients' rights. As such, this letter is a demand for potential settlement communication; it should not be published, copied or distributed for any purpose other than litigation purposes.

We ask that you respond by no later than close of business on May 13'ʰ, 2024.

Very truly yours,

HERBSMAN HAFER WEBER
& FRISCH, LLP

Dorothy M. Weber ,
Esq.

**EXHIBIT C**

# EXHIBIT D

## DARRYL WHITE VS GLODEAN WHITE ET AL

 

On May 23, 2017 a contractual fraud (general jurisdiction) case was filed by fsribcril e zo vie •'v) reprr (Sui›cribe to view} against fSr‹bsc rime to vie 'v) represented by (Sui›scribe zo views in the jurisdiction ‹ Angeles County. judge Rupert A. Byrdsong presiding.

Case Details

CASE NUM BER

(Sui›scribe zo Vie 'v)

JUDGE

CAS E DURATION

2 years, 11 mantl s an›

Hon. Rupert A. Byrdsong

FILIN G DATE May 23, 2017 LAST REFRESHED

October 07, 2023

FILING LOCATIO N

Los Angeles County, CA

FILING CO URT

Los Angeles County

FILIN G CO URT H OU SE

Stanley Mosk Courthouse

OTHER JUDGES ON THI S CASE

Samantha jessner; Randolph Hen n ock

G
e
t
j
u
d
g
e
A
n
a
l
y
t
i
c
s
R
e
p

o
r
t

CATEG 0 RY
Contractual
Fraud (General
jurisdiction)

PRACTICE AREA
Commercial

MATTER TYPE
Contractual Fraud

**EXHIBIT D**

CASE 0 UTCOM E TYPE

Unknown disposition

STATU S

Voluntary Dismissal

# EXHIBIT D

# EXHIBIT E

Outlook

RE: URGENT: Written Explanation Needed – How Current Strategy Zealously Protects Rodney's Rights

From Matson, Timothy C. <tmatson@foxrothschild.com>
Date Tue 2/25/2025 7:39 AM
To    Necole Key <necole@ladykeymanagement.com>; Rodney <rodneyocali@yahoo.com>

▌ 1 attachment (285 KB)
Letter to Tim Matson 2.24.2025-C.pdf;

Hi Rodney and Necole,

Here are my responses to Necole's questions:

1. Barry White Trust's Ownership Claim: I agree that Plaintiff must show proof that copyright in the Barry White composition was properly transferred to the Trust in order to have standing to bring the lawsuit. Under 17 USC 204, this transfer must be in writing. However, for purpose of an initial Rule 12 motion to dismiss to dismiss, the allegations of the complaint are taken as true. Here, Plaintiff alleges it is the successor-in-interest to all rights of the late Barry White. (*See* Amended Complaint,    2.) If, during litigation, Plaintiff is unable to show proper transfer and chain-of-title, we will move for summary judgment.

2. Proof of Ownership: We will demand proof of transfer of ownership and chain-of-title in discovery. Again, if Plaintiff cannot establish, this issue will be the subject of a motion for summary judgment.

3. Epic: I have not been engaged to sue Epic, and you have expressly demanded that I not contact Epic. However, I do not believe a claim against Epic at this juncture makes sense. Rodney signed a document purporting to grant Epic a non-exclusive license to sample his work. That document contains an indemnification from Rodney to Epic relating to claims of infringement such as the one made by the Barry White Trust here. That said, I am open to discussing this issue and, in particular, your assertion that improperly withheld information when the non-exclusive license was extended.

With respect to your other email, attached is a letter I received late yesterday from Dorothy Weber regarding communications with Epic. Let's discuss this issue in our call.

I look forward to speaking with you at 2:00 pm PT.

Best,

Tim

# EXHIBIT E

**EXHIBIT E**



**Timothy C Matson**
Counsel
City Center
33 S. Sixth Street, Suite 3600
Minneapolis, MN 55402
📞 (612) 607-7064
📱 (612) 229-4109
🖨 (612) 607-7100
✉ tmatson@foxrothschild.com

**Learn about our new brand.**

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Monday, February 24, 2025 2:01 AM
**To:** Matson, Timothy C. <tmatson@foxrothschild.com>; Rodney <rodneyocali@yahoo.com>
**Subject:** [EXT] URGENT: Written Explanation Needed – How Current Strategy Zealously Protects Rodney's Rights

Hi Tim

I hope you are well. I am reaching out in the best interest of Rodney to request that you please provide a written response explaining how your current legal strategy aligns with the law and zealously protects Rodney's rights. Specifically, I need to understand why certain legal actions have not been taken, despite clear statutory grounds to challenge the claims against him and hold Epic accountable.

 Key Legal Issues & Questions:

1.      Barry White Trust's Ownership Claim – How does allowing this claim to proceed without challenging their standing under 17 U.S.C. § 204(a)-(b) serve Rodney's best interest?
  - The Trust is **not listed** on the copyright registration and has provided **no proof of a valid written transfer**.
  - Under 17 U.S.C. § 204(b), a valid certificate of acknowledgment is needed for prima facie evidence, yet we haven't forced them to provide one.
  - Why has there been no motion to compel proof of ownership or dismiss for lack of standing?


Dorothy Weber knowingly pursued litigation without sufficient proof of ownership, causing financial strain on Rodney.
The **failure to provide** chain-of-title evidence prolongs litigation, imposing unnecessary legal costs on Rodney.
Courts have recognized abuse of process when a party files claims without a good faith basis (Eden Toys, Inc. v. Florelee Undergarment Co.).

2.      How does waiting for discovery to force the Trust to prove ownership zealously protect Rodney, when it only extends litigation and financially drains him?
  - Why haven't we called out Dorothy Weber's abuse of process?

**EXHIBIT E**

3.        Epic Records' Clear Violations – What is the reason for not taking legal action against Epic, given that:
   - Epic **admitted** they withheld the full song before approval, violating Rodney's right to approve a derivative work.
   - Epic willfully **withheld the full list of rights holders**, directly impacting Rodney's ability to negotiate a fair license fee.
   - Epic has **ignored** Rodney's rescission and continues to profit—why has this been unchallenged?

Request for Written Explanation
I am requesting a written response by outlining:

   ♦
   ♦    How your current approach aligns with the law and zealously protects Rodney's interests.
   ♦
   ♦
   ♦    Why key motions (challenging ownership, abuse of process, and Epic's violations) have not been filed.
   ♦
   ♦

   ♦    How allowing prolonged litigation benefits Rodney rather than harming him.
   ♦

I appreciate you taking the time to provide the clarity we need by providing a written explanation on how this strategy actively defends Rodney and limits unnecessary legal costs, given all the evidence and applicable laws that support an aggressive defense.

Please confirm receipt and provide your response ASAP.

Please see attached document and forwarded email that provided additional information (
I have provided all the correspondence once again)

Best,


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647



**EXHIBIT E**

# EXHIBIT F

---

**From:** Necole Key <<u>necole@ladykeymanagement.com</u>>
**Sent:** Saturday, <mark>October 12, 2024 9:50:36 AM</mark>
**To:** <u>FinanR@gtlaw.com</u> <<u>FinanR@gtlaw.com</u>>
**Subject:** Formal Notice and Request for Immediate Resolution

Hello Rob,

I hope you are well. My last correspondence stated I would trust that you would follow through on all you said and provide me the long form to finalized our agreement. I am writing on behalf of my client, Rodney Oliver (p/k/a Rodney O), in my capacity as his rights manager with the duty to protect his rights. This letter serves as formal notification that Epic Records has breached its agreement with my client concerning the use of "Everlasting Bass" in the musical composition and master recording "Like That," performed by Future.

During the initial negotiations, it was represented to us that only Future and Epic/Sony were involved in this agreement. However, we have since discovered the involvement of additional entities that were not disclosed during the negotiation process. This lack of transparency has unfortunately caused delays in finalizing the agreement and obtaining finalized splits, which has impacted my client's ability to secure a $2.2 million publishing deal.

Despite our repeated requests for the long-form agreement and finalization of terms, Epic has not yet delivered. The absence of a specific withholding clause for infringement claims has also left my client in a difficult financial position and unaware of his full rights and obligations under the agreement. I find it absurd that you expect Rodney to be able to take on the burden of a meritless claim at the same time protect all parties involved. We could have rescinded the agreement and joined Barry White Trust and pursued infringement for failure to secure license despite other things. However, by doing so that would be admitting Rodney infringed on Barry White song and that is not the case.

Rodney has acted in good faith throughout this process, including upholding his indemnity obligations, which have protected Epic and contributing artists from being implicated in the infringement claim brought by the Barry White Estate. However, should the Barry White Estate inquire about the validity of this agreement, my client will have no choice but to confirm that no valid agreement exists due to Epic's unresolved obligations. This could expose Epic to potential liability for any resulting claims defeating our efforts to protect you.

That said, our goal is to resolve this situation in a manner that benefits all parties involved. We are confident that with cooperation and good faith, we can reach a swift resolution that provides peace of mind and allows us to focus on defending the ongoing claim from the Barry White Estate.

To achieve this, Rodney is willing to renegotiate the terms of the agreement under protest, reserving all rights and remedies, with the following requests:

1. **Renegotiation and finalization of the long form agreement**, with full disclosure of all parties and clarity on my client's rights, obligations, and protections, including clauses that address withholding in the event of future claims, and terms that properly reflect my client's contributions.
2. **Expanded indemnification for Rodney**, to ensure that he is fully protected from any future claims related to the delays and undisclosed entities.

We hope to avoid taking further action and would prefer to work toward a mutually beneficial outcome. However, if these matters are not addressed within ten (10) business days, Rodney will be forced to take the following steps:

- **Rescind the agreement under protest** and cease all licensing activities.
- **Pursue a breach of contract claim** for the financial damages caused by delays and failure to

finalize the long form.

- **File claims for business interference**, due to the delays' impact on Rodney's ability to fully benefit from his work.
- **Confirm to the Barry White Estate** that no valid agreement exists, exposing Epic to potential liability.

Rodney remains committed to resolving this matter amicably and in good faith. We believe that with cooperation, we can bring this issue to a close in a way that satisfies all parties. However, if Epic fails to act promptly, we will have no choice but to proceed in a manner that protects Rodney's music and best interests.

We look forward to your immediate response and are eager to reach a resolution that alleviates the financial strain caused by these delays. I have full confidence in the stance in the ongoing litigation with Barry White and see a favorable outcome. I hope you can act in good faith and resolve our concerns, so we may celebrate together when all is said and done with the Barry White Trust.

Sincerely,
Necole Key
Rights Manager for Rodney

Oliver 626-598-6647

www.ladykeymanagement.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please
immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

**EXHIBIT F**

# EXHIBIT G

## Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

Registration Number

**SR 987-835**

Effective Date of Registration:
January 18, 2024
Registration Decision Date:
February 02, 2024

---

### Copyright Registration for a Group of Works Published on the Same Album
Registration issued pursuant to 37 C.F.R. § 202.4(k)

### Titles
_____

| | |
|---|---|
| Group Title: | Works published on the album Me and Joe |
| Album Title: | Me and Joe |
| Album Label: | Yeah Boy Entertainment |
| • Title of Work: | We've Arrived (Oh! But Yes), Album Track Number 1 |
| • Title of Work: | This Is for the Homies, Album Track Number 2 |
| • Title of Work: | Me and Joe, Album Track Number 3 |
| • Title of Work: | Let's Have Some Fun, Album Track Number 4 |
| • Title of Work: | Supercuts (Yeah Boy), Album Track Number 5 |
| • Title of Work: | Give Me the Mic, Album Track Number 6 |
| • Title of Work: | It's My Rope, Album Track Number 7 |
| • Title of Work: | Cooley High, Album Track Number 8 |
| • Title of Work: | Nobody Disses Me, Album Track Number 9 |
| • Title of Work: | Everlasting Bass, Album Track Number 10 |

### Completion/Publication
_____

| | |
|---|---|
| Year of Completion for the Works Published on the Album: | 1989 |
| Date of First Publication for the Album: | March 10, 1989 |
| Nation of First Publication: | United States |
| Works released on a digital album: | No |
| Works released on a physical product: | Yes |

### Author
_____

| | |
|---|---|
| • Author: | Rodney Oliver |
| Pseudonym: | Rodney O |

Page 1 of 2

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director



**Registration Number**

## SR 987-835

**Effective Date of Registration:**
January 18, 2024
**Registration Decision Date:**
February 02, 2024

---

## Copyright Registration for a Group of Works Published on the Same Album
Registration issued pursuant to 37 C.F.R. § 202.4(k)

### Titles

| | |
|---|---|
| **Group Title:** | Works published on the album Me and Joe |
| **Album Title:** | Me and Joe |
| **Album Label:** | Yeah Boy Entertainment |
| • **Title of Work:** | We've Arrived (Oh! But Yes), Album Track Number 1 |
| • **Title of Work:** | This Is for the Homies, Album Track Number 2 |
| • **Title of Work:** | Me and Joe, Album Track Number 3 |
| • **Title of Work:** | Let's Have Some Fun, Album Track Number 4 |
| • **Title of Work:** | Supercuts (Yeah Boy), Album Track Number 5 |
| • **Title of Work:** | Give Me the Mic, Album Track Number 6 |
| • **Title of Work:** | It's My Rope, Album Track Number 7 |
| • **Title of Work:** | Cooley High, Album Track Number 8 |
| • **Title of Work:** | Nobody Disses Me, Album Track Number 9 |
| • **Title of Work:** | Everlasting Bass, Album Track Number 10 |

### Completion/Publication

| | |
|---|---|
| **Year of Completion for the Works Published on the Album:** | 1989 |
| **Date of First Publication for the Album:** | March 10, 1989 |
| **Nation of First Publication:** | United States |
| **Works released on a digital album:** | No |
| **Works released on a physical product:** | Yes |

### Author

| | |
|---|---|
| • **Author:** | Rodney Oliver |
| **Pseudonym:** | Rodney O |

Everlasting bass.

| | |
|---|---|
| Registration Number / Date | PAU001347711 / 1990-03-27 |
| Type of Work Title | Music Everlasting bass. Mean r |
| Appears In | |
| Date of Creation Copyright | |
| Claimant Authorship on Application | |
| Performer | |
| Names | |

Hot Interesterl P ibli hing

l
J
o
e
1
9
8
9

Hot Interested Publishing

words & music: Rodney Oliver,

Joe Cooley, Jeff Page. Performed

by Rodney O, Joe Cooley.

Oli
ver
,
Ro
dn
ev
1!g
67-
Pa
y,
Jef
f
19
65-
Co
ole
y,
Joe
19
65-

To Whom It May Concern

I, **Joe Cooley**, am writing this letter to formally and legally assert that I had no involvement in the creation, composition, or authorship of the lyrics or instrumental for the track titled *Everlasting Bass*. My sole and exclusive contribution to this work was as a performer, specifically contributing scratching elements during the recording process.

I therefore affirm and declare the following:

1. **No Songwriting or Production Involvement**: I was not involved in the writing of the lyrics, composition, or instrumental production of *Everlasting Bass*. My involvement was strictly limited to performance as a scratch artist.
2. **No Ownership or Claims**: I make no claims to any ownership, rights, or interests in the songwriting, composition, or underlying works of *Everlasting Bass*.
3. **Request for Removal from Legal Proceedings**: As a result of my limited role as a performer, I hereby request that I be removed from any and all legal proceedings, lawsuits, claims, or disputes regarding *Everlasting Bass*, including any matters concerning its creation, authorship, ownership, or any related intellectual property claims.
4. **Legal Binding Nature of This Letter**: This letter serves as a legally binding statement, and by signing below, I hereby release myself from any liability, disputes, or claims connected to the ownership, authorship, or creation of *Everlasting Bass*, as my role was purely as a performer and not a creator of the track. This letter may be presented as a formal legal document in any ongoing or future disputes or claims to support my exclusion from any such matters.

Please confirm the receipt of this letter and the removal of my name from any and all legal disputes, claims, or lawsuits related to *Everlasting Bass*.
Thank you for your prompt attention to this matter.

Sincerely,

*Joe Anthony Cooley*

**Joe Cooley**
Date: [Insert Date]

**EXHIBIT G**

**EXHIBIT G**



# Audit Trail

DigiSigner Document ID:
47973476-5811-4aa2-87d6-2428e2219777

## Signer

IP Address: 2600:1700:fe70:4570:1707:1f:3410:f565

## Signature

*JOE ANTHONY COOLEY*

| Event | User | Time |
|-------|------|------|
| Upload document | necolekey@gmail.com | 10/11/24 6:14:46 PM EDT |
| Open document | necolekey@gmail.com | 10/11/24 6:14:58 PM EDT |
| Close document | necolekey@gmail.com | 10/11/24 6:15:14 PM EDT |
| Send for signing | necolekey@gmail.com | 10/11/24 6:15:47 PM EDT |
| Remove signer | necolekey@gmail.com | 10/11/24 6:16:56 PM EDT |
| Send for signing | necolekey@gmail.com | 10/11/24 6:18:33 PM EDT |
| Open document | unknown | 10/11/24 6:20:24 PM EDT |
| Open document | unknown | 10/11/24 6:20:38 PM EDT |
| Open document | unknown | 10/11/24 6:21:27 PM EDT |
| Open document | unknown | 10/11/24 6:22:15 PM EDT |
| Sign document | unknown 10/11/24 6:23:25 PM EDT | |
| Close document | unknown 10/11/24 6:23:25 PM EDT | |

EXHIBIT D

**EXHIBIT G**

**EXHIBIT G**

**IP Address**

| | |
|---|---|
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2603:8000:1002:e6bf:ee8c:ec | 68:5a44:cad0 |
| 2600:1700:fe70:4570:1707:1f: | 3410:f565 |
| 2600:1700:fe70:4570:1707:1f: | 3410:f565 |
| 2600:1700:fe70:4570:1707:1f: | 3410:f565 |
| 2600:1700:fe70:4570:1707:1f: | 3410:f565 |
| 2600:1700:fe70:4570:1707:1f: | 3410:f565 |

**EXHIBIT G**

**EXHIBIT H**

THIS PROPOSAL SHALL, UNLESS ACCEPTED, REJECTED OR COUNTERED BY OWNER,
REMAIN OPEN FOR A PERIOD OF THIRTY (30) DAYS, AND THE TERMS OF WHICH SHALL
BE KEPT CONFIDENTIAL

# EXHIBIT H

April 10, 2024

<u>**Subject to Signed Contract Administration Deal Proposal**</u>

1    **Parties**:-    (a)    Kobalt    Music    Services    America,    Inc. ("**Administrator**")

(b)  Rodney Oliver, p/k/a "Rodney O", individually and on behalf of his publishing designee(s), currently [TBC] (TBC), having an address at _____("**Owner**")

2    **Territory:-**  The universe.

3    **Term:-** Three (3) years (the "**Initial Period**") save that if the Advance remains unrecouped at the end of the Initial Period then the Term shall automatically extend to the end of the accounting period during which the statement provided to Owner in respect of the previous accounting period shows the Advance as being recouped.

4    **Retention Period:-**  Six (6) years following the Term.

5    **Collection Period:-**  Two (2) years following the Retention Period.

6    **Rights Granted:-**  Exclusive licence of copyright in all compositions owned and/or controlled by Owner at the commencement of the Term (including, without limitation, those compositions listed in the schedule that will be attached to the administration agreement between the parties (the "**Agreement**")) together with those compositions which the Owner owns and/or controls from time to time during the Term which shall be notified immediately by Owner to Administrator at such times (collectively, the "**Compositions**").

7    **Advance:-**    One Million Five Hundred Thousand U.S. Dollars ($1,500,000) (the "**Advance**"). The Advance shall be recoupable against any and all monies accruing to the Owner's royalty account pursuant to the Agreement.

The Owner makes the following warranties in respect of the Advance:

(i)    Owner shall control and deliver to Administrator, for administration under the Agreement, no less than the percentages of the compositions as set out on Schedule A attached hereto and

**EXHIBIT H**

THIS PROPOSAL SHALL, UNLESS ACCEPTED, REJECTED OR COUNTERED BY OWNER, REMAIN OPEN FOR A PERIOD OF THIRTY (30) DAYS, AND THE TERMS OF WHICH SHALL specifically including Owner's fifty percent (50%) authorship interest in and to the Composition titled "Like That" featuring Metro Boomin, Future & Kendrick Lamar (hereinafter collectively referred to as the "**Subject Compositions**");

**EXHIBIT H**

**EXHIBIT H**

THIS PROPOSAL SHALL, UNLESS ACCEPTED, REJECTED OR COUNTERED BY OWNER, REMAIN OPEN FOR A PERIOD OF THIRTY (30) DAYS, AND THE TERMS OF WHICH SHALL BE KEPT CONFIDENTIAL

(ii)    Administrator shall be able to collect, from inception, all royalties, fees and other monies (excluding only the so-called "writer's share" of public performance income) arising in the Territory in connection with Owner's share of the Compositions; and

(iii)    the gross mechanical royalty rate per unit in respect of the exploitation of the Owner's share of the Compositions in the United States of America and/or Canada shall be paid at not less than full statutory rate in each case.

The Advance shall be reduced on a pro-rata basis and/or by the amount that the Administrator does not receive to the extent that any of the warranties set out at paragraphs 7(i) – 7(iii) above are not accurate, as applicable. Owner shall indemnify Administrator against any resulting loss and Administrator shall have the right to require repayment of (and/or offset from monies otherwise payable or creditable to Owner) such amounts as may be necessary in the circumstances (and upon such demand Owner shall make such payment to Administrator within ten (10) business days).

(a)    The Advance shall be payable during the Term and within fourteen (14) days of the latest of:

(I)    full execution of the Agreement;

(II)    Administrator's receipt of written confirmation (to Administrator's reasonable satisfaction) confirming that the warranties made in paragraphs 7(i)-7(iii) above are accurate; and

(III)    Administrator's receipt of Owner's W9 form.

8    **Royalties:-**    (i)    **Pre-Recoupment of the Advance**:
("at source" basis)

**Entire Territory:-**

Mechanical & Print: 80/20+

+where Administrator carries out direct licensing of record companies and digital service providers ("**DSPs**") in the USA and provides additional royalty tracking services in connection therewith, Administrator shall be permitted to deduct an additional five percent (5%) "off-the-top" of income received from such record companies and DSPs in consideration of Administrator carrying out such services.

Performance: 60/40 (on publisher's

share) Synchronization: 80/20

Covers/Co-Writes: (defined herein as those covers and co-writes procured by the direct efforts of Administrator): 75/25 (save that the rate in respect of performance income shall be 50/50)

**EXHIBIT H**

**EXHIBIT H**

THIS PROPOSAL SHALL, UNLESS ACCEPTED, REJECTED OR COUNTERED BY OWNER, REMAIN OPEN FOR A PERIOD OF THIRTY (30) DAYS, AND THE TERMS OF WHICH SHALL BE KEPT CONFIDENTIAL

(ii) **Post-recoupment of**

**Advance:- Entire Territory:-**

Mechanical & Print: 85/15+

Performance: 70/30 (on publisher's

share) Synchronization: 80/20

Covers/Co-Writes: 75/25 (save that the rate in respect of performance income shall be 50/50)

| | | |
|---|---|---|
| 9 | **Accounting:-** | On a quarterly basis – within sixty five (65) days making available the Administrator's unique online secure system subject to standard online terms. |
| 10 | **Prior Agreement:-** | Owner has informed Administrator that none of the Compositions are or have been the subject of a prior publishing agreement. |
| 11 | **Online Pipeline Advances:-** | Subject to recoupment of the Advance and Administrator's satisfactory verification of the existence of sufficient sales/public performance of the Compositions, Administrator shall make pipeline advances available to the Owner via its secure online portal. |
| 12 | **Society Membership:-** | Owner confirms that Owner is and will remain a member of [TBC], subject to the terms and conditions of the Agreement. Owner confirms that Owner has not taken any advances against Owner's performance income from [TBC]. |
| 13 | **Due Diligence Approvals:-** | The transaction outlined above is contingent upon (i) the satisfactory completion by Administrator of due diligence, and (ii) Administrator securing all necessary internal corporate and board approvals. |

**EXHIBIT H**

**EXHIBIT H**

THIS PROPOSAL SHALL, UNLESS ACCEPTED, REJECTED OR COUNTERED BY OWNER,
REMAIN OPEN FOR A PERIOD OF THIRTY (30) DAYS, AND THE TERMS OF WHICH SHALL
BE KEPT CONFIDENTIAL

**Schedule A**

**Subject Compositions [forthcoming but to include not less than the following]**

| # | Song Title | Artist | Percent Control |
|---|---|---|---|
| 1. | "Like That" | Metro Boomin, Future & Kenrick Lamar | 50% |
| 2. | | | |
| 3. | | | |

**EXHIBIT H**

**EXHIBIT I**

**Subject: Urgent Call to Action – Songwriters & Artists Affected by Licensing Violations on "Like That"**

**Dear Artists, and Industry Professionals,**

I am reaching out as the rights manager for Rodney Oliver (Rodney O) to inform all songwriters, artists, and their teams of **serious licensing violations, undisclosed rights holders, and financial misconduct** by Epic Records and Wilburn Holding Co. concerning "Like That" by Future. This is not just Rodney's fight—**this affects everyone involved in this record.**

Epic Records has willfully disregarded **songwriter rights, transparency, and fair compensation**, leading to lost earnings, delayed publishing splits, and legal risks that impact multiple contributors.

 **If you were not fully informed about the licensing process, now is the time to act.**

## Fraudulent Non-Disclosure of Rights Holders

Epic Records failed to disclose key contributors—including Kendrick Lamar and songwriter Kobe—misleading Rodney and others about ownership splits. When Rodney's team requested a full list of publishers on March 19, 2024, Epic ignored the request, causing financial loss and obstructing fair payment

**EXHIBIT I**.

I trust this message finds you well. We are delighted to learn that Future has chosen to sample Rodney O's tfack "Everlasting Bass," marking a momentous collaboration. I would like to extend our sincere gratitude for your efforts in securing permission for the use of Rodney O's Master Sound Recording and MuSiC Composition

To expedite the process, please feel free to send us an offer. A favorable offer will certainly streamline the proceedings. To provide clarity on our approach to licensing fees, I consider various factors:

The commercial success of the originai song,

• The not0riety of the original and sampling artiste,

• The length and extent of the sample,

Distribution channels (downloads, streaming, etc.),

• The purpose of the sample in the new recording.

• Exclusive rights

requested, Attribution to

Rodney-O.

Could you please provide information on the Current rights holden for the new master and composition?

Additionally, considering Future's stature, would it be accurate to assume interest in performing the track at the upcoming Rolling Loud festival?

Regarding your request for master sample license, the mention of utilizing the Original Master in various contexts raises same questions. Could you elaborate on whether this penains to both the original and new masters? Clarification on how these rights will be exercised, especially concerning Rodney O's original creation, woLlld greatly assist in formulating an appropriate quote.

I am enthusiastiC about finalizing this deal promptly and appreciate your cooperation. Once again, thank you for Future's sampling of "Everlasting Bass." I eagerly await your response.

Best regards,

Necole Key
Rights Manager
www ladvkevmanaaement
com 626-598-6647

**EXHIBIT I.**

**EXHIBIT I.**

(212) 707-8804 (ph)

From: Necole Key c<u>necole@ladvl‹evmanaeement com</u>›
Sent: Friday March 8, 2024 3:57 PM
To: Eric Weissman <<u>er irkedirwmu‹ie com></u>
Ec: Adam Benjamin c<u>ad am@erJc w mudir com ></u>
Subject: Re: Use of "Everlasting Bass" (Rodney O & Joe Cooley) on the master recording entitled "Like That" performed by Future

Hello Eric
Appreciate you providing us your clients offer.

However my questions were not answered:

Who are the other rights holders? Enic Records o vns tfi•e .master and I can keep you pcs•e on th=. new x'riters

Does Future plan to perform the track at the Rolling Loud Festivals to the best of our knowledge it '.•.'i II nat 'we per*ormeñ.
How are they crediting Rodney* Someth' np alas p the hi es of {and I'll neeu soive- add'l infc- major. ion. '/ou]:
E oil'airs a sarr p Ie of "Everlastlr' Bass" \\ r.rte uy Joe Cooley, R*dnev OlivEr and Jeffrey Pape and performed hy Rodney
0 & Joe Cooley, used co'ur•esV of                              and p'ublishe by
Also, does the label have the authority to negotiate the publishing 7 I'm in rontack v'zith tile w«per paroles ir. :er 1s
of ne¿o a ng iL-e publishinf side

With all this for me to assume I will need to reject their offer. I will submit a counter offer shortly.

Appreciate you.

Necole Key
Rights
Manager
<u>www ladvkovmanaaemeLt CDFFI</u>
626-598-6647

**EXHIBIT I.**

Outlook

---

Re: Use of "Everlasting Bass" (Rodney O & Joe Cooley) on the master recording entitled "Like That" performed by Future

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 3/19/2024 4:42 PM

**To**   Eric Weissman <eric@ericwmusic.com>

**Cc**   Adam Benjamin <adam@ericwmusic.com>

Hi Eric

I reached out to you yesterday and Rodney O and I left you a voice mail today.  He called you to discuss.  You probably could have gotten the deal closer to what it was last week if we had spoken to you. We didn't even receive a confirmation email to let us know you received my last email.

I know I was told the label was in contact with the publishers but not told they had the authority to negotiate on their behalf. May you put me in contact with the publishers or should I reach out to them myself? I would like them to be aware of the current situation and have the chance to advocate for themselves.
Thank you

ALL RIGHTS RESERVED

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

From: Necole Key <necole@ladykeymanagement.com>

---

## Unauthorized Modification of the Licensed Work

The non exclusive license granted to Epic Records the non-exclusive and perpetual right to exploit the original master as embodied in the Future Master **SINGULAR NOT PLURAL (S)**

**The non-exclusive license was for a specific master of "Like That"—which did not include Kendrick Lamar.**

Epic **altered the song without permission**, releasing an unauthorized derivative work on March 22, 2024, and concealing this from Rodney

**EXHIBIT I**.

U.S. Copyright Law (17 U.S.C. § 106) grants the copyright holder the exclusive right to create derivative works.

Hi Necole,

Thank you for your prompt response.

Metro Boomin did contact Rodney O directly about the use of "Everlasting Bass" in "Like That" and Rodney approved:

https://www.complex.com/music/a/markelibert/rodney-o-metro-boomin-cleared-sample-like-that

Please note: prior to the release of the album, no one was privy to hearing full tracks - no one other than Future and Metro's inner circle.

According to the multiple correspondences between you and Eric Weismann, the material terms remained unchanged since prior to the record release and it seems as if the holdup has been minor details such as credit and the award of gold and platinum plaques. We don't believe its correct to consider that this sample us remains incomplete. We're just waiting to have Rodney paid.

Again, the only reason Rodney has not yet been paid is that we were missing the ACH form and once sent, it was unsigned.  Since this matter began prior to the release, we consider it to still be within your responsibilities to close. Please send us the signed ACH form and we can have Rodney paid and we can all move forward.

Thank you again and

Best wishes,

**Bob Currie**
Senior Contract Administrator

---

All contributors must **demand the following within five (3) business days:**

**A full licensing review** and correction to ensure all songwriters receive their proper share.

**Immediate disclosure of all rights holders** (including those Epic failed to disclose).

**Secure Retroactive non exclusive licenses for the master featuring Kendrick Lamar directly with Rodney Oliver.**

**EXHIBIT I.**

# Failure to take action now will be considered an endorsement of Epic and Wilbum Holdings Co. mishandling of this deal.

Failure to address these violations, I will advise **Rodney's legal team to proceed with legal action**, including:

A breach of contract, fraudulent misrepresentation, copyright infringement, and unjust enrichment.

**Seek damages** for lost revenue, withheld payments, and wrongful legal burdens imposed on Rodney.

**Pursuing all legal remedies** to hold those accountable

I urge you to take this matter with deep concern. The law will override industry norms. The tactics used by record labels and legal teams to prevent artists from protecting their rights are well-documented—but they are not legally binding.

**"But the defendant's theory that "we've always done it that way!" didn't matter here, as explained by the court:**

**Nonetheless, evidence of custom and course of dealing cannot displace rights conferred by the copyright laws. See Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc., 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble.");Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted.").**

I will not allow Rodney Oliver to fall victim to a system designed by industry executives and attorneys that disregards copyright law and contractual law.

I have a proven history of setting case law to defend the rights of creators, and I am fully prepared to take the necessary legal steps to ensure every songwriter and artist affected by this injustice is protected and compensated.

This is a critical moment for everyone involved in "Like That."

**EXHIBIT I.**

Epic Records and Wilbum Holdings Co has shown blatant disregard for your work, your compensation, and your rights.

Leaving this in the hands of Epic and Future's team is a major risk—I am available to speak directly with any affected parties.

The details of this case and our discussion should remain strictly confidential, shared only among the relevant contributors and their teams

Sincerely,
 Necole Key
 Rights Manager | Rodney O

**EXHIBIT I**

**EXHIBIT I**

**Subject: Urgent Call to Action – Songwriters & Artists Affected by Licensing Violations on "Like That"**

**Dear Artists, and Industry Professionals,**

I am reaching out as the rights manager for Rodney Oliver (Rodney O) to inform all songwriters, artists, and their teams of **serious licensing violations, undisclosed rights holders, and financial misconduct** by Epic Records and Wilburn Holding Co. concerning "Like That" by Future. This is not just Rodney's fight—**this affects everyone involved in this record.**

Epic Records has willfully disregarded **songwriter rights, transparency, and fair compensation**, leading to lost earnings, delayed publishing splits, and legal risks that impact multiple contributors.

 **If you were not fully informed about the licensing process, now is the time to act.**

## Fraudulent Non-Disclosure of Rights Holders

Epic Records failed to disclose key contributors—including Kendrick Lamar and songwriter Kobe—misleading Rodney and others about ownership splits. When Rodney's team requested a full list of publishers on March 19, 2024, Epic ignored the request, causing financial loss and obstructing fair payment.

**EXHIBIT I**.

I trust this message finds you well. We are delighted to learn that Future has chosen to sample Rodney O's tfack "Everlasting Bass," marking a momentous collaboration. I would like to extend our sincere gratitude for your efforts in securing permission for the use of Rodney O's Master Sound Recording and MuSiC Composition

To expedite the process, please feel free to send us an offer. A favorable offer will certainly streamline the proceedings. To provide clarity on our approach to licensing fees, I consider various factors:

   The commercial success of the originai song,

• The not0riety of the original and sampling artiste,

• The length and extent of the sample,

   Distribution channels (downloads, streaming, etc.),

• The purpose of the sample in the new recording.

• Exclusive rights

   requested, Attribution to

   Rodney-O.

Could you please provide information on the Current rights holden for the new master and composition?

Additionally, considering Future's stature, would it be accurate to assume interest in performing the track at the upcoming Rolling Loud festival?

Regarding your request for master sample license, the mention of utilizing the Original Master in various contexts raises same questions. Could you elaborate on whether this penains to both the original and new masters? Clarification on how these rights will be exercised, especially concerning Rodney O's original creation, woLlld greatly assist in formulating an appropriate quote.

I am enthusiastiC about finalizing this deal promptly and appreciate your cooperation. Once again, thank you for Future's sampling of "Everlasting Bass." I eagerly await your response.

Best regards,

Necole Key
Rights Manager
www ladvkevmanaaement
com 626-598-6647

**EXHIBIT I.**

**EXHIBIT I.**

(212) 707-8804 (ph)

From: Necole Key <necole@ladvl‹evmanaeement com›
Sent: Friday March 8, 2024 3:57 PM
To: Eric Weissman <er irkedirwmu«ie com>
Ec: Adam Benjamin cad am@erJc w mudir com >
Subject: Re: Use of "Everlasting Bass" (Rodney O & Joe Cooley) on the master recording entitled "Like That"
performed by Future

Hello Eric

Appreciate you providing us your clients offer.

However my questions were not answered:

Who are the other rights holders? Enic Records o vns tfi•e .master and I can keep you pcs•e on th=. new x'riters

Does Future plan to perform the track at the Rolling Loud Festivals to the best of our knowledge it '.•.'i II nat 'we per*ormeñ.
How are they crediting Rodney* Someth' np alas p the hi es of {and I'll neeu soive- add'I infc- major. ion. '/ou]:
E oil'airs a sarr p Ie of "Everlastlr' Bass" \\ r.rte uy Joe Cooley, R*dnev OlivEr and Jeffrey Pape and performed hy Rodney
0 & Joe Cooley, used co'ur•esV of                           and p'ublishe by
Also, does the label have the authority to negotiate the publishing 7 I'm in rontack v'zith tile w«per paroles ir. :er 1s
of ne¿o a ng iL-e publishinf side

With all this for me to assume I will need to reject their offer. I will submit a counter offer shortly.

Appreciate you.

Necole Key
Rights
Manager
www ladvkovmanaaemeLt CDFFI
626-598-6647

**EXHIBIT I.**

**EXHIBIT I.**

 Outlook

---

**Re: Use of "Everlasting Bass" (Rodney O & Joe Cooley) on the master recording entitled "Like That" performed by Future**

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Tue 3/19/2024 4:42 PM

**To** Eric Weissman <eric@ericwmusic.com>

**Cc** Adam Benjamin <adam@ericwmusic.com>

Hi Eric

I reached out to you yesterday and Rodney O and I left you a voice mail today.  He called you to discuss.  You probably could have gotten the deal closer to what it was last week if we had spoken to you. We didn't even receive a confirmation email to let us know you received my last email.

I know I was told the label was in contact with the publishers but not told they had the authority to negotiate on their behalf. May you put me in contact with the publishers or should I reach out to them myself? I would like them to be aware of the current situation and have the chance to advocate for themselves.
Thank you

ALL RIGHTS RESERVED

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

From: Necole Key <necole@ladykeymanagement.com>

---

## Unauthorized Modification of the Licensed Work

The non exclusive license granted to Epic Records the non-exclusive and perpetual right to exploit the original master as embodied in the Future Master **SINGULAR NOT PLURAL (S)**

**The non-exclusive license was for a specific master of "Like That"—which did not include Kendrick Lamar.**

Epic **altered the song without permission**, releasing an unauthorized derivative work on March 22, 2024, and concealing this from Rodney.

**EXHIBIT I.**

**EXHIBIT I.**

U.S. Copyright Law (17 U.S.C. § 106) grants the copyright holder the exclusive right to create derivative works.

Hi Necole,

Thank you for your prompt response.

Metro Boomin did contact Rodney O directly about the use of "Everlasting Bass" in "Like That" and Rodney approved:

https://www.complex.com/music/a/markelibert/rodney-o-metro-boomin-cleared-sample-like-that

Please note: prior to the release of the album, no one was privy to hearing full tracks - no one other than Future and Metro's inner circle.

According to the multiple correspondences between you and Eric Weismann, the material terms remained unchanged since prior to the record release and it seems as if the holdup has been minor details such as credit and the award of gold and platinum plaques. We don't believe its correct to consider that this sample us remains incomplete. We're just waiting to have Rodney paid.

Again, the only reason Rodney has not yet been paid is that we were missing the ACH form and once sent, it was unsigned.  Since this matter began prior to the release, we consider it to still be within your responsibilities to close. Please send us the signed ACH form and we can have Rodney paid and we can all move forward.

Thank you again and

Best wishes,

**Bob Currie**
Senior Contract Administrator

All contributors must **demand the following within five (3) business days:**

 **A full licensing review** and correction to ensure all songwriters receive their proper share.

**Immediate disclosure of all rights holders** (including those Epic failed to disclose).

**Secure Retroactive non exclusive licenses for the master featuring Kendrick Lamar directly with Rodney Oliver.**

**EXHIBIT I**.

## Failure to take action now will be considered an endorsement of Epic and Wilbum Holdings Co. mishandling of this deal.

Failure to address these violations, I will advise **Rodney's legal team to proceed with legal action**, including:

A breach of contract, fraudulent misrepresentation, copyright infringement, and unjust enrichment.

 **Seek damages** for lost revenue, withheld payments, and wrongful legal burdens imposed on Rodney.

 **Pursuing all legal remedies** to hold those accountable

I urge you to take this matter with deep concern. The law will override industry norms. The tactics used by record labels and legal teams to prevent artists from protecting their rights are well-documented—but they are not legally binding.

**"But the defendant's theory that "we've always done it that way!" didn't matter here, as explained by the court:**

**Nonetheless, evidence of custom and course of dealing cannot displace rights conferred by the copyright laws. See Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc., 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble.");Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted.").**

I will not allow Rodney Oliver to fall victim to a system designed by industry executives and attorneys that disregards copyright law and contractual law.

I have a proven history of setting case law to defend the rights of creators, and I am fully prepared to take the necessary legal steps to ensure every songwriter and artist affected by this injustice is protected and compensated.

This is a critical moment for everyone involved in "Like That."

**EXHIBIT I**.

Epic Records and Wilbum Holdings Co has shown blatant disregard for your work, your compensation, and your rights.

Leaving this in the hands of Epic and Future's team is a major risk—I am available to speak directly with any affected parties.

The details of this case and our discussion should remain strictly confidential, shared only among the relevant contributors and their teams

Sincerely,
 Necole Key
 Rights Manager | Rodney O

**EXHIBIT I**

Recordation record V1972P205

Copyright Catalog

# EXHIBIT K

A Thought of heaven & 6023 other titles; songs. (Part 014 of 035)

Document Numbar V1972P205

Entire Copyright Document V1972 P152-291

Type of Document Recorded Document Date

of Recordation 1983-04-1d

Date of **Execution**  15Jun82

Party I     Six Continents Music Publishing, Inc.

Party 2 Unichappell Music, Inc.

Notes  Assignment of copyright.

List of Works 00001 I'd like to be a rose in your garden /By Al Kasha, Hank Hunter & Joel Hirchhorn EU891730 (1965} 00002 I'd rather cut cane for Castro /Bv James Avery & Terry Stamn EU344671 (1972) 00003 I'd rather have two girls 21 (than one gin 42} By Mark Gartman & Stanley Schwartz 00004 I'd spend mv whole life loving you /By Harve Fuqua & Susaye Green EU449494 (1973} 00005 I'tf always care for y u By Sherry N Wilson EU314564 (1972) 00006 I'll always love y   By Al Kasha, Hank Hunter & Joel Hirchhorn EU891732 (1965)

# EXHIBIT K

# EXHIBIT K

I'm gonna love you just a little bit more, baby /By Barry
White. EU387551 (1973)

ShareR

Document Numbar V1972P205

Entire Copyright Document  V1972 P152-291

Type of

Document Recorded

Document Registration

Numbar Not Verified

EU387551 (1973)

Date of Recordation 1983-04-1d

Titte I'm gonna love you just a little bit more, baby /By Barry White. EU387551 (1973) Title

Appears in Document A Thought of heaven & 6023 other titles: son          Part 014 of 035)

**EXHIBIT K**

I'm gonna love you just a little more, babe;song /By Barry White.

| | |
|---|---|
| Document Number | V1901P275 |
| Entire Copyright Document | V1901P275-280 |
| Type of Document Date of Recordation Date of Execution | R |
| Party 1 | e |
| Party 2 | o |
| Title Names | o |
| | r |
| | f |
| | l |
| | e |
| | c |
| | J |
| | D |
| | o |
| | c |
| | r |
| | i |
| | m |
| | e |
| | n |
| | t |
| | 1 |
| | 9 |
| | 8 |
| | 2 |
| | - |
| | 0 |
| | 4 |
| | - |
| | 0 |
| | 9 |

SDeo72; date of c ert.: 31Mar82

Barry White doing business under the firm name and style of Sa -\/ette Music.

Broadcast Mri sic, Inc.

I'm gonna love you just a little more, babe;song 'By Barry White.

\

Broadcast Music, Inc

**EXHIBIT K**

I'm gonna love you just a little bit more, baby /By Barry White. EU3B7551 (1973)

Document Numbar  V1972P205

Entire Copyright Document V1972 P152-291

Typo of Document Recorded Document

Registration Number Not Verified EU387551 (1973)

Date of Recordation 1983-04-1d

Titte I'm gonna love you just a little bit more, baby /By Barry White. EU387551 (1973)

Title Appears in Document A Thought of heaven & 6023 other titles: on                    Part 014 of 035)

**EXHIBIT K**

**EXHIBIT K**

I'm gonna love you just a little more, baby /(In Barry White: Just *1or* you) EP319808 (1973)

Document Number    V1669P081

Entire Copyright Document V1669 P39-90

Type of Document    Recorded

Document Registration Number Not Verified EP319808

(1973{

Data of Racordation 1978-07-17

Title  I'm gonna love you just a little more, baby /(In Barry White: Just for you) EP319808 (1973)

Title Appears in Document    Ageless woodland wonder & 1558 other titles;

**EXHIBIT K**

Ageless woodland wonder & 1558 other titfes;musical compositions. (Part 008 of 009)

Document Numbar  V1669P081

Entire Copyright Document  V1669 P39-90

Typo of Document  Recorded Document

Date of Recordation  1978-07-17

Date of Execution  12Jul7B

Party I    Interworld Music Group, Inc.

Party 2 Six Continents Music Publishing, Inc.

Notas  Assignment of copyrights.

List of Works  00001 M 1 5' ative /EU263531 (1971)

00002 Marie, take a chance /EUJ37117 (1969)

00003 Mask unon your face /EU246756 (1971)

00004 Memories of Melinda /EU180242 (1970)

00005 Mexico /EU137621 (1969)

**EXHIBIT K**

**EXHIBIT K**

  

licrecords.copyright.gov

4 Previous    Next y

nna love you just a little more, babe.

| | |
|---|---|
| Registration Number / Date | RE0000841799 / 2001-01-05 |
| Renewal Registration for | EU0000387551 / 1973-01-08 |
| Type of Work | Music |
| Title | I'm gonna love you just a little more, babe. |
| Copyright Claimant | Barry White (A) |
| Notes | Words & music. |
| Names | White, Barry |

**EXHIBIT K**

**EXHIBIT L**

 Outlook

---

**Re: Everlasting Bass**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Mon 4/15/2024 8:55 AM

**To**  FinanR@gtlaw.com <FinanR@gtlaw.com>

**Cc**  CurrieB@gtlaw.com <CurrieB@gtlaw.com>

Good morning,

Rob, please provide a ETA on the long form agreements.  It has been 3 weeks post release, I believe that is sufficient time to be able to do so.  I am sure you are aware of the Netflix opportunity for the track LIKE THAT.  It is being delayed due to unconfirmed credits and splits.  I have asked you to provide a sign offe of the agreed splits from your client for our records to supplement the long form for the time being and did not receive a reply.

Please, Rodney has already received his payment late. We don't wish to have opportunitites missed as well. I will contact Metro Boomin publisher and ask for a sign off as well. Hopefully lessen your work load and leaving you just to handle the needed request for you client.

Appreciate your attention to this matter
Thank You

Necole Key
Rights Manager
626-598-6647
www.ladykeymanagement.com

---

**From:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Sent:** Friday, April 5, 2024 1:37 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Subject:** RE: Everlasting Bass

Necole,

We are working hard to complete these documents.

Document for the master will come early mid-week followed shortly thereafter by the publishing document.

Thanks and have a good weekend.

Best,

Rob

**EXHIBIT L**

**Robert J. Finan**
Of Counsel

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2206 | F +1 678.553.2207
FinanR@gtlaw.com | www.gtlaw.com | View GT Biography

GT GreenbergTraurig

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Friday, April 5, 2024 11:52 AM
**To:** Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Cc:** Currie, Bob (Para-Atl-Ent) <CurrieB@gtlaw.com>
**Subject:** Re: Everlasting Bass

Please don't worry about the $5000
I only wanted Rodney taken care of.
I am happy now.

I only wanted the agreed terms go be enforced.

That's all I ever wanted. I am very happy right now
It was never about the money it was about terms and making sure they are being followed.


Thank you both

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Sent:** Friday, April 5, 2024 8:46:10 AM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Subject:** RE: Everlasting Bass

Nicole.

Happy Friday.

I am glad the money was received just like we said it would be.

Please don't jump to conclusions.

You misread Bob's email.

**EXHIBIT L**

We intend to pay the extra $5k to cover legal fees as I told you but it was our absolute priority was to get Rodney the $55k as agreed.

Please understand that we had to jump through a lot of hoops to get that money to Rodney this week but we did what we said.

This extra $5k will be put in the long form.

We are working to try to get these out but as you can imagine we are immersed in paperwork on this project.

We will give you an update on timing of the long form by close of business today.

Thank you.

Rob

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Friday, April 5, 2024 11:37 AM
**To:** Currie, Bob (Para-Atl-Ent) <CurrieB@gtlaw.com>
**Cc:** Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Subject:** Re: Everlasting Bass

**\*EXTERNAL TO GT\***

I spoke with Rodney and he received the description of the payment one for
The non recoupable fee for master and one for the non recoupable fee for composition

Now I am happy. It was your email that is incorrect.
You didn't pay the out of pocket fees
Which I am okay with. I didn't ask for that to be paid.

I will register the song in the PRO as I believed it to be . Any revisions can be made by their publishing if need be.

When will we receive the long forms of agreements?

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Friday, April 5, 2024 8:23:22 AM
**To:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Cc:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** Re: Everlasting Bass

Good morning, I was in meetings all day yesterday, I am a bit confused. Rodney received $55,000 which was $50,000 for the and $5,000 for the composition.

**EXHIBIT L**

However you are stating you sent just the $50,000 for the master and $5,000 for my outta pocket legal fees ( which I am thankful)

That means the payment for the composition is not completed and the deal is not done.

This is exactly what I was talking about when I asked in the very beginning if the label had the authority to negotiate the publishing.

Payment always comes through for the master but I have to go chasing what was agreed upon for the publishing.

As I emphasized, my main concern was to get Rodney paid. That has yet to happen. As of now the publishing has not been paid. I stated if payment was not received as agreed for master and publishing ( which was invoiced) and now am being told was not sent with the payment yesterday, I would rescind the agreement. Which includes the mechanical is also.

Rob, I have been beyond patient and understanding.

First by looking the other way when the track was played three times without an agreement
Three unauthorized performances of a derivative work.
Then the official release without having signed agreement.
I been accused of harming friendships and bending you over as if I am trying to come up on an opportunity. Mind you an opportunity that is provided by the creation that my client made.

Now I am chasing down money that was agreed upon in writing and now told was not sent in full. Your email does not mention payment for the publishing.
We are now two weeks in and a deal is still not done for publishing.
Can you put me in contact with the person who has the authority to negotiate the publishing clearance so I can get a deal done immediately and get Rodney paid.

This delays registered and payment from the PRO they don't retro payments like soundexchange. They begin as soon as the song is registered which has not been done and I have asked to and been ignored as well as publishing.

This needs to be addressed immediately. Please don't accuse me of harming relationships by enforcing terms we have agreed and have not been fulfilled on your end. Don't accuse me of bending you over. If anyone is being bent over, it is us, we still haven't been paid the clearance fee for the composition.

To avoid having to wait again for payment, it will be best that we just claim 100% of the composition and manage the accounting ourselves.

I want to talk to the one who can get the composition cleared.

EXHIBIT M

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** CurrieB@gtlaw.com <CurrieB@gtlaw.com>
**Sent:** Thursday, April 4, 2024 9:42:43 AM
**To:** Necole Key <necole@ladykeymanagement.com>
**Cc:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** Everlasting Bass

Hi Necole,

I expect all is well.

We understand that $55,000 arrived in Rodney's account as of yesterday and that he was sent an email from Sony about the deposit.

As agreed, we will arrange to send an additional $5,000 for your legal costs.

Additionally, we have a SoundExchange LOD that needs to be signed by Future, Metro Boomin and Kendrick Lamar which might take a while to arrange.  Nonetheless, Rodney's SoundExchange royalties will be paid retroactively, and we will keep you on copy when the SoundExchange LOD is submitted.

Thank you again for your help with this matter and with

Best wishes,


**Bob Currie**
Senior Contract Administrator

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.7332  |  F +1 678.553.7333 l M +1 678.722.1172
CurrieB@gtlaw.com  |  www.gtlaw.com



Learn more about our commitment to diversity, equity, and inclusion.

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.


**EXHIBIT L**

 Outlook

---

**RE: Like that**

---

**From** FinanR@gtlaw.com <FinanR@gtlaw.com>

**Date** Wed 1/15/2025 8:10 AM

**To**   Necole Key <necole@ladykeymanagement.com>

Necole.

Please understand that we are not trying to deprive anyone of anything.

We have a duty to pay the rightful owner.

I think you and I can agree that is the way it should be.

That fact is currently in dispute and the subject of litigation.

If it turns out to be Rodney great.  If White, that is fine.

We do not have a dog in this fight.

We hope this is sorted soon so we can put everything behind us.

Rob

**Robert J. Finan**
Of Counsel

Greenberg Traurig, LLP
Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T +1 678.553.2206 | F +1 678.553.2207
FinanR@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

**GT** GreenbergTraurig

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 14, 2025 9:01 PM
**To:** Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Subject:** Re: Like that

https://www.instagram.com/p/DBEnukdyZAQ/?igsh=MzRlODBiNWFlZA==

https://www.instagram.com/reel/DBMwpBOMp3Y/?igsh=MzRlODBiNWFlZA==

Just like I  fought for 2 Live Crew I will fight for Rodney.

**EXHIBIT M**

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 14, 2025 5:51:44 PM
**To:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** Re: Like that

We do. Barry White's claim is opportunistic. We legally don't even have to defend since we don't have a music composition license with all parties involved and finalization splits. We have been defending the new work without valid agreement in place.  We are only defending because we did not infringe on Barry White and the claim has damage Rodney's legacy.
 If our attorneys didn't think we could win, don't you think we would have settled. In fact how can we settle if we don't even have finalized splits Kendrick is claiming 25%


Once we get this case thrown out Epic and others will not have secured a license, have illegally withheld earnings, misrepresented the authority of negotiating the composition  amongst other violations

I have been trying to get a long form to have a clear understanding of our duties and accounting that we discussed in negotiations and have been ignored.

PLEASE refer to my  email to you and Epic that I sent  few months back.

ALL RIGHTS RESERVED

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Sent:** Tuesday, January 14, 2025 5:27:11 PM
**To:** Necole Key <necole@ladykeymanagement.com>
**Subject:** RE: Like that

Hi Necole,

You and your client represented that he owned the rights.

That is in dispute and is the subject of a current lawsuit brought by the Estate of Barry White.

It is not appropriate for me to discuss this matter pending the outcome of the litigation.

Rob

**Robert J. Finan**

Of Counsel

Greenberg Traurig, LLP

Terminus 200 | 3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305

T +1 678.553.2206  |  F +1 678.553.2207

FinanR@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

**GT** GreenbergTraurig

---

**From:** Necole Key <necole@ladykeymanagement.com>
**Sent:** Tuesday, January 14, 2025 7:27 PM
**To:** Finan, Robert J. III (OfCnl-Atl-Ent) <FinanR@gtlaw.com>
**Subject:** Like that

**\*EXTERNAL TO GT\***

Hi Rob

FYI
You and Epic really screwed up this deal. Misrepresented amongst other things.
You never provided anything I asked for.

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

 Outlook

---

**Songwriting Credit for Rodney Oliver on "Like That"**

---

**From** Necole Key <necole@ladykeymanagement.com>

**Date** Sun 2/2/2025 1:27 PM

**To** FinanR@gtlaw.com <FinanR@gtlaw.com>

Dear Rob


The continued deliberate actions to not comply with the agreed-upon short-form terms regarding accounting and songwriting credits are unacceptable. Rodney Oliver's exclusion from the official credits for Like That by Future, Kendrick Lamar, and Metro Boomin is a direct violation of the agreed terms and industry standards of fair dealing.

I have made it explicitly clear that Rodney Oliver must be credited consistently, as other songwriters have been. This issue has been raised multiple times, yet no corrective action has been taken. Your failure to address this matter constitutes a breach of good faith and professional integrity.

Immediate correction is required to ensure Rodney Oliver's rightful credit is updated across all platforms, including the Grammy nomination listing. Please confirm by Wednesday February 5, 2025 that the necessary changes have been made.

If Rodney does not obtain the recognition he deserves I assure you that he will be well compensated for failing to do so.

All rights reserved.

Sincerely,


Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

---

**From:** Necole Key
**Sent:** Friday, January 31, 2025 10:32:42 PM
**To:** FinanR@gtlaw.com <FinanR@gtlaw.com>
**Subject:** LIKE THAT - Credits

Hello

As I made you aware of when we negotiated the for the song Like That. Rodney-O is the sole creator of EVERLASTING BASS . He independently created the lyrics and Produced the track.

Here is Joe Cooley signed declaration of not being an author of Everlasting Bass.

Naming only Rodney Oliver as the songwriter and Rodney O  and Joe Cooley as performing artist on Everlasting Bass

Yet another failure to comply to our agreed terms.

Appreciate if you correct and comply to the terms we agreed

Thank you

Necole Key
Rights Manager
www.ladykeymanagement.com
626-598-6647

**EXHIBIT N**