UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THE BARRY WHITE FAMILY                    Case No. 24-cv-07509 (DLC)
TRUST U/A/D: DECEMBER 19, 1980,
BY ITS DULY EMPOWERED TRUSTEES,

                Plaintiffs,

     -against-

JOE COOLEY,
RODNEY DAVID OLIVER P/K/A
RODNEY-O, d/b/a NOT INTRESTED
PUBLISHING,

                Defendants.

------------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS


**HERBSMAN HAFER WEBER & FRISCH, LLP**
Dorothy M. Weber (DMW-4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
dorothy@musiclaw.com

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 2

PROCEDURAL BACKGROUND ........................................................................................... 4

    A.   Defendant's Violations of the Scheduling Order and Initial Refusals to Provide Discovery 4

    B.   Defendants' Failure to Comply With The Court's First Order Compelling  Discovery .... 5

    C.   Defendants' Failure to Comply with the Second Order Compelling Discovery ............... 5

    D.   Multiple Other Deficiencies With Defendants' Discovery Responses .............................. 8

    E.   Defendants' Other Willful Violations of This Court's Orders and Directives ................ 10

    F.   Relief Requested ................................................................................................ 12

LEGAL ARGUMENT ........................................................................................................... 13

POINT I .................................................................................................................................. 13

    A.   Final Order Compelling Disclosure .................................................................... 13

    B.   Harsher Sanctions Are Warranted Under Fed. R. Civ. P. 37(b) and the Court's Inherent

    Powers .................................................................................................................. 14

    C.   Defendants' Misconduct Will Not Abate Without The Imposition of Sanctions ............. 18

    D.   Filing Injunction Order ..................................................................................... 21

POINT II ................................................................................................................................. 22

POINT III ............................................................................................................................... 23

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
   58 F.3d 849 (2d Cir. 1995) ................................................................... 22

*Chan v. Rag & Bone Indus.*, LLC,
   No. 15 CIV. 6319 (RWS), 2016 WL 7495184 (S.D.N.Y. Dec. 21, 2016) ............................. 16

*Chowdhury v. Hamza Exp. Food Corp.*,
   308 F.R.D. 74 (E.D.N.Y. 2015) ................................................................ 22

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
   334 F.R.D. 68 (S.D.N.Y. 2020) ................................................................ 16

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991) ............................................................. 17, 24

*Frye v. Lagerstrom*,
   No. 15 CIV. 5348 (NRB), 2017 WL 11809790 (S.D.N.Y. Aug. 31, 2017) ............................ 27

*Funk v. Belneftekhim*,
   861 F.3d 354 (2d Cir. 2017) ......................................................... 19, 20, 24

*Google LLC v. Starovikov*,
   No. 21CV10260 (DLC), 2022 WL 16948296 (S.D.N.Y. Nov. 15, 2022) ........................... 18, 27

*Grammar v. Sharinn & Lipshie, P.C.*,
   No. 14 CIV. 6774 (JCF), 2016 WL 525478 (S.D.N.Y. Feb. 8, 2016) .................................. 22

*Guggenheim Cap., LLC v. Birnbaum*,
   722 F.3d 444 (2d Cir. 2013) .................................................................. 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   236 F.R.D. 177 (S.D.N.Y. 2006) ............................................................. 16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   673 F. Supp. 3d 345 (S.D.N.Y. 2023) .................................................... 17, 18, 20

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
   991 F.3d 361 (2d Cir. 2021) .................................................................. 25

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
   No. 16CV1318GBDBCM, 2017 WL 3671036 (S.D.N.Y. July 18, 2017) .............................. 23

*Jules v. Andre Balazs Properties*,
   No. 20-cv-10500 (LGS), 2023 WL 5935626 (S.D.N.Y. Sept. 12, 2023) ................................ 26

*Karsch v. Blink Health Ltd.*,
   No. 17 CIV. 3880 (VM) (BCM), 2019 WL 2708125 (S.D.N.Y. June 20, 2019) .................... 18

*Lightbox Ventures, LLC v. 3rd Home Ltd.*,
   No. 16CV2379 (DLC), 2017 WL 5526073 (S.D.N.Y. Nov. 15, 2017) .................................. 25

*MCI Worldcom Communications, Inc. v. Gamma Communications Group, Inc.*,
   204 F.R.D. 259 (S.D.N.Y. 2001) ...................................................................................... 22

*Morgan Art Found. Ltd. v. McKenzie*,
   No. 18-CV-4438 (JLR) (BCM), 2025 WL 1344347 (S.D.N.Y. Jan. 17, 2025) ...................... 21

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   *427 U.S. 639* (1976) ......................................................................................................... 17

*Publicola v. Lomenzo*,
   54 F.4th 108 (2d Cir. 2022) ............................................................................................. 26

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) ...................................................................................... 20, 22

*Scantibodies Lab'y, Inc. v. Church & Dwight Co.*,
   No. 14CV2275 (JGK) (DF), 2016 WL 11271874 (S.D.N.Y. Nov. 4, 2016) .......................... 23

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
   No. 15CV3533CMBCM, 2017 WL 2840279 (S.D.N.Y. June 27, 2017) .............. 19, 20, 21, 25

*Shim-Larkin v. City of New York*,
   No. 16-CV-6099 (AJN), 2017 WL 4862790 (S.D.N.Y. Oct. 25, 2017) ................................ 26

*Strike 3 Holdings, LLC v. Doe*,
   No. 23CV578 (DLC), 2023 WL 4350930 (S.D.N.Y. July 5, 2023) ...................................... 26

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
   328 F.R.D. 100 (S.D.N.Y. 2018) ...................................................................................... 23

*Triestman v. Federal Bureau of Prisons*,
   470 F.3d 471 (2d Cir. 2006) ............................................................................................. 26

*Update Art, Inc. v. Modiin Pub., Ltd.*,
   843 F.2d 67 (2d Cir. 1988) .............................................................................................. 17

*Urbont v. Sony Music Entm't*,
   2014 WL 6433347 (S.D.N.Y. Nov. 6, 2014) ..................................................................... 20

*Vaigasi v. Solow Mgmt. Corp.*,
   No. 11CIV5088RMBHBP, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ............................... 27

## **Statutes**

17 U.S.C. §501(b) ................................................................................................................. 14

## **Rules**

Fed. R. Civ. P. 34(a)(1) ........................................................................................................ 16
Fed. R. Civ. P. 37 ........................................................................................................ passim
Fed. R. Civ. P. 37 (b)(2)(A) ............................................................................... 5, 15, 28, 29
Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) ......................................................................... 16, 28
Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) and 37(b)(2)(A) ................................................... 25
Fed. R. Civ. P. 37(a)(4) ........................................................................................................ 16
Fed. R. Civ. P. 37(b) ................................................................................................. 1, 17, 18
Fed. R. Civ. P. 37(b)(2) .................................................................................................. 17, 18
Fed. R. Civ. P. 37(b)(2)(A)(v) .............................................................................................. 18
Fed. R. Civ. P. 37(b)(2)(A)(vi) ............................................................................................. 18
Fed. R. Civ. P. 37(b)(2)(C) ............................................................................................ 25, 28
Rule 37(a) ................................................................................................................................ 8

Plaintiffs, The Barry White Family Trust U/A/D: December 19, 1980, By its Duly

Empowered Trustees (the "Trust" or "Plaintiffs"), by its attorneys, Herbsman Hafer Weber &

Frisch, LLP, submit this Memorandum of Law in Support of their Motion for Sanctions pursuant

to the Court Order dated July 17, 2025 (Dkt. 134).

<u>The Barry White Legacy</u>

Lost in the cacophony of Defendants' dozens of vexatious and frivolous filings

containing countless unfounded accusations and aspersions is the true core of this action: the

legacy of the late, great Barry White and his seminal song, "I'm Gonna Love You Just a Little

More, Babe".

Growing up in South Central Los Angeles, Barry learned to play the piano at a very

young age by watching his mother, Sadie, play. His debut album was released in April 1973. It

mixed lush orchestrations with soulful hooks and percussions which created a whole new genre

of music. At a time before social media and streaming, when there was only radio play, "I'm

Gonna Love you Just a Little More, Babe", shot to the top of the Billboard charts: # 1 on the

R&B chart and # 3 on the Pop charts. It was first of many of Barry's "megahits".

The "intro" hook of "I'm Gonna Love you Just a Little More, Babe", is what Plaintiffs

claim is infringed by "Everlasting Bass" as is the substantial, repetitive use of the Barry White

intro "hook" in the song "Like That"—which was created and released based on a license issued

by the Defendants. This is the heart of the Plaintiffs' infringement claims and the basis for

Plaintiffs' lawsuit.

Barry White was and remains a once in a generation musical artist, writer, producer and

icon.

<u>Plaintiffs' Requested Relief.</u>

Plaintiffs seek a final order to compel Defendants to produce documents and respond to Plaintiffs' Interrogatories and First Requests for the Production of Documents in order to address their ongoing failures to supplement their purposefully obtuse, evasive and incomplete written responses to Plaintiffs' outstanding, Court-ordered discovery, by a date certain. In connection therewith, Plaintiffs seek the imposition of sanctions without further notice to Defendants, pursuant to Fed. R. Civ. P. 37, failing Defendants' full and complete compliance therewith.[1] In addition, Plaintiffs seek an order issuing a filing injunction directing Defendants not to file any motion, letter, or other submission in this case without first seeking permission to do so from the Court. Finally, the Plaintiffs seek reimbursement of their legal fees and costs incurred by virtue of Defendants' willful violations of this Court's Orders.[2]

# **PRELIMINARY STATEMENT**

Defendants have now willfully and cavalierly disregarded and violated two (2) of this Court's Orders compelling discovery herein: this Court's July 11, 2025 Order compelling their discovery responses and document production by July 15, 2025 (Dkt. 134. p. 1); and this Court's July 17th Order whereby the Court invited Plaintiffs to make this motion for sanctions if the Defendants' production of documents is "materially deficient as of July 17th". (Dkt. 134). To

---

[1] The conditional sanctions would include (1) an order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) issuing a default judgment against the Defendants; (2) an order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) striking Defendants' counterclaims; (3) an order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) for an adverse inference favoring the claims and defenses of the Plaintiffs; and (4) an order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) prohibiting Defendants from supporting their claims and defenses, or opposing the Plaintiffs' claims or defenses, or from introducing matters into evidence which would either support their claims or defenses.

[2] *See* Declaration of Dorothy M. Weber dated July 24, 2025 ("Weber Decl.") ¶ 3, Exhibit ("Ex.") A showing Defendants' filing history.

date, Defendants have produced *no* responsive documents whatsoever despite the Court's clear and unambiguous Orders and instructions to Defendant Oliver and Defendant Cooley.

On July 18, 2025, Defendant Oliver filed a "Declaration", "under penalty of perjury", in which he blatantly lied to the Court by stating that he had produced Bates-numbered documents to the Plaintiffs. He did not.[3]

Just as recently as July 21, 2025 and <u>today</u>, July 24, 2025, amid their ongoing flagrant failures to engage in meaningful discovery and comply with the outstanding orders, Defendants have continued to escalate and "double down" on their willful violations of the Court's orders by filing yet another motion challenging standing (Dkt. 136, filed July 21, 2025 ), as well as another request to the Court seeking leave to file a Motion for Summary Judgment in blatant disregard to the Court's clear instruction that summary judgment motions would be filed in November, 2025. (Dkt. 138, filed July 24, 2025). Furthermore, despite this Court denying Ms. Key's motion to intervene (Dkt. 62), Plaintiffs received notice of another filing today, July 24, 2025, which was a 'declaration' from Ms. Key.[4]

While Defendants have continued to portray themselves to the Court as innocent victims, they are frivolously demonizing everyone else based on unfounded allegations and narrative. The Defendants and Ms. Key[5] are weaponizing their *pro se* status to support their financial interests and are doing it through frivolous motions and a crass social media campaign. Defendants' willful conduct in refusing to participate in the most basic discovery and acting in defiance of

---

[3] On July 21, 2025, counsel for the Plaintiffs advised Mr. Oliver that his "production" had failed to include these documents. As of this filing, his documents have not been produced. (Weber Decl. ¶ 4, Ex. B).

[4] This declaration was served but has not yet posted to ECF. (Weber Decl. ¶ 5, Ex. C).

[5] To the extent that there is any question of what motivates Ms. Key, her own narrative reveals that she stands to make a substantial amount of money from Mr. Oliver: She now owns 50% of his catalog (Dkt. 86, p.1; *See also* Dkt. 62, p. 3).

this Court's clear and unambiguous orders and decisions warrant sanctions pursuant to Fed. R. Civ. P. 37 and the Court's inherent powers.

## PROCEDURAL BACKGROUND

A.   **Defendant's Violations of the Scheduling Order and Initial Refusals to Provide Discovery**

Pursuant to the Court's Scheduling Order dated April 25, 2025 (Dkt. 80), on May 16, 2025, Plaintiffs propounded on Defendants their First Requests for the Production of Documents ("First Document Requests") and their First Interrogatories to Defendants ("First Interrogatories"). (Weber Decl. ¶6, Ex. D and E). Defendants' responses were due on June 13, 2025, and Defendants neither requested nor were granted any extensions (Dkt. 80, p. 1).

On Saturday, June 14, 2025, Defendants emailed a document entitled "Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories" (the "Defendants' Interrogatory Responses"). (Weber Decl. ¶7, Ex. F). The Defendants' Interrogatory Responses were both incomplete and deficient, and the Defendants did not provide any written responses, objections or provide any documents in response to the First Document Requests.

On June 25, 2025, Plaintiffs sent a letter particularizing each of the issues and defects of Defendants' discovery responses, failures to respond and failure to produce any documents. (Dkt. 119-1).  Defendants' failure to respond thereto prompted Plaintiffs to send another letter dated June 30, 2025, requesting to schedule a meet and confer. (Dkt. 119-2).  Defendants failed and refused to meet and confer in connection with any of these issues. (Dkt. 119; Weber Decl. ¶8, Ex. G).

On July 9, 2025, the Plaintiffs wrote to the Court requesting a pre-motion conference. (Dkt. 119).  The Court granted the request and held the conference on July 11, 2025. (Dkt. 121)

**B.**    **Defendants' Failure to Comply With The Court's First Order Compelling Discovery**

On July 11, 2025 (the "July 11th Conference"), the Court issued an order (the July 11th Order") compelling Defendants to (1) produce responsive documents to Plaintiffs' outstanding document demands and (2) answer the Plaintiffs' interrogatories by the following Tuesday, July 15th. (Dkt. 134, p. 1). This order followed a lengthy discussion on the record where the Court painstakingly advised Defendants of their discovery obligations, reviewed interrogatories and document production and clearly outlined the consequences and sanctions which could be issued against them if Defendants disobeyed the Court's order. (Dkt. 134; Weber Decl. ¶9).

Defendants simply ignored the Court's Order: they produced *no* documents and provided no interrogatory responses. Their litigation strategy is crystal clear: withholding and misrepresenting their information to intentionally disadvantage and prejudice the Plaintiffs. Based on materials supplied to the Court, it is clear that Defendant Oliver and Ms. Key entered into agreements for substantial sums of money. As set forth by the Supreme Court in *Cunningham v. Hamilton County*, "a Rule 37(a) sanctions order … may require the reviewing court to inquire into the importance of the information sought or the truthfulness of the response". 527 U.S. at 205, 119 S.Ct. 1915 (1999). Here, the discovery is inextricably tied to both Plaintiffs' damages and Defendants' defenses and counterclaims.

**C.**    **Defendants' Failure to Comply with the Second Order Compelling Discovery**

On July 17, 2025, The Court issued a <u>second</u> order (the "July 17th Order"), compelling the Defendants to produce responsive documents to the Plaintiffs by July 17, 2025, and "to the extent that the defendants' production of documents is materially deficient as of July 17, the plaintiffs may … move for sanctions by July 25, 2025." (Dkt. 134).

5

**i.**    **No Documents Have Been Produced To Date**

On July 18, 2025, Defendant Oliver provided one 18-page document created by (or for) him which stated that: "Enclosed in this production are the following: 1. Signed and Verified Discovery Responses; 2. Privilege Log identifying withheld documents; 3. Bates-stamped Document Production (RO0001–RO0045); 4. Production Index for reference; 5. Correspondence from non-party Necole Key, dated July 16, 2025, objecting to Plaintiffs' attempts to compel production of private communications; and 6. A Social Security Disability Verification Letter submitted on behalf of Ms. Key confirming the undue burden such requests would impose." (Weber Decl. ¶ 10, Ex. H-1). In the same email was the letter dated July 16, 2025 from Necole Key. (Weber Decl. ¶ 10, Ex. H-2).[6]

No documents were provided - Bates-stamped or otherwise even as of this filing.

Most of the written responses to the document requests stated, "Defendant further states that responsive, non-privileged documents have been produced and are included in the production, where applicable." To date, Defendants have produced <u>no</u> documents despite representing to the Court that during the July 11th Conference that Defendant Oliver was relying on and referring to "hundreds" of pages of notes on the case which were created "from what … Necole Key … has taught" him.  (Dkt. 128, p.1) - all of which are relevant and responsive to the Plaintiffs' outstanding Requests which go to Plaintiffs' case or support their own defenses and counterclaims.

**ii.**    **Defendants Have Admitted That Certain Documents Exist, since They <u>Have Referenced and Relied on Those Documents in Court Filings</u>**

---

[6] Defendants' prior counsel produced a total twelve (12) pages of documents in connection with limited jurisdictional discovery. (Weber Decl. ¶11, Ex. I). Defendants themselves have produced nothing.

Despite the fact that Defendants have yet to produce one document – Defendants have already admitted in letters representing to the Court that certain documents and categories of documents do exist or are within the Defendants' possession, custody and control:

- "Hundreds" of pages of notes on the case (Dkt. 128, p.1).

- Emails with Defendant Oliver's agent, Necole Key, who is also his rights manager and alleged co-owner of Everlasting Bass (Dkt. 86, p.1).

- Documents with the creators and/or representatives of "Like That" (Dkt. 114, p. 2).

- Documents related to Defendant's earnings related to an alleged $1.2 million Sony publishing deal (Dkt. 92, p.2).

- Documents relating to the damages of $2.2 million in the counterclaims. (Dkt. 70, p.5).

- Documents related to a contract with Sony which provided for at least a Four Hundred and Fifty Thousand ($450,000) Dollar "Backend Advance" (Dkt. 92, pp.4, 13).

- Any documents directly tied to the counterclaims and affirmative defenses in this case. (Dkt. 87, p.2).

Defendant Oliver is also under the obligation to produce any and all documents that Necole Key has in her possession since she is his agent and thus clearly within Defendant Oliver's custody and control.[7]

### iii.    **Defendants' Perjured Declarations**

A key component of the Defendants' scorched earth litigation strategy (and their efforts to evade their basic discovery obligations and the now two (2) Orders compelling them to

---

[7] The Court examined Necole Key's relationship with Defendant Oliver as his rights manager in the April 9th Memorandum and Opinion Order (Dkt. 62).

provide discovery) is their unrelenting battery of improper and baseless filings, letters and motions which the Plaintiffs are compelled to manage and respond – all at enormous, escalating expense to Plaintiffs.

On July 18th, in yet another Court filing which was styled as a 'declaration,' Defendant Oliver stated under penalty of perjury: "I have made a diligent and sincere effort to comply with the plaintiff's discovery requests. I produced all documents in my possession and answered all interrogatories truthfully to the best of my memory" (Dkt. 135, p. 1). These are perjurious statements and blatant misrepresentations to the Court.

Another example is when Defendant Oliver stated under penalty of perjury in his June 2, 2025 declaration that, "Plaintiff has falsely represented that I, or someone on my behalf, executed a licensing agreement with Eric Weisman Licensing, Inc., regarding the Barry White composition. I affirm that I have never seen, signed, or authorized any such agreement." (Dkt. 109, pg. 4). And yet Defendant Oliver attached that very signed licensing agreement himself in his filing of a Motion to Strike Unauthenticated License Agreement (Dkt. 108, pp. 15-17) – filed on the same date and asking that the Court "BAR Plaintiff from referencing this document or similar claims regarding Barry White licensing." (*Id.* at 3). While the very document itself shows the signing history, Defendant Oliver says it was not him.

Discovery should not be a game of "go fish" with Plaintiffs cobbling together discovery – particularly where, as here, they are then condemned by the Defendants for using documents that they themselves have produced to the Court but not produced as part of discovery.

**D.    Multiple Other Deficiencies With Defendants' Discovery Responses**

**i.    Responses to Interrogatories Remain Defective**

Defendants have failed and refused to correct their evasive and incomplete responses to

Plaintiffs' First Interrogatories – as they were ordered to do on July 11, 2025.[8]

### ii.    Responses and Objections to Plaintiffs First Requests For Documents <u>Are Improper and Defective</u>

In addition to the more elemental issue of Defendants' failure to provide any documents at all – their written responses to each of Plaintiffs' First Requests are also deficient. (Weber Decl. Ex. H-1). Each and every written response contains the same boilerplate "overly broad, unduly burdensome, vague, seeks documents not relevant to any party's claim or defense, or seeks documents protected by the attorney-client privilege, work product doctrine, or other applicable privilege." Defendants made no attempt to explain any of these objections – and further failed to state whether any responsive materials were being withheld on the basis of those objections.

### iii.    <u>Purported Privilege Log</u>

The Defendants' Privilege Log (Weber Decl. Ex. H-1) asserts that Defendants have been communicating with counsel between April 2025 – July 2025. Yet Fox Rothschild filed a motion to withdraw from this case on March 21, 2025 (Dkts. 48-50) and the withdrawal was granted on April 9, 2025 (Dkt. 63). Moreover, Defendants indicated they had retained new counsel prompting letters on May 14, and May 24, 2025, yet Defendants never identified any new counsel. (Weber Decl. ¶12, Ex. J).

Item No. 3 of Defendants' Privilege Log purports to assert a "work product" privilege in connection with a "Draft memo from Necole Key re: Barry White response."[9]

---

[8] During the July 11th Conference, the Court suggested that certain of the Interrogatories could be answered at the Defendants' depositions. Accordingly, Plaintiffs' seek an order compelling responses to Interrogatory Nos. 1, 3, 5-14, 18 and 19, and as suggested by the Court, will reserve their rights in connection with Nos. 2, 4, 15, 16 and 17, which will be part of Defendants' and Ms. Key's respective depositions.

[9] The Court has previously asserted in the April 9th Memorandum Opinion and Order that "Key is not authorized to practice law and may not undertake the responsibilities of an attorney." (Dkt. 62, p.5). Notwithstanding that the Court Order denied her request to intervene (Dkt. 62), Ms. Key filed another declaration today. (Weber Decl. Ex. C).

Finally, the Privilege Log lists a "Communication with counsel submitted under seal to court" in July. Pursuant to Rules 4(D) and 8(B) of the Individual Practices in Civil Cases of this Court, Defendants did not seek leave of court to file documents under seal, and no notice was filed on ECF and Plaintiffs.

**E.**      **Defendants' Other Willful Violations of This Court's Orders and Directives**

While this motion for sanctions against Defendants relates specifically to Defendants' willful failure and refusal to produce documents in response to three (3) Orders of this Court – two of which are Orders compelling disclosure – it occurs within the context of Defendants' continuing disdain for and overt failures to abide by this Court's orders in general and their cavalier disregard to the waste of the Court's judicial resources.

In its April 11th Order (Dkt. 71), the Court clearly outlined the discovery process under the Federal Rules of Civil Procedure and specifically stated that in the event there is a dispute, the parties must first express their concern to the other party and attempt to reach an agreement. (Dkt. 71, pp. 2-3). Despite Plaintiffs' attempts to meet and confer with the Defendants in connection with both Plaintiffs' discovery issues as well as Defendants' alleged discovery issues, Defendants flatly failed and refused to meet and confer with Plaintiffs. (Weber Decl. ¶8, Ex. G).

Defendants choose, instead, to flood the docket with "status updates" and "clarification of hearing record" letters, rather than follow the rules which mandate cooperation and good faith in the discovery process.[10]

---

[10] On July 11, 2025, Plaintiffs served Notices of Deposition on the Defendants for them to appear in New York before the end of July. Both Defendants have refused to do them in New York. (Weber Decl. ¶14, Ex. K). While the Court has extended the discovery cutoff date to September 2, 2025 (Dkt. 133), Plaintiffs note that as the Defendants' delays and obstructionist behavior continues, a further extension may be warranted on those grounds and respectfully request that depositions and third-party subpoenas be adjourned *sine die* and as well as to properly address this discovery issue with the appropriate motion as to costs.

At the July 11th Conference, the Court unequivocally directed the Defendants, to the extent they felt they had a basis to claim that Plaintiffs did not have 'standing' to assert the claims herein, to follow the Scheduling Order (Dkt. 80) and file their motion for summary judgment this November, 2025. (Weber Decl. ¶13). The very next day, Defendant Oliver filed a document with the Court styled as a "Preservation of Standing Objection and Clarification of Hearing Record" (Dkt. 128) where he proceeded to reiterate the same argument with the same rhetoric ignoring the Court's direction to wait until November to file these arguments.

Finally, in its July 17th Order, the Court issued a written <u>order</u> that the "plaintiffs have standing to assert their claims" and that "there is no jurisdictional defect or other basis to dismiss this action". (Dkt. 134, p. 3). Defendants have – twice in one week – initiated filings which blatantly ignore this Order and the Court's unambiguous directive at the July 11th Conference that any 'standing' issue could be asserted properly as part of a motion for summary judgment in November of 2025.

On July 21, 2025, Defendants served yet <u>another</u> motion to compel Plaintiffs to produce documents in support of Plaintiffs' chain of title and their 'standing' to assert the claims herein. (Dkt.136).[11] This motion was summarily denied today – July 24, 2024. (Dkt. 137). Less than one (1) hour later, Defendants served their latest iteration of their 'standing' argument – this time in a letter to the Court seeking leave to file a motion for summary judgment, followed by a declaration from Ms. Key, who is not a party to this action. (Weber Decl. Ex. C). This bad faith conduct warrants an order issuing a filing injunction.

---

[11] This is Defendants' <u>fourth</u> baseless motions to compel, which was subsequently denied on July 24th (Dkt. 137). The first one (Dkt. 92) was denied on May 20th (Dkt. 96). The second one (Dkt. 98) was denied just a week later (Dkt. 104). The third one (Dkt, 107) was denied on June 24th (Dkt, 118). As Plaintiffs have already represented to the Court on July 11, 2025 and in their July 15th letter to the Court (Dkt. 127), Plaintiffs have been consistent from the commencement of this lawsuit, having alleged that they are an owner of the copyright at issue, with full authority to bring this action under the Copyright Law 17 U.S.C. §501(b). Plaintiffs also have provided exhaustive chain-of-title documents to the Defendants.

Defendants' strategy is plain: obstruct discovery, delay proceedings, level *ad hominem* attacks in multiple frivolous filings with the Court, and continue to drive up the expenses for the Plaintiffs. It is clear that without sanctions, the conduct will only continue and escalate.

## F.    <u>Relief Requested</u>

Sanctions are clearly necessary and appropriate here absent which the Defendants will continue their campaign of aggression. On the July 11th Conference, the Court meticulously outlined a range of sanctions which could follow from Defendants' failure to comply with discovery obligations, including adverse inferences, the striking of evidence and terminating sanctions.[12] In its July 17th Order, the Court reiterated and emphasized the range of possible sanctions as provided in Rule 37(b)(2)(A) of the Fed. R. Civ. P.:

> **If a party … fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders," including, among other things, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," and "striking pleadings in whole or in part."**

(Dkt. 134, p. 2) (emphasis added).

There is no justification for Defendants' protracted refusals to provide discovery – particularly in the face of multiple, unambiguous Court Orders and rules providing that they do so.

The Defendants' *pro se* status does not give them the right to undertake a campaign of filing frivolous motions and pleadings.[13] Notwithstanding the broad leeway and amount of time

---

[12] Defendants were served a litigation hold letter on May 7, 2024 which addressed their duty to preserve documents. (Dkts. 34, pp.31-36; 46, pp.36-38).  Defendants' failure and refusal to provide any documents also raises spoliation concerns. (Weber Decl. ¶15).

[13] It is clear that many, if not most of the filings, have been created at least in large part by AI programs. Documents relating to their creation – whether by Defendants or Ms. Key, are relevant, responsive and should be produced.

expended by the Court, Defendants continue to weaponize their status as *pro se* litigants. This conduct has led to an enormous unnecessary expenditure of legal fees – something which seems to be motivating the Defendants and their agent, Necole Key.

## LEGAL ARGUMENT

## POINT I

### SANCTIONS ARE WARRANTED

**A.**   **Final Order Compelling Disclosure**

Defendants have now violated two (2) orders compelling disclosure here. As addressed during the July 11th Conference and in the July 17th Order, Defendants were ordered "to produce documents and interrogatory responses by July 15". (Dkt. 134). "Evasive or incomplete disclosure, answer, or response" to an interrogatory or request for documents, "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Plaintiffs respectfully request that the Court issue a final order to compel Defendants, by a date certain, to produce documents and supplement their previous evasive and incomplete disclosures made in response to the Plaintiffs' outstanding Interrogatories and First Requests. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). *See also Chan v. Rag & Bone Indus*., LLC, No. 15 CIV. 6319 (RWS), 2016 WL 7495184, at *2 (S.D.N.Y. Dec. 21, 2016) (internal citations omitted) ("Deadlines provided by the Court are not advisory; rather, they are firm dates that parties, even pro se litigants, are expected to meet.").

The Order should specifically include the production of all documents held by Necole Key. A party may serve upon any other party a request to produce documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "The concept of 'control' has been construed broadly." *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 236 F.R.D. 177, 180 (S.D.N.Y. 2006). "Indeed, " 'control' does not require that the party have legal ownership or

actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."" *Coventry Cap. US LLC v. EEA Life Settlements Inc.,* 334 F.R.D. 68, 72 (S.D.N.Y. 2020) (internal citations omitted). The Defendants clearly have the right, authority and practical ability to obtain relevant documents in the possession, custody and control of their own agent – Necole Key.

## B.  Harsher Sanctions Are Warranted Under Fed. R. Civ. P. 37(b) and the Court's Inherent Powers

The harsher sanctions pursuant to Fed. R. Civ. P. 37(b)(2), and described at length to the Defendants by the Court at the July 11th Conference, and in the July 17th Order, are necessary here: the Defendants have violated the Court's Orders and have continuously obstructed this litigation by their perjured statements and other misrepresentations made to the Court and to the Plaintiffs all in an effort to evade discovery and delay these proceedings.

The Federal Rules of Civil Procedure and the discovery provisions therein are designed for parties to obtain disclosure of all the evidence relevant to the merits of a controversy. "It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). "When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.*; *see Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643* (1976) (discussing availability of severe sanctions to penalize recalcitrant parties and deter others from similar conduct); *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 73 (2d Cir. 1988) (explaining that compliance with discovery orders is "necessary to the integrity of our judicial process"); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 353 (S.D.N.Y. 2023).

14

Sanctions will promote the administration of justice as an appropriate correction for Defendants'
repeated misrepresentations to the Court and blatant disregard of the Court Orders and discovery
obligations.

Thus, in the event that Defendants fail to comply with the final order compelling
disclosure, Plaintiffs also seek the imposition of sanctions – without further notice to the
Defendants - pursuant to Fed. R. Civ. P. 37(b)(2), which states that a court may grant sanctions
against a party that "fails to obey an order to provide or permit discovery." Sanctions may be
granted against a party under Rule 37(b)(2) if there is noncompliance with an order,
"notwithstanding a lack of wilfulness or bad faith, although such factors 'are relevant ... to the
sanction to be imposed for the failure.'" No. 02 CIV. 6441 (LAK), 2003 WL 134989, at *4
(S.D.N.Y. Jan. 17, 2003) (internal citations omitted). When a party fails to comply with its court-
ordered discovery obligations, the court supervising discovery is permitted to "issue further just
orders," including, as relevant here, an order: "dismissing the action or proceeding in whole or in
part ...." Fed. R. Civ. P. 37(b)(2)(A)(v); *see Karsch v. Blink Health Ltd*., No. 17 CIV. 3880 (VM)
(BCM), 2019 WL 2708125, at *14 (S.D.N.Y. June 20, 2019) (explaining that Rule 37(b)
sanctions are appropriately imposed for non-compliance with court orders directing compliance
with discovery requests); *In re Keurig,* 673 F. Supp. 3d at 353. The Defendants should not be
permitted to benefit and gain leverage in this action from their extensive pattern of discovery
misconduct.

"'If a party… fails to obey an order to provide or permit discovery,' the district court may
impose sanctions, including 'rendering a default judgment against the disobedient party.'"
*Guggenheim Cap., LLC v. Birnbaum,* 722 F.3d 444, 450 (2d Cir. 2013) (quoting Fed. R. Civ. P.
37(b)(2)(A)(vi)). In determining what sanctions are warranted, a court considers several non-
exclusive factors to guide the court's wide discretion on selecting the appropriate sanction under

Rule 37(b): "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Google LLC v. Starovikov,* No. 21CV10260 (DLC), 2022 WL 16948296, at *11 (S.D.N.Y. Nov. 15, 2022) (Cote, J.) (internal citations omitted); *see also Funk v. Belneftekhim,* 861 F.3d 354, 366 (2d Cir. 2017).

Here, Defendants have failed to comply with multiple Court Orders in this case, including the unambiguous July 11th and July 17th Orders that Defendants comply with their discovery obligations and provide responses to Plaintiffs' document requests and interrogatories. They continue to file frivolous motions, despite being ordered not to, and refuse to engage in any good faith compliance with the rules which apply to *pro se* parties as well as attorneys. This record of their misconduct demonstrates that sanctions are appropriate here under the factors that guide the Court's discretion.

### i.    Willfulness of Non-Compliance

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15CV3533CMBCM, 2017 WL 2840279, at *12 (S.D.N.Y. June 27, 2017). The Court Orders here have been clear. During the two conference calls, generous time was also devoted to meticulously go through the discovery process and filings of motions, and Defendants have confirmed their understanding of their obligations regarding the July 15th document production and interrogatory responses deadline as was evident in their letters to the Court. (Dkts. 128, 130, 131).

Defendants' misconduct has been extensive and persistent, which as described herein, includes filing baseless and legally frivolous motions and letters, making numerous

16

misrepresentations to the Court that are demonstrably false about Plaintiffs, Plaintiffs' counsel, and their own conduct; failing to comply with the Court's orders and directives; and not engaging in discovery in good faith. *See In re Keurig*, 673 F. Supp. 3d at 353 (holding that "a false or misleading response to a court order requesting specified information must be treated as a violation of that order."). In *Funk v. Belneftekhim*, the Second Circuit held that there was no abuse of discretion by the district court in imposing Rule 37 sanctions because the "defendants' failure to comply with the Second Discovery Order was 'willful'".  861 F.3d at 368. Defendants' brazenness in choosing not to comply with the Court's discovery orders can be nothing more than willful.

### ii.    Efficacy of Lesser Sanctions

Harsh sanctions are warranted here as anything less simply would allow the Defendants to benefit from their persistent misconduct. They clearly are interested in their efforts, ignore Court Orders, the Rules of Civil Procedure, and the Local Rules of the Southern District of New York. A district court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). The Defendants have not produced *any* responsive documents after repeated requests, receipt of a Deficiency Letter, and the issuance of multiple Court orders. Therefore, the sanctions requested by Plaintiffs are appropriate and necessary.

### iii.    Duration of Non-Compliance

Courts "have found noncompliance for a period of several months sufficient to warrant dismissal or default." *Shanghai Weiyi Int'l Trade Co.*, No. 15CV3533CMBCM, 2017 WL 2840279, at *12 (quoting *Urbont v. Sony Music Entm't,* 2014 WL 6433347, at *3 (S.D.N.Y. Nov.

17

6, 2014)). A Scheduling Order was entered into on April 25, 2025 which stated that "all fact discovery, including depositions, must be completed by August 1, 2025." (Dkt. 80, p. 1).

Defendants have been stonewalling discovery to date, and on July 18, 2025, under the guise of producing discovery, in fact did not produce a single document that was requested.

### iv.    Notice of Non-Compliance

This Court has previously held that the imposition of severe sanctions such as dismissal or default, "should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply." *Shanghai Weiyi Int'l Trade Co.*, No. 15CV3533CMBCM, 2017 WL 2840279, at \*12 (internal citation omitted).

The July 17th Order clearly served as a warning of such sanctions as it described the Court's power to direct "matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," and "striking pleadings in whole or in part."" (Dkt. 134, p. 2).

Defendants not only chose simply to ignore these warnings, they once again doubled downed.

### C.    Defendants' Misconduct Will Not Abate Without The Imposition of Sanctions

### i.    Striking Defendant's Counterclaims and Issue a Default Judgment Against Defendants

By withholding all documents and refusing to answer questions concerning the creation of the infringing work "Everlasting Bass" and income generated from its exploitation, the Defendants are depriving Plaintiffs of the evidence they need to assess and challenge any counterclaims. *See Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (JLR) (BCM), 2025 WL 1344347, at \*20 (S.D.N.Y. Jan. 17, 2025) (recommending that the counterclaims be stricken

18

so that the party "cannot continue to benefit from the legal process that he has so thoroughly abused.").

"While the [C]ourt has many possible sanctions at its disposal, the fact that [the] defendant[ ] [has] failed to respond in any way to this court's orders or discovery requests indicates that the ultimate sanction--striking of the Answer and entry of a default judgment--is an appropriate sanction." *Grammar v. Sharinn & Lipshie, P.C.*, No. 14 CIV. 6774 (JCF), 2016 WL 525478, at *5 (S.D.N.Y. Feb. 8, 2016) (quoting *MCI Worldcom Communications, Inc. v. Gamma Communications Group, Inc.,* 204 F.R.D. 259, 262 (S.D.N.Y. 2001)); *See also, Chowdhury v. Hamza Exp. Food Corp.*, 308 F.R.D. 74, 83-84 (E.D.N.Y. 2015) (holding terminating sanctions are appropriate where a party makes a "disingenuous claim" in an attempt to deny "a continuing saga of dilatory conduct"). "Despite the harshness of these measures, however, "discovery orders are meant to be followed," *S. New England Tel. Co.,* 624 F.3d at 144 (quoting *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995)).

In *Grammar v. Sharinn & Lipshie, P.C.,* the plaintiff argued that "the harsh sanction of default judgment is necessary in light of (1) the defendant's deliberate and persistent refusal to comply with court orders, (2) the fact that the defendant's conduct has prevented the plaintiff from prosecuting her case, and (3) the plaintiff's inability to secure the defendant's cooperation without court intervention." No. 14 CIV. 6774 (JCF), 2016 WL 525478, at *3 (ordering that the defendant's answer be stricken and that a default judgment be entered against the defendant).

As in *Grammar*, Defendants have and continue to ignore and evade the attempts to resolve discovery disputes without the assistance from the Court. The continuous bombardment of irrelevant filings is a tactic to prejudice Plaintiffs and is preventing Plaintiffs from prosecuting this case. Lesser sanctions would not be appropriate as the Defendants are unwilling to cooperate in discovery and continue with their bad faith filings.

ii.     **Adverse Inference Favoring the Claims and Defenses of the Plaintiffs**

If monetary sanctions are not sufficient, a court may grant more stringent orders including adverse inference orders "for the non-production of evidence upon a showing '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the ... claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.'" *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.,* 328 F.R.D. 100, 119 (S.D.N.Y. 2018) (quoting *Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, No. 14CV2275 (JGK) (DF), 2016 WL 11271874, at *35 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017)). "Where the discovery misconduct has deprived the opposing party of key evidence needed to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue—or simply directing that the matter be taken as established—is also appropriate." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC,* No. 16CV1318GBDBCM, 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, No. 16CIV1318GBDBCM, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).

In order to proceed with this litigation, Plaintiffs are not only entitled to all documents relating to the infringing works, "Everlasting Bass" and "Like That", including but not limited to, all licenses granted for "Everlasting Bass" and the financial records related to the profits generated from the exploitation of those works. This is key evidence needed for Plaintiffs to prevail on their infringement claims and Plaintiffs will be prejudiced moving forward in this action without such discovery.

20

iii.  **Prohibiting Defendants from supporting their claims and defenses, or opposing the Plaintiffs' claims or defenses, or from introducing matters into evidence which would either support their claims or defenses**

In *Daval Steel Prods.*, the Second Circuit affirmed the district court's granting of the plaintiff's claim and precluding a defendant from presenting evidence in opposition to it, in light of that defendant's "willful violation of the court's discovery order and prior obstruction of discovery." 951 F.2d at 1367. Plaintiffs deserve the opportunity to be in the position that they could have been had the Defendants not been sabotaging the discovery process at every turn. *See Funk,* 861 F.3d at 369.

D.  **Filing Injunction Order**

In addition to sanctions pursuant to Fed. R. Civ. P. 37, Plaintiffs request herein a filing injunction to be instated against the Defendants' relentless barrage of baseless and frivolous filings. Plaintiffs have had to read and prepare responses to no less than forty-five (45) filings including motions, letters and notices all seeking some kind of spurious relief since this case was filed nine (9) months ago. (Weber Decl. Ex. A).

Defendants should be required to seek leave with the Court to file these frivolous motions and their self-styled documents. declarations, and letters. In *Wang v. Int'l Bus. Machines Corp.*, this Court ordered the *pro se* party to seek permission with the court before any filings as their submissions "have wasted an enormous amount of this Court's time" and the time of opposing counsel. No. 11 CV 2992 (VB), 2023 WL 9425419, at *1 (S.D.N.Y. Jan. 27, 2023), *appeal dismissed*, No. 24-243, 2024 WL 3498596 (2d Cir. Apr. 25, 2024), *cert. denied*, 145 S. Ct. 273 (2024). Furthermore, the Court held that if the *pro se* party disregards the filing injunction order, it will exercise its "inherent authority to impose financial sanctions on a vexatious pro se litigant" *Id.*

As in *Wang*, despite Defendants proceeding *pro se*, they are also clearly perceptive individuals who are fully able to comprehend the clear orders of the Court. Their conduct in repeatedly filing frivolous and vexatious motions and other submissions for which they have no objective good faith expectation of prevailing and which have caused needless expense to Plaintiffs and an unnecessary burden on the Court, warrants the issuing of a filing injunction, as no other sanction would be adequate to protect Plaintiffs and the Court from such further filings.

## POINT II

### MONETARY SANCTIONS MUST BE IMPOSED IMMEDIATELY

In addition to the sanctions authorized in Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) and 37(b)(2)(A) and other relief requested herein, the record warrants that Defendants should jointly and severally pay the reasonable expenses, including attorney's fees, caused by their failures and refusals to provide discovery herein. Pursuant to Fed. R. Civ. P. 37(b)(2)(C), the Court must award monetary sanctions, as the continuous failure to produce discovery was not substantially justified and there are no other circumstances which make an award of expenses unjust. *See Lightbox Ventures, LLC v. 3rd Home Ltd.,* No. 16CV2379 (DLC), 2017 WL 5526073 (S.D.N.Y. Nov. 15, 2017) (Cote, J.) (holding that reimbursement of costs and attorneys' fees was appropriate in the case where defendant did not submit evidence that documents have been submitted previously or that their failure to produce was justified.).

"The 'mildest' sanction for discovery misconduct 'is an order to reimburse the opposing party for expenses caused by the failure to cooperate.' 'Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled.' *Shanghai Weiyi Int'l Trade Co.,* No. 15CV3533CMBCM, 2017 WL 2840279, at *10 (S.D.N.Y. June 27, 2017) (internal citations omitted). Monetary sanctions should be awarded here pursuant to the Court's inherent powers as well. *See Int'l Techs. Mktg.,*

22

*Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (finding that a "single

misrepresentation" was sufficient "to justify an award of [monetary] sanctions under the court's

inherent power."). Defendants' persistent misrepresentations and obfuscation have forced the

Plaintiffs and this Court to waste time and resources on needless discovery efforts and orders.

## POINT III

### DEFENDANTS' PRO SE STATUS DOES NOT EXEMPT THEM FROM COMPLIANCE

Since electing to proceed *pro se* herein, Defendants have been relentlessly exploiting and

weaponizing that status. Their *pro se* status is voluntary, as the Defendants have not submitted

applications to proceed *in forma pauparis*, and, from their own disclosures, have been paid

substantial sums of money by Sony as part of their publishing deal. Indeed, in another document

filed by Defendants themselves, Sony, pursuant to their contract with Defendant Oliver were

willing to advance a staggering $425,000 for the Hood Music contract with Sony dated June 1,

2024 toward legal fees. (Weber Decl. ¶16, Ex. L; *see also* Dkt. 92, p.13). Needless to say, the

agreement was not provided in Defendants' non-existent production. Their filings also indicate

over $50,000 was paid to prior attorneys (Dkt. 43), so there is clearly money coming in from

somewhere and none of those documents have been provided.

A litigant's *pro se* status "does not exempt a party from compliance with relevant rules of

procedural and substantive law." *Jules v. Andre Balazs Properties*, No. 20-cv-10500 (LGS),

2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023), *aff'd*, No. 23-1253, 2025 WL 1201914 (2d

Cir. Apr. 25, 2025) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022), and

*Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Shim-Larkin

v. City of New York*, No. 16-CV-6099 (AJN), 2017 WL 4862790, at *2 (S.D.N.Y. Oct. 25, 2017)

(internal citations omitted); *Strike 3 Holdings, LLC v. Doe*, No. 23CV578 (DLC), 2023 WL

4350930, at *1 (S.D.N.Y. July 5, 2023) (internal citation omitted). Defendants continue to ignore

the rules of discovery and are incessantly repeating the same notion that Plaintiffs lack standing

to bring their claims. This Court has on multiple occasions explained in Court Orders and during

telephonic conferences that "Defendants will have an opportunity during discovery to investigate

the plaintiffs' ownership rights", and that it is not an appropriate stage to bring a summary

judgment motion. (Dkt. 62, pp. 6-7; *see also* Dkts. 126, 134, 137).

Further, "pro se filings do not serve as an impenetrable shield, for one acting pro se has

no license to harass others, clog the judicial machinery with meritless litigation, and abuse

already overloaded court dockets." *Frye v. Lagerstrom*, No. 15 CIV. 5348 (NRB), 2017 WL

11809790, at *5 (S.D.N.Y. Aug. 31, 2017) (internal citation omitted). The Defendants' constant

filings have overloaded this docket and turned an otherwise straightforward copyright

infringement claim into an endless barrage of motions which have no bearing on the merits of the

case.

"Pro se litigants, though generally entitled to 'special solicitude' before district courts, are

not immune to dismissal as a sanction for noncompliance with discovery orders." *Vaigasi v.

Solow Mgmt. Corp.*, No. 11CIV5088RMBHBP, 2016 WL 616386, at *19 (S.D.N.Y. Feb. 16,

2016) (internal citation omitted).  "Indeed ... district judges have an obligation to act to protect

the public, adversaries, and judicial resources from litigants and lawyers who show themselves to

be serial abusers of the judicial system… Accordingly, federal courts have the 'inherent power'

to award monetary sanctions against a party for that party's 'bad faith, vexatious, or wanton'

misconduct." *Google LLC*, No. 21CV10260 (DLC), 2022 WL 16948296, at *12 (Cote, J).

(internal citations omitted).

## **<u>CONCLUSION</u>**

Despite the Court giving clear express guidance, instructions, warnings and orders on the

appropriate conduct on discovery in this matter, Defendants continue to blatantly disregard the

24

Court and the discovery process. For the reasons set forth above, Plaintiffs respectfully ask that the Court grant Plaintiffs' Motion for Sanctions and to Compel, pursuant to Fed. R. Civ. P. 37 and the Court's inherent powers as follows:

1.       An order pursuant to Fed. R. Civ. P. 37(b)(2)(C) that Defendants jointly and severally pay the reasonable expenses, including, including costs and attorneys' fees for the expenses incurred in preparing Plaintiffs' Motion for Sanctions and all the unnecessary legal fees incurred by Plaintiffs based on Defendants' filing of meritless letters and motions, caused by their failures and refusals to provide discovery herein;

2.       An order issuing a filing injunction directing Defendants not to file to any motion, letter, or other submission in this case without first seeking permission to do so from the Court, not to exceed one page in length;

3.       Adjourning fact discovery and depositions *sine die* until Defendants' discovery is complete; and

4.       An order pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) compelling Defendants to produce all responsive documents including, but not limited to those documents in the possession, custody and control of Necole Keys, and supplement their previous evasive and incomplete disclosures made in response to the Plaintiffs' outstanding Interrogatory Nos. 1, 3, 5-14, 18 and 19, as well as Plaintiff's First Requests by a date certain, and in the event Defendants fail to comply fully with this Order by the deadline specified above, the Court will impose the following sanctions without further notice:

a.        An order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) issuing a default judgment against the Defendants; or

b.       An order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) striking Defendants' counterclaims; and

c.    An order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) for an adverse inference favoring the claims and defenses of the Plaintiffs; and

d.    An order pursuant to Fed. R. Civ. P. 37 (b)(2)(A) prohibiting Defendants from supporting their claims and defenses, or opposing the Plaintiffs' claims or defenses, or from introducing matters into evidence which would either support their claims or defenses.


Dated:    July 24, 2025
          New York, New York

                                        Respectfully submitted,

                                        HERBSMAN HAFER WEBER &
                                        FRISCH, LLP

                              By: _____
                                        Dorothy M. Weber, Esq. (DMW-4734)
                                        494 Eighth Avenue, Suite 600
                                        New York, New York 10001
                                        (212) 245-4580
                                        dorothy@musiclaw.com

                                        *Attorneys for Plaintiffs*

TO:    Rodney David Oliver
       11074 Oso Ave
       Chatsworth, CA 91311
       rodneyolivermusic@gmail.com


       Joe Cooley
       248 E 157th Street
       Gardena, CA 90248
       cooleyjoe011@gmail.com

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing Memorandum of Law complies with the Court's prescribed word count limitations. The total number of words in this Memorandum of Law is 7,940 exclusive of the caption, table of authorities and signature block. I have relied on Microsoft Word's word count software to prepare this certification.

Dorothy M. Weber, Esq. (DMW-4734)