# Exhibit A

P7BQwhiC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  THE BARRY WHITE FAMILY TRUST
   U/A/D: December 19, 1980, By
4  its Duly Empowered Trustees,

5              Plaintiffs,

6         v.                              24 Civ. 07509 (DLC)

7  JOE COOLEY, et al.,
                                          Remote Conference
8
              Defendants.
9
   ------------------------------x
10                                        New York, N.Y.
                                          July 11, 2025
11                                        2:30 p.m.

12 Before:

13                    HON. DENISE L. COTE,

14                                        District Judge

15                    APPEARANCES

16 HERBSMAN HAFER WEBER & FRISCH LLP
        Attorneys for Plaintiffs
17 BY:  DOROTHY M. WEBER
        JUDITH A. MEYERS
18
   RODNEY DAVID OLIVER, PRO SE
19
   JOE COOLEY, PRO SE
20

21

22

23

24

25

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good afternoon everyone.

3          This is Judge Cote speaking.  Who will be speaking on

4     behalf of the plaintiff?

5          MS. WEBER:  Good afternoon, your Honor.

6          This is Dorothy Weber on behalf of the plaintiff.

7          THE COURT:  Thank you.

8          Mr. Oliver, are you on the line?

9          MR. OLIVER:  Yes, I'm here.

10          THE COURT:  Good.

11          And, Mr. Cooley, are you on the phone call?

12          MR. COOLEY:  Yes, I'm here.

13          THE COURT:  Okay.  Good.  Thanks so much.

14          So we are in the midst of the discovery period in this

15     case, and I have a number of submissions from the parties that

16     I want to address today.

17          So let me begin with a little background and just

18     scene-setting, and then we'll go to the issues that need to be

19     addressed during today's conference.

20          So on April 9, I denied defendant Oliver's March 26

21     summary judgment motion without prejudice to it being renewed

22     after a period for discovery.

23          Fact discovery is due to be completed August 1 of this

24     summer.  We have a schedule for expert discovery which has that

25     period ending October 3, and then a schedule for summary

1    judgment beginning on November 21.

2         The parties had a confidentiality agreement among

3    themselves, and Ms. Key was required to sign that agreement in

4    order for discovery to be produced to the defendants.  My

5    understanding is she did so, and that the plaintiff's discovery

6    has now been produced to the defendants.

7         I have a letter from the plaintiff of July 9, and in

8    that letter plaintiff or plaintiffs raise a number of issues

9    about the inadequacy of the defendant's responses to discovery

10   requests.  Discovery responses were due on June 13, and we'll

11   get to those individual issues in a moment, but the plaintiffs

12   seek sanctions and, of course, under the case law, and in

13   particular Federal Rules of Civil Procedure 37, I can impose

14   sanctions for a failure to participate in discovery when that

15   is warranted.  And we can get to that issue in more detail in a

16   little bit as well.

17        There was a letter recently from Mr. Oliver, but today

18   I received a renewed motion from Mr. Oliver.  It's dated

19   July 10, and it's a motion to dismiss for lack of subject

20   matter jurisdiction, and it requests a stay of discovery until

21   that motion is resolved and represents that Mr. Oliver in his

22   view has fully complied with his discovery obligations.

23        So that is an overview of where we stand.  I have

24   details I want to get to on both sides of the issue here, both

25   the plaintiff's complaints and the defendant's contentions.

1    But I think it might be helpful, even though this was scheduled

2    because of the plaintiff's letter, to deal right away with

3    Mr. Oliver's motion.

4        And let me just make some observations about this,

5    Mr. Oliver, which I hope will be very helpful to you.

6        The motion you make is described in part as a motion

7    to dismiss for lack of subject matter jurisdiction.  As I

8    understand it, the core issue here that you want to pursue is

9    whether or not the plaintiff has the chain of title that is

10   required for it to proceed in this lawsuit with claims against

11   you and against Mr. Cooley, and you very helpfully include in

12   your submissions a chronology and with that a explanation of

13   why you think the plaintiff doesn't have a correct chain of

14   title.

15       Let me just step back from the individual facts for a

16   moment and let you know that this is not the moment in time to

17   address that issue, but the issue can be fully addressed

18   through a summary judgment motion, and we have a schedule for

19   that.  If there is not going to be expert discovery here, I'm

20   happy to move up the schedule for summary judgment motion

21   practice, so the issue will be absolutely fleshed out if that's

22   what the parties end up wanting.

23       But the case or the issue is not properly described as

24   one of subject matter jurisdiction.  I have subject matter

25   jurisdiction over this litigation.  It is absolutely true that

1    the plaintiffs have to show a right to proceed on their

2    copyright claim here, and that can be the subject of a summary

3    judgment motion in which you test the legality of the rights

4    that they are asserting, but we are going to wait to do that

5    until summary judgment practice takes place.

6         It's important that we complete the fact discovery

7    process.  I'm not going to stay fact discovery process.  We are

8    going to complete it, and then we will move on.  If there is

9    not going to be any expert discovery, we'll move on immediately

10   to summary judgment practice.

11        Do you understand what I just said, Mr. Oliver?

12        MR. OLIVER:  Yes, I understand.

13        THE COURT:  Good.  Thank you.  Thank you.

14        And, Ms. Weber, I wanted to give you a brief

15   opportunity to address Mr. Oliver's concern here.

16        Have you received a copy of this motion to dismiss for

17   lack of subject matter jurisdiction?  Have you received that,

18   Ms. Weber?

19        MS. WEBER:  Yes, we have, your Honor.

20        THE COURT:  Okay.  Good.  And as you can see from his

21   papers, he believes that the plaintiff, the Barry White Family

22   Trust, does not own the copyright that it is purporting to sue

23   on in this lawsuit.

24        Have you discussed that issue with Mr. Oliver?

25        MS. WEBER:  We have not discussed that issue with

1   Mr. Oliver.  We have tried on numerous occasions to have a

2   meet-and-confer which has not happened.  We were fully prepared

3   to address any questions he had with regard to our discovery to

4   them and their discovery to us, and they have flat out refused

5   to meet and confer.

6           We are confident, and we were confident under Rule 11

7   before we filed the complaint, that we have the proper

8   copyright registrations that the trust for a whole variety of

9   reasons is the proper party, and we are ready to fully

10  vindicate our rights in that regard, your Honor.

11          THE COURT:  Thank you.

12          So, Mr. Oliver, let me just explain to you that in the

13  normal course, parties confer with each other without the Court

14  in order to work through discovery issues and even to discuss

15  the strengths or weaknesses of legal positions and try to

16  communicate effectively with each other, both to make the

17  litigation move more smoothly and also to be less burdensome to

18  all of the participants.  And often through that conversation,

19  they are able to work through misunderstandings or

20  disagreements and avoid having to write the Court to involve

21  the Court in that process.

22          So, Mr. Cooley, is there any reason that you will not

23  or have not engaged in -- I'm sorry.  Mr. Oliver, is there any

24  reason that you have not engaged in those kinds of informal

25  discussions with Ms. Weber?

 1    MR. OLIVER:  No.  We have.  We just emailed.  I didn't

 2 want to do anything over the phone because I didn't want

 3 anything twisted up or anything.  I wanted everything

 4 documented.  So we reached out, but we reached out through

 5 email.  We may not have reached out the way they wanted us to,

 6 but we reached out.

 7    THE COURT:  Okay.  So email is not a very efficient

 8 way to resolve problems, Mr. Oliver.  And I appreciate your

 9 concern here that if you have a discussion with a lawyer that

10 their recitation of what you said or what they understood what

11 you said may be different than your understanding, and I can

12 refer you to -- well, maybe I should just do it myself.

13    Let me just think here a moment.  I'm about to start a

14 trial next week, so I don't have time next week.  So let's just

15 spend a few moments here on this issue.

16    Ms. Weber, if Mr. Oliver had been willing to talk with

17 you, what are the types of things you wanted to discuss with

18 him?

19    MS. WEBER:  So in connection with scheduling the

20 meet-and-confer, we had suggested to Mr. Oliver and, you know,

21 I know he's always quick to say I'm twisting his words and

22 other types of things like that.  We had actually suggested

23 that the telephonic meet-and-confer be recorded, you know, with

24 a court reporter, and that we share those costs.  He never

25 responded to that request.  So we thought that that might be

1    one way to move this forward.

2              I am not so sure that a call with just the parties is

3    going to move anything forward because even trying to set up

4    the mediation session that your Honor ordered has been

5    extremely difficult.

6              MR. OLIVER:  Oh, that's not true.  That's not true at

7    all.  Oh wow.  Okay.

8              THE COURT:  So Mr. Oliver --

9              MR. OLIVER:  That's not true.

10             THE COURT:  What is not true?

11             MR. OLIVER:  That we have been making it hard for the

12   mediation and all that.  Everything that's come up, we complied

13   and was in contact with everybody and ready to go.  So I don't

14   know where that came from.

15             THE COURT:  So you are ready to have mediation,

16   Mr. Oliver?

17             MR. OLIVER:  A meet-and-confer, yeah.  For now, yeah.

18             THE COURT:  No.  I'm asking a different question.

19             Are you ready to have a mediation with a mediator and

20   all the parties to this lawsuit?

21             MR. OLIVER:  Oh, can you hold one second?

22             THE COURT:  Well, no, Mr. Oliver.  This is my chance

23   to talk to you.

24             MR. OLIVER:  I got it.

25             THE COURT:  Yeah.  Mr. Oliver, is someone with you so

1    that you are trying to consult with someone instead of

2    answering my question?

3            MR. OLIVER:  No.  I just -- I just have a lot of

4    paperwork in front of me.  There are a lot of things I wanted

5    to say that should show that this shouldn't even go any

6    further, and I'm just caught up in a cloud, that's all.

7            THE COURT:  Okay.  I appreciate that.  And thank you

8    for letting me know what the issue was.

9            So I want to be of assistance to both the plaintiffs

10   and both of the defendants here and try to move this litigation

11   along.  I know everyone wants to return to their lives as

12   opposed to be involved in litigation.

13           MR. OLIVER:  Yes.

14           THE COURT:  So I am going to spend the time this

15   afternoon that I can to try and be of assistance to everybody.

16           Ms. Weber, I am going to get to your discovery

17   requests in a moment.  But I think it might be helpful if you

18   could just briefly describe to me and to the defendant what

19   your -- what you would have said to Mr. Oliver about your chain

20   of title and the standing that you have to pursue this claim

21   against the defendants

22           MS. WEBER:  Your Honor, we have multiple copyright

23   registrations.  We have sheet music registrations.  Mr. White

24   had a music company that was the named the Sommet Music and

25   January Music which were on the original copyright

P7BQwhiC

1    registrations that clearly show that Mr. White was the author.

2    The renewal copyrights were renewed in his name, and we have

3    the chain of title for Mr. White's corporate entity to his

4    Trust to the pour-over provision in the will, all of which were

5    provided to Mr. Oliver and Mr. Cooley.

6         There is the order from the court in Los Angeles

7    showing that Glodean White is the trustee and appointing Jack

8    White -- I'm sorry -- Jack Perry as the co-trustee.  So we

9    believe it's a clear shot.

10        There, of course, are publishing companies involved,

11   record companies involved, but Mr. White is a co-owner of the

12   copyrights, and he has standing to sue as plaintiff through his

13   trust.

14        THE COURT:  Thank you, Ms. Weber.

15        It appears from the chain of title timeline that

16   Mr. Oliver has put together, that he is putting emphasis on a

17   1968 assignment which he refers to I believe as Savette

18   agreement.

19        Do you want to address that for a moment?

20        MS. WEBER:  Yes, all of the transfers, most of the

21   corporate entities, including the Abby Schroeder entities, were

22   resolved in a litigation and the trust in the estate.  It was

23   actually the trust -- the estate before the pour-over got all

24   of the rights back from Abbey Schroeder and her corporate

25   entities, but the Barry White entity has remained the same and

1   it's been involved in a straight line from the beginning.

2       There are documents that Mr. Oliver attached with the

3   security agreements, which were normal in the course of making

4   payments to Barry White during his lifetime to the estate and

5   then his trust after his passing.  But everything is owned by

6   the trust in conjunction with their publishing companies and

7   record companies.

8       THE COURT:  And the litigation which resolved

9   questions of ownership, have you produced documentation or

10   identified that litigation to Mr. Oliver?

11       MS. WEBER:  Absolutely, your Honor.  The settlement

12   agreement was provided to him both in the form that

13   originally -- the original handwritten document that formed the

14   basis of the settlement, and then the typed version that was

15   submitted to the Court and so ordered.

16       THE COURT:  So if Mr. Oliver chooses, to as part of a

17   summary judgment motion, at the appropriate time challenge your

18   chain of title, you believe that you will be able to show in

19   documents you would present to the Court that you do own the

20   copyright interests that you are suing upon in this lawsuit?

21       MS. WEBER:  Absolutely, your Honor.

22       THE COURT:  Thank you.

23       There is a second issue that Mr. Oliver has raised in

24   some of his submissions to me, and that is a confirmation

25   request regarding a deposit copy that is with the copyright

1    office.

2            Are you familiar with that request from Mr. Oliver?

3            MS. WEBER:  Yes, we are, your Honor.

4            THE COURT:  And what would you say in response to

5    that?

6            MS. WEBER:  We have produced the deposit copies to

7    both versions of the sheet music.  Those have been provided to

8    him.  We gave him all of the registrations and the renewals.

9    And we even went so far as to get the copies certified by the

10   copyright office which was also provided to him.

11           THE COURT:  Thank you.

12           MS. WEBER:  And to Mr. Cooley.

13           THE COURT:  Thank you.

14           So let me turn now to requests that you, the

15   plaintiffs, or the plaintiffs have made of the defendants.  And

16   I'm looking at attachments to your July 9 letter, and in

17   particular to - let me make sure I'm looking at this right -

18   the interrogatories, I'd like to start with that.

19           And looking at what you presented to the Court, and,

20   of course, defendants have these documents as well, as I

21   understand it, what you submitted to me shows your

22   interrogatory, for instance, interrogatory number 1, and then

23   it appears that Mr. Oliver -- and I'm going to ask you about

24   this, Mr. Oliver, too in just a moment -- that Mr. Oliver has

25   rewritten that request in a certain way and responded to his

1  rewritten request, and then outlined -- I'm sorry -- and then

2  there is a statement of deficiency, which I take it is the

3  plaintiff's statement of deficiencies.  Am I reading that

4  right, Ms. Weber?

5            MS. WEBER:  Yes, you are, your Honor.

6            THE COURT:  As I understand the plaintiff's objection,

7  it is that the interrogatory that the plaintiffs formulated has

8  not been responded to but only what the defendant rewrote was

9  responded to.  Do I understand your complaint correctly,

10 Ms. Weber?

11           MS. WEBER:  Yes, your Honor.

12           THE COURT:  Okay.

13           so, Mr. Oliver, I have turned to the plaintiff's

14 interrogatories and outlined what I understood.  I wanted to

15 know if you wanted to address that complaint by the plaintiffs.

16           MR. OLIVER:  I mean, I can only answer discovery as --

17 of the facts that I know for back then and what she asked for.

18 I don't know what else she wants.  I'm being truthful, and what

19 I wrote is what I wrote.  I mean, I don't know how to -- I

20 can't make up anything, so ...

21           THE COURT:  Well, I appreciate that, Mr. Oliver, and

22 you are absolutely correct, you should not be making up

23 anything.  You should just be answering to the best of your

24 knowledge.  And if there is something you don't know or don't

25 remember, you should feel free to say that.  But if you do know

1    something that is responsive to the interrogatory, you should

2    state that.

3            So, Ms. Weber, I have the interrogatories open before

4    me.  Is there a particular interrogatory that would be helpful

5    for us to sort through right now that is particularly important

6    to the plaintiffs?

7            MS. WEBER:  I think in broad strokes, your Honor, what

8    we are trying to determine, and this issue has come up in

9    connection with Mr. Cooley, who is listed on the copyright

10   registration, also with BMI in a recent sheet music list "Like

11   That" music and lyrics, notwithstanding that Mr. Oliver and

12   Mr. Cooley have both represented at separate times that

13   Mr. Cooley is not an owner of the copyright, and we are just

14   trying to narrow the issues for trial so that we can present a

15   clean, concise picture to the Court or to a jury, however it

16   proceeds.

17           THE COURT:  So which interrogatory can we look at now

18   to get this dispute resolved, if possible?

19           MS. WEBER:  So interrogatory number 2 requests what we

20   just discussed, which is the development-creation of the

21   underlying "Everlasting Bass" song.  And if the answer is the

22   documents don't exist, that's a different answer than

23   "Objection.  Overbroad.  Unduly burdensome."

24           THE COURT:  Okay.  So interrogatory **number** 2 has:

25           Identify the manner and technology which each of the

1   defendants developed and created "Everlasting Bass", as well as

2   the existence, custodian, location and general description of

3   any document relevant thereto.

4       So let me ask you, Mr. Oliver, just using this as an

5   example, what would you say?  What is your best recollection as

6   to the manner and technology in which you developed or created

7   "Everlasting Bass"?

8       MR. OLIVER:  Well, I mean I was a kid.  I was 15, 16

9   years old.  I just had a drum machine that one of my older

10   friends had, and I just created it in the living room, and, you

11   know, that's basically it.  I mean, there's no -- there's no

12   science to it.  And after I had it done, I had Joe Cooley come

13   in and scratch on it, like a work-for-hire type thing.  We

14   wound up -- because the record went big, we wound up being a

15   group together because of that one record.  I mean, that's

16   basically it.  It was all analog equipment back then.  No

17   computers.  No nothing.  Just a keyboard and a drum machine.

18       THE COURT:  And it was recorded how?  By Mr. Cooley?

19       MR. OLIVER:  No.  No.  We went into a studio and did

20   it, and he came in and scratched on top of the record, just

21   like a guitar player would come in and do a couple of riffs.

22   He just came in and scratched on the record.  He wasn't there

23   when I actually produced it.

24       THE COURT:  Well, you know, that's a lovely story,

25   Mr. Oliver.  So you're 16 years old.  You're in your own home.

1    You're working with your own drum set, and you create this

2    piece of music, am I right?

3              MR. OLIVER:  Yes.  Yes.

4              THE COURT:  And then you -- Mr. Cooley came over.  Did

5    you play it for him then?

6              MR. OLIVER:  No.  I played him the song and just said

7    what can you do on top of it because I didn't even know him as

8    a friend.  My manager at the time said if I ever needed a good

9    DJ to look this guy up.  So we didn't actually meet until we

10   were in the studio making the song.

11             THE COURT:  Okay.  So then you went to a studio, and

12   the two of you were there together and the song was recorded.

13             MR. OLIVER:  Yes.  No samples.  No anything.

14             THE COURT:  Okay.  So was there any document that will

15   -- I'm sorry.  Let me just read it as it's written here.

16   Interrogatory **number** 2, you are asked to identify the

17   existence, custodian, location and general description of any

18   documents relevant to what you just described to me.

19             Are there any documents that are relevant to what you

20   just described to me?

21             MR. OLIVER:  No, not at all.  You're talking about I

22   was 15, 16.  Dumb.  Careless with paperwork and stuff like

23   that.  So I've lost storage units and everything since that

24   time.  There's no -- no, I wish I did have that stuff, but I

25   don't.

P7BQwhiC

1          THE COURT:  Okay.  But you have your memory of how you

2     created it, and you have the recording that you went into the

3     studio and then made.  So you do have two important things.

4          Let's deal with another interrogatory, Ms. Weber.

5     Which other one would you like me to discuss with the

6     defendant?

7          MS. WEBER:  So in connection with what Mr. Oliver just

8     relayed to your Honor, interrogatory **number** 3, you know, asks

9     to identify the individuals by name with an address involved in

10    the writing, developing, and creating of the song.

11         And Mr. Oliver just said his manager at the time

12    introduced him to Mr. Cooley.  That's information that that

13    interrogatory was designed to solicit, including the name and

14    address of the manager who, if he is still alive, might be a

15    potential witness to this.

16         THE COURT:  So who was the manager, do you remember,

17    Mr. Oliver, back at that time?

18         MR. OLIVER:  I really didn't have no managers.  I just

19    had different people that handled different stuff.  This was

20    hip-hop in the Eighties.  I didn't even know the music business

21    and management and publishing and all that.  I didn't know that

22    stuff.  And I wouldn't know any manager or anything that would

23    know anything about the making of my song back then because I

24    didn't have a record deal or anything, so nobody -- nobody

25    cared.

1          THE COURT:  Right.

2          So who introduced you to Mr. Oliver?  Sorry,

3  Mr. Cooley?

4          MR. OLIVER:  It was a manager at the time for another

5  group that told me if I ever needed anybody to scratch on a

6  record to call him about -- his name was Dwayne.  I don't

7  remember his last name.

8          THE COURT:  And what group was he working for?

9          MR. OLIVER:  A group -- well, a guy named Egyptian

10  Lover.

11          THE COURT:  Thank you.

12          So let me just take these three categories of

13  information in interrogatory **number** 3.

14          Was there anybody besides you involved in writing

15  "Everlasting Bass"?

16          MR. OLIVER:  No.

17          THE COURT:  Was there anyone besides you involved in

18  developing "Everlasting Bass"?

19          MR. OLIVER:  No.

20          THE COURT:  And was there any one besides you involved

21  in creating "Everlasting Bass"?

22          MR. OLIVER:  No.

23          THE COURT:  Okay.  Good.

24          Oh, I am sensing, Ms. Weber, that an interrogatory may

25  not be the most efficient way to proceed here.

1    Have you scheduled among yourselves deposition time?

2    MS. WEBER:  No, we haven't, your Honor, because we

3    haven't received any of documents at all, and that was one of

4    the issues that prevents us, of course, from proceeding with a

5    deposition without the benefit of any documents.

6    THE COURT:  Okay.  And let me just see.  I don't think

7    I have the documents as an attachment to your letter.  I think

8    I only have interrogatories.

9    MS. WEBER:  I'm looking to see.  I have a copy.  Of

10   course, it is the document demand which I can provide to the

11   Court if that was somehow omitted.  But the document demand is,

12   of course, track the documents that we asked to be identified

13   in the interrogatories, including, you know, support of

14   statements that Mr. Oliver and other people involved have made,

15   you know, regarding the granting of the right to "Like That."

16   And we haven't received any of those documents.

17   Interrogatory **number** 6, for instance, asks for people

18   who have done any analysis of the actions, comparing the songs,

19   et cetera.

20   He answers the interrogatory:  No expert has been

21   retained.

22   But then in connection with the filing that was made

23   today, there is information, you know, provided by Nicole Key

24   as an attachment, for instance.  We are just trying to get as

25   much information as we can so that we can conduct meaningful

P7BQwhiC

1  depositions.

2       You know, we've asked for any analysis that they have

3  done, even if it is among themselves, regarding the songs.  As

4  we told the Court the last time, we've retained Dr. Sadoff to

5  do our report, the musicologist's report that will be finished

6  and provided to them by the date set forth in your order, which

7  would be August 15.

8       THE COURT:  Yes.

9       MS. WEBER:  And we are on schedule to do everything we

10  need from our end, but we have gotten no documents at all from

11  Mr. Oliver, including the documents granting the right to Epoch

12  and anything that transpired after that, which are obviously

13  integral to what Mr. Oliver's defense is in this case.

14       And, again, we renew our request.  We had drafted and

15  sent a settlement agreement to Mr. Cooley.  If he is not the

16  proper party, we have no desire to keep him in the lawsuit.

17  But everything that we keep uncovering on our own show him

18  listed on the copyright and all our settlement agreement was to

19  have him warrant and represent that so he could be dismissed

20  from the litigation.

21       THE COURT:  I appreciate that, Ms. Weber.

22       Mr. Cooley, have you received that settlement

23  agreement?

24       MR. COOLEY:  Yes, I did.

25       THE COURT:  Okay.  Good.

1          So, Mr. Oliver, returning to you, it's very important

2     that you provide the documents that have been requested by the

3     plaintiff.  You have been sued here in this litigation, but

4     you've also brought counterclaims, and you have obligations,

5     because you're in court here and a participant in litigation,

6     to be cooperative in discovery.

7          And have you pulled together the documents that have

8     been requested?  Are they in one location?

9          MR. OLIVER:  I have -- well, kind of sort of.  The

10    thing is, is that she's wanting me to produce documents of some

11    stuff that's not documented.  You know, I mean ...

12         THE COURT:  Well, if you have no documents that are

13    responsive to a request, there is nothing for you to produce.

14         MR. OLIVER:  Right.

15         THE COURT:  But if you have documents that are

16    responsive to a request, you must produce them.

17         MR. OLIVER:  Yeah.  No.  No.  That's no problem.  My

18    whole thing through this whole thing is I've done nothing

19    wrong, so I wouldn't try and hold anything back.  You know,

20    there's nothing that can hurt me, so I'm not worried about it.

21         THE COURT:  Good.  So can you produce those documents

22    to the plaintiffs by next Monday?

23         MR. OLIVER:  Yeah, whatever documents I -- I'll

24    re-look over it and see if -- but if there's no documents, I'm

25    just going to state that.

1          THE COURT:  Absolutely.  But obviously there are some

2    documents that you have that are responsive to their requests.

3          MR. OLIVER:  As far as for the song and dealing with

4    the song "Like That," you mean?

5          THE COURT:  Yes.

6          MR. OLIVER:  Yeah, might be some emails or something

7    "Like That".  Yeah.  Yeah.  That's not a problem.  But that

8    goes back also -- that's also on Nicole because she handles all

9    my life stuff, you know.

10          THE COURT:  Well, she's your agent.  You have -- you

11    need to get the documents from her.  They are ultimately your

12    documents, whether or not she drafted them or sent them as your

13    agent, and so she has an obligation -- you have an obligation

14    to get those documents and give them to the plaintiff.

15          MR. OLIVER:  Yeah.  Okay.  I know that she did give up

16    the documents though.  She gave up what she had.  And even

17    before this, our old lawyers gave her documents and stuff that

18    she probably wasn't even supposed to have, so I don't -- you

19    know, we're being cooperative, you know.

20          THE COURT:  So, Ms. Weber, did you get any documents

21    produced to you from defense counsel when they were still in

22    the case?

23          MS. WEBER:  Yes, your Honor.  In connection with the

24    jurisdictional discovery, we did, and part of the issue here is

25    the documents were produced pursuant to an agreement between

1    counsel.  And then there have been multiple motions in

2    connection with documents that Mr. Matson produced to us, which

3    Mr. Oliver objected to, and then failed to produce the

4    documents.

5          So, again, in preparation for trial, we are trying to

6    get the evidence together, and if we use it from his attorney,

7    he's saying the attorney wasn't authorized to turn it over,

8    which, of course, is a separate issue than producing documents

9    in connection with the document demand.  And there are numerous

10   document demands, including relating to income, correspondence

11   in connection with the license agreement, what happened

12   subsequent to the license agreement, revenues, et cetera.  And

13   then as your Honor pointed out in connection with their

14   crossclaims, none of which has been produced to us after our

15   requests for document production.

16         And because of what has happened in the past with

17   prior attorneys, with Ms. Keys produce -- with Ms. Key

18   producing documents, which Mr. Oliver then says she shouldn't

19   have had, she shouldn't have authority to grant.  We're just

20   trying to narrow the issues, your Honor, and do our job.

21         THE COURT:  So, Mr. Oliver, do you object to Ms. Weber

22   having any documents that were produced by your prior attorney

23   or by Ms. Key to plaintiff's counsel?

24         MR. OLIVER:  Umm, yeah, because, I mean, that would

25   have been something for discovery way later.  She got that

P7BQwhiC

1    early on, and I don't even remember what it was or anything,

2    but I'm sure it didn't help us.  It probably helped her.  But I

3    don't know what those documents were.  You know, and that's why

4    I don't have those attorneys now because we have been telling

5    them the whole time there's no real crime for this copyright or

6    anything and saying the title is not what she's saying.  We

7    have it.  We've looked at it.  That's why we just don't know

8    why we're going further when she doesn't have no standing.

9            THE COURT:  So, Mr. Oliver, if you are objecting to

10   Ms. Weber's use of the documents previously given to her in

11   this litigation by your representative, either Ms. Key or your

12   prior attorney, then you have the obligation now to produce all

13   of that documentation that's responsive to her requests to her,

14   and it should have happened in June.

15           MR. OLIVER:  Okay.  No.  She can --

16           THE COURT:  You cannot resist discovery in good faith

17   here.

18           MR. OLIVER:  Yeah, I'm not.  She can have it all.  I'm

19   not worried about it.

20           THE COURT:  Okay.  So are you or are you not objecting

21   to plaintiff's counsel having the documents previously provided

22   to her by your counsel?  Yes or no.

23           MR. OLIVER:  No, I won't -- no.

24           THE COURT:  Okay.  So you're not objecting to her

25   using those documents?

1     MR. OLIVER:  No.  I want -- no, I don't have no

2  problem.  I was just saying in the manner that they got it

3  wasn't okay with me, but it's okay.  They could have it.  Like

4  I said, I have nothing to hide.

5     THE COURT:  Okay.  Is that true also for the documents

6  that Ms. Key provided to plaintiff's counsel; that the

7  plaintiff's counsel can rely on those documents too.  Am I

8  right?  Mr. Oliver?

9     MR. OLIVER:  Yeah.  Yeah.

10     THE COURT:  Good.  So now that you have permission to

11  use the documents --

12     MR. OLIVER:  Well, all -- I'm sorry.

13     THE COURT:  Ms. Weber, what additional documents do

14  you believe exist that have not been provided to you?

15     MS. WEBER:  The documents in connection with the

16  license for "Like That" and what transpired afterwards.  We've

17  asked for the financial records in connection with "Everlasting

18  Bass" for the last six years.  We've asked for documents in

19  connection with any monies that are due in connection with

20  "Like That."  And, you know, again every document we believe is

21  crafted to be very specific, and it's the documents we need in

22  order to go to trial or file a summary judgment motion.

23     THE COURT:  Okay.  So, Mr. Oliver, there have been

24  three categories of documents that Ms. Weber has just described

25  to me that have been requested and not yet produced to the

1    plaintiff.

2           One is all of the correspondence and agreements in

3    connection with the licensing for the song "Like That."

4           Do you have those documents?

5    MR. OLIVER:  Yes, I do, and I believe she does too,

6    but the thing about that is the invalid license.  So she's been

7    pressing that we have a license with Epoch for "Everlasting

8    Bass" when in fact we don't because that's an invalid license

9    that we have -- that she has, and she's been taking it,

10   bringing it, submitting it through the Court when we've told

11   her that it was an invalid license.

12          THE COURT:  Okay.  But valid or invalid is a legal

13   argument.  And, of course, you have a right to make that

14   argument, but you must produce the documents.  Will you produce

15   the documents to Ms. Weber?

16          MR. OLIVER:  Yes.  She has them already, but yeah, I

17   will again.

18          THE COURT:  Okay.  The second category is the

19   financial records of any money you have made from "Everlasting

20   Bass" in the last six years.  Have you made any money from

21   "Everlasting Bass" in the last six years other than whatever

22   agreements you have in connection with "Like That"?

23          MR. OLIVER:  Yes.  Yes, I have.  I believe I put a

24   money amount.  I don't have no accountant or anything like

25   that, but I can probably send some stuff for what it makes

P7BQwhiC

1  annually maybe, stuff like that.  But there's not a -- you

2  know, I don't have no accounting firm or nothing like that.  I

3  just put in some money amount that I probably made in the last

4  six years.

5          THE COURT:  Great.  But you have to -- to the extent

6  that that is supported by any documentation, you have to give

7  that documentation to the plaintiffs as well.  Will you do

8  that?

9          MR. OLIVER:  Okay.  No problem.  That's no problem.

10          THE COURT:  Okay.  And then finally, as I understand

11  it, the last category that Ms. Weber listed was any documents

12  that reflect money made in connection with negotiations or

13  licenses with the Epoch or the people that control "Everlasting

14  Bass."  Did you receive any money in connection with those

15  transactions?

16          MR. OLIVER:  Yes, I did.

17          THE COURT:  Okay.  And can you give -- you must

18  produce documentation of that to Ms. Weber.  Will you do that?

19          MR. OLIVER:  Okay.  Yeah, I will.

20          THE COURT:  Okay.  So if you pull all of those

21  documents together and produce them next week, then I think we

22  are ready to go, Ms. Weber, with respect to a deposition of the

23  defendants if you wish to take their deposition.

24          Have you noticed the deposition of Mr. Oliver or

25  Mr. Cooley?

1    MS. WEBER:  We have not, your Honor, but we will do

2  that immediately.

3        THE COURT:  Okay.  Good.

4        MS. WEBER:  Your Honor, if I might, I gave you broad

5  strokes of the underlying documents that we had not received,

6  but there is also additional document requests in connection

7  with substantiating statements they've made in their

8  counterclaims and documents in connection with supporting

9  assertions made in their counterclaim, including, for instance,

10  in request **number** 30, the documents that support or negate

11  whether or not there was a publishing deal of $2.2 million that

12  ended up not happening because those are all part of the

13  counterclaims, and document requests 20 through the end of the

14  document requests which are **number** 44, deal with that, deal

15  with getting the information regarding postings that Mr. Oliver

16  and his agents have made online, and we have received none of

17  those documents.  He's produced no documents at all in

18  connection with the counterclaims.

19        THE COURT:  So let me explain to you, Mr. Oliver, the

20  consequences of failing to produce the documents in connection

21  with your counterclaim.  If you don't participate in discovery,

22  then the counterclaims can be dismissed.  Do you understand

23  that?

24        MR. OLIVER:  Yes, I do.  I understand that now.

25        THE COURT:  Okay.  So let me just broadly outline what

1   happens here because I do have sanctions request from the

2   plaintiffs to you and from you to the plaintiffs.

3          So the law is that people must participate in good

4   faith in discovery and produce to the other, whether it's a

5   answer to an interrogatory or a document or answer to a

6   deposition question that is appropriately made to the other

7   side.  And if people don't participate in good faith, then I

8   can impose sanctions, and they can be monetary sanctions to

9   compensate one side or the other for the waste of time and the

10  burden of pursuing discovery.

11         Or it can be a request that there be an inference that

12  is taken against the side and their positions in the lawsuit.

13         It can be a sanction to strike evidence so that it

14  can't be presented at trial.

15         It could be an entry of a default against a person or

16  the dismissal of a claim brought by a person.

17         I can do all kinds of alternative sanctions that are

18  appropriate in the circumstances.

19         But the bottom line is the last thing a judge wants to

20  do is impose sanctions.  What we want to do is have a discovery

21  process work so that everybody gets each side's information

22  that is relevant to their claims or defenses, and then the

23  issues get decided either on summary judgment or at trial.

24         So, Ms. Weber and Mr. Oliver and Mr. Cooley, if you

25  don't cooperate fully in discovery, I will impose sanctions

1    even though I do not want to do so.

2              Do you understand what I'm saying, Mr. Oliver?

3              MR. OLIVER:  Yeah, I understand what you're saying.

4    Yeah.  I mean, I know she's pinning like I didn't do what I was

5    supposed to do.  But I also wanted to bring up something about

6    interrogatories on her end if I could say something.

7              THE COURT:  Okay.  But let's just -- we'll address

8    that in a moment.  I'll give you a chance to explain what

9    you're referring to.  But I just want to close the loop here.

10   I'm going to require you by next Tuesday to produce to

11   Ms. Weber the answers to the interrogatories she has put to you

12   and to produce the documents that are outstanding to the

13   document request, whether they concern the claims the

14   plaintiffs have brought against you or the claims you are

15   bringing against the plaintiffs.  We need --

16             MR. OLIVER:  I understand.

17             THE COURT:  Okay.  Good.  Good.

18             So, Mr. Oliver, what issue did you want to raise?

19             MR. OLIVER:  That, umm, the plaintiff has failed to

20   provide a copyright record from Warner back to the Barry White

21   Trust.  I'm still back on what we've been saying from day one

22   that they don't own it so, and from 1999 it was taken out.  So

23   the trust doesn't have the copyright for that song.  Warner

24   has -- Warner owns it.  Warner is not in this lawsuit.  So

25   that's -- that's what I want to put out there because I

1  shouldn't be here.  I shouldn't even be -- the copyright record

2  from Warner to Barry White was not transferred back to the

3  trust.

4            MS. WEBER:  Your Honor.

5            THE COURT:  Ms. Weber.

6            MS. WEBER:  Warner and the trust are co-owners of the

7  copyright.  We've produced the documents.  To the extent

8  Mr. Oliver doesn't believe they are sufficient, we will provide

9  an affidavit from Warner.  Our goal here is to get to trial in

10  the quickest, most direct path.  We are not hiding anything,

11  your Honor.  A meet-and-confer would obviously have resolved

12  some of these issues, but, you know, we are where we are, and

13  we have produced, you know, almost 2,000 pages of documents.

14  We're not trying to hide anything.  It wasn't a document dump.

15  Every single document is related to this case and what we

16  intend to rely on at trial.  We're well aware this is not trial

17  by blindside or ambush and Mr. Oliver --

18            THE COURT:  We lost you, Ms. Weber.

19            MR. OLIVER:  Hello?

20            MS. WEBER:  Hello?

21            THE COURT:  Yes.  We lost you there for a moment.

22            MS. WEBER:  Can you hear me now?

23            THE COURT:  Yes, I can.

24            MS. WEBER:  Sorry.  I'm not sure what point I dropped

25  off, but if he or the Court needs an affidavit, we're willing

1    to provide it.  We are a co-owner.  We had full authority to

2    commence the lawsuit.

3            THE COURT:  Okay.  Good.

4            Are you planning, Mr. Oliver, to rely on an expert?

5            MR. OLIVER:  Yeah.  The phone went out.  Say that

6    again.

7            THE COURT:  Are you planning, Mr. Oliver, to rely on

8    an expert?

9            MR. OLIVER:  As far as what?

10           THE COURT:  I don't know.  I am just asking generally,

11   have you retained an expert?

12           MS. WEBER:  No.  Just my own research, and what me and

13   my wife has managed to do as far as, you know, our business, we

14   just know this part of it, and that you know, that the trust

15   doesn't -- doesn't own it.  They don't have the right.

16           THE COURT:  Okay, Mr. Oliver --

17           MR. OLIVER:  Yeah.

18           THE COURT:  -- you are going to have a chance to make

19   that argument in a summary judgment motion that is due

20   November 21.

21           MR. OLIVER:  That's fine.  But in the meantime and in

22   between time, give her the documents and comply with what she

23   wants, I got it.

24           THE COURT:  Good.  Good.  Okay.

25           So I think we're done here.  The fact discovery is to

P7BQwhiC

1  be completed by August 1.  Expert reports are due August 15.

2  Expert discovery ends October 3.  Any summary judgment motion

3  is due November 21.

4        Now I want to spend a moment talking about mediation.

5  I know from our mediation office that you have been assigned a

6  wonderful mediator - Henry Pitman.  He used to be a magistrate

7  judge with this court.  I know Mr. Pitman.  He was a wonderful

8  man, but better than that for your purposes, he is a terrific

9  mediator and has a lot of experience.  I know that the

10  mediation office is hoping to schedule a mediation so that

11  everybody can resolve this case.

12        I have to tell you, Mr. Oliver, I do not know if a

13  summary judgment motion is made whether you would win or lose

14  if you brought that motion.  You should not assume that you are

15  going to win.

16        Similarly, Ms. Weber, as you well know from

17  litigation, if this case went to trial, you know, a jury will

18  do what a jury will do.  So I really encourage both sides here

19  to engage in good-faith mediation.

20        Ms. Weber, are you willing to do that?

21        MS. WEBER:  Absolutely, your Honor.

22        THE COURT:  Mr. Oliver, are you willing to do that?

23        MR. OLIVER:  Yes, I am.

24        THE COURT:  Good.

25        Mr. Cooley, are you willing to do that?

1          MR. COOLEY:  Yes, I am.

2          THE COURT:  Good.  Good.

3          Thank you all.  And I wish you good luck.

4          MS. WEBER:  Your Honor, if I may, just as a

5     housekeeping matter.  I know that all fact discovery, including

6     depositions have to be completed by August 1, but that is

7     contingent on us getting a fulsome document production, and we

8     are asking for the Court's indulgence on setting up depositions

9     contingent on the document production which may go after

10    August 1, and, of course, depending on Mr. Oliver's deposition,

11    Mr. Cooley's deposition, perhaps Ms. Key's deposition.

12         THE COURT:  So, Ms. Weber, you are going to get

13    documents from Mr. Oliver next week.  You've got permission

14    from him to use the documents you already have.

15         I am going to ask you to move forward.  You may

16    through a deposition discover that there are more documents,

17    but we are going to have to be flexible in this litigation and

18    try and keep our eye on the ball and the ultimate goal here.

19         Do you understand what I'm saying?

20         MS. WEBER:  A hundred percent, your Honor.

21         THE COURT:  Okay.  Good.

22         And, obviously, if all parties agree that the

23    deposition should occur in early August as opposed to late

24    July, that's fine with me.  But I do want them to move forward,

25    and let's try to get to the core issues at stake here.

P7BQwhiC

1              Thank you all.

2              MS. WEBER:  Understood, your Honor.  Thank you.

3              (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25