**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

The Barry White Family Trust U/A/D: December 19, 1980,
 By Its Duly Empowered Trustees,
 Plaintiffs,

v.

 **Joe Cooley, et al.**
 Defendants.

Case No. 24-cv-7509 (DLC)

## LETTER MOTION OF DEFENDANT JOE COOLEY

**TO DISMISS OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE SUMMARY JUDGMENT**

Hon. Denise L. Cote
 United States District Judge
 Southern District of New York
 500 Pearl Street
 New York, NY 10007

Dear Judge Cote:

.

My name is Joe Cooley. I am representing myself. I want to explain why I should not be in this case.

From the start, I relied on my co-defendant Rodney Oliver, who told me he would handle the case for both of us. Now that he has his own lawyer, I need to speak for myself.

The only reason I am still here is because the Plaintiffs never showed the proof of ownership or authority that I asked for at the April 24, 2025 conference. On July 3, 2025, they even said in writing they had made "full production." But nothing they produced shows any assignment from Warner/Chappell to the Barry White Family Trust or Estate. There is no document giving them the right to bring this lawsuit.

They also didn't file the 1973 deposit sheet music with their Amended Complaint, even though the law requires the deposit copy in a composition case. We had to go and get the deposit ourselves, and it proves the bass line they claim was copied is not even in the copyrighted deposit. It is clear the sheet music is only a **lead sheet** — there is no bass clef, no bass line written out.

On top of that, I should not be facing sanctions. I've acted in good faith the whole time. The reason I'm filing my own letter is because Plaintiffs refused to include my side in the joint letter, and instead tried to falsely accuse me as a way to pressure me. That's not right.

### 1. Good Faith Efforts
I have acted in good faith throughout these proceedings. Plaintiffs have repeatedly stated they were willing to release me from the case through a settlement agreement. I indicated I was willing to sign such an agreement and even asked that it be re-sent to me. My hesitation has never been about delay, but only about verifying Plaintiffs' authority to sue.

### 2. Financial Hardship
I am unable to travel to New York because of financial hardship. If the Court requires my participation, I respectfully ask to appear by telephone, Zoom, or another remote method.

### 3. Lack of Evidence of Ownership or Authority
At the April 24, 2025 conference, I specifically requested proof that Plaintiffs had ownership and authority to bring this lawsuit. On July 3, 2025, Plaintiffs wrote that they had made "full production," but their production contained no assignment from Warner/Chappell to the Barry White Family Trust or Estate and no document establishing standing.

Further, Plaintiffs did not file the 1973 deposit sheet music with their Amended Complaint, even though it is required by law in a composition claim. I obtained the deposit copy myself. It shows the work is only a **lead sheet** with melody — there is no bass clef and no written bass line. This confirms that the element Plaintiffs claim was copied is not protected by the copyright deposit.

### 4. Sanctions
Sanctions should not be imposed on me. I have produced what I possess, I hold no ownership or publishing rights in the song, and I have been transparent about that from the beginning. The reason I submit this letter separately is because Plaintiffs refused to include my statement in the joint letter and instead tried to falsely accuse me as a pressure tactic.

### 5. Statement of Position
I respectfully remind the Court of my position in this matter. The only benefit I ever received from performing on *Everlasting Bass* was the formation of my artistic legacy. From the outset, I asked Plaintiffs to provide evidence that their claim was not brought without merit or without authority. I stated clearly that if they produced such evidence, I would agree to their settlement and relinquish my counterclaims. They have not done so. If the Court takes judicial notice of the undisputed facts establishing the absence of ownership, authority, and infringement, and thereby redeems me, I am prepared to relinquish my counterclaims.

For these reasons, I respectfully ask the Court to:

1. **Recognize the absence of ownership, authority, and infringement, and dismiss me from this case; or, in the alternative,**

2. **Grant me leave to move for summary judgment under Rule 56 so these issues may be resolved as a matter of law.**

If I am dismissed, I will immediately withdraw my counterclaims.

Respectfully submitted,

/s/Joe Cooley
 Pro Se Defendant
248 E 157th Street

Gardena, CA 90248

Email: cooleyjoe011@gmail.com

# Exhibit Index – Cooley Letter Motion

**Exhibit 1 – April 24, 2025 Conference Transcript**

    Judge Cote directed Plaintiffs to show authority; you confirmed no ownership or publishing rights.

**Exhibit 2 – July 3, 2025 Letter from Plaintiffs' Counsel**

    Plaintiffs claimed 'full production' but showed no assignment from Warner/Chappell or proof of standing.

**Exhibit 3 – 1999 Withdrawal by Barry White**

    Notarized withdrawal removing copyrights from the Trust; undermines Plaintiffs' authority.

**Exhibit 4 – Deposit Copy of 1973 Sheet Music**

    Official copyright deposit shows only melody/lead sheet; no bass clef or bass line.

**Exhibit 5 – Joint Status Letter Email Chain (Aug. 2025)**

    You stated your good faith position; Plaintiffs refused to include it and falsely accused you.

**Exhibit 6 – Deposition Correspondence (July 2025)**

    Emails show Plaintiffs acknowledged releasing you but continued discovery against you.

**Exhibit 7 – Draft Settlement Agreement (April 2025)**

    Draft confirms Plaintiffs were willing to release you, acknowledging no ownership interest.

## Withdrawal of Separate Property from the Barry White Family Trust created by Trust Agreement dated December 19, 1980, between Barry White and Glodean White, as Trustors and as Trustees

I, Barry White, as Trustor of the Barry White Family Trust (the "Trust") created under Trust Agreement dated December 19, 1980 between me and Glodean White, as Trustors and as Trustees (the "Trust Agreement"), hereby withdraw all of my separate property from the Trust pursuant to Section 2.3 of the Trust Agreement, including, without limitation: (i) any intellectual property rights (including without limitation any copyrights, trademarks, name and likeness rights or rights of publicity) and any related registrations, applications, renewal and/or termination rights related thereto, and (ii) any contractual rights, relating to me, my musical compositions, recordings, performances, arrangements, orchestrations, productions or artistic services.

Barry White, Trustor

Doc#:DSS-18475 1

BWT-001515

STATE OF NEW YORK  )
                   : ss.:
COUNTY OF NEW YORK )


On the 27th day of July, 1999, before me personally came BARRY WHITE, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Notary Public

JONATHAN R. BELL
Notary Public, State of New York
No. 31-4882942
Qualified in New York County
Commission Expires January 31, 19 2001

Doc#:DS5.389475.1

BWT-001516











 Gmail

**Joe Cooley <cooleyjoe011@gmail.com>**

---

## Notice of Deposition - Joe Cooley
5 messages

---

**Dorothy Weber** <dorothy@musiclaw.com>                                    Fri, Jul 11, 2025 at 3:48 PM
To: "cooleyjoe011@gmail.com" <cooleyjoe011@gmail.com>
Cc: Judith Meyers <judy@musiclaw.com>, "rodneyolivermusic@gmail.com" <rodneyolivermusic@gmail.com>

Dear Mr. Cooley:  Pursuant to the Court's instructions, please confirm.

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

---

 **Notice of Deposition - Joe Cooley.pdf**
148K

---

**Joe Cooley** <cooleyjoe011@gmail.com>                                    Mon, Jul 14, 2025 at 1:00 PM
To: Dorothy Weber <dorothy@musiclaw.com>
Cc: Judith Meyers <judy@musiclaw.com>, "rodneyolivermusic@gmail.com" <rodneyolivermusic@gmail.com>

Hi Ms. Weber
I am even more confused after Friday's call. Are you moving forward with me or removing me? Did Judge Cote ask me if I
had the settlement because she wants me to sign it?  Or did you decide to leave me on the case. I am unable to go to
New York. I can not afford too. I request  a phone call or if required a zoom call. I can possibly be able to do. Please let
me know
thanks

Joe Cooley

On Fri, Jul 11, 2025 at 3:48 PM Dorothy Weber <dorothy@musiclaw.com> wrote:

Dear Mr. Cooley:  Pursuant to the Court's instructions, please confirm.

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

---

**Dorothy Weber** <dorothy@musiclaw.com>                    Mon, Jul 14, 2025 at 1:05 PM
To: Joe Cooley <cooleyjoe011@gmail.com>
Cc: Judith Meyers <judy@musiclaw.com>, "rodneyolivermusic@gmail.com" <rodneyolivermusic@gmail.com>

Dera Mr. Cooley:   We remain open to removing you from the case in line with the settlement agreement we
have proffered to you and sent you again on Friday.   If you are willing to resolve this matter in line with the
agreement, we remain ready, willing and able to do so.


If you cannot come to New York, we will conduct the deposition remotely which will require your attendance
at our  local counsel office in Newport Beach.


Sincerely,


Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

**From:** Joe Cooley <cooleyjoe011@gmail.com>
**Sent:** Monday, July 14, 2025 4:01 PM
**To:** Dorothy Weber <dorothy@musiclaw.com>
**Cc:** Judith Meyers <judy@musiclaw.com>; rodneyolivermusic@gmail.com
**Subject:** Re: Notice of Deposition - Joe Cooley

Hi Ms. Weber

I am even more confused after Friday's call. Are you moving forward with me or removing me? Did Judge Cote ask me if I had the settlement because she wants me to sign it?  Or did you decide to leave me on the case. I am unable to go to New York. I can not afford too. I request  a phone call or if required a zoom call. I can possibly be able to do. Please let me know

thanks


Joe Cooley




On Fri, Jul 11, 2025 at 3:48 PM Dorothy Weber <dorothy@musiclaw.com> wrote:

> Dear Mr. Cooley:  Pursuant to the Court's instructions, please confirm.
>
>
> Dorothy M. Weber, Esq.
>
> Herbsman Hafer Weber & Frisch, LLP
>
> 494 Eighth Avenue, Suite 600
>
> New York, NY 10001
>
> Direct Dial: (646) 795-6068
>
> Fax: (212) 956-6471
>
> E-Mail: dorothy@musiclaw.com
>
> http://www.linkedin.com/in/dorothymweberesq/

---

**Dorothy Weber** <dorothy@musiclaw.com>                          Mon, Jul 14, 2025 at 1:22 PM
To: Joe Cooley <cooleyjoe011@gmail.com>

Dear Mr. Cooley:    I apologize for the typo in the salutation.

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

---

**From:** Dorothy Weber
**Sent:** Monday, July 14, 2025 4:05 PM
**To:** 'Joe Cooley' <cooleyjoe011@gmail.com>
**Cc:** Judith Meyers <judy@musiclaw.com>; rodneyolivermusic@gmail.com
**Subject:** RE: Notice of Deposition - Joe Cooley

Dera Mr. Cooley:   We remain open to removing you from the case in line with the settlement agreement we have proffered to you and sent you again on Friday.   If you are willing to resolve this matter in line with the agreement, we remain ready, willing and able to do so.

If you cannot come to New York, we will conduct the deposition remotely which will require your attendance at our  local counsel office in Newport Beach.

Sincerely,

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

**From:** Joe Cooley <cooleyjoe011@gmail.com>
**Sent:** Monday, July 14, 2025 4:01 PM
**To:** Dorothy Weber <dorothy@musiclaw.com>
**Cc:** Judith Meyers <judy@musiclaw.com>; rodneyolivermusic@gmail.com
**Subject:** Re: Notice of Deposition - Joe Cooley


Hi Ms. Weber

I am even more confused after Friday's call. Are you moving forward with me or removing me? Did Judge Cote ask me if I had the settlement because she wants me to sign it?  Or did you decide to leave me on the case. I am unable to go to New York. I can not afford too. I request  a phone call or if required a zoom call. I can possibly be able to do. Please let me know

thanks


Joe Cooley




On Fri, Jul 11, 2025 at 3:48 PM Dorothy Weber <dorothy@musiclaw.com> wrote:

Dear Mr. Cooley:  Pursuant to the Court's instructions, please confirm.


Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/



**Joe Cooley** <cooleyjoe011@gmail.com>                          Mon, Jul 28, 2025 at 10:40 AM
To: Dorothy Weber <dorothy@musiclaw.com>

Ms. Weber
May you please send the settlement to sign. All this nonsense doesn't involve me
I will have access to this computer for another hour or so. If possible if you may send it as soon as you can. Am not sure win I will get access again. Thank you

Joe Cooley

On Mon, Jul 14, 2025 at 1:05 PM Dorothy Weber <dorothy@musiclaw.com> wrote:

> Dera Mr. Cooley:   We remain open to removing you from the case in line with the settlement agreement
> we have proffered to you and sent you again on Friday.   If you are willing to resolve this matter in line with
> the agreement, we remain ready, willing and able to do so.
>
>
> If you cannot come to New York, we will conduct the deposition remotely which will require your
> attendance at our  local counsel office in Newport Beach.
>
>
> Sincerely,
>
>
> Dorothy M. Weber, Esq.
>
> Herbsman Hafer Weber & Frisch, LLP
>
> 494 Eighth Avenue, Suite 600
>
> New York, NY 10001
>
> Direct Dial: (646) 795-6068
>
> Fax: (212) 956-6471
>
> E-Mail: dorothy@musiclaw.com
>
> http://www.linkedin.com/in/dorothymweberesq/
>
>
>
> **From:** Joe Cooley <cooleyjoe011@gmail.com>
> **Sent:** Monday, July 14, 2025 4:01 PM
> **To:** Dorothy Weber <dorothy@musiclaw.com>
> **Cc:** Judith Meyers <judy@musiclaw.com>; rodneyolivermusic@gmail.com
> **Subject:** Re: Notice of Deposition - Joe Cooley
>
>
> Hi Ms. Weber
>
> I am even more confused after Friday's call. Are you moving forward with me or removing me? Did Judge Cote ask me
> if I had the settlement because she wants me to sign it?  Or did you decide to leave me on the case. I am unable to go
> to  New York. I can not afford too. I request  a phone call or if required a zoom call. I can possibly be able to do. Please
> let me know
>
> thanks
>
>
> Joe Cooley

On Fri, Jul 11, 2025 at 3:48 PM Dorothy Weber <dorothy@musiclaw.com> wrote:

Dear Mr. Cooley:  Pursuant to the Court's instructions, please confirm.


Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/



# Proposed Changes to Draft Confidentiality Agreement - Barry White Family Trust v. Cooley et al.

16 messages

---

**Rodney** <rodneyolivermusic@gmail.com>    Wed, Apr 30, 2025 at 11:38 AM
To: Dorothy Weber <dorothy@musiclaw.com>, Joe Cooley <cooleyjoe011@gmail.com>

Ms. Weber

The attached is what I put together with the help of my team. I am trying to move this forward as best as I can. Please let know if you can agree to these changes so we can move forward.

Thanks

Rodney Oliver

---

📄 **Subject- Proposed Changes to Draft Confidentiality Agreement - Barry White Family Trust v.pdf**
52 KB

---

**Ricardo Rosado** <ricardo@musiclaw.com>    Thu, May 1, 2025 at 7:27 AM
To: Rodney <rodneyolivermusic@gmail.com>
Cc: Dorothy Weber <dorothy@musiclaw.com>, cooleyjoe011@gmail.com <cooleyjoe011@gmail.com>

Dear Mr. Oliver:

Ms. Weber is not available at the moment and will respond to your email early next week.

Sincerely,

Ricardo Rosado

Legal Assistant to Dorothy M. Weber, Esq.

Herbsman, Hafer,Weber & Frisch, LLP

494 Eighth Avenue, 6th Floor

New York, New York 10001

Phone: 646 – 795 - 6064

Fax: (212) 956-6471

Email: ricardo@musiclaw.com

[Quoted text hidden]

---

**Joe Cooley** <cooleyjoe011@gmail.com>    Thu, May 1, 2025 at 2:41 PM
To: Ricardo Rosado <ricardo@musiclaw.com>

Cc: Rodney <rodneyolivermusic@gmail.com>, Dorothy Weber <dorothy@musiclaw.com>

So I assume I won't be getting proof of ownership this week. I don't feel the need to have to look over the confidentiality agreement since Weber told the judge she could provide me with the proof of ownership in order for me to sign the settlement agreement to be dismissed. I am not sure why there is a delay if she has it. If she doesn't this is awful cruel to be doing.

Joe Cooley

[Quoted text hidden]

---

**Dorothy Weber** <dorothy@musiclaw.com>                               Mon, May 5, 2025 at 10:23 AM
To: Joe Cooley <cooleyjoe011@gmail.com>, Ricardo Rosado <ricardo@musiclaw.com>
Cc: Rodney <rodneyolivermusic@gmail.com>

Dear Mr. Cooley:    Do not refer to me as "Weber" no more than I would address either you or Mr. Cooley in any disrespectful manner.

If you are prepared to sign the settlement agreement, you do not need to sign the confidentiality agreement.    The Judge did _not_ say that we should provide proof of ownership, rather when you asked the Court who was suing you, the Judge pointed out to you that the trustees were identified on page 1 of the Amended Complaint.

Very truly yours,

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/
dorothymweberesq/

[Quoted text hidden]

---

**Dorothy Weber** <dorothy@musiclaw.com>                               Mon, May 5, 2025 at 10:36 AM
To: Rodney <rodneyolivermusic@gmail.com>, Joe Cooley <cooleyjoe011@gmail.com>

**HERBSMAN HAFER WEBER & FRISCH, LLP**
Attorneys At Law
494 Eighth Avenue, Sixth Floor
New York, New York 10001

Jonas E. Herbsman
J. Jeffrey Hafer
Dorothy M. Weber
Michael B. Frisch
----------------
Rakhil Kalantarova
----------------
James E. Doherty
Of Counsel

Telephone (212) 245-4580
Telecopier (212) 956-6471
----------------

WRITER'S E-MAIL:
dorothy@musiclaw.com

July 3, 2025

**Via Email:** cooleyjoe011@gmail.com

Mr. Joe Cooley
248 E 157th Street
Gardena, CA 90248

>      *Re:*    The Barry White Family Trust U/A/D: December 19, 1980, By its Duly
>             <u>Empowered Trustees v. Cooley et al. Case No. 24-cv-07509-DLC</u>

Dear Mr. Cooley:

We write to you in Ms. Weber's absence this week (of which you have been on notice).

In your email to Mr. Tran, Judge Pitman's case coordinator at JAMS, yesterday, you claimed to be "confused" about your status in this action.

So that there is no confusion, this will confirm that the Plaintiffs have not withdrawn their claims against you and that you remain a defendant in this action since you chose not to sign the Settlement Agreement which was submitted to you on April 21, and May 7, 2025. You verified this decision to us in writing by email on May 7, 2025.

Accordingly, we have continued to provide you with courtesy copies of all filings in this action, including the full document production on June 13, and June 25, 2025, and we have corresponded with you directly as appropriate. You have also requested relief from the Court as recently as June 2, 2025 (Dkt. 107) which relief was denied by the Court on June 24, 2025 (Dkt. 118).

Very truly yours,

HERBSMAN HAFER WEBER
& FRISCH, LLP

cc:   Mr. Rodney Oliver
      Mr. Victor Tran

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement (the "Agreement"), dated as of April __, 2025, is made by and between, The Barry White Family Trust U/A/D: December 19, 1980, By its Duly Empowered Trustees (the "Plaintiffs") c/o Dorothy M. Weber, Esq, Herbsman Hafer Weber & Frisch, LLP, 494 Eighth Ave., Sixth Floor, New York, NY 10001 on one side, and Defendant Joe Cooley (the "Defendant Cooley"), 248 E 157th Street, Gardena, CA 90248 and Rodney David Oliver, 11074 Oso Avenue Chatsworth, CA 91311 on the other.

<u>**RECITALS**</u>

**WHEREAS**, in *The Barry White Family Trust U/A/D: December 19, 1980, By its Duly Empowered Trustees v. Cooley et al.,* in the United States District Court for the Southern District of New York, Civil Action No. 1:24-cv-07509-DLC (the "Action"), the Plaintiffs have stated copyright infringement claims against Defendant Joe Cooley alleging unauthorized use by Defendant Joe Cooley who copied and interpolated substantial elements of "I'm Gonna Love You Just A Little More, Babe" ("Barry White Copyright"), a song written, produced, and performed by Barry White in 1972 and released in 1973, in Defendant Joe Cooley's song "Everlasting Bass" ("Infringing Work"), written and released by Defendant Joe Cooley and Rodney David Oliver in or about 1986; and

**WHEREAS**, Defendant Joe Cooley claims that notwithstanding the BMI registration for the Infringing Work lists him as a writer/composer, Defendant Joe Cooley is solely a performer on the recorded copies of the Infringing Work and is not a creator, composer, or author of the Infringing Work; and

1

**WHEREAS,** Defendant Joe Cooley claims he has never held any ownership, copyright publishing or licensing rights in the master recording or the underlying composition of the Infringing Work and had no involvement in any licensing negotiations, business dealings, or copyright registrations concerning the Infringing Work and is not claiming any financial interest in the song "Everlasting Bass"; and

**WHEREFORE**, the Plaintiffs and Defendant Joe Cooley (the "Parties") hereto desire to enter into this So-Ordered Settlement Agreement to settle the copyright claims between them relating to the above-captioned Action, for Defendant Joe Cooley to withdraw his Counterclaims against the Plaintiffs, and to confirm and memorialize their agreement on all of the terms and subject to all of the conditions set forth herein, and to set forth their rights and obligations with respect thereto; and

**NOW, THEREFORE**, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**Dismissal**

1.    Within five (5) business days after the Effective Date, the Parties shall file a Joint Stipulation of Dismissal with Prejudice in this Action without costs and fees.

2.    Plaintiffs' Covenant Not to Sue. The Plaintiffs and, as applicable, their respective owners, shareholders, partners, subsidiaries, affiliates, representatives, agents, members, officers, and directors, together with their heirs, predecessors, successors and assigns, unconditionally covenant not to sue

2

or assert any claim against Defendant Joe Cooley and, as applicable, their respective members, trustees, subsidiaries, affiliates, representatives, agents, officers, and directors, as well as their heirs, predecessors, successors and assigns, arising now or in the future for any form of intellectual property infringement, including any claims asserted in this Action based in whole or in part on the alleged use or copying of the Barry White Copyright.

3.   <u>Defendant Joe Cooley' Covenant Not to Sue</u>. Defendant Joe Cooley and, as applicable, his respective partners, subsidiaries, affiliates, representatives, agents, members, officers, and directors, together with their heirs, predecessors, successors and assigns, unconditionally covenant not to sue or assert any claim against the Plaintiffs and, as applicable, their respective members, trustees, subsidiaries, affiliates, representatives, agents, officers, and directors, as well as their heirs, predecessors, successors and assigns, arising now or in the future for any form of intellectual property infringement, including any claims asserted in this Action based in whole or in part on the alleged use or copying of the Barry White Copyright.

4.   <u>Mutual General Release</u>.  Aside from the Parties' obligations under this So-Ordered Settlement Agreement, the Parties and their respective members, trustees, owners, shareholders, partners, subsidiaries, affiliates, representatives, agents, officers, and directors, together with their heirs, predecessors, successors and assigns, as applicable, hereby irrevocably release and discharge each other from any and all actual or potential claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities, and obligations of every kind and nature whatsoever, at law and equity or otherwise, whether known,

unknown, suspected, unsuspected, disclosed or undisclosed, existing or accrued at any time from the beginning of the world through the Effective Date, specifically including, without limitation, any and all claims that were or could have been asserted at any time in or in connection with this Action or the underlying facts and circumstances asserted therein.

5.    <u>No Admission of Liability</u>.  The Parties hereby acknowledge and agree that neither the execution of this So-Ordered Settlement Agreement, nor the performance of any act pursuant to the So-Ordered Settlement Agreement, constitutes an admission of liability, express or implied, of any Party with respect to any fact or matter which may have arisen in connection with this Action.

6.    <u>Binding Nature</u>.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, and their respective successors, parents, assigns, affiliates, subsidiaries, agents, heirs, administrators, executors and legal representatives.

7.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties hereto with respect to matters addressed herein.  Except as expressly set forth in this Agreement, there are no representations, warranties or inducements, whether oral or written, express or implied, that in any way affect or condition the validity of this Agreement or any of the terms of this Agreement.  In executing this Agreement, neither Party relied upon any representations, warranties, or inducements, whether oral or written, express or implied, by the other Party, except for those representations and warranties contained in this Settlement Agreement.

8.    <u>Advice of Counsel</u>.    In entering into this Agreement, the Parties each acknowledge and represent that they had the opportunity to obtain legal advice of an attorney.    They further represent that the terms of this Agreement have been completely read by them, and that those terms are fully understood and voluntarily accepted by them.

9.    <u>No Oral Modifications</u>.    This Agreement may not be amended, revoked or modified, in whole or in part, except by a writing executed by all of the Parties hereto.

10.    <u>No Waiver</u>.    The failure of any party to object to one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to any other breach or violation of this Agreement.

11.    <u>Jointly Drafted</u>.    This Agreement reflects the joint drafting efforts of all Parties to this Agreement and any ambiguities in this Agreement shall not be construed against any Party hereto.

12.    <u>Counterparts</u>.    This Agreement may be executed in any number of counterparts and by different Parties hereto in separate counterparts, but shall not be effective until each party has executed at least one counterpart.    Each counterpart when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

13.    <u>Effective Date</u>.    The "Effective Date" of this Agreement shall be the day on which the Agreement has been fully executed by all of the Parties hereto.

14.    <u>Party.</u>    The term "Party" or its plural "Parties" refers to the undersigned Party or Parties and their representatives, agents, officials, commissioners, owners, shareholders, equity holders, partners (either limited or general),

subsidiaries, affiliates, parent companies, other related entities, insurers, indemnitors, officers, directors, members, managers, attorneys, employees, trustees, heirs, beneficiaries, executors, administrators, predecessors-in-interest, successors, and assigns.

15.    <u>Severability</u>.    In the event that any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable against any of the Parties hereto for any reason or to any extent, this Agreement shall not be rendered void but any such provisions shall be deemed amended to apply to the maximum extent as such court may judicially determine or indicate to be enforceable.    Alternatively, if the court finds that any provision in this Agreement is unenforceable and such provision cannot be amended so as to make it enforceable in any application or to any extent, all remaining provisions of this Agreement shall not be affected and shall be given full force and effect without regard to the invalid or unenforceable provisions.

16.    <u>Authority</u>.  Each Party hereby represents and warrants that: (a) it is duly authorized to execute this Agreement and deliver this Agreement and to perform its obligations hereunder; (b) this Agreement is a legal and valid obligation binding upon it and enforceable according to its terms; (c) the execution, delivery and performance of this Agreement by it does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound; (d) it shall perform its obligations under this Agreement in accordance with all applicable laws, rules or regulations; and (e) it has the authority to execute and deliver this Agreement on behalf of the Party so indicated.    If the Party is a corporation, that Party further represents and

warrants that it is organized and validly existing under the laws of the state of its organization and has full corporate power to carry out the provisions hereof.

17.    <u>Breach.</u>  Should either Party believe that the other Party is in breach of this Agreement, it will provide written notice and the opportunity to cure the breach within 5 business days after such notice is received.

18.    <u>Jurisdiction.</u>  This Agreement shall be construed in accordance with the laws of the State of New York, and shall be subject to the sole and exclusive jurisdiction of the State and Federal courts located in New York.

19.    <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York.

20.    <u>Headings</u>.  The descriptive headings contained in this Agreement are for convenience of reference only, and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

            **IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date first written above by themselves or their respective officers duly authorized.

**The Barry White Family Trust**
**U/A/D: December 19, 1980, By its**
**Duly Empowered Trustees**

By:_____
Name:
Title:                                                    _____
Date:                                                         **Joe Cooley**

                                                              Date:

7

_____
**Rodney David Oliver**                    Date:





**Joe Cooley <cooleyjoe011@gmail.com>**

---

## Joint Status Letter – Cooley v. Barry White Family Trust (24-cv-07509)
7 messages

---

**Joe Cooley** <cooleyjoe011@gmail.com>                                      Sun, Aug 24, 2025 at 10:10 AM
To: ken@freundlichlaw.com, Dorothy Weber <dorothy@musiclaw.com>

  Hello,
  I'm writing in response to Judge Cote's August 20, 2025 Order requiring us to meet and confer and file a joint status letter
  by August 28, 2025. Since I am pro se, I will keep everything through email so it is documented as we have been.
  I also want you to know that I was not served with notice of the last filings by any party. I only found the Court's order on
  my own. Please make sure I am copied by email on all future filings so that I can stay updated. Thank you.

  Here is my position for the joint letter:
  1. Sanctions
  Sanctions should not be on me. Plaintiffs already told me they are willing to release me. That shows I am not holding back
  discovery and there is no reason to sanction me. To me, the sanctions request looks like pressure for me to sign a
  settlement, which I will not do.
  2. Discovery
  On July 3, 2025, Plaintiffs stated they had made "full production." I have to go by what they gave me. That production did
  not show any assignment after Warner/Chappell. So as far as I am concerned, discovery for me is closed.
  3. Undisputed Facts
  • The 1973 deposit copy was filed as unpublished and only includes melody, lyrics, and treble clef chords. It does not
  have the bass line Plaintiffs claim was infringed.
  • Warner/Chappell is still the last recorded copyright owner.
  • In 1999, Barry White signed a notarized withdrawal taking all copyrights and renewal rights out of the Family Trust.
  • Plaintiffs have not produced anything showing that rights were ever transferred from Warner/Chappell to the Trust or
  Estate.
  4. Severance
  Since Rodney now has his own lawyer, I want my defense to be severed so I can represent myself separately.
  5. Counterclaims
  I will not sign any settlement that makes me give up my counterclaims. Plaintiffs say they have not harmed me, but that
  would only be true if they had not brought this case without proof of ownership or authority. The fact that they sued me
  anyway has embarrassed me and harmed my legacy, and my counterclaims are the only way to address that harm.

  Please confirm you will include my position in the joint letter. If not, I will file my own status letter with this email chain to
  show I complied with the meet-and-confer requirement.

  Thank you,
  Joe Cooley
  Pro Se Defendant

---

**Dorothy Weber** <dorothy@musiclaw.com>                                      Mon, Aug 25, 2025 at 8:24 AM
To: Joe Cooley <cooleyjoe011@gmail.com>, "ken@freundlichlaw.com" <ken@freundlichlaw.com>

  Dear Mr. Cooley:    You are obligated to produce documents.     So far you have produced nothing.
  Although you state that you have no ownership interest in Everlasting Bass, performance rights societies
  and other publicly available information states otherwise.     Are you going to produce any documents?

  Sincerely,

Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

[Quoted text hidden]

---

**Joe Cooley** <cooleyjoe011@gmail.com>          Mon, Aug 25, 2025 at 11:49 AM
To: Dorothy Weber <dorothy@musiclaw.com>
Cc: ken@freundlichlaw.com

Hi Ms. Weber,

Respectfully, I can't produce what I don't have. The judge assured me in the Aug 24 call you would prove you had authority to sue me.

The 1999 withdrawal Barry White signed pulled all the copyrights and IP out of the Trust. That means the Trust don't have the authority to sue. And you never showed any paper putting those rights back from Warner/Chappell.

My statement stays the same.

Thank you

Joe Cooley
[Quoted text hidden]

---

**Kenneth Freundlich** <ken@freundlichlaw.com>          Mon, Aug 25, 2025 at 11:50 AM
To: Joe Cooley <cooleyjoe011@gmail.com>, Dorothy Weber <dorothy@musiclaw.com>

Mr. Cooley. If this is you emailing Mr. Weber, please call me right away. 818 377-3790 tTo discuss this matter. I am Rodney's lawyer.


All the best


Kenneth D. Freundlich, Esq.

## FREUNDLICH LAW, APC

16133 Ventura Blvd., Suite 645

Encino, CA 91436

ph: (818) 377-3790

cel: (818) 445-5353

[ken@freundlichlaw.com](mailto:ken@freundlichlaw.com)





 Please consider the environment before printing this e-mail

The information contained in this e-mail transmission, including any previous messages or attachments to it, is intended only for the personal and confidential use of the recipient(s) named above. This message contains information that may be an attorney-client communication and/or work product and as such is proprietary, confidential and/or privileged. If you have received this transmission in error, please delete the original transmission, without making copies, disclosing, distributing, saving or making use of it in any manner (all of which acts are strictly prohibited by law), and so notify the sender by reply e-mail.

[Quoted text hidden]

---

**Joe Cooley** <cooleyjoe011@gmail.com>                                    Mon, Aug 25, 2025 at 12:28 PM
To: Kenneth Freundlich <ken@freundlichlaw.com>
Cc: Dorothy Weber <dorothy@musiclaw.com>

Rodney told me to make sure to keep everything documented. Said you attorneys twist things up on calls.

You can email me.

My statement remains the same.

Thank you
[Quoted text hidden]

---

**4 attachments**

 **image001.png**
10K

8/25/25, 2:10 PM

Case 1:24-cv-07509-DLC — Gmail - Joint Settlement - Cooley v. Piercy, Winebarger Trust (24-cv-07509) — Document 159 — Filed 08/25/25 — Page 30 of 61



**image002.png**
7K



**image002.png**
7K



**image001.png**
10K

---

**Kenneth Freundlich** <ken@freundlichlaw.com>                    Mon, Aug 25, 2025 at 12:33 PM
To: Joe Cooley <cooleyjoe011@gmail.com>
Cc: Rodney <rodneyocali@yahoo.com>

I need to know that Nekle Key is not on your emails. That is not something Rodney would say Joe. Is this YOU?

Kenneth D. Freundlich, Esq.

## FREUNDLICH LAW, APC

16133 Ventura Blvd., Suite 645

Encino, CA 91436

ph: (818) 377-3790

cel: (818) 445-5353

ken@freundlichlaw.com





Please consider the environment before printing this e-mail

The information contained in this e-mail transmission, including any previous messages or attachments to it, is intended only for the personal and confidential use of the recipient(s) named above. This message contains information that may be an attorney-client communication and/or work product and as such is proprietary, confidential and/or privileged. If you have received this transmission in error, please delete the original transmission, without making copies, disclosing, distributing, saving or making use of it in any manner (all of which acts are strictly prohibited by law), and so notify the sender by reply e-mail.

---

**From:** Joe Cooley <cooleyjoe011@gmail.com>
**Sent:** Monday, August 25, 2025 12:28 PM
**To:** Kenneth Freundlich <ken@freundlichlaw.com>
**Cc:** Dorothy Weber <dorothy@musiclaw.com>
**Subject:** Re: Joint Status Letter – Cooley v. Barry White Family Trust (24-cv-07509)

Rodney told me to make sure to keep everything documented. Said you attorneys twist things up on calls.

You can email me.

My statement remains the same.

Thank you

On Mon, Aug 25, 2025, 11:50 AM Kenneth Freundlich <ken@freundlichlaw.com> wrote:

> Mr. Cooley. If this is you emailing Mr. Weber, please call me right away. 818 377-3790 tTo discuss this matter. I am Rodney's lawyer.
>
> All the best
>
> Kenneth D. Freundlich, Esq.

## FREUNDLICH LAW, APC

16133 Ventura Blvd., Suite 645

Encino, CA 91436

ph: (818) 377-3790

cel: (818) 445-5353

ken@freundlichlaw.com

_____



_____

[Quoted text hidden]
[Quoted text hidden]

---

**Dorothy Weber** <dorothy@musiclaw.com>                    Mon, Aug 25, 2025 at 1:20 PM
To: Joe Cooley <cooleyjoe011@gmail.com>, Kenneth Freundlich <ken@freundlichlaw.com>

Dear Mr. Cooley:    Mr. Freundlich has been retained as counsel by Mr. Oliver.    We are both trying to ensure compliance with the Court's Orders, including her most recent Order (Dkt. 158).


In furtherance of that Order, I am asking that you produce your documents and confer.   If you are refusing, then that is what I will advise the Court.


Very truly yours,


Dorothy M. Weber, Esq.

Herbsman Hafer Weber & Frisch, LLP

494 Eighth Avenue, Suite 600

New York, NY 10001

Direct Dial: (646) 795-6068

Fax: (212) 956-6471

8/25/25, 2:10 PM
Case 1:24-cv-07509-DLC   Document 159   Filed 08/25/25   Page 33 of 61
Gmail - Joint Status Letter - Cooley v. Hemphill and Zamor Trust 24-cv-07509

E-Mail: dorothy@musiclaw.com

http://www.linkedin.com/in/dorothymweberesq/

---

**From:** Joe Cooley <cooleyjoe011@gmail.com>
**Sent:** Monday, August 25, 2025 3:28 PM
**To:** Kenneth Freundlich <ken@freundlichlaw.com>
**Cc:** Dorothy Weber <dorothy@musiclaw.com>

[Quoted text hidden]

[Quoted text hidden]

P4OHBarC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   THE BARRY WHITE FAMILY TRUST
    U/A/D: DECEMBER 19, 1980, BY
4   ITS DULY EMPOWERED TRUSTEES,

5                 Plaintiffs,

6           v.                          24 Civ. 7509 (DLC)

7   JOE COOLEY, et al.,

8                                       Remote Conference

            Defendants.
9   ------------------------------x
10                                      New York, N.Y.
                                        April 24, 2025
11                                      3:30 p.m.

12  Before:

13                    HON. DENISE L. COTE,

14                                      District Judge

15
                         APPEARANCES
16

17  HERBSMAN HAFER WEBER & FRISCH, LLP
         Attorneys for Plaintiff
18  BY:  DOROTHY M. WEBER

19  JOE COOLEY, Pro Se Plaintiff

20  RODNEY David Oliver, PRO SE PLAINTIFF

21

22

23

24

25
```

P4OHBarC

1              (The Court and all parties present remotely)

2              THE COURT:  I'll briefly take appearances for the

3      record.  Who will be speaking on behalf of the plaintiffs?

4              MS. WEBER:  Good afternoon, your Honor.  This is

5      Dorothy Weber on behalf of the plaintiff Barry White Family

6      Trust.

7              THE COURT:  Thank you.

8              And, Mr. Oliver, are you on the line?

9              MR. OLIVER:  Yes, I am.

10             THE COURT:  Thank you.

11             And, Mr. Cooley, are you on the line as well?

12             MR. COOLEY:  Yes, I am.

13             THE COURT:  Thank you so very much.

14             This is our initial conference in this case.  This

15     case was filed in October.  It's a copyright case.  An amended

16     complaint has been filed.  There are two claims of copyright

17     infringement.  The plaintiff's claims arise from a copyrighted

18     work, a composition from 1972 which we refer to as "I'm Gonna

19     Love You."  The two defendants are proceeding *pro se*,

20     representing themselves.  I'm going to briefly describe what

21     I understand the issues in the case to be.  I'm going to give

22     each party a brief opportunity to correct any misstatement I

23     may have made and to let me know anything, briefly, that they

24     would like me to understand for purposes of this conference.

25             I'm going to also address some of the requests that

P4OHBarC

1    have been made here, both by Mr. Oliver and by Mr. Cooley.

2    Then we're going to set a schedule for this case for a

3    discovery period and for motion practice, if necessary, and I

4    don't know if it will make sense to set a schedule for trial or

5    not at today's conference.  We'll decide that as we go along.

6          I'm also going to want to discuss with everyone

7    whether or not the issues in this case should be settled or

8    mediated or, at least, if there should be an effort in good

9    faith to do so at some point during this litigation, and we

10   will also discuss, then, the timing for such discussions.

11         Finally, I want to make sure before we end today's

12   conference that I talk about how to communicate effectively

13   with the Court and what is properly filed on the court's docket

14   and what is better just sent between the parties with no filing

15   on the court's docket.

16         So, that's an outline of what we're going to do today,

17   and let me begin by a brief description of what I understand

18   the issues in this case to concern.

19         As I said, the plaintiff's claims come from a 1972

20   composition, a musical composition.  And the plaintiff, as I

21   understand it, contends that a work that is associated with the

22   defendants from 1986——I'm sorry, yes, 1986——called "Everlasting

23   Bass" infringes the plaintiff's work.  It also asserts, as I

24   understand it, that the defendants licensed or are receiving

25   money because of an agreement with individuals and entities

P4OHBarC

1    associated with Kendrick Lamar's composition "Like That," which

2    was released in 2024.

3        So those are the three compositions that are at issue

4    in this case.  I briefly listened to, I think, the appropriate

5    sections from those three works and beyond that know very

6    little else about the substance of the claims.

7        Let me address some of the issues that relate to

8    defendant Cooley.  Defendant Cooley takes the position, as I

9    understand it, that he actually has no ownership rights in

10    "Everlasting Bass."  I believe he is communicating to me that

11    he has not received and does not expect to receive money as

12    part of a license or a contractual relation with the parties

13    associated with the 2024 work "Like That" and, therefore,

14    wishes to be dismissed from this litigation.  My April 11 order

15    requested the plaintiff and Mr. Cooley to discuss those issues

16    with each other to see if a resolution could be achieved.

17        As I understand, defendant Oliver has other requests.

18    He's concerned about receiving evidence that the plaintiff

19    actually has an ownership interest, a copyright claim,

20    associated with the 1972 work "I'm Gonna Love You."  He also

21    makes an offer to place any moneys he's received as a result of

22    the 2024 work "Like That" in escrow while this litigation is

23    proceeding.  He has a more substantive claim also about the

24    copyright that applies to "I'm Gonna Love You."  He makes an

25    argument with respect to whether the protected elements of "I'm

P4OHBarC

1    Gonna Love You" that are at issue in this litigation were

2    properly presented to the copyright office such that they are

3    protected by an official registration with that office.

4           There are other requests that are made in the parties'

5    submissions, but I think those are some of the highlights from

6    what I've been able to perceive so far.

7           So, I'm going to start with you, Ms. Weber.  Is

8    there anything that you wanted to correct in my recitation or

9    anything, briefly, that you wanted to add?

10          MS. WEBER:  No, your Honor.  Your recitation really

11   laid out the facts very succinctly and spot on.

12          As far as the motions that Mr. Oliver has filed, we'll

13   address those with the Court as you instruct us to do.  But, by

14   way of background, we've been involved since the beginning.  We

15   wrote the original cease-and-desist letter.  We've tried to

16   settle this matter before it even reached litigation.  We

17   seemed to have had at least an agreement in principle with

18   Ms. Key while she was acting on behalf of Mr. Oliver, and I

19   dealt with three different sets of attorneys who represented

20   the defendants and, again, tried to resolve this amicably, but,

21   unfortunately, we ended up here in the litigation.

22          We believe that we can fully prove everything that

23   we've alleged in the complaint.  The trust is the owner of all

24   of the late Barry White's intellectual property, including the

25   copyright on the song.  The original copyright registration was

P4OHBarC

1    filed on behalf of Barry White and his companies back in '73.

2    The renewal copyright was filed in Mr. White's individual name.

3    He has exclusive publishing deals with certain people.  But all

4    of that we're willing to provide in discovery.

5            We've asked the defendants to review a confidentiality

6    agreement that we've sent to them, and we've also sent a

7    proposed scheduling order.  In connection with your Honor's

8    recommendation, we tried to set up a meet-and-confer with

9    Mr. Cooley and Mr. Oliver.  They preferred to wait until after

10   the Court was involved, but we did send Mr. Cooley a draft of,

11   you know, what would be a so-ordered settlement agreement sort

12   of ratifying all the points your Honor raised, getting the

13   lawsuit resolved as against him and everybody moving on.  I

14   think that's, from my perspective, some additional points just

15   regarding the litigation in general.

16           One of the issues that we did——sorry, your Honor.

17           THE COURT:  No, go ahead.

18           MS. WEBER:  One of the issues that we did want to

19   raise with the Court——and, again, if it's premature, just tell

20   me to wait until later on——but, in the filings with the Court,

21   it does appear that the defendants paid for and the attorneys

22   retained a musicologist.  I don't know if there was a written

23   report done.  The plaintiffs have retained Dr. Ronald Sadoff,

24   who's the dean of NYU's music school.  He's a recognized,

25   distinguished musicologist.  He worked on the Sam Smith case.

P4OHBarC

1   And one of the things that would help shortcut the litigation

2   or at least narrow the issue would be use of the two

3   musicologists to deal with each other, to actually narrow the

4   issues that are before the Court.

5           THE COURT:  Thank you.

6           Again, what is the name of the plaintiff's

7   musicologist?

8           MS. WEBER:  Dr. Ronald Sadoff, S-a-d-o-f-f.

9           THE COURT:  Thank you.

10          Are there any additional parties that you plan to add

11  to this litigation, Ms. Weber?

12          MS. WEBER:  No, your Honor.

13          THE COURT:  And have you sued or entered a settlement

14  agreement with the parties associated directly with the work

15  "Like that"?

16          MS. WEBER:  We have not sued or settled with them.

17  Initially when we wrote the cease-and-desist letter, they were

18  part of that chain.  Sony, Epic, and the publishing companies

19  for the coauthors of "Like That" have agreed to hold all of the

20  moneys in escrow pending the determination of the Court.

21          THE COURT:  OK.

22          MS. WEBER:  So, relying on their indemnification from

23  Mr. Oliver, again, we thought, in the interest of streamlining

24  the case and not bringing in unnecessary parties who had agreed

25  to be bound by the Court's order, we thought it was the most

P4OHBarC

1    efficient way to proceed.

2           THE COURT:  Thank you very much.

3           So, let's start with you, Mr. Oliver.  Is there

4    anything that you believe I misstated in my brief recitation of

5    the case?

6           MR. OLIVER:  Yeah, for one, we don't have a valid

7    license with Epic for the song.  They never——we never got it

8    finalized, and we only had the short-form license, which is

9    not——which we said all rights reserved because they tried

10   to——they tried to get the record done like a week before it

11   actually came out, and we've had a problem ever since the

12   beginning of it.

13          THE COURT:  Does that mean you have not yet received

14   any money as a result of your negotiations with that group?

15          MR. OLIVER:  Yes, we did.  We did initially.  Yeah, we

16   did.  But there was a lot of things in the contract that we

17   didn't get to finalize, and then, all of a sudden, the

18   copyright claim comes up.

19          THE COURT:  OK.  Thank you.

20          With respect to the money you did receive——and I'm

21   just going to call it, just for ease of reference, the Epic

22   group, and that's the group of individuals and companies

23   associated with the song or composition "Like That"——what has

24   happened to the moneys that you did receive from Epic?  Are

25   they in escrow or not?

1          MR. OLIVER:  No, no, they're not.  No, they're not in

2     escrow.  They gave me that money for a song that——they released

3     a song that we didn't——I didn't approve.  We never even knew

4     Kendrick Lamar was on the song.  They kept that from us.  They

5     paid——they paid me for a song that they didn't put out.

6          THE COURT:  OK.

7          MR. OLIVER:  But they used my whole——my song has been

8     out for over 35 years with no infringement.  Barry White's

9     trust has never came after us before, until this big hit.

10         THE COURT:  OK.

11         MR. OLIVER:  You know, it makes no type of sense.  And

12    they're holding up our master recording side.  We own the sound

13    recording.  I don't know why they would hold our money on the

14    sound recording side.  That has nothing to do with the

15    composition.

16         THE COURT:  So is there anything else, Mr. Oliver, you

17    wanted to tell me at this stage of our conference before I move

18    to Mr. Cooley?

19         MR. OLIVER:  Yeah.  Basically, that they don't have a

20    valid registration for the copyright or no chain of title or

21    anything.  So they don't even meet the threshold to even

22    bring——bring a lawsuit.  And then it's awful funny if the

23    people that are making the money are not being sued; the little

24    guy is being sued.  You know, it makes no sense.  It's like me

25    falling in Walmart, and I'm suing the employee that works

P4OHBarC

1    there instead of Walmart.  It makes no sense to me.

2            THE COURT:  Thank you.

3            Let me ask you, Mr. Oliver, did you have any

4    corrections you would like me to make to my initial description

5    of this litigation?

6            MR. OLIVER:  Yeah, where they're saying——

7            THE COURT:  I'm sorry.  I'm sorry, Mr. Oliver.

8            Mr. Cooley, did you have any corrections you wish me

9    to make to my initial description of this case?

10           MR. COOLEY:  Well, I——I was sent the contract, and I

11   had no problem signing it.  I was going to——I wanted to excuse

12   myself from the situation, but I just didn't know who——who

13   actually was filing the lawsuit.  So, I just wanted to find out

14   who was filing the lawsuit because, like, Lonnie just said,

15   we've had this——we're like——we have a stamp and we're——we're

16   like pioneers of hip-hop, and we've never had any problems in

17   the last 30 years.  And now I'm attached to an infringement

18   case, and this has ruined my reputation.  So I just didn't want

19   to sign something right away, so that's the only reason why I

20   didn't sign.  But——

21           THE COURT:  That's fine.  That's just fine,

22   Mr. Cooley.

23           So, you have received from plaintiff's counsel in this

24   litigation from Herbsman Hafer or Ms. Weber the proposed

25   settlement agreement?

1          MR. COOLEY:  Yes.

2          THE COURT:  Would you like some time to read that over

3    and think about it and talk to whoever you'd like to talk to

4    about it and then get back to her?

5          MR. COOLEY:  Yes, at this point.

6          THE COURT:  How much time would you like before you

7    get back to her on that?

8          MR. COOLEY:  Well, I just want to find out who's suing

9    me.  Once I find out who's suing me, then I can—like, I said,

10   my reputation is tarnished at this point, so I just want to

11   find out who's actually suing me.

12         THE COURT:  OK.  Well, you have received a copy of the

13   amended complaint, and right in the caption there at the top

14   has the name of the plaintiff, the Barry White Family Trust.

15         MR. COOLEY:  Yes, just the trust.

16         THE COURT:  That's right.

17         MR. COOLEY:  Yes, trustee, who's the trustee, you

18   know?  Because who's—like, who's authorized it?

19         THE COURT:  OK.  What I'm going to do is I'm going

20   to ask you to have a conversation with Ms. Weber so that you

21   can ask your questions of her, for instance, the one you just

22   posed about who is the trustee, etc., and I'm going to ask

23   you to let her know within two weeks from today whether you are

24   going to agree to the settlement agreement that she's given you

25   or not, because—

P4OHBarC

1          MR. COOLEY:  OK.

2          THE COURT:  ──if not, if not, then you're going to

3     have to participate in the discovery and motion practice here,

4     and I want to make sure that you've had a fair opportunity to

5     think about whether or not you want to sign that agreement.

6     It's your decision entirely.

7          MR. COOLEY:  OK.  OK.  Yes, we did have a conversation

8     about that, and she didn't──she didn't provide it.  That's the

9     only reason that I'm still here today.

10          THE COURT:  She didn't provide what?

11          MR. COOLEY:  The trustee.

12          THE COURT:  The name of the trustee?

13          MR. COOLEY:  Yes.

14          MS. WEBER:  Your Honor, if I could answer that?

15          THE COURT:  Yes, Ms. Weber.

16          MS. WEBER:  In paragraph 2 of the amended complaint,

17     the parties are identified.  The trust is identified by

18     its──and identified by its duly empowered trustees Glodean

19     White and Jack Perry, as the two co-trustees of the Barry White

20     Family Trust.

21          THE COURT:  Yes, I see that on page 1 of the amended

22     complaint.

23          But, in any event, Mr. Cooley, if you have other

24     questions, feel free to pick up the phone and talk to Ms. Weber

25     directly and have a conversation with her about the settlement

P4OHBarC

1    agreement, and let her know one way or the other that you agree

2    to sign the agreement or not within two weeks from today.  Is

3    that agreeable, Mr. Cooley?

4            MR. COOLEY:  Yes, it is.

5            THE COURT:  Thank you so very much.

6            So, let's talk about in general how litigation

7    proceeds, what is the sequence of events that occur in

8    litigation generally, and that will set us up to discuss how we

9    should organize this particular lawsuit.

10           In general, after defendants file answers——and both

11   Mr. Cooley and Mr. Oliver have filed answers here——there's a

12   period of discovery, and that is a period of time in which the

13   plaintiff can get documents and gather information from the

14   defendants and even choose to take their depositions or

15   depositions of other individuals, if appropriate.  And

16   similarly, during the period of discovery, the defendants can

17   take discovery of the plaintiff, get documents from the

18   plaintiff, ask them questions or interrogatories that the

19   plaintiff must answer, and if necessary, and if they wish, take

20   deposition testimony from a plaintiff or plaintiff

21   representative or other party.  A deposition is testimony under

22   oath, and so it's very important evidence if it comes to a

23   trial.

24           After a period of discovery, normally what happens is

25   there is a period in which either the plaintiff or a defendant

P4OHBarC

1    may bring a motion.  It's called a motion for summary judgment,

2    and essentially, it says:  Judge, there's no reason to have a

3    trial here because you can find, without a trial, that I am

4    entitled to a judgment in my favor.

5            If the plaintiff or the defendant brings a motion for

6    summary judgment, the other side gets an opportunity to

7    respond, and after I read everything and all the attachments to

8    the submissions, I'll rule on the summary judgment motion.

9    If I grant a summary judgment motion, that usually means

10   there's no trial; if I deny a summary judgment motion, that

11   usually means there is a trial.  At a trial——the trial would be

12   conducted here in New York——there would be a jury.

13           You demanded a jury, Ms. Weber?  Ms. Weber?

14           MS. WEBER:  I'm sorry.  We have not, your Honor.

15           THE COURT:  OK.  Well, there's no need to have a jury

16   trial.  Parties can decide whether or not they want a jury

17   trial.  If you want a jury trial, you have to request one.  If

18   you don't——

19           MR. OLIVER:  I would want a jury trial.  This is

20   Oliver.  I would want a jury trial.

21           THE COURT:  OK.  Fine.  We will proceed, then, with

22   this case as a case requiring a jury trial.  Mr. Oliver, I'm

23   going to ask you——I'm going to look at the document I have

24   identified as your answer.  It's document 70 filed on ECF.  And

25   I don't believe——just looking at it very quickly.  I have it

P4OHBarC

1  before me right now——I don't see a request for a jury trial

2  there, which is just fine.  I'm going to give you time to

3  file a document with the court in which you request a jury

4  trial, just so we have that formal request on the record.

5          Can you do that in the next week, Mr. Oliver?

6          MR. OLIVER:  Yes.

7          THE COURT:  Great.  Good.  So we'll treat this as a

8  case that will have a jury trial, if it gets that far.

9          MR. OLIVER:  OK.

10          THE COURT:  That's fine.  Normally in litigation——and

11  this is every kind of civil lawsuit——there is a point in time,

12  and sometimes more than one point in time, in which the parties

13  meet with each other and see whether or not they can settle the

14  litigation.  Sometimes that happens right at the beginning.

15  Sometimes it happens after some discovery has been exchanged

16  between the parties.  Sometimes it happens before trial.  I

17  have resources at my beck and call to assist the parties in

18  settlement discussions.  I can refer you to a mediator, one of

19  a panel of experienced lawyers here in the Southern District of

20  New York, that can try to mediate this litigation.  And before

21  we end today, we're going to try to figure out when this case

22  might be ready to have a conversation with the help of a

23  mediator.

24          So that's an overview of the kind of schedule that

25  applies in most civil lawsuits.  So we're going to go back now

P4OHBarC

1  and just try to track what needs to happen here.  The first

2  case—

3          MR. OLIVER:  Excuse me.

4          THE COURT:  I'm sorry, Mr. Oliver.  Don't interrupt

5  me.  I'll give you a chance to be heard.

6          MR. OLIVER:  OK.

7          THE COURT:  The first thing we're going to do is set a

8  schedule for discovery.  I already know from Mr. Oliver that he

9  wants certain documents and information from the plaintiff.

10         Let me ask you, Ms. Weber, do you need any discovery

11 from Mr. Oliver or Mr. Cooley?

12         MS. WEBER:  We will need some basic discovery,

13 including their musicologist's reports and information on the

14 deal that they have with Sony, the cowriters of "Like That."

15         THE COURT:  OK.

16         Mr. Oliver, I already see in your submissions to me

17 that you want discovery materials from the plaintiff.  Am I

18 right?

19         MR. OLIVER:  Yes.

20         THE COURT:  OK.  Good.

21         And, Mr. Cooley, obviously, if you stay in this

22 litigation, you have a right to take discovery as well.

23         Now we're going to set a schedule for discovery.  Let

24 me describe what happens normally.  Normally, you submit

25 requests for documents to your adversary, and you make that

P4OHBarC

1    request in writing so it's very clear what precisely you're

2    asking for.

3            You can also submit interrogatories when something is

4    better answered by listing a name or identifying a number.  As

5    opposed to asking for a document that's a business record, you

6    can ask for that information in what we call an

7    "interrogatory."  And as I mentioned, if you want, you can take

8    the deposition of your party opponent or a third party who

9    might have important information in this lawsuit.

10           Let me just get a schedule here, or a calendar, and

11   let's talk about how long we should allow for discovery in this

12   case.  I'm going to suggest that the parties submit any

13   interrogatories or document demands to each other in roughly

14   three weeks from now.  I'm going to say by May 16.  And the

15   other side, whoever receives those requests for documents or

16   for answers to interrogatories, generally has a month to

17   respond.  So that would be roughly June 13.  And then you have

18   a chance to look over those responses, and if they're

19   inadequate in any way, of course, you'll pick up the phone and

20   talk to each other and try to resolve any disputes that might

21   occur to you.  And then if you want to take the deposition

22   testimony of anyone, let's do that in July.  So fact discovery

23   will conclude—I'm putting you on a Friday schedule—on

24   August 1.

25           And then often in litigation there is an opportunity

P4OHBarC

1    to submit an expert report to the other side, and it sounds

2    like both of you might have experts here, musicologists.  You

3    might have other experts too.  So if you have experts that

4    support your case, you should submit those reports, expert

5    reports, to the other side in this litigation by August 15.

6             And whether or not you have an expert, if you get an

7    expert report from the other side, you have an opportunity to

8    find an expert who can rebut or contradict or oppose the expert

9    report from your opponent.  So, for instance, let us just say

10   that the plaintiff in this case provided a musicologist report

11   on August 15 to you, Mr. Oliver, but you didn't provide a

12   musicologist report on August 15 to the plaintiff.  You would

13   still have a right, under a schedule I'm going to set here,

14   to submit your own expert report in opposition to the

15   plaintiff's expert report.  I'm going to set a schedule for

16   that.  I'm going to say if you have an expert report to

17   oppose that you received on August 15, we're going to say that

18   that report will be due September 12, one month later.  And

19   then I'm going to give everybody a chance, if they want, to

20   depose the other side's experts.  So expert discovery would

21   conclude October 3.

22            So that's our schedule, a rough schedule, for

23   discovery in this case.  It will be over the summer and early

24   fall.

25            Any objection to that, Ms. Weber?

P4OHBarC

1                MS. WEBER:  No, your Honor.

2                THE COURT:  Any objection to that, Mr. Oliver?

3                MR. OLIVER:  Yeah, I kind of do, because they've been

4      holding up my money for over a year now, and tried to get——we

5      tried to do a settlement with——with Ms. Weber.  So she's acting

6      like we didn't try, and we did try.  I have a document here

7      where we tried——I'm willing now.  We tried to give the trust

8      45 percent of the composition, but because it didn't align with

9      Epic, the ownership that——you know, it's just——I don't

10     understand why we're——they don't even have a valid

11     registration.  I don't even know why we're going any further,

12     to be honest with you.

13                Maybe I'm dumb to the process and all this and that,

14     but I've done licensing deals before, and you have to own the

15     copyright, have a registered copyright, which they don't have.

16     So I don't even know why we would go to discovery when they

17     haven't even met the threshold to even bring this lawsuit.  And

18     there's a song out that we didn't——we don't even have a license

19     for.  It makes no sense to me.

20                THE COURT:  So, Mr. Oliver, you would like the

21     discovery schedule to be shorter.  Is that what I'm hearing?

22                MR. OLIVER:  Yes, I want to do a motion to stay

23     discovery.

24                THE COURT:  Well, I'm not going to stay discovery.

25     If I stay discovery, that means this litigation would not

P4OHBarC

```
1    proceed, and I think it's important for you and for the
2    plaintiff to resolve this case.
3              MR. OLIVER:  We tried.
4              THE COURT:  That is, with——OK.  Well, let's set a
5    schedule for settlement discussions.  Do you need anything from
6    the plaintiff before you can proceed with settlement
7    discussions?
8              MR. OLIVER:  Yes, a valid registration.
9              THE COURT:  OK.
10             MR. OLIVER:  And a transfer——
11             THE COURT:  You're going to make your request.
12             MR. OLIVER:  OK.
13             THE COURT:  Mr. Oliver, you're going to make your
14   request within the next two weeks for any documents or you're
15   going to pose your interrogatories, and under our schedule,
16   that means that sometime in early June, I bet, you're going to
17   get answers to your interrogatories and you're going to get the
18   documents you've requested.  So I'm going to send you for
19   settlement discussions in July.
20             Is that a good schedule for you, Mr. Oliver?
21             MR. OLIVER:  Yes, yes, it is.  And also, yeah, I don't
22   know if I could say anything else, but I'd like to try to bring
23   the third parties in, too, because Warner, Universal, Epic is
24   cc'd on emails.  If they don't have —— they don't have nothing
25   to do with the composition, but they're involved in the case.
```

P4OHBarC

1    I don't understand.  It's like you got three bigwigs going

2    against me.

3            THE COURT:  So let's talk about——

4            MR. OLIVER:  And it's——

5            THE COURT:  ——two different things you can do here:

6    You can serve discovery requests on Sony or Epic if you want.

7    They don't have to be parties to this litigation.  If they have

8    documents or information that's relevant to you, you can serve

9    document demands on them, subpoena them for information.

10           Do you understand what I'm saying?

11           MR. OLIVER:  Yeah.  We——

12           THE COURT:  OK.  Alternatively, obviously, you could,

13   if you believe they have harmed you in some way, if they have

14   violated your rights, you can bring a lawsuit against them and

15   bring them into this litigation, potentially, if your claims

16   concern the issues that are at stake already in this lawsuit.

17           MR. OLIVER:  Yes.  Yeah.

18           THE COURT:  But, if you're going to add them, you need

19   to do that quickly because this lawsuit was filed last October.

20   It's now April.  So we don't want to delay this lawsuit longer.

21           MR. OLIVER:  There's——but there's no indemnity on

22   the——on the license.  I mean, like, I shouldn't even be here.

23   I shouldn't even be here.  Oh my God.

24           THE COURT:  So, Mr. Oliver, we're just going to take

25   this one step at a time.  I cannot resolve the merits of the

P4OHBarC

1    claim until we get to summary judgment, and a jury will decide

2    it at trial.  So right now we're just involved in a process

3    where the parties gather information from each other so they

4    can better present their cases, either in a summary judgment

5    motion or a trial.  And it sounds like you want some

6    information from the plaintiff and the plaintiff wants some

7    information from you.

8            MR. OLIVER:  Yeah, yeah.  OK.

9            THE COURT:  And I want to get you in a position where

10   you can have meaningful settlement discussions with the

11   plaintiff, and we're going to schedule those for July.

12           MR. OLIVER:  Even——OK.  Even though we've tried to

13   settle before and there was no good faith?

14           THE COURT:  Well, that's your position.  I'm not

15   going to comment one way or the other.  There's no way I know

16   enough to resolve that issue.

17           MR. OLIVER:  You're right.

18           THE COURT:  But I can provide a process with an

19   experienced mediator to try to help the two sides come

20   together, and I'm going to schedule that for July.

21           MR. OLIVER:  Yeah.

22           THE COURT:  OK.  I think it's in everybody's interest

23   that we keep moving this along, and so if there is going to be

24   a winner, if there's going to be a loser here, you know it this

25   year as opposed to some future year.

P4OHBarC

1          Now, if you have a dispute with each other over

2     discovery, how do you resolve that dispute?  First of all, you

3     have to talk with each other and try to resolve it.  If that

4     proves futile, if that doesn't work out, then you can write me

5     a letter──no longer than two pages, just a short letter──and

6     I'll give the other side a chance briefly to respond, and if

7     need be, I'll get you on the phone, like I am today, and hear

8     you both out and give you a ruling.

9          Generally speaking, though, the discovery materials

10    you exchange with each other do not get sent to the Court.

11    They do not get filed on the court's docket.  That's just

12    communications between a plaintiff and defendant.  I'm not

13    involved in that.

14         OK.  So we have a general schedule that covers fact

15    discovery and expert discovery.  I'm going to set a schedule

16    for summary judgment practice.  That, again, is the motion that

17    happens, if the parties wish to make such a motion, after the

18    conclusion of discovery.  And at that time the parties get a

19    chance to argue to me that we don't need a trial because the

20    issues are so clear and there are no facts in dispute for a

21    jury to resolve..

22         I'll have the summary judgment motion due, if any,

23    November 21, opposition will be December 19, and reply will be

24    January 16.  I'll get out a detailed order that will describe

25    what you have to submit with your summary judgment paper.

P4OHBarC

```
 1              Ms. Weber, at this point do you expect you'll be
 2    making a motion for summary judgment?
 3              MS. WEBER:  Not until after expert discovery is
 4    finished, your Honor.
 5              THE COURT:  Yes, I know, but do you expect, anticipate
 6    now, that you will make a motion for summary judgment on
 7    November 21?
 8              MS. WEBER:  Yes, your Honor.
 9              THE COURT:  OK.
10              And, of course, Mr. Oliver, you have a right to make
11    such a motion, too, if you believe I could grant that motion.
12    So I'm not going to set a schedule for trial now because, if I
13    get a summary judgment motion, I have to address that first.
14              Let me just check my notes and make sure I've
15    discussed with you everything that was on my agenda.
16              Oh, yes.  Ms. Weber mentioned that she had provided a
17    confidentiality agreement to you, Mr. Oliver, and to you,
18    Mr. Cooley.
19              Mr. Oliver, have you received a copy of the
20    confidentiality agreement?
21              MR. OLIVER:  Yeah, I did.
22              THE COURT:  If you have any requests that any part of
23    that be changed, can you let Ms. Weber know early next week?
24              MR. OLIVER:  Yeah, I can.
25              THE COURT:  Great.  Great.
```

P4OHBarC

1          Let me explain the role of a confidentiality

2    agreement.  What this means is that the parties can exchange

3    discovery material freely with each other knowing that they

4    won't be shared with other people, that they'll be kept

5    confidential between the two parties.  There's always, or

6    almost always, such an agreement entered in civil litigation so

7    that parties can trust each other with, for instance, sensitive

8    financial information or other copies of agreements that aren't

9    generally public but that are very important to the piece of

10   litigation that they're pursuing in court.

11         So I want to make sure that you have a confidentiality

12   agreement executed between you before you exchange documents.

13   I don't want a delay here, so I'm going to expect to get that

14   confidentiality agreement no later than May 16.  So you have a

15   couple of weeks here to organize and work out any problems that

16   you might have with the language.  I expect it's an ordinary

17   confidentiality agreement that is typical, but, of course,

18   you'll read it with care, Mr. Oliver.  And if you want

19   Ms. Weber to make changes, you'll discuss that with her.

20         Good.  I think we've covered everything, but I want to

21   ask each of you if there are other issues you wish to address

22   this afternoon.

23         Ms. Weber, is there anything else we should address?

24         MS. WEBER:  As a housekeeping detail, there are some

25   outstanding motions that would—otherwise our responses would

P4OHBarC

 1    be due next Tuesday.  The answer and counterclaims, we would

 2    have to reply by next Wednesday.  Of course, Mr. Cooley, now we

 3    have two weeks to come to terms with the settlement agreement.

 4    We'd like an additional week, which would bring it to April 30

 5    for us to respond to the answer and counterclaims.

 6              THE COURT:  That's fine.

 7              I'm not aware of any other outstanding motion that you

 8    need to respond to.  I think today's conference has dealt with

 9    a lot of the issues raised in the various letters.

10              MS. WEBER:  OK.  Thank you, your Honor.

11              THE COURT:  Yes.  But you must reply to the

12    counterclaims, and that date will be April 30.

13              MS. WEBER:  Thank you, your Honor.

14              And then one other minor housekeeping detail.  In July

15    I have a family plans for July 1 through the 9th, and other

16    than that, we would be available for mediation or anything else

17    the Court needs.  But I just wanted to put that on the Court's

18    radar.

19              THE COURT:  Absolutely.  And the mediator will be

20    arranging a date in July that's good for everyone.  I know

21    everyone has plans during the course of the summer.  So I'm

22    just saying I will issue an order for July settlement

23    discussions, but I won't pick the date.  The parties will pick

24    that date with the mediator.

25              Good.  Mr. Oliver, any other issues for us to address?

P4OHBarC

1          MR. OLIVER:  Yeah.  I want an injunction on the

2     record.  I don't want nobody to make no more money off of it.

3     They've stole my intellectual property, and I can't do nothing

4     about it.  The song has made millions of dollars, but I have

5     none.  And that's crazy.  So I would like the song taken down

6     till we resolve this.  If I'm gonna hurt, I want everybody to

7     hurt.

8          THE COURT:  The song you want taken down is the

9     Kendrick Lamar song "Like That"?

10          MR. OLIVER:  Yes.

11          THE COURT:  OK.

12          MR. OLIVER:  That is not the song that I——that they

13     asked for.  It's unauthorized.

14          THE COURT:  So I could not issue such an injunction

15     without the parties who own that song parties to a lawsuit

16     before me, and the plaintiff has not sued the Epic parties over

17     the song "Like That" and you have not sued the Epic parties

18     over the song "Like That."  So I am not able to issue that

19     injunction.

20          MR. OLIVER:  OK.  Yeah, we——we tried, but I'm not

21     surprised.  I'm just——I'm just——everything's just being stolen

22     from me, and I have no recourse.  I can't do nothing about

23     nothing.  This is ridiculous.  OK.  OK.

24          THE COURT:  Anything else, Mr. Oliver?

25          MR. OLIVER:  No, no.

P4OHBarC

```
 1              THE COURT:  Thank you.

 2              Mr. Cooley, is there anything you want me to address

 3      that we haven't covered yet?

 4              MR. COOLEY:  Well, I'm willing to sign today if they

 5      would show me the registered――the registration, the valid

 6      registration.

 7              THE COURT:  OK.  So why don't you and Ms. Weber talk

 8      after this conversation.  I expect that Ms. Weber would be

 9      happy to have a conversation with you about these issues.

10              Am I right, Ms. Weber?

11              MS. WEBER:  Absolutely, your Honor.

12              THE COURT:  Good.  Good.

13              I'll get out a written order that sets forth these

14      dates, and everyone will have it in black and white.

15              Ms. Weber, will you please order a copy of this

16      transcript of today's conference?

17              MS. WEBER:  I will, your Honor.

18              THE COURT:  Thank you.

19              Good luck, everyone.  Thank you so much.

20              MS. WEBER:  Thank you.  Good afternoon, your Honor.

21              MR. OLIVER:  Thank you.

22              (Adjourned)

23

24

25
```