UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
THE BARRY WHITE FAMILY TRUST U/A/D:     :
DECEMBER 18, 1980, BY ITS DULY          :
EMPOWERED TRUSTEES,                     :      24cv7509 (DLC)
                                        :
                   Plaintiffs,          :      OPINION AND
                                        :         ORDER
          -v-                           :
                                        :
RODNEY DAVID OLIVER p/k/a RODNEY-O,     :
d/b/a NOT INTRESTED PUBLISHING,         :
                                        :
                   Defendant.           :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiffs:
Dorothy M. Weber
Herbsman Hafer Weber & Frisch, LLP
494 Eighth Avenue, Suite 600
New York, NY 10001

For defendant (formerly pro se):
Kenneth D. Freundlich
Jonah A. Grossbardt
Freundlich Law, APC
16133 Ventura Boulevard, Suite 1270
Encino, CA 90212

DENISE COTE, District Judge:

    The plaintiffs have moved for sanctions against defendant

Rodney Oliver.  As described herein, Oliver repeatedly failed to

participate in discovery and engaged in other misconduct while

proceeding pro se, but recently obtained representation and

began to cooperate in discovery.  The Court does not impose

sanctions at this time, but the plaintiffs may renew their motion for sanctions in the event of any further misconduct.

## Background

The plaintiffs are the Barry White Family Trust, acting through its co-trustees.  They allege that the defendant's 1986 song "Everlasting Bass" copied the introductory riff of the 1973 Barry White song "I'm Gonna Love You Just a Little More, Babe." The plaintiffs also allege that the defendant facilitated the use of the infringing portion of "Everlasting Bass" in the 2024 song "Like That," which was performed by the artists Future, Metro Boomin, and Kendrick Lamar and distributed by Epic Records and other entities (collectively, the "'Like That' Group").  The plaintiffs bring claims of copyright infringement pursuant to 17 U.S.C. §§ 106 et seq.

I.   Early Stages of the Litigation

    A.   The Defendants' Motion to Dismiss

This action was filed on October 3, 2024 against defendants Rodney Oliver and Joe Cooley.[1]  The defendants were initially represented by Fox Rothschild LLP ("Fox Rothschild").  On December 3, the defendants filed a motion to dismiss the action

---

[1] The plaintiffs voluntarily dismissed their claims against Cooley on August 27, 2025.  Cooley had disclaimed any ownership of "Everlasting Bass" and represented that he was only involved in the song as a performer.

pursuant to Rule 12(b)(2), Fed. R. Civ. P., arguing that, as
California residents, they are not subject to personal
jurisdiction in New York.  The plaintiffs amended the complaint
on January 10, 2025.  The defendants filed a renewed motion to
dismiss based on lack of personal jurisdiction on January 31.
The plaintiffs filed an opposition to that motion on February
21.

B.   Necole Key's Motion to Intervene

On March 5, before the defendants had filed a reply in
support of their motion to dismiss, a pro se motion to intervene
was filed by Oliver's music rights manager, Necole Key.  Key has
acted as Oliver's agent throughout the events at issue in this
litigation, including in negotiations with the "Like That" Group
about the use of "Everlasting Bass," in negotiations with the
plaintiffs, and in communications with Fox Rothschild.

In her motion to intervene, Key argued that she has a
financial stake in this litigation because it has led to
withholding of earnings from Oliver, which has deprived her of
commission-based earnings as his music rights manager.  In
addition to seeking to intervene, Key requested dismissal of the
plaintiffs' claims, sought to assert her own claims against the
plaintiffs, leveled various accusations of misconduct against
plaintiffs' counsel and non-parties in the "Like That" Group,

and expressed her disagreement with Fox Rothschild's defense strategy.

Key submitted additional filings, some of which were accompanied by lengthy and duplicative exhibits, on March 14, 18, 20, and 31.  In those filings Key argued, among other things, that the plaintiffs cannot succeed on the merits because do not actually own "I'm Gonna Love You Just a Little More, Babe."  She also described further allegations of collusion and other misconduct against plaintiffs' counsel and Fox Rothschild.  Key continued to ask for many forms of relief, including a stay of this action, an injunction, dismissal of the plaintiffs' claims, declaratory relief, and sanctions.

An Opinion of April 9 denied Key's motion to intervene.  The Court found that Key's work as Oliver's music rights manager appeared to be part of her incorporated business, which implied that she could not proceed pro se.  See Berrios v. New York City Hous. Auth., 564 F.3d 130, 132-33 (2d Cir. 2009).  The Court also concluded that Key's interest in this litigation was adequately represented by Oliver and that Key's participation would not aid this litigation.  The Court explained as follows:

> Key . . . has mostly described grievances that present separate factual and legal issues from those in this action, or that cannot be raised here as a procedural matter, such as accusations against non-parties.  Key has also leveled serious accusations of misconduct against the attorneys in this action, but those

4

accusations and others have found little support in the hundreds of pages of emails attached to Key's filings.

C.    The Defendants Proceed Pro Se.

Meanwhile, on March 6, Fox Rothschild had reported to the Court that it had not had any prior knowledge of Key's motion to intervene.  On March 13, it filed notice of its intention to withdraw as counsel for the defendants "[i]n light of the recent filings and actions of Ms. Necole Key . . . and otherwise for good cause."  Fox Rothschild filed a motion to withdraw on March 21, in which it asserted that Key's attempt to intervene and her accusations had contributed to a "breakdown of the attorney client relationship."  Oliver filed a notice that he would proceed pro se on March 14, and Cooley did the same on April 1.

Oliver made clear that he was fully aligned with Key's actions.  He stated in a March 24 filing that "[a]ny mischaracterizations of [Key's] role or capacity as independent from my business dealings were made in error and do not reflect my current position."  In a March 26 filing, Oliver described Key as "advocating on my behalf."  Key took the same view.  For example, in Key's March 18 filing she described herself as a "legal representative" and "advocate" for Oliver.

The Opinion of April 9 granted Fox Rothschild's motion to withdraw.  The Court also observed the "concerning possibility"

that "Key has attempted to step into the role that would properly be played by an attorney to the defendants."  The Court warned that "Key is not authorized to practice law and may not undertake the responsibilities of an attorney."

D.   Oliver Begins to Assert Untimely Merits Arguments.

The defendants abandoned their motion to dismiss for lack of personal jurisdiction.  Oliver consented to the personal jurisdiction of this Court on March 24.  Cooley and Oliver then filed separate answers with counterclaims on April 9.  Thus, an Order of April 11 denied the defendants' motion to dismiss as moot.

On March 26, Oliver filed a motion for summary judgment based on many of the same arguments that were made in Key's submissions.  Oliver claimed, for example, that the plaintiffs lack ownership of "I'm Gonna Love You Just a Little More, Babe." The Opinion of April 9 denied Oliver's motion for summary judgment as premature.  The Court explained that "[t]he defendants will have an opportunity during discovery to investigate the plaintiffs' ownership rights."

Oliver did not heed that guidance.  On April 15, he submitted several filings that again raised untimely merits arguments.  These included the assertion that the plaintiffs lack ownership, as well as an argument that the musical elements

that the plaintiffs allege were infringed do not appear in the
registered deposit copy.  Oliver requested judgment on the
pleadings, a stay of discovery, and injunctive relief.  An Order
of April 25 denied these motions, again explaining that "[t]he
parties will have an opportunity to obtain discovery, and Oliver
may reassert arguments about the legal or factual sufficiency of
the plaintiffs' claims at a later stage in the litigation."

II.  The Litigation Proceeds to Discovery.

A.   The April 24 Initial Pretrial Conference

The Court held an initial pretrial conference on April 24.
On the record at that conference, Oliver again voiced his
objections to the merits of the plaintiffs' claims.  He repeated
his assertion that the plaintiffs do not have ownership of "I'm
Gonna Love You Just a Little More, Babe."  He also argued that
the "Like That" Group did not obtain a valid license to use
"Everlasting Bass" and that he had never approved its use in
"Like That," even though he had been given some payment for that
use.  Oliver once again expressed his view that the case should
not proceed and asked that discovery be stayed.

In response to those comments, the Court instructed that
discovery would not be stayed and explained, "I cannot resolve
the merits of the claim until we get to summary judgment, and a
jury will decide it at trial."  The Court also provided a

detailed overview of how the litigation would proceed.  It
explained that discovery would involve the parties obtaining
documents from one another, responding to interrogatories, and
taking depositions.  It explained that motions for summary
judgment and potentially a trial would only occur after
completion of discovery.  It also explained that discovery would
enable the parties to participate in meaningful settlement
discussions as part of the mediation process.

In addition, the Court described the process for addressing
discovery disputes, explaining that the parties are obligated to
meet and confer when disputes arise:

> Now, if you have a dispute with each other over
> discovery, how do you resolve that dispute?  First of
> all, you have to talk with each other and try to
> resolve it.  If that proves futile, if that doesn't
> work out, then you can write me a letter -- no longer
> than two pages, just a short letter -- and I'll give
> the other side a chance briefly to respond, and if
> need be, I'll get you on the phone, like I am today,
> and hear you both out and give you a ruling.

The Court then set out a schedule for the litigation, which
was also described in an Order of April 25.  Initial
interrogatories and requests for production were due by May 16;
mediation would occur in July; fact discovery, including
depositions, was to be completed by August 1; and expert
discovery was to be completed by October 3.

B.   Initial Discovery Disputes

On May 8, Oliver filed a motion to compel the plaintiffs to produce, among other things, proof of ownership and copyright deposit sheet music.  That motion also raised Oliver's arguments regarding the merits and included a request to compel the non-parties in the "Like That" Group to release funds to him. An Order of May 20 denied Oliver's motion.  The Court explained that his request to compel production of documents was premature:

> The parties were required to serve their document
> requests on other parties by May 16.  A motion to
> compel may only be filed if a party fails to produce
> the requested material within the time permitted by
> the Federal Rules of Civil Procedure, this Court's
> Orders, or the parties' agreement.

Oliver filed another motion to compel on May 20.  On Order of May 27 denied that motion as well, again explaining that it was untimely.

The plaintiffs reported in a May 6 filing that the defendants were refusing to speak with them.  Oliver confirmed this in a May 12 filing, stating, "I declined further phone calls because Ms. Weber refuses to produce documentation -- such as the copyright deposit, ownership records, or licensing agreements."

The Court issued a protective order and confidentiality agreement on May 27.  The plaintiffs requested that Key sign

that protective order in light of her extensive involvement in
this litigation on Oliver's behalf.  In a letter of June 18,
Oliver stated that Key was "currently unavailable due to serious
health concerns and has not reviewed or received any discovery."
In a letter of June 23, the plaintiffs stated that "the 'Egnyte'
feature on the document production shows that there were two
people who accessed the documents," one of whom "shows an IP
address located just a block away from Ms. Key's address."  An
Order of June 24 instructed Oliver to ensure that Key signed the
protective order, and Key signed it shortly afterwards.

Meanwhile, Oliver continued to seek to prematurely address
the merits.  In a July 8 filing, Oliver argued that the
plaintiffs had produced documents that, in his view, were
insufficient to create a genuine dispute of material fact with
respect to certain merits issues, including the plaintiffs'
ownership of the copyright.  On July 10, Oliver filed a motion
to dismiss the action for lack of subject matter jurisdiction
based on his assertion that the plaintiffs lack ownership
rights.  An Order of July 11 denied that motion "without
prejudice to renewal of arguments regarding the plaintiffs'
ownership and standing in connection with summary judgment
motion practice due on November 21, 2025."

C.    The First Missed Discovery Deadline

The plaintiffs served the defendants with requests for production and interrogatories on May 16.  The defendants' responses were due by June 16.  The defendants did not produce any documents or respond to the requests for production by that deadline.

On June 14, the defendants sent the plaintiffs a document with purported interrogatory responses.  Instead of responding to the plaintiffs' interrogatories, however, the defendants rewrote the plaintiffs' interrogatories and responded to their self-altered interrogatories.  The plaintiffs sent the defendants a letter on June 25 that explained what the plaintiffs considered to be the defects in the defendants' interrogatory responses.

On July 9, the plaintiffs submitted a letter to the Court raising a discovery dispute.  That letter pointed out, among other things, that the defendants had not produced any documents, had not provided responses to their document requests, and had responded to self-altered interrogatories.  In a July 10 filing, Oliver stated, "Defendant . . . confirms that he has complied with all discovery obligations to date, including timely serving interrogatory responses before midnight on June 13, 2025."

11

D.    The July 11 Conference

The Court held a conference on July 11.  It began by again
addressing Oliver's objections to the merits of the plaintiffs'
claims.  In particular, the Court explained once again that
Oliver's assertion that the plaintiffs lack ownership rights was
premature:

> Let me just step back from the individual facts for a
> moment and let you know that this is not the moment in
> time to address that issue, but the issue can be fully
> addressed through a summary judgment motion, and we
> have a schedule for that. . . .  It is absolutely true
> that the plaintiffs have to show a right to proceed on
> their copyright claim here, and that can be the
> subject of a summary judgment motion in which you test
> the legality of the rights that they are asserting,
> but we are going to wait to do that until summary
> judgment practice takes place.

The plaintiffs stated during the conference that the
defendants "have flat out refused to meet and confer."  Oliver
confirmed that he had refused to have discussions with the
plaintiffs over the phone, and said that he had opted to only
communicate over email.

The Court then explained the process of responding to
interrogatories to the defendants.  As exemplars, the Court
walked Oliver through the process of properly responding to two
of the plaintiffs' interrogatories.

Next, the Court turned to the plaintiffs' document
requests.  Oliver did not dispute that he had not produced any

12

documents.  The Court emphasized the importance of participating

in document discovery:

> [I]t's very important that you provide the documents
> that have been requested by the plaintiff.  You have
> been sued here in this litigation, but you've also
> brought counterclaims, and you have obligations,
> because you're in court here and a participant in
> litigation, to be cooperative in discovery.

Oliver stated that some of the relevant documents were in Key's

possession.  The Court explained that Oliver was responsible for

producing those documents:

> Well, she's your agent.  You . . . need to get the
> documents from her.  They are ultimately your
> documents, whether or not she drafted them or sent
> them as your agent, and so she has an obligation --
> you have an obligation to get those documents and give
> them to the plaintiff.

The Court then discussed with Oliver, as exemplars, several

categories of documents that he was obligated to produce,

including correspondence and agreements related to licensing of

"Like That" and records of payments Oliver had received from

"Everlasting Bass."  Oliver confirmed that he had documents in

those categories and stated that he would produce them.

The Court also outlined the range of possible sanctions

that could follow from failure to participate in good faith in

discovery.  It explained that these could range from monetary

sanctions to dismissal of Oliver's claims and entry of a

default.  It warned, "if you don't cooperate fully in discovery,

I will impose sanctions even though I do not want to do so."
The Court then specifically asked Oliver to confirm that he
understood that warning.  Oliver responded, "Yeah, I understand
what you're saying."

The Court set a deadline of Tuesday, July 15, for Oliver to
provide outstanding discovery:

> I'm going to require you by next Tuesday to produce to
> Ms. Weber the answers to the interrogatories she has
> put to you and to produce the documents that are
> outstanding to the document request, whether they
> concern the claims the plaintiffs have brought against
> you or the claims you are bringing against the
> plaintiffs.

Oliver responded, "I understand."

At the end of the conference, Oliver once again described
his disagreement with the merits of the plaintiffs' claims.  The
Court explained, once again, "you are going to have a chance to
make that argument in a summary judgment motion that is due
November 21."  Oliver once again confirmed his understanding:
"That's fine.  But in the meantime and in between time, give her
the documents and comply with what she wants, I got it."

E.   The Second Missed Discovery Deadline

Oliver did not produce any documents or provide
interrogatory responses by the deadline of July 15.  Instead, in
a letter filed on July 15, Oliver again asserted that the
plaintiffs do not have standing because they lack ownership

rights and again asked that the action be dismissed for lack of subject matter jurisdiction.

An Order of July 17 stated that the plaintiffs may move for sanctions by July 25 "to the extent that the defendants' production of documents is materially deficient as of July 17." That Order also explained, yet again, that Oliver's merits arguments were premature. It stated that "the plaintiffs have standing to assert their claims; summary judgment practice will provide the defendants with an opportunity to test whether the plaintiffs have the evidence of ownership necessary to succeed on their claims." The Order of July 17 also detailed, once again, the possible sanctions that could accompany failure to comply.

F. The Third Missed Discovery Deadline

Oliver did not produce any documents by July 17 or over the following days. Nor did he request any extension. Despite that, in a July 18 letter to the Court, Oliver stated, "I produced all documents in my possession and answered all interrogatories truthfully to the best of my memory."

Oliver sent an email to the plaintiffs on July 18, which included a letter indicating that Oliver had produced Bates-numbered documents in his possession. In fact, no document production was attached to that email, nor was any

document production sent to the plaintiffs around that time.
That letter also included a purported privilege log that claimed
attorney-client and work product privilege over certain
communications between April and July of 2025, even though
Oliver was proceeding pro se at that time.

Oliver's July 18 email to the plaintiffs also included a
letter from Key dated July 16, in which Key stated her refusal
to comply with discovery demands.  Key claimed she had no
obligation to comply with discovery and repeated objections to
the merits of the plaintiffs' claims, asserting that the
plaintiffs were "failing to meet the legal requirements to bring
a copyright claim."  Key's letter admitted, however, that she
was continuing to work for Oliver.

On July 21, a legal assistant to plaintiffs' counsel
notified Oliver that "no bates-stamped documents have been
produced."  The same day, Oliver responded, "I did the best I
could in order to get them to you, since you told the judge I
was refusing."  Later that day, plaintiffs' counsel reiterated,
"we did not receive the documents," and asked Oliver to re-send
any documents he had intended to email.

Meanwhile, Oliver continued to assert premature arguments
about the merits.  He filed a motion to compel discovery from
the plaintiffs on July 21.  He did not provide any basis to find

that documents were missing from the plaintiffs' production, and instead appeared to argue that the produced documents failed to demonstrate that the plaintiffs have ownership.  This motion was denied by an Order of July 24, which reiterated that "[t]his argument is appropriately raised on summary judgment."  On July 24, Oliver filed still another premature motion for summary judgment.

III. The Plaintiffs' Motion for Sanctions

The plaintiffs moved for sanctions against the defendants on July 24.  They represented that Oliver still had not produced any documents at that time.  The plaintiffs' motion primarily seeks an order requiring the defendants to pay costs and attorneys' fees, a filing injunction, and a "final order" compelling the defendants to provide discovery.  The motion also asks that the Court impose more sanctions should that final order not be fully complied with, including a default judgment against the defendants.

In an Order of July 25, the Court informed the parties that neither of the reasons that Oliver had provided on July 18 for withholding documents was valid:

> As discussed in the Opinion of April 9, Key is Oliver's music rights manager and has repeatedly represented in this litigation that she acts on Oliver's behalf.  Oliver is obligated to produce documents reflecting her actions as his agent.

17

> . . . . The attorney-client privilege protects certain
> communications between an attorney and their client.
> The work-product privilege protects certain documents
> created by an attorney in anticipation of litigation.
> Key is not an attorney.  Based on the current record,
> it does not appear that any documents in the
> possession of Oliver or Key are protected by either
> privilege unless they reflect communications with an
> attorney representing Oliver.

The Order of July 25 included a reminder that any opposition to the plaintiffs' motion for sanctions was due August 1.

On July 28, Oliver sent plaintiffs' counsel an email acknowledging that he had not produced any documents.  He stated that this was "not willful" and that he had "clicked the wrong file."  In an email sent later that day, Oliver attached a 200-page production.

Oliver submitted three filings in opposition to the motion for sanctions.  Two were submitted on July 25.  One was submitted on August 4.

IV.  Oliver Obtains Representation.

On August 19, Kenneth Freundlich filed a notice of appearance on behalf of Oliver.  Soon afterwards, as reflected in an Order of August 28, Cooley and the plaintiffs executed a settlement agreement, leaving Oliver as the only defendant.

Pursuant to an Order of August 20, the plaintiffs and Oliver, through his new counsel, submitted a joint status letter on August 28.  That letter reflected that the parties had met

18

and conferred, that Oliver would produce documents discussed at
the meet and confer, and that the parties had generally begun to
engage in good faith on discovery matters.  Meanwhile, the
parties jointly accused Key of having "insinuated herself for
improper purposes and engaged in vexatious conduct in the names
of Mr. Cooley and Mr. Oliver without their knowledge or
consent," and "jointly request[ed] that an appropriate order to
show cause be issued to Ms. Key."

The Court held a conference on September 10.  There too,
the parties made clear that they were now making good progress
on discovery matters.  Oliver's counsel stated that Key had done
"a whole lot of mischief" and had "led [Oliver] astray in many
ways" while he was <u>pro se</u>, but was now "out of the picture."
The parties also explained that Key was resistant to producing
documents and described their disagreement over whether the
plaintiffs or Oliver had the responsibility of obtaining those
documents.  At the September 10 conference and in an Order
issued that day, the Court instructed that Oliver had the
responsibility of obtaining and producing documents in Key's
possession.

Oliver has since obtained Key's documents through a
subpoena and produced them to the plaintiffs.  The parties also

engaged in mediation in September, but were unable to resolve their dispute.

At the request of the parties, the schedule for this litigation was extended in Orders of August 29 and September 30. Fact and expert discovery is now due to be completed by November 20. Any motion for summary judgment is due on January 15, 2026 and will be fully submitted by March 16.

## **Discussion**

"A court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." Shepherd v. Annucci, 921 F.3d 89, 97 (2d Cir. 2019). Courts are also authorized by Rule 37 of the Federal Rules of Civil Procedure to impose sanctions for failure to cooperate in discovery. Rule 37 specifies as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

20

> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party. . . .

Fed. R. Civ. P. 37(b)(2)(A).  Rule 37 also instructs that

"[i]nstead of or in addition to" any such sanctions,

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).  In deciding whether to impose

sanctions under Rule 37, courts consider, among other factors,

> (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

J.C. v. Zimmerman, 150 F.4th 136, 146 (2d Cir. 2025) (citation

omitted).

The record described herein reflects that Oliver engaged in

significant misconduct while proceeding pro se.  He repeatedly

failed to fulfill his discovery obligations, including his

obligation to produce documents in his possession and in the

possession of Key, his agent, as well as his obligation to

respond to the plaintiffs' interrogatories.  Among other

misconduct, Oliver missed three specific discovery deadlines on

June 16, July 15, and July 17.  These actions were in bad faith.

21

Oliver was undeterred by the Court' multiple admonitions and warnings of the sanctions that might follow from failure to cooperate in discovery, including at the conference of July 11. He refused to meet and confer with the plaintiffs.  On multiple occasions, he made false representations that he was complying with his discovery obligations.

All the while, Oliver sought to muddy the waters through a long series of frivolous filings.  Beginning in March, he filed numerous motions for summary judgment and other motions that brought untimely challenges to the merits of the plaintiffs' claims.  Oliver continued to submit such filings even after being repeatedly instructed by the Court that those arguments were premature, including at the conferences of April 24 and July 11.  Oliver also brought discovery disputes against the plaintiffs that were untimely or otherwise meritless, even while he was neglecting his own discovery obligations.  Nor is any of this the full extent of Oliver's misconduct.

Oliver now claims, through his new counsel, that Key should be blamed for his misconduct.  The parties appear to agree that Key prepared filings on behalf of Oliver and Cooley, and that Key generally steered the defendants' abusive litigation strategy while they were proceeding pro se.  But Key is not a party in this action, nor is she the subject of this motion.

Moreover, Oliver had not attempted to distance himself from Key before he obtained representation. Oliver was warned in the Opinion of April 9 that Key may not play the part of an attorney for the defendants, and apparently did not heed that warning. Oliver is entirely responsible for the submissions that were filed on his behalf, regardless of Key's role in preparing them.

Nonetheless, the need for sanctions is lessened by the fact that Oliver eventually changed course and obtained competent representation. Since that happened, it appears that the parties have been able to engage in good faith and the litigation has been proceeding appropriately. It is also a relevant consideration that Oliver was pro se at the time of his misconduct.

Sanctions will not be imposed at this time. The Court does not presently order Oliver to pay the plaintiffs' costs and attorneys' fees. In light of Oliver's new representation, it is unnecessary to order a filing injunction. The plaintiffs did not request that the Court immediately impose terminating sanctions, and such sanctions are not necessary at this time. Although a default may have been entered against Oliver if his course of conduct had continued, it is now the Court's expectation that the parties will be able to litigate this dispute on the merits.

23

The plaintiffs may renew this motion for sanctions if Oliver engages in any further misconduct. They may do so either by letter or by filing an additional motion. The record described herein will be considered on any such motion.

### Conclusion

The plaintiffs' July 24, 2025 motion for sanctions is denied without prejudice to its renewal.

Dated:     New York, New York
           October 29, 2025

                                    _____
                                          DENISE COTE
                              United States District Judge

24